No. 21-1153

_____

# UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

_____

IN RE: BRIAN W. COUGHLIN
*Debtor*,

_____

BRIAN W. COUGHLIN,
*Appellant*,

v.

LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS;
L.D.F. BUSINESS DEVELOPMENT CORP.; L.D.F. HOLDINGS, LLC;
NIIWIN, LLC, d/b/a Lendgreen,
*Appellees*.

_____

On Appeal from the United States Bankruptcy Court for the
District of Massachusetts, No. 1:19-bk-14142-FJB (Hon. Frank J. Bailey)

_____

## JOINT APPENDIX

_____

RICHARD N. GOTTLIEB
LAW OFFICES OF RICHARD N. GOTTLIEB
10 Tremont Street, Suite 11, 3rd Floor
Boston, MA 02108
(617) 742-4491
rnglaw@verizon.net

MICHAEL D. CAMERON
  *Of Counsel*
ALFANO LAW OFFICE, PLLC
4 Park Street, Suite 405
Concord, NH 03301
(603) 581-4684
michael@alfanolawoffice.com

GREGORY G. RAPAWY
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7967
grapawy@kellogghansen.com

TERRIE L. HARMAN
ALFANO LAW OFFICE, PLLC
129 Water Street
Exeter, NH 03833
(603) 431-0666
th@tharman.net

*Counsel for Appellant Brian W. Coughlin*

May 25, 2021

*(Additional counsel listed on inside cover)*

ANDREW ADAMS III
PETER J. RADEMACHER
COLETTE ROUTEL
HOGEN ADAMS PLLC
1935 Country Road B2 West
Suite 460
St. Paul, MN 55113
(651) 842-9100
aadams@hogenadams.com
prademacher@hogenadams.com
croutel@hogenadams.com

*Counsel for Appellee Lac du Flambeau Band of Lake Superior Chippewa Indians*

ADRIENNE K. WALKER
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02119
(617) 239-0211
awalker@lockelord.com

*Counsel for Appellees Lac du Flambeau Band of Lake Superior Chippewa Indians, L.D.F. Business Development Corporation, L.D.F. Holdings, LLC, and Niiwin, LLC, d/b/a Lendgreen*

ANDREW W. LESTER
SPENCER FANE LLP
9400 North Broadway Ext., Suite 600
Oklahoma City, OK 73114
(405) 753-5911
alester@spencerfane.com

ZACHARY R.G. FAIRLIE
SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 292-8223
zfairlie@spencerfane.com

*Counsel for Appellees L.D.F. Business Development Corporation, L.D.F. Holdings, LLC, and Niiwin, LLC, d/b/a Lendgreen*

# TABLE OF CONTENTS

J.A. Page

Docket Sheet, No. 1:19-bk-14142-FJB (Bankr. D. Mass.)........................................1

Debtor's Voluntary Petition for Bankruptcy (Dec. 4, 2019)
[ECF No. 1].............................................................................................................20

Debtor's Chapter 13 Plan (Dec. 4, 2019) [ECF No. 11]..........................................71

Certificate of Service to Debtor's Chapter 13 Plan (Dec. 4, 2019)
[ECF No. 11-1] .......................................................................................................83

Motion of Debtor To Enforce the Automatic Stay (Mar. 25, 2020)
[ECF No. 27]...........................................................................................................86

      Exhibit A:  Schedule E/F: Creditors Who Have Unsecured
      Claims .................................................................................................94

      Exhibit B:  Debtor's Mailing Matrix .................................................96

      Exhibit C:  Certificate of Service re: Debtor's Original
      Chapter 13 Plan (Dec. 4, 2019) ........................................................98

      Exhibit D:  February 26, 2020 Email from L. Ehikpehale to
      B. Coughlin re: Power of Attorney................................................102

      Exhibit E:  March 17, 2020 Email from Lendgreen to
      B. Coughlin re: Overdue Balance..................................................105

      Exhibit F:  Screenshot of Cellphone Voicemail Left for Debtor
      on March 18, 2020...........................................................................109

      Exhibit G:  Screenshot of Cellphone Voicemail Left for Debtor
      on March 19, 2020...........................................................................111

Affidavit of Debtor in Support of Motion To Enforce the Automatic
Stay (Mar. 25, 2020) [ECF No. 27-1]....................................................................115

Supplemental Certificate of Service to Motion of Debtor To Enforce
Automatic Stay (May 11, 2020) [ECF No. 40].......................................................119

Supplemental Certificate of Service to Motion of Debtor To Enforce
Automatic Stay (May 13, 2020) [ECF No. 42]......................................120

Proceeding Memorandum and Order re: May 7, 2020 Telephonic
Hearing (Entered May 14, 2020) [ECF No. 43] ...................................121

Certificate of Service Concerning Order of May 14, 2020 (May 22,
2020) [ECF No. 45] .............................................................................122

Amended Certificate of Service Concerning Order of May 14, 2020
(May 26, 2020) [ECF No. 46]................................................................134

Affidavit of Debtor Regarding the Enumeration of Damages in
Support of Motion To Enforce the Automatic Stay (July 7, 2020)
[ECF No. 60]..........................................................................................144

      Exhibit A:  Invoices for Medical Care from Massachusetts
      General Hospital ............................................................148

      Exhibit B:  Debtor's Pay Statements for February 2020............................161

Motion of Lac du Flambeau Band of Lake Superior Chippewa Indians
[the "Tribe"] To Dismiss (July 30, 2020) [ECF No. 73] .......................164

Tribe's Memorandum in Support of Motion To Dismiss (July 30,
2020) [ECF No. 73-1] ...........................................................................166

Motion of Niiwin, LLC, L.D.F. Business Development Corp., and
L.D.F. Holdings, LLC To Dismiss Stay Motion (July 30, 2020)
[ECF No. 74]..........................................................................................179

Memorandum of Niiwin, LLC, L.D.F. Business Development Corp.,
and L.D.F. Holdings, LLC in Support of Motion To Dismiss (July 30,
2020) [ECF No. 74-1] ...........................................................................181

Objection of Debtor to Tribe's Motion To Dismiss (Aug. 21, 2020)
[ECF No. 81]..........................................................................................197

Memorandum of Law in Support of Debtor's Objection to Tribe's
Motion To Dismiss (Aug. 21, 2020) [ECF No. 82] ...............................199

    Exhibit A:  Articles of Incorporation of L.D.F. Business
    Development Corp. (Aug. 27, 2012) ..........................................221

    Exhibit B:  Tribe Resolution No. 550(12) (Dec. 17, 2012)........................226

    Exhibit C:  Articles of Incorporation of Niiwin, LLC (Jan. 9,
    2013) ....................................................................228

    Exhibit D:  Operating Agreement of Niiwin, LLC (July 17,
    2013) ....................................................................231

    Exhibit E:  Niiwin, LLC d/b/a Lendgreen Loan Agreement
    (Feb. 12, 2015).........................................................244

Objection of Debtor to Motion To Dismiss of Niiwin, LLC, L.D.F.
Business Development Corp., and L.D.F. Holdings, LLC (Aug. 21,
2020) [ECF No. 83] .............................................................254

Memorandum of Law in Support of Objection of Debtor to Motion To
Dismiss of Niiwin, LLC, L.D.F. Business Development Corp., and
L.D.F. Holdings, LLC (Aug. 21, 2020) [ECF No. 84] ..........................256

    Exhibit A:  Articles of Incorporation of L.D.F. Business
    Development Corp. (Aug. 27, 2012) ..........................................279

    Exhibit B:  Tribe Resolution No. 550(12) (Dec. 17, 2012)........................284

    Exhibit C:  Articles of Incorporation of Niiwin, LLC (Jan. 9,
    2013) ....................................................................286

    Exhibit D:  Operating Agreement of Niiwin, LLC (July 17,
    2013) ....................................................................289

    Exhibit E:  Niiwin, LLC d/b/a Lendgreen Loan Agreement
    (Feb. 12, 2015).........................................................302

Reply Memorandum in Support of Tribe's Motion To Dismiss (Sept.
4, 2020) [ECF No. 92] ..........................................................312

Reply of Niiwin, LLC, L.D.F. Business Development Corp., and
L.D.F. Holdings, LLC to Objection to Motion To Dismiss Stay
Motion (Sept. 4, 2020) [ECF No. 93] ...................................................318

Motion of Debtor for Leave To Submit Response Brief to
Respondents' Reply Briefs (Sept. 18, 2020) [ECF No. 97]...................324

Memorandum of Law of Debtor in Response to Reply Briefs of
Respondents (Sept. 18, 2020) [ECF No. 97-1] .....................................326

Joint Motion To Strike Debtor's Sur-Reply (Sept. 21, 2020)
[ECF No. 104]........................................................................................333

Proceeding Memorandum and Order re: September 22, 2020 Hearing
(Entered Sept. 23, 2020) [ECF No. 105] ...............................................338

Proceeding Memorandum and Order re: September 22, 2020 Hearing
(Entered Sept. 23, 2020) [ECF No. 106] ...............................................339

Order Denying Joint Motion To Strike (Sept. 23, 2020)
[ECF No. 107].......................................................................................340

Tribe's Final Reply Memorandum in Support of Motion To Dismiss
(Sept. 30, 2020) [ECF No. 111] ............................................................341

Response of Niiwin, LLC, L.D.F. Business Development Corp., and
L.D.F. Holdings, LLC to Debtor's Sur-Reply (Sept. 30, 2020)
[ECF No. 112]........................................................................................348

Order Extending Time To File Notice of Appeal Under Rule 8002(c)
(Oct. 27, 2020) [ECF No. 118] .............................................................358

Notice of Appeal (Nov. 2, 2020) [ECF No. 121] .................................359

Certification Regarding Direct Appeal (Nov. 18, 2020) [ECF No. 129] .............364

Transcript of September 22, 2020 Hearing (Jan. 19, 2021)
[ECF No. 143].......................................................................................366

Judgment Dated February 23, 2021 by U.S. Court of Appeals for the
First Circuit Granting Direct Appeal (Feb. 24, 2021) [ECF No. 146] .................431

NTCAPR, APLDIST, AddChg, DebtEd

**United States Bankruptcy Court**
**District of Massachusetts (Boston)**
**Bankruptcy Petition #: 19-14142**

*Assigned to:* Judge Frank J. Bailey
Chapter 13
Voluntary
Asset

*Date filed:* 12/04/2019
*Plan confirmed:* 06/15/2020
*341 meeting:* 01/15/2020

*Debtor*
**Brian W. Coughlin**
441 Bennington St
Boston, MA 02128
SSN / ITIN: xxx-xx-7649

represented by **Richard N. Gottlieb**
Law Offices of Richard N.
Gottlieb
Ten Tremont Street
Suite 11, 3rd Floor
Boston, MA 02108
(617) 742-4491
Fax : (617) 742-5188
Email: rnglaw@verizon.net

*Assistant U.S. Trustee*
**John Fitzgerald**
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

*Trustee*
**Carolyn Bankowski-13-12**
Chapter 13-12 Trustee Boston
P. O. Box 8250
Boston, MA 02114
617-723-1313

| Filing Date | # | Docket Text |
|---|---|---|
| 12/04/2019 | 1 | Chapter 13 Voluntary Petition Individual All Schedules and Statements and Matrix. With Chapter 13 Agreement. Filing Fee in the Amount of $310 Filed by Brian W. Coughlin. (Gottlieb, Richard) (Entered: 12/04/2019) |
| 12/04/2019 | 2 | Statement of Social Security Number(s) filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 12/04/2019) |
| 12/04/2019 | 3 | Declaration Re: Electronic Filing filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 12/04/2019) |
| 12/04/2019 | 4 | Disclosure of Compensation of Attorney Richard N. Gottlieb in the |

**J.A. 1**

| | | |
|---|---|---|
| | | amount of $3500. Plus $310 paid to debtor`s counsel for court filing fees filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 12/04/2019) |
| 12/04/2019 | 5 | Certificate of Credit Counseling filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 12/04/2019) |
| 12/04/2019 | 6 | Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period for 5 Years Form 122C-1. Disposable Income Is Determined , Chapter 13 Calculation of Your Disposable Income Form 122C-2 filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 12/04/2019) |
| 12/04/2019 | 7 | Evidence of Current and Sufficient Liability and Property Insurance filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 12/04/2019) |
| 12/04/2019 | 8 | Signature Page *s for Voluntary Petition, Schedules, Statement of Financial Affairs and Verification of Mailing Matrix* (Re: 1 Voluntary Petition (Chapter 13)) filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 12/04/2019) |
| 12/04/2019 | 9 | Signature Page *for Statement of Current Monthly Income and Chapter 13 Calculation of Disposable Income* (Re: 6 Chapter 13 Statement of Monthly Income, Chapter 13 Calculation of Disposable Income) filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 12/04/2019) |
| 12/04/2019 | 10 | Chapter 13 Agreement between debtor and counsel filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 12/04/2019) |
| 12/04/2019 | 11 | Chapter 13 Plan *(Original)*, and Request for Assumption of Executory Contracts and Unexpired Leases With Certificate of Service filed by Debtor Brian W. Coughlin (Attachments: # 1 Certificate of Service) (Gottlieb, Richard) (Entered: 12/04/2019) |
| 12/04/2019 | | Receipt of filing fee for Voluntary Petition (Chapter 13)(19-14142) [misc,volp13] ( 310.00). Receipt Number 18482422, amount $ 310.00 (re: Doc# 1) (U.S. Treasury) (Entered: 12/04/2019) |
| 12/04/2019 | | Meeting of Creditors scheduled on 01/15/2020 at 10:00 AM at Room 325-B, U.S. Trustee Office, J.W. McCormack Post Office & Court House, Boston, MA. Deadline to object to debtor's discharge or to challenge dischargeability of certain debts is 03/16/2020. Proof of Claim due by 02/12/2020. Government Proof of Claim due by 06/01/2020. (admin, ) (Entered: 12/04/2019) |
| 12/09/2019 | 12 | Court's Notice of 341 sent. (ADI) (Entered: 12/09/2019) |
| 12/11/2019 | 13 | BNC Certificate of Mailing - Meeting of Creditors. (Re: 12 Court's Notice of 341 sent 13) Notice Date 12/11/2019. (Admin.) (Entered: 12/12/2019) |
| 01/15/2020 | | Meeting of Creditors Not Held (Bankowski-13-12, Carolyn) (Entered: |

**J.A. 2**

| | | |
|---|---|---|
| | | 01/15/2020) |
| 01/15/2020 | 14 | Chapter 13 Trustee's Motion for Order Dismissing Case with certificate of service.. Objections due by 02/10/2020. (Bankowski-13-12, Carolyn) (Entered: 01/15/2020) |
| 02/07/2020 | 15 | Response with certificate of service filed by Debtor Brian W. Coughlin Re: 14 Chapter 13 Trustee's Motion for Order Dismissing Case. (Gottlieb, Richard) (Entered: 02/07/2020) |
| 02/07/2020 | 16 | Order dated 2/7/2020 Re: 14 Chapter 13 Trustee's Motion for Order Dismissing Case. IN LIGHT OF THE RESPONSE OF THE DEBTOR, THE PARTIES SHALL CONFER AND, ON OR BEFORE FEBRUARY 21, 2020, IF THE PARTIES HAVE NOT FILED A JOINT MOTION FOR ENTRY OF AGREED ORDER OR OTHERWISE RESOLVED THE MOTION, THE TRUSTEE SHALL FILE A SUPPLEMENT TO THE MOTION TO DISMISS. (lb) (Entered: 02/07/2020) |
| 02/09/2020 | 17 | BNC Certificate of Mailing - PDF Document. (Re: 16 Order on Chapter 13 Trustee's Motion to Dismiss Case) Notice Date 02/09/2020. (Admin.) (Entered: 02/10/2020) |
| 02/10/2020 | | Continuance of Meeting of Creditors 03/18/2020 @ 9:30am (Bankowski-13-12, Carolyn) (Entered: 02/10/2020) |
| 02/13/2020 | 18 | *Supplemental Motion to Dismiss pursuant to Order dated February 7, 2020* with certificate of service (Re: 14 Chapter 13 Trustee's Motion for Order Dismissing Case) filed by Trustee Carolyn Bankowski-13-12 (Bankowski-13-12, Carolyn) (Entered: 02/13/2020) |
| 02/13/2020 | 19 | Hearing Scheduled on 4/2/2020 at 10:30 A.M at Boston Courtroom 1, 12th Floor, 5 Post Office Square, Boston, MA 02109 Re: 14 Chapter 13 Trustee's Motion for Order Dismissing Case, 18 Supplemental 14 Chapter 13 Trustee's Motion for Order Dismissing Case. (mem) (Entered: 02/13/2020) |
| 02/13/2020 | 20 | Certificate of Service of Notice of Hearing (Re: 14 Chapter 13 Trustee's Motion for Order Dismissing Case, 18 Supplemental Document) filed by Trustee Carolyn Bankowski-13-12 (Bankowski-13-12, Carolyn) (Entered: 02/13/2020) |
| 03/13/2020 | 21 | Order dated 3/13/2020 Re: 14 Chapter 13 Trustee's Motion for Order Dismissing Case, 18 Supplemental Motion. THE HEARING SCHEDULED FOR APRIL 2, 2020 AT 10:30 A.M. SHALL BE RESCHEDULED IN TIME ONLY TO 11:30 A.M., AND SHALL NOW BE TELEPHONIC. BECAUSE OF CONCERNS ABOUT COVID-19, ALL PARTICIPANTS, INCLUDING ATTORNEYS, THE DEBTOR(S), WITNESSES, AFFIANTS, AND OTHER ATTENDEES SHALL APPEAR BY TELEPHONE AND MAY NOT APPEAR IN PERSON. TO APPEAR TELEPHONICALLY, ATTENDEES SHALL, AT THE APPOINTED TIME OF HEARING, DIAL (877) 336-1839 AND ENTER ACCESS CODE 7925100. TO FACILITATE INFORMAL |

| | | DISCUSSIONS SIMILAR TO THOSE THAT OCCUR JUST PRIOR TO IN-PERSON HEARINGS, THE COURT REQUESTS THAT THE PARTIES ATTEMPT TO CONFER BRIEFLY 48 HOURS PRIOR TO THE SCHEDULED HEARING. (jreg) (Entered: 03/13/2020) |
|---|---|---|
| 03/15/2020 | 22 | BNC Certificate of Mailing - PDF Document. (Re: 21 Order) Notice Date 03/15/2020. (Admin.) (Entered: 03/16/2020) |
| 03/18/2020 | | Meeting of Creditors Held and Examination of Debtor (Bankowski-13-12, Carolyn) (Entered: 03/18/2020) |
| 03/24/2020 | 23 | First Amended Chapter 13 Plan , and Request for Assumption of Executory Contracts and Unexpired Leases. (RE: 11 Chapter 13 Plan) filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 03/24/2020) |
| 03/24/2020 | 24 | Motion filed by Debtor Brian W. Coughlin to Amend Plan, [Re: 23 Amended Chapter 13 Plan] with certificate of service. (Gottlieb, Richard) (Entered: 03/24/2020) |
| 03/24/2020 | 25 | Notice of Withdrawal with certificate of service (Re: 14 Chapter 13 Trustee's Motion for Order Dismissing Case, 18 Supplemental Document) filed by Trustee Carolyn Bankowski-13-12 (Bankowski-13-12, Carolyn) (Entered: 03/24/2020) |
| 03/24/2020 | 26 | Order dated 3/24/2020 RE: 14 Chapter 13 Trustee's Motion for Order Dismissing Case. WITHDRAWN. THE HEARING SCHEDULED FOR APRIL 2, 2020, AT 11:30 A.M. IS HEREBY CANCELLED. (nc) (Entered: 03/24/2020) |
| 03/25/2020 | 27 | Motion filed by Debtor Brian W. Coughlin to Enforce the Automatic Stay with certificate of service. (Attachments: # 1 Affidavit of Debtor in Support of Motion to Enforce the Automatic Stay) (Gottlieb, Richard) (Entered: 03/25/2020) |
| 03/26/2020 | 28 | BNC Certificate of Mailing - PDF Document. (Re: 26 Order on Chapter 13 Trustee's Motion to Dismiss Case) Notice Date 03/26/2020. (Admin.) (Entered: 03/27/2020) |
| 04/03/2020 | 29 | Trustee's Objection to Confirmation of Plan with certificate of service (RE: 23 Amended Chapter 13 Plan filed by Debtor Brian W. Coughlin). (Bankowski-13-12, Carolyn) (Entered: 04/03/2020) |
| 04/03/2020 | 30 | Second Amended Chapter 13 Plan , and Request for Assumption of Executory Contracts and Unexpired Leases. (RE: 11 Chapter 13 Plan) filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 04/03/2020) |
| 04/03/2020 | 31 | Motion filed by Debtor Brian W. Coughlin to Amend Plan, [Re: 30 Amended Chapter 13 Plan] with certificate of service. (Gottlieb, Richard) (Entered: 04/03/2020) |

| | | |
|---|---|---|
| 04/03/2020 | [32](#) | Endorsed Order dated 4/3/2020 RE: [24](#) Motion filed by Debtor Brian W. Coughlin to Amend Plan. MOOT, THE DEBTOR HAVING FILED AN AMENDED PLAN. (nc) (Entered: 04/03/2020) |
| 04/03/2020 | [33](#) | Order dated 04/03/2020 RE: [29](#) Trustee's Objection to Confirmation of Plan. MOOT, THE DEBTOR HAVING FILED AN AMENDED PLAN. (nc) (Entered: 04/03/2020) |
| 04/05/2020 | [34](#) | BNC Certificate of Mailing - PDF Document. (Re: [32](#) Order on Motion to Amend) Notice Date 04/05/2020. (Admin.) (Entered: 04/06/2020) |
| 04/05/2020 | [35](#) | BNC Certificate of Mailing - PDF Document. (Re: [33](#) Order on Trustee's Objection to Confirmation of Plan) Notice Date 04/05/2020. (Admin.) (Entered: 04/06/2020) |
| 04/10/2020 | [36](#) | TELEPHONIC Hearing Scheduled on 5/7/2020 at 01:15 P.M at Boston Courtroom 1, 12th Floor, 5 Post Office Square, Boston, MA 02109 Re: [27](#) Motion filed by Debtor Brian W. Coughlin to Enforce the Automatic Stay. BECAUSE OF THE CONCERNS ABOUT COVID-19, ALL PARTICIPANTS, INCLUDING ATTORNEYS, THE DEBTOR(S), WITNESSES, AFFIANTS, AND OTHER ATTENDEES SHALL APPEAR BY TELEPHONE AND MAY NOT APPEAR IN PERSON. TO APPEAR TELEPHONICALLY, ATTENDEES SHALL, AT THE APPOINTED TIME OF HEARING, DIAL (877) 336-1839 AND ENTER ACCESS CODE 7925100. TO FACILITATE INFORMAL DISCUSSIONS SIMILAR TO THOSE THAT OCCUR JUST PRIOR TO IN-PERSON HEARINGS, THE COURT REQUESTS THAT THE PARTIES ATTEMPT TO CONFER BRIEFLY 48 HOURS PRIOR TO THE SCHEDULED HEARING. (mem) (Entered: 04/10/2020) |
| 04/10/2020 | [37](#) | Notice of Hearing *(Telephonic)* with Certificate of Service (Re: [27](#) Motion for Sanctions/Costs) filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 04/10/2020) |
| 05/07/2020 | [38](#) | Endorsed Order dated 5/7/2020 Re: [31](#) Motion filed by Debtor Brian W. Coughlin to Amend Plan Re: [30](#) Amended Chapter 13 Plan. NO OBJECTION HAVING BEEN FILED, THE TRUSTEE SHALL IN DUE COURSE SUBMIT A PROPOSED CONFIRMATION ORDER. (jreg) (Entered: 05/07/2020) |
| 05/07/2020 | [43](#) | Order dated 5/07/2020 RE: [27](#) Motion filed by Debtor Brian W. Coughlin to Enforce the Automatic Stay. TELEPHONIC HEARING HELD ON 5/7/2020. THE COURT SHALL HOLD AN EVIDENTIARY HEARING ON THIS MATTER ON AUGUST 17, 2020 AT 9:30 A.M. ON OR BEFORE MAY 22, 2020, THE DEBTOR SHALL SERVE HIS MOTION AND THIS ORDER ON NIIWIN, LLC D/B/A LENDGREEN; LDF HOLDINGS, LLC; LAC DU FLAMBEAU BUSINESS DEVELOPMENT CORPORATION; AND THE LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS BY REGISTERED MAIL; AND ON OR BEFORE JUNE 22, 2020, THE DEBTOR SHALL FILE A CERTIFICATE OF SUCH SERVICE AND CONFIRMATION OF ITS DELIVERY TO THESE ENTITIES. (nc) (Entered: 05/14/2020) |

| | | |
|---|---|---|
| 05/09/2020 | 39 | BNC Certificate of Mailing - PDF Document. (Re: 38 Order on Motion to Amend) Notice Date 05/09/2020. (Admin.) (Entered: 05/10/2020) |
| 05/11/2020 | 40 | Supplemental Certificate of Service *of Motion of Debtor to Enforce the Automatic Stay and Affidavit of Debtor in Support of Motion to Enforce the Automatic Stay* (Re: 27 Motion for Sanctions/Costs) filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 05/11/2020) |
| 05/12/2020 | 41 | Notice of Proposed Order Confirming Chapter 13 Plan with Certificate of Service and Proposed Order Confirming Chapter 13 Plan. (RE: 30 Amended Chapter 13 Plan filed by Debtor Brian W. Coughlin). (Attachments: # 1 Proposed Order) (Bankowski-13-12, Carolyn) (Entered: 05/12/2020) |
| 05/13/2020 | 42 | Supplemental Certificate of Service *for Motion of Debtor to Enforce the Automatic Stay and Affidavit of Brian W. Coughlin in Support of Motion of Debtor to Enforce the Automatic Stay* (Re: 27 Motion for Sanctions/Costs) filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 05/13/2020) |
| 05/14/2020 | | Evidentiary Hearing Scheduled for 8/17/2020 at 09:30 AM at Boston Courtroom 1, 12th Floor, 5 Post Office Square, Boston, MA 02109 RE: 27 Motion filed by Debtor Brian W. Coughlin to Enforce the Automatic Stay. (nc) (Entered: 05/14/2020) |
| 05/16/2020 | 44 | BNC Certificate of Mailing - PDF Document. (Re: 43 Order on Motion For Sanctions/Costs) Notice Date 05/16/2020. (Admin.) (Entered: 05/17/2020) |
| 05/22/2020 | 45 | Certificate of Service of Notice of Hearing *(Evidentiary) as per Order of May 14, 2020* (Re: 27 Motion for Sanctions/Costs) filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 05/22/2020) |
| 05/26/2020 | 46 | Amended Certificate of Service (Re: 27 Motion for Sanctions/Costs, 43 Order on Motion For Sanctions/Costs) filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 05/26/2020) |
| 06/15/2020 | 47 | Order dated 6/15/2020 Confirming Chapter 13 Plan (Re: 30 Second Amended Chapter 13 Plan). (jreg) (Entered: 06/15/2020) |
| 06/15/2020 | 48 | Notice of Appearance and Request for Notice filed Creditors L.D.F. Business Development Corporation, and LDF Holdings, LLC, and Niiwin, LLC d/b/a Lendgreen, and Lac du Flambeau Band of Lake Superior Chippewa Indians. (Walker, Adrienne) (Entered: 06/15/2020) |
| 06/15/2020 | 49 | Motion filed by Adrienne Kotowski Walker on behalf of Scott J. Goldstein to Appear pro hac vice for Creditors L.D.F. Business Development Corporation, and LDF Holdings, LLC, and Niiwin, LLC d/b/a Lendgreen, and Lac du Flambeau Band of Lake Superior Chippewa Indians with certificate of service. (Walker, Adrienne) (Entered: 06/15/2020) |

**J.A. 6**

| | | |
|---|---|---|
| 06/15/2020 | [50](#) | Motion filed by Adrienne Kotowski Walker on behalf of Zachary Fairlie to Appear pro hac vice for Creditors L.D.F. Business Development Corporation, and LDF Holdings, LLC, and Niiwin, LLC d/b/a Lendgreen, and Lac du Flambeau Band of Lake Superior Chippewa Indians with certificate of service. (Walker, Adrienne) (Entered: 06/15/2020) |
| 06/16/2020 | [51](#) | Notice of Fee Due (Pro Hac Vice) issued to Scott J. Goldstein representing L.D.F. Business Development Corporation, and LDF Holdings, LLC, and Niiwin, LLC d/b/a Lendgreen, and Lac du Flambeau Band of Lake Superior Chippewa Indians. PHV Fee Due 6/26/2020. (RE: [49](#) Motion to Appear pro hac vice) (nc) (Entered: 06/16/2020) |
| 06/16/2020 | [52](#) | Notice of Fee Due (Pro Hac Vice) issued to Zachary Fairlie representing Creditor L.D.F. Business Development Corporation, Creditor LDF Holdings, LLC, Creditor Niiwin, LLC d/b/a Lendgreen, Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians. PHV Fee Due 6/26/2020. (RE: [50](#) Motion to Appear pro hac vice) (nc) (Entered: 06/16/2020) |
| 06/16/2020 | | Receipt Number phv-14055-1592267613, Fee Amount $100.00 Re: [52](#) Notice of Fee Due (Pro Hac Vice). (sl) (Entered: 06/16/2020) |
| 06/16/2020 | | Receipt Number phv-12759-1592267383, Fee Amount $100.00 Re: [51](#) Notice of Fee Due (Pro Hac Vice). (sl) (Entered: 06/16/2020) |
| 06/17/2020 | | Trustee's Request for a Claims Register as the Deadline Set for Filing Proofs of Claims has Passed.. (Bankowski-13-12, Carolyn) (Entered: 06/17/2020) |
| 06/17/2020 | [53](#) | BNC Certificate of Mailing - PDF Document. (Re: [47](#) Order Confirming Chapter 13 Plan) Notice Date 06/17/2020. (Admin.) (Entered: 06/18/2020) |
| 06/19/2020 | [54](#) | Clerk's Notice of Zero Fees Due. (lb) (Entered: 06/19/2020) |
| 06/19/2020 | [55](#) | Requested Claims Register as of 06/19/2020 electronically sent to Trustee. (lb) (Entered: 06/19/2020) |
| 07/01/2020 | [56](#) | Order dated 7/1/2020 RE: [49](#) Motion filed by Adrienne Kotowski Walker on behalf of Scott J. Goldstein to Appear pro hac vice for Creditors L.D.F. Business Development Corporation, and LDF Holdings, LLC, and Niiwin, LLC d/b/a Lendgreen, and Lac du Flambeau Band of Lake Superior Chippewa Indians. LEAVE FOR ATTORNEY SCOTT J. GOLDSTEIN TO APPEAR PRO HAC VICE IS HEREBY GRANTED. (nc) (Entered: 07/01/2020) |
| 07/01/2020 | [57](#) | Order dated 7/1/2020 RE: [50](#) Motion filed by Adrienne Kotowski Walker on behalf of Zachary Fairlie to Appear pro hac vice for Creditors L.D.F. Business Development Corporation, and LDF Holdings, LLC, and Niiwin, LLC d/b/a Lendgreen, and Lac du Flambeau Band of Lake Superior Chippewa Indians. LEAVE FOR ATTORNEY ZACHARY FAIRLIE TO APPEAR PRO HAC VICE IS HEREBY GRANTED. (nc) (Entered: 07/01/2020) |

**J.A. 7**

| | | |
|---|---|---|
| 07/03/2020 | 58 | BNC Certificate of Mailing - PDF Document. (Re: 56 Order on Motion to Appear pro hac vice) Notice Date 07/03/2020. (Admin.) (Entered: 07/04/2020) |
| 07/03/2020 | 59 | BNC Certificate of Mailing - PDF Document. (Re: 57 Order on Motion to Appear pro hac vice) Notice Date 07/03/2020. (Admin.) (Entered: 07/04/2020) |
| 07/07/2020 | 60 | Affidavit of Brian W. Coughlin Regarding Enumeration of Damages in Support RE: 27 Motion to Enforce the Automatic Stay filed by Debtor Brian W. Coughlin with certificate of service (Attachments: # 1 Certificate of Service) (Gottlieb, Richard) (Entered: 07/07/2020) |
| 07/08/2020 | 61 | Motion filed by Debtor Brian W. Coughlin To Establish a Deadline by Which Creditors LDF Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen and Lac du Flambeau Band of Lake Superior Chippewa Indians Must File and Serve Response RE: 27 Motion to Enforce the Automatic Stay with certificate of service. (Attachments: # 1 Proposed Order) (Gottlieb, Richard) (Entered: 07/08/2020) |
| 07/09/2020 | 62 | Order dated 7/9/2020 Re: 61 Motion filed by Debtor Brian W. Coughlin To Establish a Deadline by Which Creditors LDF Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen and Lac du Flambeau Band of Lake Superior Chippewa Indians Must File and Serve Response Re: 27 Motion to Enforce the Automatic Stay. GRANTED AS FOLLOWS: ANY RESPONSE TO THE DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY [#27] SHALL BE FILED ON OR BEFORE JULY 30, 2020 AT 4:30 PM. (jreg) (Entered: 07/09/2020) |
| 07/09/2020 | 63 | Order dated 7/9/2020 Re: 27 Motion filed by Debtor Brian W. Coughlin to Enforce the Automatic Stay. THE COURT SHALL HOLD A STATUS CONFERENCE ON JULY 27, 2020, AT 12:30 P.M. BECAUSE OF CONCERNS ABOUT COVID-19, ALL PARTICIPANTS, INCLUDING ATTORNEYS, THE DEBTOR(S), WITNESSES, AFFIANTS, AND OTHER ATTENDEES SHALL APPEAR BY TELEPHONE AND MAY NOT APPEAR IN PERSON. TO APPEAR TELEPHONICALLY, ATTENDEES SHALL, AT THE APPOINTED TIME OF HEARING, DIAL (877) 336-1839 AND ENTER ACCESS CODE 7925100. (jreg) (Entered: 07/09/2020) |
| 07/11/2020 | 64 | BNC Certificate of Mailing - PDF Document. (Re: 62 Order on Generic Motion) Notice Date 07/11/2020. (Admin.) (Entered: 07/12/2020) |
| 07/11/2020 | 65 | BNC Certificate of Mailing - PDF Document. (Re: 63 Order) Notice Date 07/11/2020. (Admin.) (Entered: 07/12/2020) |
| 07/21/2020 | 66 | Motion filed by Adrienne Walker on behalf of Andrew Adams III to Appear pro hac vice for Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians with certificate of service. (Walker, Adrienne) (Entered: 07/21/2020) |

| 07/21/2020 | 67 | Motion filed by Adrienne Walker on behalf of Peter J. Rademacher to Appear pro hac vice for Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians with certificate of service. (Walker, Adrienne) (Entered: 07/21/2020) |
| --- | --- | --- |
| 07/21/2020 | 68 | Notice of Appearance and Request for Notice *of Andrew Adams III and Peter J. Rademacher of Hogen Adams* by Adrienne Walker with certificate of service filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians (Walker, Adrienne) (Entered: 07/21/2020) |
| 07/21/2020 | 69 | Notice of Fee Due (Pro Hac Vice) RE: 66 Re: 66 Motion on behalf of Andrew Adams III to Appear pro hac vice for Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians.. issued to Andrew Adams, III representing Lac du Flambeau Band of Lake Superior Chippewa Indians. PHV Fee Due 7/31/2020. (nc) (Entered: 07/21/2020) |
| 07/21/2020 | 70 | Notice of Fee Due (Pro Hac Vice) RE: 67 Motion filed by Adrienne Walker on behalf of Peter J. Rademacher to Appear pro hac vice for Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians. issued to Peter J. Rademacher representing Lac du Flambeau Band of Lake Superior Chippewa Indians. PHV Fee Due 7/31/2020. (nc) (Entered: 07/21/2020) |
| 07/22/2020 | | Receipt Number phv-13704-1595359504, Fee Amount $100.00 Re: 69 Notice of Fee Due (Pro Hac Vice). (sl) (Entered: 07/22/2020) |
| 07/22/2020 | | Receipt Number phv-16992-1595359964, Fee Amount $100.00 Re: 70 Notice of Fee Due (Pro Hac Vice). (sl) (Entered: 07/22/2020) |
| 07/27/2020 | 71 | Order dated 7/27/2020 Re: 27 Motion filed by Debtor Brian W. Coughlin to Enforce the Automatic Stay. TELEPHONIC STATUS CONFERENCE HELD. THE COURT ADJOURNED THE EVIDENTIARY SCHEDULED FOR AUGUST 17, 2020, UNTIL FURTHER ORDER OF THE COURT. THE PARTIES AGREED AND THE COURT THEREFORE ORDERED AS FOLLOWS: (A) UNDER FED.R.BANKR.P. 9014(C) THAT FED.R.CIV.P. 12 SHALL APPLY TO THIS CONTESTED MATTER; (B) THAT THE RESPONDENTS SHALL FILE ANY RESPONSES OR MOTIONS TO DISMISS BY 4:30 P.M. ON JULY 30, 2020; THAT THE DEBTOR SHALL FILE ANY RESPONSE TO SAID MOTIONS TO DISMISS BY 4:30 P.M. ON AUGUST 21, 2020; AND THAT THE RESPONDENTS SHALL FILE ANY REPLY BRIEFS BY 4:30 P.M. ON SEPTEMBER 4, 2020. THE REPLY BRIEFS SHALL NOT EXCEED 5 PAGES, DOUBLE SPACED AND 12 POINT TYPE. THE COURT SHALL HOLD A NON-EVIDENTIARY HEARING ON SEPTEMBER 22, 2020, AT 2:00 P.M. ON ANY MOTIONS TO DISMISS. THE PARTIES CONSENTED TO THE HEARING BEING CONDUCTED ON A VIDEO AND/OR AUDIO PLATFORM IN LIGHT OF THE COVID 19 PANDEMIC. FURTHER ORDERS SHALL ISSUE CONCERNING THE PLATFORM OF THE HEARING. (jreg) (Entered: 07/27/2020) |
| 07/29/2020 | 72 | BNC Certificate of Mailing - PDF Document. (Re: 71 Order on Motion |

**J.A. 9**

| | | |
|---|---|---|
| | | For Sanctions/Costs) Notice Date 07/29/2020. (Admin.) (Entered: 07/30/2020) |
| 07/30/2020 | 73 | Motion filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians to Dismiss Contested Matter Re: 27 Motion to Enforce the Automatic Stay with certificate of service. (Attachments: # 1 Memorandum in Support of Motion to Dismiss) (Walker, Adrienne). (Entered: 07/30/2020) |
| 07/30/2020 | 74 | Motion filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen to Dismiss Contested Matter Re: 27 Motion to Enforce the Automatic Stay with certificate of service. (Attachments: # 1 Memorandum in Support of Motion to Dismiss) (Walker, Adrienne). (Entered: 07/30/2020) |
| 07/31/2020 | 75 | Hearing Scheduled on 9/22/2020 at 02:00 PM at Boston Courtroom 1, 12th Floor, 5 Post Office Square, Boston, MA 02109 Re: 73 Motion filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians Motion to Dismiss Contested Matter Re: 27 Motion to Enforce the Automatic Stay and 74 Motion filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen Motion to Dismiss Contested Matter Re: 27 Motion to Enforce the Automatic Stay. Objections due by 8/21/2020 at 04:30 PM. Reply Briefs due by 9/4/2020 at 04:30 PM. BECAUSE OF THE CONCERNS ABOUT COVID-19, ALL PARTICIPANTS, INCLUDING ATTORNEYS, THE DEBTOR(S), WITNESSES, AFFIANTS, AND OTHER ATTENDEES SHALL APPEAR BY TELEPHONE AND MAY NOT APPEAR IN PERSON. TO APPEAR TELEPHONICALLY, ATTENDEES SHALL, AT THE APPOINTED TIME OF HEARING, DIAL (877) 336-1839 AND ENTER ACCESS CODE 7925100. TO FACILITATE INFORMAL DISCUSSIONS SIMILAR TO THOSE THAT OCCUR JUST PRIOR TO IN-PERSON HEARINGS, THE COURT REQUESTS THAT THE PARTIES ATTEMPT TO CONFER BRIEFLY 48 HOURS PRIOR TO THE SCHEDULED HEARING. (lb) (Entered: 07/31/2020) |
| 08/05/2020 | 76 | Order dated 8/5/2020 RE: 66 Motion filed by Adrienne Walker on behalf of Andrew Adams III to Appear pro hac vice for Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians. NO OBJECTION FILED. LEAVE TO APPEAR PRO HAC VICE IS HEREBY GRANTED. (nc) (Entered: 08/05/2020) |
| 08/05/2020 | 77 | Order dated 8/5/2020 RE: 67 Motion filed by Adrienne Walker on behalf of Peter J. Rademacher to Appear pro hac vice for Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians. NO OBJECTION FILED. LEAVE TO APPEAR PRO HAC VICE IS HEREBY GRANTED. (nc) (Entered: 08/05/2020) |
| 08/07/2020 | 78 | BNC Certificate of Mailing - PDF Document. (Re: 76 Order on Motion to Appear pro hac vice) Notice Date 08/07/2020. (Admin.) (Entered: 08/08/2020) |
| | | |

| | | |
|---|---|---|
| 08/07/2020 | 79 | BNC Certificate of Mailing - PDF Document. (Re: 77 Order on Motion to Appear pro hac vice) Notice Date 08/07/2020. (Admin.) (Entered: 08/08/2020) |
| 08/12/2020 | 80 | Certificate of Service of Notice of Hearing *regarding Motions to Dismiss* (Re: 73 Miscellaneous Motion, 74 Miscellaneous Motion) filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Lac du Flambeau Band of Lake Superior Chippewa Indians, Niiwin, LLC d/b/a Lendgreen (Walker, Adrienne) (Entered: 08/12/2020) |
| 08/21/2020 | 81 | Objection filed by Debtor Brian W. Coughlin RE: 73 Motion to Dismiss Contested Matter with certificate of service. (Gottlieb, Richard) (Entered: 08/21/2020) |
| 08/21/2020 | 82 | Memorandum of Law In Support of RE: 81 Objection RE: 73 Motion to Dismiss Contested Matter filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 08/21/2020) |
| 08/21/2020 | 83 | Objection filed by Debtor Brian W. Coughlin RE: 74 Motion to Dismiss Contested Matter with certificate of service. (Gottlieb, Richard) (Entered: 08/21/2020) |
| 08/21/2020 | 84 | Memorandum of Law In Support of RE: 83 Objection RE: 74 Motion to Dismiss Contested Matter filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 08/21/2020) |
| 08/21/2020 | 85 | Certificate of Service (RE: 81 Objection, 82 Memorandum of Law In Support of , 83 Objection, 84 Memorandum of Law In Support of ) filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 08/21/2020) |
| 08/24/2020 | 86 | Order dated 8/24/2020 RE: 73 Motion filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians to Dismiss Contested Matter RE: 27 Motion to Enforce the Automatic Stay, 74 Motion filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen to Dismiss Contested Matter RE: 27 Motion to Enforce the Automatic Stay. ORDER REGARDING HEARING BY VIDEO TRANSMISSION. See Order for Complete Text. (nc). (Entered: 08/24/2020) |
| 08/26/2020 | 87 | BNC Certificate of Mailing - PDF Document. (Re: 86 Order on Generic Motion) Notice Date 08/26/2020. (Admin.) (Entered: 08/27/2020) |
| 09/02/2020 | 88 | Request for Notice by ACAR Leasing Ltd. d/b/a GM Financial Leasing (Youngblood, Mandy) (Entered: 09/02/2020) |
| 09/02/2020 | 89 | Motion filed by Richard N. Gottlieb on behalf of Terrie Harman, Esq. to Appear pro hac vice for Debtor Brian W. Coughlin with certificate of service. (Attachments: # 1 Affidavit Declaration of Terrie Harman, Esq.) (Gottlieb, Richard) (Entered: 09/02/2020) |
| 09/02/2020 | 90 | Notice of Fee Due (Pro Hac Vice) issued to Terrie Harman, Esq |

| | | |
|---|---|---|
| | | representing Debtor Brian W. Coughlin. RE: 89 Motion filed by Richard N. Gottlieb on behalf of Terrie Harman, Esq. to Appear pro hac vice for Debtor Brian W. Coughlin. PHV Fee Due 9/14/2020. (nc) (Entered: 09/02/2020) |
| 09/02/2020 | 91 | Application filed by Debtor Brian W. Coughlin to Employ Alfano Law Office, PLLC as Special Counsel filed with Affidavit along with certificate of service. (Attachments: # 1 Affidavit Affidavit of Disinterestedness of Terrie Harman # 2 Declaration of Electronic Filing Declaration Re: Electronic Filing of Terrie Harman # 3 Affidavit Affidavit of Disinterestedness of Michael Cameron # 4 Declaration of Electronic Filing Declaration Re: Electronic Filing of Michael Cameron) (Gottlieb, Richard) (Entered: 09/02/2020) |
| 09/03/2020 | | Receipt Number phv-29014-1599058227, Fee Amount $100.00 Re: 90 Notice of Fee Due (Pro Hac Vice). (sl) (Entered: 09/03/2020) |
| 09/04/2020 | 92 | Reply *Memorandum in Support of Motion to Dismiss* with certificate of service filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians Re: 73 Motion filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians Motion to Dismiss Contested Matter with certificate of service. (Walker, Adrienne) (Entered: 09/04/2020) |
| 09/04/2020 | 93 | Reply *to Objection to Motion to Dismiss Stay Motion* with certificate of service filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen Re: 74 Motion filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen Motion to Dismiss Contested Matter *[Docket No 27]* with certificate of service., 83 Objection filed by Debtor Brian W. Coughlin RE: 74 Motion to Dismiss Contested Matter with certificate of service. (Walker, Adrienne) (Entered: 09/04/2020) |
| 09/17/2020 | 94 | Endorsed Order dated 9/17/2020 Re: 91 Application filed by Debtor Brian W. Coughlin to Employ Alfano Law Office, PLLC as Special Counsel. NO OBJECTION FILED. LEAVE TO EMPLOY IS HEREBY GRANTED. (jreg) (Entered: 09/17/2020) |
| 09/17/2020 | 95 | Order dated 9/17/2020 Re: 89 Motion filed by Richard N. Gottlieb on behalf of Terrie Harman, Esq. to Appear pro hac vice for Debtor. ON OR BEFORE SEPTEMBER 24, 2020, THE MOVANT SHALL SUBMIT A SUPPLEMENTAL DECLARATION OF ATTORNEY IN WHICH SHE INDICATES WHETHER SHE IS FAMILIAR WITH THE LOCAL RULES OF THIS COURT, AS REQUIRED IN MLBR 9010-1(F)(3). (jreg) (Entered: 09/17/2020) |
| 09/18/2020 | 96 | Court Certificate of Mailing Re: 95 Order. (sl) (Entered: 09/18/2020) |
| 09/18/2020 | 97 | Motion filed by Debtor Brian W. Coughlin for Leave to File Memorandum of Law in Response to Reply Briefs of the Respondents [Re: 73 Miscellaneous Motion, 74 Miscellaneous Motion] with certificate of service. (Attachments: # 1 Memorandum of Law in Response to Reply |

| | | |
|---|---|---|
| | | Briefs of Respondents # 2 Certificate of Service) (Gottlieb, Richard) (Entered: 09/18/2020) |
| 09/18/2020 | 98 | Affidavit of Terrie Harman, Esq. *in Support of Motion for Admission Pro Hac Vice* (Re: 89 Motion to Appear pro hac vice, 95 Order) filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 09/18/2020) |
| 09/18/2020 | 99 | Endorsed Order dated 9/18/2020 Re: 89 Motion filed by Richard N. Gottlieb on behalf of Terrie Harman, Esq. to Appear pro hac vice for Debtor. LEAVE TO APPEAR PRO HAC VICE IS GRANTED. (jreg) (Entered: 09/18/2020) |
| 09/18/2020 | 100 | Endorsed Order dated 9/18/2020 RE: 97 Motion filed by Debtor Brian W. Coughlin for Leave to File Memorandum of Law in Response to Reply Briefs of the Respondents [Re: 73 Miscellaneous Motion, 74 Miscellaneous Motion]. GRANTED. THE MEMORANDUM OF LAW IS DEEMED FILED. (nc) (Entered: 09/18/2020) |
| 09/19/2020 | 101 | BNC Certificate of Mailing - PDF Document. (Re: 94 Order on Application to Employ) Notice Date 09/19/2020. (Admin.) (Entered: 09/20/2020) |
| 09/20/2020 | 102 | BNC Certificate of Mailing - PDF Document. (Re: 99 Order on Motion to Appear pro hac vice) Notice Date 09/20/2020. (Admin.) (Entered: 09/21/2020) |
| 09/20/2020 | 103 | BNC Certificate of Mailing - PDF Document. (Re: 100 Order on Motion for Leave to File) Notice Date 09/20/2020. (Admin.) (Entered: 09/21/2020) |
| 09/21/2020 | 104 | Emergency Joint Motion filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Lac du Flambeau Band of Lake Superior Chippewa Indians, Niiwin, LLC d/b/a Lendgreen to Strike (Re: 97 Motion For Leave to File) with certificate of service. (Walker, Adrienne) (Entered: 09/21/2020) |
| 09/22/2020 | 105 | Order dated 9/22/2020 RE: 73 Motion filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians to Dismiss Contested Matter Re: 27 Motion to Enforce the Automatic Stay. ZOOM HEARING HELD ON 9/22/2020. THE MATTER IS TAKEN UNDER ADVISEMENT. (nc) (Entered: 09/23/2020) |
| 09/22/2020 | 106 | Order dated 9/22/2020 RE: 74 Motion filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen to Dismiss Contested Matter Re: 27 Motion to Enforce the Automatic Stay. ZOOM HEARING HELD ON 9/22/2020. THE MATTER IS TAKEN UNDER ADVISEMENT. (nc) (Entered: 09/23/2020) |
| 09/23/2020 | 107 | Order dated 9/23/2020 RE: 104 Emergency Joint Motion filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Lac du Flambeau Band of Lake Superior Chippewa Indians, Niiwin, LLC d/b/a Lendgreen to Strike (Re: 97 Motion For Leave to File). THE |

| | | |
|---|---|---|
| | | MOTION TO STRIKE IS HEREBY DENIED. ON OR BEFORE SEPTEMBER 30, 2020, THE MOVING PARTIES MAY FILE A RESPONSE OR RESPONSES TO THE SUR-REPLY. THEREAFTER, THE COURT WILL ACCEPT NO FURTHER BRIEFING, AND THE MOTIONS TO DISMISS WILL BE DEEMED TAKEN UNDER ADVISEMENT. (nc) (Entered: 09/23/2020) |
| 09/25/2020 | 108 | BNC Certificate of Mailing - PDF Document. (Re: 105 Order on Generic Motion) Notice Date 09/25/2020. (Admin.) (Entered: 09/26/2020) |
| 09/25/2020 | 109 | BNC Certificate of Mailing - PDF Document. (Re: 106 Order on Generic Motion) Notice Date 09/25/2020. (Admin.) (Entered: 09/26/2020) |
| 09/25/2020 | 110 | BNC Certificate of Mailing - PDF Document. (Re: 107 Order on Motion to Strike) Notice Date 09/25/2020. (Admin.) (Entered: 09/26/2020) |
| 09/30/2020 | 111 | Final Reply Memorandum in Support RE: 73 Motion to Dismiss Contested Matter with certificate of service filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians. (Walker, Adrienne) (Entered: 09/30/2020) |
| 09/30/2020 | 112 | Response to Debtor's Sur-Reply with certificate of service filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen Re: 97 Motion filed by Debtor Brian W. Coughlin for Leave to File Memorandum of Law in Response to Reply Briefs of the Respondents [Re: 73 Miscellaneous Motion, 74 Miscellaneous Motion] with certificate of service. (Walker, Adrienne) (Entered: 09/30/2020) |
| 10/19/2020 | 113 | Memorandum of Decision and Order dated 11/19/2020 Re: 73 Motion filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians to Dismiss Contested Matter and 74 Motion filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen to Dismiss Contested Matter Re: 27 Motion to Enforce Automatic Stay. ORDER: FOR THE REASONS STATED ABOVE, THE MOTIONS TO DISMISS ARE HEREBY GRANTED, AND ACCORDINGLY, THE STAY MOTION WILL, BY SEPARATE ORDER, BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION. See Memorandum of Decision and Order for complete text. (ymw) (Entered: 10/19/2020) |
| 10/19/2020 | 114 | Order dated 10/19/2020 Re: 27 Motion filed by Debtor Brian W. Coughlin to Enforce the Automatic Stay. FOR THE REASONS SET FORTH IN THE SEPARATE MEMORANDUM OF DECISION ISSUED TODAY, THE DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY IS HEREBY DENIED FOR LACK OF SUBJECT MATTER JURISDICTION. (ymw) (Entered: 10/19/2020) |
| 10/21/2020 | 115 | BNC Certificate of Mailing - PDF Document. (Re: 114 Order on Motion For Sanctions/Costs) Notice Date 10/21/2020. (Admin.) (Entered: 10/22/2020) |

| 10/21/2020 | 116 | BNC Certificate of Mailing. (Re: 113 Opinion Issued) Notice Date 10/21/2020. (Admin.) (Entered: 10/22/2020) |
|---|---|---|
| 10/26/2020 | 117 | Motion filed by Debtor Brian W. Coughlin to Extend Time to Appeal Under Rule 8002(c) [Re: 113 Opinion Issued, 114 Order on Motion For Sanctions/Costs] with certificate of service. (Gottlieb, Richard) (Entered: 10/26/2020) |
| 10/27/2020 | 118 | Order dated 10/27/2020 Re: 117 Motion filed by Debtor Brian W. Coughlin to Extend Time to Appeal Under Rule 8002(c) [Re: 113 Opinion Issued, 114 Order on Motion For Sanctions/Costs] GRANTED. THE TIME TO FILE A NOTICE OF APPEAL IS HEREBY EXTENDED TO NOVEMBER 23, 2020. (skeating, usbc) (Entered: 10/27/2020) |
| 10/29/2020 | 119 | Motion filed by Creditor ACAR Leasing Ltd. d/b/a GM Financial Leasing for Relief from Stay Re: 2017 Chevrolet Malibu with certificate of service and proposed order Fee Amount $181, Objections due by 11/12/2020. (Attachments: # 1 Exhibits) (Mooney, Martin) (Entered: 10/29/2020) |
| 10/29/2020 | | Receipt of filing fee for Motion for Relief From Stay(19-14142) [motion,mrlfsty] ( 181.00). Receipt Number 19031897, amount $ 181.00 (re: Doc# 119) (U.S. Treasury) (Entered: 10/29/2020) |
| 10/29/2020 | 120 | BNC Certificate of Mailing - PDF Document. (Re: 118 Order on Motion to Extend Time to Appeal Under Rule 8002(c)) Notice Date 10/29/2020. (Admin.) (Entered: 10/30/2020) |
| 11/02/2020 | 121 | Notice of Appeal and Statement of Election to Bankruptcy Appellate Panel. Fee Amount $298 Filed by Debtor Brian W. Coughlin (RE: 114 Order on Motion For Sanctions/Costs). Appellant Designation due by 11/16/2020. Compiled Records Due by 11/30/2020. Transmission of Designation Due by 12/2/2020. (Gottlieb, Richard) (Entered: 11/02/2020) |
| 11/02/2020 | | Receipt of filing fee for Notice of Appeal and Statement of Election(19-14142) [appeal,ntcaplel] ( 298.00). Receipt Number 19036714, amount $ 298.00 (re: Doc# 121) (U.S. Treasury) (Entered: 11/02/2020) |
| 11/02/2020 | 122 | Request for Certification of Direct Appeal *Regarding Order of October 19. 2020 with Certificate of Service* Filed by Debtor Brian W. Coughlin. (Gottlieb, Richard) (Entered: 11/02/2020) |
| 11/02/2020 | 123 | Notice of Appeal to Bankruptcy Appellate Panel Re: 121 Notice of Appeal and Statement of Election filed by Debtor Brian W. Coughlin. (ymw) (Entered: 11/02/2020) |
| 11/02/2020 | 124 | Initial Transmittal to BAP Re: 121 Notice of Appeal and Statement of Election filed by Debtor Brian W. Coughlin. (ymw) (Entered: 11/02/2020) |
| 11/04/2020 | | Notice of Docketing Record on Appeal to BAP Case Number: 20-0038 Re: 121 Notice of Appeal and Statement of Election filed by Debtor Brian W. Coughlin. (sl) (Entered: 11/04/2020) |

| | | |
|---|---|---|
| 11/09/2020 | 125 | Motion filed by Debtor Brian W. Coughlin to Extend Time to File Documents [Re: 121 Notice of Appeal and Statement of Election] with certificate of service. (Gottlieb, Richard) (Entered: 11/09/2020) |
| 11/13/2020 | 126 | Order dated 11/13/2020 Re: 119 Motion filed by Creditor ACAR Leasing Ltd. d/b/a GM Financial Leasing for Relief from Stay Re: 2017 Chevrolet Malibu. NO OBJECTION FILED. MOVANT IS HEREBY GRANTED RELIEF FROM THE AUTOMATIC STAY TO EXERCISE ITS RIGHTS AS TO THE VEHICLE. (lb) (Entered: 11/13/2020) |
| 11/13/2020 | 127 | Endorsed Order dated 11/13/2020 Re: 125 Motion filed by Debtor Brian W. Coughlin to Extend Time to File Documents [Re: 121 Notice of Appeal and Statement of Election]. GRANTED: THE TIME IS HEREBY EXTENDED TO DECEMBER 7, 2020. (lb) (Entered: 11/13/2020) |
| 11/16/2020 | 128 | Joint Response *to Debtor's Motion for Certification* with certificate of service filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Lac du Flambeau Band of Lake Superior Chippewa Indians, Niiwin, LLC d/b/a Lendgreen Re: 122 Request for Certification of Direct Appeal *Regarding Order of October 19. 2020 with Certificate of Service* Filed by Debtor Brian W. Coughlin. (Walker, Adrienne) (Entered: 11/16/2020) |
| 11/18/2020 | 129 | Certification Regarding Direct Appeal dated 11/18/2020 (Re: 114 Order on 27 Motion filed by Debtor Brian W. Coughlin to Enforce the Automatic Stay). (clm, USBC) (Entered: 11/18/2020) |
| 11/20/2020 | 130 | Transmittal Re: 129 Certification Regarding Direct Appeal dated 11/18/2020 to BAP. (sl) (Entered: 11/20/2020) |
| 12/07/2020 | 131 | Appellant Designation of Contents For Inclusion in Record On Appeal *and Statement of Issues to be Presented on Appeal* Filed by Debtor Brian W. Coughlin (RE: 121 Notice of Appeal and Statement of Election, 122 Request for Certification of Direct Appeal, 123 Notice of Appeal to BAP, 124 Initial Transmittal, Notice of Docketing Record on Appeal). Appellee designation due by 12/21/2020. (Gottlieb, Richard) (Entered: 12/07/2020) |
| 12/07/2020 | 132 | Amended Appellant Designation of Contents For Inclusion in Record On Appeal Filed by Debtor Brian W. Coughlin (RE: 121 Notice of Appeal and Statement of Election, 122 Request for Certification of Direct Appeal, 123 Notice of Appeal to BAP, 124 Initial Transmittal, Notice of Docketing Record on Appeal, 131 Appellant Designation). Appellee designation due by 12/21/2020. (Gottlieb, Richard) (Entered: 12/07/2020) |
| 12/07/2020 | 133 | Motion filed by Debtor Brian W. Coughlin to Amend Designation of the Items to be Included in the Record on Appeal and a Statement of the Issues to be Presented Re: 132 Appellant Designation with certificate of service. (Gottlieb, Richard) (Entered: 12/07/2020) |
| 12/21/2020 | 134 | Appellee Designation of Contents for Inclusion in Record of Appeal Filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians (RE: 121 Notice of Appeal and Statement of Election, 122 Request for |

**J.A. 16**

| | | |
|---|---|---|
| | | Certification of Direct Appeal, 123 Notice of Appeal to BAP, 124 Initial Transmittal, Notice of Docketing Record on Appeal, 131 Appellant Designation). (Walker, Adrienne) (Entered: 12/21/2020) |
| 12/21/2020 | 135 | Appellee Designation of Contents for Inclusion in Record of Appeal Filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen (RE: 121 Notice of Appeal and Statement of Election). (Walker, Adrienne) (Entered: 12/21/2020) |
| 12/22/2020 | 136 | Endorsed Order dated 12/22/2020 Re: 133 Motion filed by Debtor Brian W. Coughlin to Amend Designation of the Items to be Included in the Record on Appeal and a Statement of the Issues to be Presented (Re: 132 Appellant Designation). GRANTED. LEAVE TO AMEND IS HEREBY GRANTED. (clm, USBC) (Entered: 12/22/2020) |
| 12/23/2020 | 137 | Transmittal of Record on Appeal to BAP (Re: 121 Notice of Appeal and Statement of Election filed by Debtor Brian W. Coughlin, 122 Request for Certification of Direct Appeal filed by Debtor Brian W. Coughlin, 123 Notice of Appeal to BAP, 124 Initial Transmittal, Notice of Docketing Record on Appeal, 132 Appellant Designation filed by Debtor Brian W. Coughlin). (clm, USBC) (Entered: 12/23/2020) |
| 12/23/2020 | 138 | Transmittal of Record on Appeal to BAP (Re: 123 Notice of Appeal to BAP, 134 Appellee Designation filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians). (clm, USBC) (Entered: 12/23/2020) |
| 12/23/2020 | 139 | Transmittal of Record on Appeal to BAP (Re: 123 Notice of Appeal to BAP, 124 Initial Transmittal, Notice of Docketing Record on Appeal, 135 Appellee Designation filed by Creditor L.D.F. Business Development Corporation, Creditor LDF Holdings, LLC, Creditor Niiwin, LLC d/b/a Lendgreen). (clm, USBC) (Entered: 12/23/2020) |
| 12/24/2020 | | Transcript Requested by Mintz Levin Firm. Transcriptionist awaiting payment upon completion of transcript. (Janice Russell Transcripts) (Entered: 12/24/2020) |
| 12/30/2020 | 140 | Order For Transfer of Appeal to U.S. District Court dated 12/29/2020 By Bankruptcy Appellate Panel BAP Appeal Number 20-038. (sl) (Entered: 12/30/2020) |
| 12/30/2020 | | Notice of Docketing Record on Appeal to District Court Case Number: 20-12302 Re: 121 Notice of Appeal and Statement of Election to Bankruptcy Appellate Panel Filed by Debtor Brian W. Coughlin Re: 114 Order on Motion For Sanctions/Costs. (sl) (Entered: 12/30/2020) |
| 01/01/2021 | 141 | BNC Certificate of Mailing - PDF Document. (Re: 140 Order from BAP re: Appeal) Notice Date 01/01/2021. (Admin.) (Entered: 01/02/2021) |
| 01/13/2021 | 142 | Notice of Change of Address of Debtor filed by Debtor Brian W. Coughlin (Gottlieb, Richard) (Entered: 01/13/2021) |
| 01/19/2021 | | Transcript Ordered and Acknowledged. Requested by Adrienne Walker, |

|  |  |  |
|---|---|---|
|  |  | Esq. and payment to be received. The expected completion date is 1/19/2021. (Janice Russell Transcripts) (Entered: 01/19/2021) |
| 01/19/2021 | [143](#) | An official transcript (RE: [75](#) Hearing Scheduled [73](#) Motion filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians Motion to Dismiss Contested Matter Re: [27](#) Motion to Enforce the Automatic Stay and [74](#) Motion filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen Motion to Dismiss Contested Matter Re: 27 Motion to Enforce the Automatic Stay. Objections due by 8/21/2020 at 04:30 PM. Reply Briefs due by 9/4/2020 at 04:30 PM. BECAUSE OF THE CONCERNS ABOUT COVID-19, ALL PARTICIPANTS, INCLUDING ATTORNEYS, THE DEBTOR(S), WITNESSES, AFFIANTS, AND OTHER ATTENDEES SHALL APPEAR BY TELEPHONE AND MAY NOT APPEAR IN PERSON. TO APPEAR TELEPHONICALLY, ATTENDEES SHALL, AT THE APPOINTED TIME OF HEARING, DIAL (877) 336-1839 AND ENTER ACCESS CODE 7925100. TO FACILITATE INFORMAL DISCUSSIONS SIMILAR TO THOSE THAT OCCUR JUST PRIOR TO IN-PERSON HEARINGS, THE COURT REQUESTS THAT THE PARTIES ATTEMPT TO CONFER BRIEFLY 48 HOURS PRIOR TO THE SCHEDULED HEARING. (lb)) heard on 09/22/2020 has been filed. Pursuant to Judicial Conference Policy, electronic access to transcripts is restricted for 90 days from the date of filing. The transcript is available for inspection at the Clerk's Office or a copy may be purchased from the transcriber. Contact the ECR Operator for transcriber information. Parties have until 02/9/2021 to file a Request for Redaction with the Court. If no request is filed, the transcript may be made available electronically on 04/20/2021. (Janice Russell Transcripts) (Entered: 01/19/2021) |
| 01/20/2021 | [144](#) | Notice of Filing of Official Transcript. Notice is hereby given that an official transcript has been filed. Pursuant to the Judicial Conference policy governing public access to transcripts of federal court proceedings, transcripts are not electronically available(online) until 90 days after filing but may be inspected by clerk's office or purchased from the court transcriber during the 90-day period. (ADI) (Entered: 01/20/2021) |
| 01/22/2021 | [145](#) | BNC Certificate of Mailing - Notice (Re: [144](#) Notice of Filing of Official Transcript) Notice Date 01/22/2021. (Admin.) (Entered: 01/23/2021) |
| 02/24/2021 | [146](#) | Judgment dated 2/23/2021 by the U.S. Court of Appeals Re: [122](#) Request for Certification of Direct Appeal Re: [121](#) Notice of Appeal and Statement of Election to Bankruptcy Appellate Panel. (sl) (Entered: 02/24/2021) |
| 02/24/2021 |  | Notice of Docketing Record on Appeal to U.S.C.A Case No. 21-1153 Re: [121](#) Notice of Appeal and Statement of Election to Bankruptcy Appellate Panel Filed by Debtor Brian W. Coughlin Re: 114 Order on Motion For Sanctions/Costs. (sl) (Entered: 02/24/2021) |
| 02/26/2021 | [147](#) | BNC Certificate of Mailing - PDF Document. (Re: [146](#) Judgment) Notice Date 02/26/2021. (Admin.) (Entered: 02/27/2021) |
|  |  |  |

| 03/26/2021 | | Fee Due Direct Appeal $ 207.00 Re: 122 Request for Certification of Direct Appeal filed by Debtor Brian W. Coughlin. (sl) (Entered: 03/26/2021) |
|---|---|---|
| 03/26/2021 | | Receipt of filing fee for Direct Appeal(19-14142) ( 207.00). Receipt Number 19195510, amount $ 207.00 (re: Doc# 122) (U.S. Treasury) (Entered: 03/26/2021) |
| 04/22/2021 | 148 | Application filed by Debtor Brian W. Coughlin to Employ Gregory G. Rapawy as Special Counsel filed with Affidavit along with certificate of service. (Attachments: # 1 Affidavit Affidavit of Disinterestedness of Gregory G. Rapawy # 2 Declaration of Electronic Filing Declaration Re: Electronic Filing of Gregory G. Rapawy) (Gottlieb, Richard) (Entered: 04/22/2021) |
| 05/07/2021 | 149 | Order dated 5/7/2021 Re: 148 Application filed by Debtor Brian W. Coughlin to Employ Gregory G. Rapawy as Special Counsel. NO OBJECTIONS FILED. LEAVE TO EMPLOY GREGORY G. RAPAWY AS SPECIAL COUNSEL UNDER THE TERMS STATED IS HEREBY GRANTED. (lb) (Entered: 05/07/2021) |
| 05/09/2021 | 150 | BNC Certificate of Mailing - PDF Document. (Re: 149 Order on Application to Employ) Notice Date 05/09/2021. (Admin.) (Entered: 05/10/2021) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/24/2021 08:02:31 | | | |
| **PACER Login:** | kellogg1993:4643213:4571577 | **Client Code:** | 21056 |
| **Description:** | Docket Report | **Search Criteria:** | 19-14142 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Format: html |
| **Billable Pages:** | 15 | **Cost:** | 1.50 |

| Fill in this information to identify your case: |
|---|

United States Bankruptcy Court for the:

DISTRICT OF MASSACHUSETTS

Case number *(if known)* _____

Chapter you are filing under:

☐ Chapter 7

☐ Chapter 11

☐ Chapter 12

■ Chapter 13

☐ Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

12/17

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be yes if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
|---|---|

| | | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|---|
| 1. | Your full name | | |
| | Write the name that is on your government-issued picture identification (for example, your driver's license or passport). Bring your picture identification to your meeting with the trustee. | **Brian**<br>First name<br><br>**W.**<br>Middle name<br><br>**Coughlin**<br>Last name and Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name and Suffix (Sr., Jr., II, III) |
| 2. | All other names you have used in the last 8 years<br>Include your married or maiden names. | | |
| 3. | Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN) | xxx-xx-7649 | |

J.A. 20

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 2 of 51

12/04/19 10:39AM

Debtor 1    **Brian W. Coughlin**

Case number *(if known)*

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **4.** **Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**<br><br>Include trade names and *doing business as* names | ☑ I have not used any business name or EINs.<br><br>Business name(s)<br><br>EINs | ☐ I have not used any business name or EINs.<br><br>Business name(s)<br><br>EINs |
| **5.** **Where you live** | **835 Saratoga Street**<br>**Apt. # 1**<br>**Boston, MA 02128**<br>Number, Street, City, State & ZIP Code<br><br>**Suffolk**<br>County<br><br>**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.<br><br>Number, P.O. Box, Street, City, State & ZIP Code | **If Debtor 2 lives at a different address:**<br><br><br>Number, Street, City, State & ZIP Code<br><br>County<br><br>**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.<br><br>Number, P.O. Box, Street, City, State & ZIP Code |
| **6.** **Why you are choosing** *this district* **to file for bankruptcy** | *Check one:*<br><br>☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason.<br>Explain. (See 28 U.S.C. § 1408.) | *Check one:*<br><br>☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason.<br>Explain. (See 28 U.S.C. § 1408.) |

Official Form 101    **Voluntary Petition for Individuals Filing for Bankruptcy**    page 2

**J.A. 21**

Case 19-14142   Doc 1   Filed 12/04/19   Entered 12/04/19 10:38:04   Desc Main
Document        Page 3 of 51

12/04/19 10:39AM

Debtor 1    **Brian W. Coughlin**                                          Case number *(if known)*

| Part 2: | Tell the Court About Your Bankruptcy Case |
| --- | --- |

**7.** **The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)).* Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7

☐ Chapter 11

☐ Chapter 12

■ Chapter 13

---

**8.** **How you will pay the fee**

■ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

---

**9.** **Have you filed for bankruptcy within the last 8 years?**

■ No.

☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
| --- | --- | --- | --- | --- | --- |
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

---

**10.** **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

■ No

☐ Yes.

| Debtor | _____ | | Relationship to you | _____ |
| --- | --- | --- | --- | --- |
| District | _____ | When _____ | Case number, if known | _____ |
| Debtor | _____ | | Relationship to you | _____ |
| District | _____ | When _____ | Case number, if known | _____ |

---

**11.** **Do you rent your residence?**

■ No.    Go to line 12.

☐ Yes.    Has your landlord obtained an eviction judgment against you?

☐ No. Go to line 12.

☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

---

**J.A. 22**

12/04/19 10:39AM

Debtor 1    **Brian W. Coughlin**                                            Case number *(if known)*

| Part 3: | Report About Any Businesses You Own as a Sole Proprietor |
|---|---|

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

■ No.    Go to Part 4.

☐ Yes.    Name and location of business

_____
Name of business, if any

_____

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐    Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐    Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐    Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐    Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐    None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor,* see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines.* If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. 1116(1)(B).

■ No.    I am not filing under Chapter 11.

☐ No.    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.    I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

| Part 4: | Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention |
|---|---|

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ No.

☐ Yes.    What is the hazard?    _____

If immediate attention is needed, why is it needed?    _____

Where is the property?    _____

_____
Number, Street, City, State & Zip Code

**J.A. 23**

Case 19-14142   Doc 1   Filed 12/04/19   Entered 12/04/19 10:38:04   Desc Main
Document    Page 5 of 51

12/04/19 10:39AM

Debtor 1   **Brian W. Coughlin**

Case number *(if known)* _____

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |
|---|---|

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**J.A. 24**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 6 of 51

12/04/19 10:39AM

| Debtor 1 | **Brian W. Coughlin** | Case number *(if known)* | |

| **Part 6:** | **Answer These Questions for Reporting Purposes** |

| 16. | What kind of debts do you have? | 16a. | **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose." |

☐ No. Go to line 16b.

■ Yes. Go to line 17.

16b.  **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☐ Yes. Go to line 17.

16c.  State the type of debts you owe that are not consumer debts or business debts

_____

| 17. | Are you filing under Chapter 7? | ■ No. | I am not filing under Chapter 7. Go to line 18. |

Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?    ☐ Yes.    I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

| 18. | How many Creditors do you estimate that you owe? | ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| | | ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| | | ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| | | ☐ 200-999 | | |

| 19. | How much do you estimate your assets to be worth? | ■ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| | | ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| | | ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| | | ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| 20. | How much do you estimate your liabilities to be? | ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| | | ■ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| | | ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| | | ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| **Part 7:** | **Sign Below** |

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Brian W. Coughlin**
_____    _____
**Brian W. Coughlin**                                                                Signature of Debtor 2
Signature of Debtor 1

Executed on    **December  4, 2019**              Executed on    _____
_____
MM / DD / YYYY                                                              MM / DD / YYYY

**J.A. 25**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 7 of 51

12/04/19 10:39AM

| Debtor 1 | **Brian W. Coughlin** | Case number *(if known)* | |

---

| **For your attorney, if you are represented by one** | I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible.  I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect. |
|---|---|
| **If you are not represented by an attorney, you do not need to file this page.** | |

**/s/ Richard N. Gottlieb, Esq. BBO #**      Date    **December  4, 2019**
Signature of Attorney for Debtor          MM / DD / YYYY

**Richard N. Gottlieb, Esq. BBO # 547970**
Printed name

**The Law Offices of Richard N. Gottlieb**
Firm name

**Ten Tremont Street, Suite 11**
**3rd Floor**
**Boston, MA 02108**
Number, Street, City, State & ZIP Code

Contact phone    **(617) 742-4491**        Email address    **rnglaw@verizon.net**

**BBO # 547970 MA**
Bar number & State

---

Official Form 101            **Voluntary Petition for Individuals Filing for Bankruptcy**            page 7

**J.A. 26**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Brian W. Coughlin** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106Sum
## Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.**

**Part 1:**   **Summarize Your Assets**

| | | **Your assets**<br>Value of what you own |
|---|---|---|
| 1. | **Schedule A/B: Property** (Official Form 106A/B)<br>1a. Copy line 55, Total real estate, from Schedule A/B................................................... | $       **0.00** |
| | 1b. Copy line 62, Total personal property, from Schedule A/B...................................... | $       **13,635.00** |
| | 1c. Copy line 63, Total of all property on Schedule A/B............................................... | $       **13,635.00** |

**Part 2:**   **Summarize Your Liabilities**

| | | **Your liabilities**<br>Amount you owe |
|---|---|---|
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)<br>2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* | $       **0.00** |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)<br>3a. Copy  the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F.*................................ | $       **5,017.27** |
| | 3b. Copy  the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F.*........................... | $       **78,670.98** |
| | **Your total liabilities** | $       **83,688.25** |

**Part 3:**   **Summarize Your Income and Expenses**

| | | |
|---|---|---|
| 4. | *Schedule I: Your Income* (Official Form 106I)<br>Copy your combined monthly income from line 12 of *Schedule I.*................................................. | $       **6,837.00** |
| 5. | *Schedule J: Your Expenses* (Official Form 106J)<br>Copy your monthly expenses from line 22c of *Schedule J.*......................................... | $       **4,495.00** |

**Part 4:**   **Answer These Questions for Administrative and Statistical Records**

6.  **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

☐  No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

■  Yes

7.  **What kind of debt do you have?**

■  **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

☐  **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

**J.A. 27**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 9 of 51

12/04/19 10:39AM

Debtor 1    __Brian W. Coughlin_____    Case number *(if known)* _____

8.    **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form
122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.

| | $ | 10,950.00 |
|---|---|---|

9.    **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | | Total claim |
|---|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ | 0.00 |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ | 5,017.27 |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ | 0.00 |
| 9d. Student loans. (Copy line 6f.) | $ | 16,042.65 |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ | 0.00 |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ | 0.00 |
| 9g. **Total.** Add lines 9a through 9f. | $ | 21,059.92 |

Official Form 106Sum    **Summary of Your Assets and Liabilities and Certain Statistical Information**    page 2 of 2

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

**J.A. 28**

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Brian W. Coughlin** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS |
| Case number | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ■ No. Go to Part 2.
   ☐ Yes.  Where is the property?

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

   ■ No
   ☐ Yes

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

   ■ No
   ☐ Yes

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here...............................................................=>**

| |
|---|
| **$0.00** |

**Part 3:    Describe Your Personal and  Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes.  Describe.....

| | |
|---|---|
| Furniture, fixtures, bedding, utensils, kitchenware, tableware, and other household items | **$3,500.00** |

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

**J.A. 29**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 11 of 51

| Debtor 1 | Brian W. Coughlin | Case number *(if known)* | |

**7. Electronics**

*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☐ No

■ Yes.  Describe.....

| Cellular telephone, personal computer and related parole hardware and software, iPad, Apple TV, DVD Player, Bose  player | $4,100.00 |

**8. Collectibles of value**

*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

■ No

☐ Yes.  Describe.....

**9. Equipment for sports and hobbies**

*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

■ No

☐ Yes.  Describe.....

**10. Firearms**

*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

■ No

☐ Yes.  Describe.....

**11. Clothes**

*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No

■ Yes.  Describe.....

| Debtor's wardrobe, shoes and accessories | $3,850.00 |

**12. Jewelry**

*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No

■ Yes.  Describe.....

| Movado Watch | $1,000.00 |

**13. Non-farm animals**

*Examples:* Dogs, cats, birds, horses

■ No

☐ Yes.  Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**

■ No

☐ Yes.  Give specific information.....

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here .................................................................................

| $12,450.00 |

---

| **Part 4:** | Describe Your Financial Assets |

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

**J.A. 30**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document      Page 12 of 51                                    12/04/19 10:39AM

Debtor 1    **Brian W. Coughlin**                                    Case number (if known)

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No

■ Yes.................................................................................................

|  |  |
|---|---|
| **Cash on Debtor's Person** | **$580.00** |

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No

■ Yes........................                    Institution name:

| | | | |
|---|---|---|---|
| 17.1. | Checking | **Bank Account with Bank of America; Account Ending 4492** | **$600.00** |
| 17.2. | Savings | **Bank Account with City of Boston Credit Union** | **$5.00** |

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

■ No

☐ Yes..................    Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

■ No

☐ Yes.  Give specific information about them...................
        Name of entity:                              % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No

☐ Yes. Give specific information about them
        Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No

☐ Yes. List each account separately.
        Type of account:        Institution name:

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No

☐ Yes. .....................                    Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No

☐ Yes.............    Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No

☐ Yes.............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25.  Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No

Official Form 106A/B                    Schedule A/B: Property                                    page 3

**J.A. 31**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 13 of 51

<span style="float:right">12/04/19 10:39AM</span>

Debtor 1    **Brian W. Coughlin**                    Case number *(if known)*

☐ Yes. Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
    ■ No
    ☐ Yes.  Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
    ■ No
    ☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**
    ■ No
    ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

    _____

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
    ■ No
    ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
    benefits; unpaid loans you made to someone else
    ■ No
    ☐ Yes.  Give specific information..

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    ■ No
    ☐ Yes. Name the insurance company of each policy and list its value.

              Company name:                  Beneficiary:                  Surrender or refund value:

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
    someone has died.
    ■ No
    ☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ■ No
    ☐ Yes.  Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ■ No
    ☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes.  Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
    for Part 4. Write that number here**....................................................................................................................

| $1,185.00 |
|---|

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                  Best Case Bankruptcy

**J.A. 32**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 14 of 51

12/04/19 10:39AM

Debtor 1    **Brian W. Coughlin**                                    Case number *(if known)* _____

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |
|---|---|

37.  **Do you own or have any legal or equitable interest in any business-related property?**
  ■ No. Go to Part 6.
  ☐ Yes.  Go to line 38.

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. |
|---|---|
|  | If you own or have an interest in farmland, list it in Part 1. |

46.  **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
  ■ No. Go to Part 7.
  ☐ Yes.  Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |
|---|---|

53.  **Do you have other property of any kind you did not already list?**
  *Examples:* Season tickets, country club membership
  ■ No
  ☐ Yes. Give specific information.........

54.   **Add the dollar value of all of your entries from Part 7. Write that number here**  ....................................    | **$0.00** |

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

55.  **Part 1: Total real estate, line 2**  ................................................................................................    $0.00

56.  **Part 2: Total vehicles, line 5**                                              $0.00
57.  **Part 3: Total personal and household items, line 36**              $12,450.00
58.  **Part 4: Total financial assets, line 15**                              $1,185.00
59.  **Part 5: Total business-related property, line 45**                      $0.00
60.  **Part 6: Total farm- and fishing-related property, line 52**            $0.00
61.  **Part 7: Total other property not listed, line 54**          +          $0.00

62.  **Total personal property.** Add lines 56 through 61...        $13,635.00    Copy personal property total    $13,635.00

63.  **Total of all property on Schedule A/B.** Add line 55 + line 62        | **$13,635.00** |

**J.A. 33**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document        Page 15 of 51

12/04/19 10:39AM

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Brian W. Coughlin** |
| | First Name        Middle Name        Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS |
| Case number | |
| (if known) | |

☐ Check if this is an
amended filing

## Official Form 106C
## Schedule C: The Property You Claim as Exempt                              4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

| Part 1: | Identify the Property You Claim as Exempt |
|---|---|

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Furniture, fixtures, bedding, utensils, kitchenware, tableware, and other household items**<br>Line from *Schedule A/B*: **6.1** | $3,500.00 | ■ $3,500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Mass. Gen. Laws c.235, § 34(2)** |
| **Cellular telephone, personal computer and related parole hardware and software, iPad, Apple TV, DVD Player, Bose player**<br>Line from *Schedule A/B*: **7.1** | $4,100.00 | ■ $4,100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Mass. Gen. Laws c.235, § 34(2)** |
| **Debtor's wardrobe, shoes and accessories**<br>Line from *Schedule A/B*: **11.1** | $3,850.00 | ■ $3,850.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Mass. Gen. Laws c.235, § 34(1)** |
| **Movado Watch**<br>Line from *Schedule A/B*: **12.1** | $1,000.00 | ■ $1,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Mass. Gen. Laws c. 235, § 34(18)** |
| **Cash on Debtor's Person**<br>Line from *Schedule A/B*: **16.1** | $580.00 | ■ $580.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Mass. Gen. Laws c. 235, § 34(15)** |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                      Best Case Bankruptcy

**J.A. 34**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 16 of 51

12/04/19 10:39AM

Debtor 1    **Brian W. Coughlin**

Case number (if known)

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Checking: Bank Account with Bank of America; Account Ending 4492**<br>Line from *Schedule A/B*: **17.1** | $600.00 | ■ $600.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Mass. Gen. Laws c. 246, § 28A** |
| **Savings: Bank Account with City of Boston Credit Union**<br>Line from *Schedule A/B*: **17.2** | $5.00 | ■ $5.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Mass. Gen. Laws c. 246, § 28A** |

3.  **Are you claiming a homestead exemption of more than $170,350?**
    (Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

    ■  No

    ☐  Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

        ☐  No

        ☐  Yes

**J.A. 35**

12/04/19 10:39AM

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Brian W. Coughlin** |
| | First Name          Middle Name          Last Name |
| Debtor 2 (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

■ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**J.A. 36**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Brian W. Coughlin** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                          12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

**Part 1:    List All of Your PRIORITY Unsecured Claims**

1.  **Do any creditors have priority unsecured claims against you?**

☐ No. Go to Part 2.

■ Yes.

2.  **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

(For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|---|
| **2.1** | **Internal Revenue Service** | Last 4 digits of account number    **7649** | **$5,017.27** | **$5,017.27** | **$0.00** |
| | Priority Creditor's Name | | | | |
| | **P.O. Box 7346** | When was the debt incurred?    **2015** | | | |
| | **Philadelphia, PA 19101-7346** | | | | |
| | Number Street City State Zip Code | As of the date you file, the claim is: Check all that apply | | | |

**Who incurred the debt?** Check one.

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

■ No

☐ Yes

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations

■ Taxes and certain other debts you owe the government

☐ Claims for death or personal injury while you were intoxicated

☐ Other. Specify
**Tax Liability for 2015 Tax Year**

**Part 2:    List All of Your NONPRIORITY Unsecured Claims**

3.  **Do any creditors have nonpriority unsecured claims against you?**

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

■ Yes.

4.  **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

Total claim

---

## J.A. 37

Case 19-14142   Doc 1   Filed 12/04/19   Entered 12/04/19 10:38:04   Desc Main
Document   Page 19 of 51

12/04/19 10:39AM

Debtor 1   **Brian W. Coughlin**

Case number (if known) _____

| | | | |
|---|---|---|---|
| **4.1** | **500 Fast Cash** | Last 4 digits of account number   **6941** | **$650.00** |

Nonpriority Creditor's Name
**515 "G" Street SE**
**Miami, OK 74354**
Number Street City State Zip Code

When was the debt incurred?   **2019**

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify   **Pay Day Loan**

**Is the claim subject to offset?**

☑ No
☐ Yes

---

| | | | |
|---|---|---|---|
| **4.2** | **American Web Loans** | Last 4 digits of account number   **8609** | **$1,940.12** |

Nonpriority Creditor's Name
**3910 W. 6th Avenue**
**Box 27**
**Stillwater, OK 74074**
Number Street City State Zip Code

When was the debt incurred?   **2019**

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify   **Pay Day Loan**

**Is the claim subject to offset?**

☑ No
☐ Yes

---

| | | | |
|---|---|---|---|
| **4.3** | **Bank of America** | Last 4 digits of account number   **6720** | **$1,998.00** |

Nonpriority Creditor's Name
**4909 Savarese Circle**
**Fl1-908-01-50**
**Tampa, FL 33634**
Number Street City State Zip Code

When was the debt incurred?   **Opened 09/15  Last Active 10/20/18**

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify   **Credit Card**

**Is the claim subject to offset?**

☑ No
☐ Yes

---

**J.A. 38**

Case 19-14142   Doc 1   Filed 12/04/19   Entered 12/04/19 10:38:04   Desc Main
Document   Page 20 of 51

12/04/19 10:39AM

Debtor 1   **Brian W. Coughlin**

Case number (*if known*) _____

| 4.4 | **Bank of America** | Last 4 digits of account number | **6444** | $1,268.00 |

Nonpriority Creditor's Name

**4909 Savarese Circle**
**FI1-908-01-50**
**Tampa, FL 33634**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**When was the debt incurred?**   **Opened 03/18 Last Active 10/09/18**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  **Credit Card**

---

| 4.5 | **Big Picture Loans** | Last 4 digits of account number | **8014** | $3,187.22 |

Nonpriority Creditor's Name

**P.O. Box 704**
**Watersmeet, MI 49969**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**When was the debt incurred?**   **2019**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  **Pay Day Loan**

---

| 4.6 | **Capital One** | Last 4 digits of account number | **4611** | $3,648.00 |

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 30285**
**Salt Lake City, UT 84130**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**When was the debt incurred?**   **Opened 11/13 Last Active 10/05/18**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  **Credit Card**

---

**J.A. 39**

Case 19-14142   Doc 1   Filed 12/04/19   Entered 12/04/19 10:38:04   Desc Main
Document        Page 21 of 51

12/04/19 10:39AM

Debtor 1   Brian W. Coughlin

Case number (*if known*) _____

| 4.7 | **Capital One** | | Last 4 digits of account number | **5408** | | $3,633.00 |
|---|---|---|---|---|---|---|

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 30285**
**Salt Lake City, UT 84130**

When was the debt incurred?     **Opened 08/15 Last Active 10/05/18**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ No
- ☐ Yes

- ■ Other. Specify  **Credit Card**

| 4.8 | **Capital One** | | Last 4 digits of account number | **9521** | | $3,593.00 |
|---|---|---|---|---|---|---|

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 30285**
**Salt Lake City, UT 84130**

When was the debt incurred?     **Opened 08/15 Last Active 10/05/18**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ No
- ☐ Yes

- ■ Other. Specify  **Credit Card**

| 4.9 | **City Of Boston Cu** | | Last 4 digits of account number | **4704** | | $28,374.00 |
|---|---|---|---|---|---|---|

Nonpriority Creditor's Name

**1 Union St Fl 3**
**Boston, MA 02108**

When was the debt incurred?     **Opened 10/18 Last Active 7/25/19**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ No
- ☐ Yes

- ■ Other. Specify  **Unsecured**

**J.A. 40**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 22 of 51

12/04/19 10:39AM

Debtor 1    Brian W. Coughlin

Case number (if known) _____

---

| 4.10 | **Clarity Finance** | Last 4 digits of account number | **4403** | | $1,697.57 |

Nonpriority Creditor's Name

**P.O. Box 8**
**Princeton, ME 04668**

When was the debt incurred?    **2019**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

■ No
☐ Yes

■ Other. Specify    **Pay day Loan**

---

| 4.11 | **Credit One Bank** | Last 4 digits of account number | **6906** | | $1,352.43 |

Nonpriority Creditor's Name

**P.O. Box 98873**
**Las Vegas, NV 89193-8873**

When was the debt incurred?    **2019**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

■ No
☐ Yes

☐ Other. Specify    **Credit Card**

---

| 4.12 | **First PREMIER Bank** | Last 4 digits of account number | **7446** | | $1,106.00 |

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 5524**
**Sioux Falls, SD 57117**

When was the debt incurred?    **Opened 12/15  Last Active 4/05/19**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

■ No
☐ Yes

■ Other. Specify    **Credit Card**

---

Case 19-14142   Doc 1   Filed 12/04/19   Entered 12/04/19 10:38:04   Desc Main
Document    Page 23 of 51

12/04/19 10:39AM

Debtor 1   **Brian W. Coughlin**

Case number (if known) _____

| 4.1 3 | **First PREMIER Bank** | Last 4 digits of account number | **9207** | **$623.00** |

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 5524**
**Sioux Falls, SD 57117**

When was the debt incurred?   **Opened 11/13  Last Active 4/05/19**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans

- ☐ **Check if this claim is for a community debt**

- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

**Is the claim subject to offset?**

- ☐ Debts to pension or profit-sharing plans, and other similar debts

- ■ No
- ☐ Yes

- ■ Other. Specify  **Credit Card**

---

| 4.1 4 | **Golden Valley Lending** | Last 4 digits of account number | **7736** | **$1,129.50** |

Nonpriority Creditor's Name

**635 East Highway 20 E**
**Upper Lake, CA 95485**

When was the debt incurred?   **2019**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans

- ☐ **Check if this claim is for a community debt**

- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

**Is the claim subject to offset?**

- ☐ Debts to pension or profit-sharing plans, and other similar debts

- ■ No
- ☐ Yes

- ■ Other. Specify  **Pay Day Loan**

---

| 4.1 5 | **Greenarrow Loans** | Last 4 digits of account number | **3495** | **$361.96** |

Nonpriority Creditor's Name

**P.O. Box 170**
**Finley, CA 95435**

When was the debt incurred?   **2019**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans

- ☐ **Check if this claim is for a community debt**

- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

**Is the claim subject to offset?**

- ☐ Debts to pension or profit-sharing plans, and other similar debts

- ■ No
- ☐ Yes

- ■ Other. Specify  **Pay Day Loan**

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

**J.A. 42**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 24 of 51

12/04/19 10:39AM

Debtor 1    Brian W. Coughlin

Case number (if known) _____

---

**4.16**

| | | |
|---|---|---|
| **Inbox Credit** | Last 4 digits of account number **HCAI** | **$2,559.94** |

Nonpriority Creditor's Name

**P.O. Box 881
Santa Rosa, CA 95402**

When was the debt incurred? **2019**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

**Is the claim subject to offset?**

☐ Debts to pension or profit-sharing plans, and other similar debts

■ No
☐ Yes

■ Other. Specify    **Payday Loan**

---

**4.17**

| | | |
|---|---|---|
| **Lend Green** | Last 4 digits of account number **3572** | **$1,594.91** |

Nonpriority Creditor's Name

**P.O. Box 221
Lac Du Flambeau, WI 54538**

When was the debt incurred? **2019**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

**Is the claim subject to offset?**

☐ Debts to pension or profit-sharing plans, and other similar debts

■ No
☐ Yes

☐ Other. Specify    **Pay Day Loan**

---

**4.18**

| | | |
|---|---|---|
| **LVNV Funding/Resurgent Capital** | Last 4 digits of account number **5624** | **$2,270.00** |

Nonpriority Creditor's Name

**Attn: Bankruptcy
Po Box 10497
Greenville, SC 29603**

When was the debt incurred? **Opened 06/19**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

**Is the claim subject to offset?**

☐ Debts to pension or profit-sharing plans, and other similar debts

■ No
☐ Yes

■ Other. Specify    **Factoring Company Account Collection**

---

**J.A. 43**

Case 19-14142   Doc 1   Filed 12/04/19   Entered 12/04/19 10:38:04   Desc Main
Document   Page 25 of 51

12/04/19 10:39AM

| Debtor 1 | Brian W. Coughlin | Case number (if known) |
|---|---|---|

| 4.1 9 | **Navient** | Last 4 digits of account number | **1126** | | $16,042.65 |
|---|---|---|---|---|---|

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 9640**
**Wilkes-Barre, PA 18773**

When was the debt incurred?   **Opened 11/04  Last Active 1/28/19**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

■ Student loans

Is the claim subject to offset?

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No
☐ Yes

☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify _____

**Educational**

| 4.2 0 | **Vlizhwaaswi, LLC d/b/a Loan at Last** | Last 4 digits of account number | **0923** | | $1,641.68 |
|---|---|---|---|---|---|

Nonpriority Creditor's Name

**P.O. Box 1193**
**Lac Du Flambeau, WI 54538**

When was the debt incurred?   **2019**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans

Is the claim subject to offset?

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No
☐ Yes

☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify   **Pay Day Loans**

---

**Part 3:   List Others to Be Notified About a Debt That You Already Listed**

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Name and Address
**CreditControl**
**5757 Phantom Drive**
**Suite 330**
**Hazelwood, MO 63042**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.18** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number   **3834**

Name and Address
**Midland Credit Management, Inc.**
**P.O. Box 51319**
**Los Angeles, CA 90051-5619**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.11** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number   **8169**

Name and Address
**TrueAccord Collections**
**303 2nd Street**
**Suite 750 South**
**San Francisco, CA 94107**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.20** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**J.A. 44**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 26 of 51

12/04/19 10:39AM

Debtor 1  **Brian W. Coughlin** _____    Case number (if known) _____

| Part 4: | Add the Amounts for Each Type of Unsecured Claim |
|---|---|

6.  Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

| | | | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $ 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ 5,017.27 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ 5,017.27 |

| | | | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ 16,042.65 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ 0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ 62,628.33 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ 78,670.98 |

**J.A. 45**

12/04/19 10:39AM

| Fill in this information to identify your case: |
|---|

| Debtor 1 | **Brian W. Coughlin** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an
amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).**

1. **Do you have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|
| 2.1  **AmeriCredit/GM Financial**<br>**Attn: Bankruptcy**<br>**Po Box 183853**<br>**Arlington, TX 76096** | **Acct# 172365149**<br>**Opened 06/17**<br>**Lease** |

**J.A. 46**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Brian W. Coughlin** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

Official Form 106H

# Schedule H: Your Codebtors

12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

■ No
☐ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

■ No. Go to line 3.
☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

**3. In Column 1, list all of your codebtors.** Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.

| *Column 1:* **Your codebtor** Name, Number, Street, City, State and ZIP Code | *Column 2:* **The creditor to whom you owe the debt** Check all schedules that apply: |
|---|---|
| **3.1** _____ <br> Name <br> _____ <br> Number    Street <br> City          State          ZIP Code | ☐ Schedule D, line _____ <br> ☐ Schedule E/F, line _____ <br> ☐ Schedule G, line _____ |
| **3.2** _____ <br> Name <br> _____ <br> Number    Street <br> City          State          ZIP Code | ☐ Schedule D, line _____ <br> ☐ Schedule E/F, line _____ <br> ☐ Schedule G, line _____ |

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Brian W. Coughlin** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS |
| Case number (If known) | |

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD / YYYY

## Official Form 106I
## Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Describe Employment |
|---|---|

1. **Fill in your employment information.**

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| | Employment status | ☑ Employed <br> ☐ Not employed | ☐ Employed <br> ☐ Not employed |
| | Occupation | Superintendent of Public Works | |
| | Employer's name | City of Boston | |
| | Employer's address | Boston City Hall Plaza <br> Boston, MA 02108 | |
| | How long employed there? | 5 years | |

| Part 2: | Give Details About Monthly Income |
|---|---|

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $    9,500.00 | $    N/A |
| 3. | Estimate and list monthly overtime pay. | 3. | +$    1,450.00 | +$    N/A |
| 4. | Calculate gross Income. Add line 2 + line 3. | 4. | $    10,950.00 | $    N/A |

**J.A. 48**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 30 of 51

12/04/19 10:39AM

Debtor 1    **Brian W. Coughlin**                                      Case number (*if known*)

|  |  | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | **Copy line 4 here** | 4. | $ 10,950.00 | $ N/A |
| 5. | **List all payroll deductions:** | | | |
| | 5a. **Tax, Medicare, and Social Security deductions** | 5a. | $ 2,133.00 | $ N/A |
| | 5b. **Mandatory contributions for retirement plans** | 5b. | $ 890.00 | $ N/A |
| | 5c. **Voluntary contributions for retirement plans** | 5c. | $ 600.00 | $ N/A |
| | 5d. **Required repayments of retirement fund loans** | 5d. | $ 0.00 | $ N/A |
| | 5e. **Insurance** | 5e. | $ 360.00 | $ N/A |
| | 5f. **Domestic support obligations** | 5f. | $ 0.00 | $ N/A |
| | 5g. **Union dues** | 5g. | $ 130.00 | $ N/A |
| | 5h. **Other deductions.** Specify: | 5h.+ | $ 0.00 + | $ N/A |
| 6. | **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ 4,113.00 | $ N/A |
| 7. | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ 6,837.00 | $ N/A |
| 8. | **List all other income regularly received:** | | | |
| | 8a. **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ N/A |
| | 8b. **Interest and dividends** | 8b. | $ 0.00 | $ N/A |
| | 8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ N/A |
| | 8d. **Unemployment compensation** | 8d. | $ 0.00 | $ N/A |
| | 8e. **Social Security** | 8e. | $ 0.00 | $ N/A |
| | 8f. **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ N/A |
| | 8g. **Pension or retirement income** | 8g. | $ 0.00 | $ N/A |
| | 8h. **Other monthly income.** Specify: | 8h.+ | $ 0.00 + | $ N/A |
| 9. | **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ 0.00 | $ N/A |
| 10. | **Calculate monthly income.** Add line 7 + line 9. Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ 6,837.00 + | $ N/A = $ 6,837.00 |
| 11. | **State all other regular contributions to the expenses that you list in *Schedule J.*** Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives. Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.* Specify: | 11. | +$ 0.00 | |
| 12. | **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income. Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies | 12. | $ 6,837.00 | |

Combined
monthly income

13. **Do you expect an increase or decrease within the year after you file this form?**
☐ No.
☑ Yes. Explain:    The Debtor expects to receive a raise in salary in July of 2020

**J.A. 49**

12/04/19 10:39AM

---

Fill in this information to identify your case:

Debtor 1 **Brian W. Coughlin**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: DISTRICT OF MASSACHUSETTS

Case number
(If known)

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

MM / DD / YYYY

---

## Official Form 106J

## Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Your Household

1. **Is this a joint case?**

   ■ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**

   ☐ No
   ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**   ■ No

   Do not list Debtor 1 and Debtor 2.

   Do not state the dependents names.

   ☐ Yes. Fill out this information for each dependent..............

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**   ■ No
   ☐ Yes

### Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | Your expenses |
|---|---|---|

4. **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.    4. $ 1,300.00

   **If not included in line 4:**

   4a.   Real estate taxes    4a. $ 0.00
   4b.   Property, homeowner's, or renter's insurance    4b. $ 0.00
   4c.   Home maintenance, repair, and upkeep expenses    4c. $ 0.00
   4d.   Homeowner's association or condominium dues    4d. $ 0.00
5. **Additional mortgage payments for your residence,** such as home equity loans    5. $ 0.00

---

## J.A. 50

| Debtor 1 | **Brian W. Coughlin** | Case number (if known) | |

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a. Electricity, heat, natural gas | 6a. | $ | 150.00 |
| | 6b. Water, sewer, garbage collection | 6b. | $ | 0.00 |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 350.00 |
| | 6d. Other. Specify: | 6d. | $ | 0.00 |
| 7. | **Food and housekeeping supplies** | 7. | $ | 1,100.00 |
| 8. | **Childcare and children's education costs** | 8. | $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | 225.00 |
| 10. | **Personal care products and services** | 10. | $ | 125.00 |
| 11. | **Medical and dental expenses** | 11. | $ | 400.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $ | 175.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | 50.00 |
| 14. | **Charitable contributions and religious donations** | 14. | $ | 0.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. Life insurance | 15a. | $ | 0.00 |
| | 15b. Health insurance | 15b. | $ | 0.00 |
| | 15c. Vehicle insurance | 15c. | $ | 100.00 |
| | 15d. Other insurance. Specify: | 15d. | $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. | $ | 0.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a. Car payments for Vehicle 1 | 17a. | $ | 520.00 |
| | 17b. Car payments for Vehicle 2 | 17b. | $ | 0.00 |
| | 17c. Other. Specify: | 17c. | $ | 0.00 |
| | 17d. Other. Specify: | 17d. | $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. | $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. | $ | 0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | | |
| | 20a. Mortgages on other property | 20a. | $ | 0.00 |
| | 20b. Real estate taxes | 20b. | $ | 0.00 |
| | 20c. Property, homeowner's, or renter's insurance | 20c. | $ | 0.00 |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. | $ | 0.00 |
| | 20e. Homeowner's association or condominium dues | 20e. | $ | 0.00 |
| 21. | **Other:** Specify: | 21. | +$ | 0.00 |

| | | | | |
|---|---|---|---|---|
| 22. | **Calculate your monthly expenses** | | | |
| | 22a. Add lines 4 through 21. | | $ | 4,495.00 |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | | $ | 4,495.00 |

| | | | | |
|---|---|---|---|---|
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. | $ | 6,837.00 |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. | -$ | 4,495.00 |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. | $ | 2,342.00 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.

☐ Yes. | Explain here: |

**J.A. 51**

---

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Brian W. Coughlin** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS |
| Case number (if known) | |

☐ Check if this is an amended filing

---

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

**If two married people are filing together, both are equally responsible for supplying correct information.**

**You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes. Name of person _____    Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

| X  **/s/ Brian W. Coughlin** | X |
|---|---|
| **Brian W. Coughlin** | |
| Signature of Debtor 1 | Signature of Debtor 2 |
| | |
| Date  **December  4, 2019** | Date |

---

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Brian W. Coughlin** |
| | First Name      Middle Name      Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy     4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Give Details About Your Marital Status and Where You Lived Before

**1. What is your current marital status?**

☐ Married
■ Not married

**2. During the last 3 years, have you lived anywhere other than where you live now?**

☐ No
■ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| **42 Jeffries Street Boston, MA 02128** | From-To: **February 2015 to February 2017** | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 From-To: |

**3. Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

■ No
☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

### Part 2   Explain the Sources of Your Income

**4. Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | ■ Wages, commissions, bonuses, tips | **$156,599.00** | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

**J.A. 53**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document        Page 35 of 51

12/04/19 10:39AM

Debtor 1    Brian W. Coughlin

Case number *(if known)*

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) |
| For last calendar year:<br>(January 1 to December 31, 2018 ) | ■ Wages, commissions, bonuses, tips | $153,920.00 | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |
| For the calendar year before that:<br>(January 1 to December 31, 2017 ) | ■ Wages, commissions, bonuses, tips | $118,247.00 | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

5.    **Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Describe below. | Gross income from each source<br>(before deductions and exclusions) | Sources of income<br>Describe below. | Gross income<br>(before deductions and exclusions) |
| For last calendar year:<br>(January 1 to December 31, 2018 ) | **Gambling Winnings** | **$6,204.00** | | |

| Part 3: | List Certain Payments You Made Before You Filed for Bankruptcy |
|---|---|

6.    **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

☐ No.    **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,825* or more?

☐ No.    Go to line 7.
☐ Yes    List below each creditor to whom you paid a total of $6,825* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
        * Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.

■ Yes.    **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ No.    Go to line 7.
■ Yes    List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|
| | | | | |

**J.A. 54**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 36 of 51

12/04/19 10:39AM

Debtor 1    Brian W. Coughlin

Case number *(if known)*

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|
| Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | 9/20/2019 =><br>$325.00<br>10/21/2019 =><br>$325.00 | $650.00 | $5,017.27 | ☐ Mortgage<br>☐ Car<br>☐ Credit Card<br>☐ Loan Repayment<br>☐ Suppliers or vendors<br>■ Other **Tax Liability** |
| Navient<br>Attn: Bankruptcy<br>Po Box 9640<br>Wilkes-Barre, PA 18773 | 9/20/2019 =><br>$246.00<br>10/18/2019 =><br>$220.00<br>11/15/2019 =><br>$220.00 | $686.00 | $16,042.65 | ☐ Mortgage<br>☐ Car<br>☐ Credit Card<br>☐ Loan Repayment<br>☐ Suppliers or vendors<br>■ Other **Student Loan** |

7. Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

■ No
☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

8. Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?
Include payments on debts guaranteed or cosigned by an insider.

■ No
☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment<br>Include creditor's name |
|---|---|---|---|---|

**Part 4:** Identify Legal Actions, Repossessions, and Foreclosures

9. Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

■ No
☐ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|

10. Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?
Check all that apply and fill in the details below.

■ No. Go to line 11.
☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property<br><br>Explain what happened | Date | Value of the property |
|---|---|---|---|

**J.A. 55**

Case 19-14142   Doc 1   Filed 12/04/19   Entered 12/04/19 10:38:04   Desc Main
Document      Page 37 of 51

12/04/19 10:39AM

| Debtor 1 | Brian W. Coughlin | | Case number *(if known)* | |

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**
☑ No
☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**
☑ No
☐ Yes

| Part 5: | List Certain Gifts and Contributions |
|---|---|

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**
☑ No
☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**
☑ No
☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that  total more than $600<br>Charity's Name<br>**Address** (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|

| Part 6: | List Certain Losses |
|---|---|

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**
☑ No
☐ Yes.  Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|

| Part 7: | List Certain Payments or Transfers |
|---|---|

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
☑ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| The Law Offices of Richard N. Gottlieb<br>Ten Tremont Street, Suite 11<br>3rd Floor<br>Boston, MA 02108<br>rnglaw@verizon.net | Attorney Fees | September 20, 2019 | $3,500.00 |

Official Form 107                     Statement of Financial Affairs for Individuals Filing for Bankruptcy                     page **4**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                                        Best Case Bankruptcy

## J.A. 56

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 38 of 51                                    12/04/19 10:39AM

Debtor 1    Brian W. Coughlin                        Case number *(if known)* _____

**17.** **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

**18.** **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

■ No
☐ Yes. Fill in the details.

| Person Who Received Transfer Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

**19.** **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices*.)

■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

| **Part 8:** | List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units |
|---|---|

**20.** **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

☐ No
■ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| **Bank of America**<br>**100 Federal Street**<br>**Boston, MA 02110** | XXXX-0989 | ■ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | **April 16, 2019** | **Unknown** |
| **Bank of America**<br>**100 Federal Street**<br>**Boston, MA 02110** | XXXX-9838 | ■ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | **June 25, 2019** | **Unknown** |
| **Bank of America**<br>**100 Federal Street**<br>**Boston, MA 02110** | XXXX-1236 | ■ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | **August 2, 2019** | **Unknown** |

**J.A. 57**

Case 19-14142    Doc 1    Filed 12/04/19    Entered 12/04/19 10:38:04    Desc Main
Document    Page 39 of 51

12/04/19 10:39AM

Debtor 1    Brian W. Coughlin

Case number *(if known)* _____

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| Bank of America 100 Federal Street Boston, MA 02110 | XXXX-9225 | ■ Checking ☐ Savings ☐ Money Market ☐ Brokerage ☐ Other___ | September 30, 2019 | Unknown |

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

■ No
☐ Yes. Fill in the details.

| Name of Financial Institution Address (Number, Street, City, State and ZIP Code) | Who else had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

■ No
☐ Yes. Fill in the details.

| Name of Storage Facility Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

**Part 9:    Identify Property You Hold or Control for Someone Else**

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

■ No
☐ Yes.  Fill in the details.

| Owner's Name Address (Number, Street, City, State and ZIP Code) | Where is the property? (Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

**Part 10:    Give Details About Environmental Information**

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

■ No
☐ Yes. Fill in the details.

| Name of site Address (Number, Street, City, State and ZIP Code) | Governmental unit Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

Case 19-14142   Doc 1   Filed 12/04/19   Entered 12/04/19 10:38:04   Desc Main
Document       Page 40 of 51

12/04/19 10:39AM

Debtor 1   Brian W. Coughlin _____    Case number *(if known)* _____

**25. Have you notified any governmental unit of any release of hazardous material?**

■ No
☐ Yes. Fill in the details.

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you<br>know it | Date of notice |
|---|---|---|---|
| | | | |

**26. Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ No
☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>**Address** (Number, Street, City,<br>State and ZIP Code) | Nature of the case | Status of the<br>case |
|---|---|---|---|
| | | | |

**Part 11:   Give Details About Your Business or Connections to Any Business**

**27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

☐ A partner in a partnership

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

■ No. None of the above applies.  Go to Part 12.

☐ Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| | | |

**28. Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

■ No
☐ Yes. Fill in the details below.

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
| | |

**Part 12:   Sign Below**

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

/s/ Brian W. Coughlin _____
**Brian W. Coughlin**
**Signature of Debtor 1**

_____
Signature of Debtor 2

Date   December  4, 2019 _____

Date _____

**Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?**

■ No
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

■ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                         Best Case Bankruptcy

**J.A. 59**

12/04/19 10:39AM

Debtor 1    **Brian W. Coughlin**                                    Case number *(if known)*

**J.A. 60**

## Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)

**This notice is for you if:**

  **You are an individual filing for bankruptcy,** and

  **Your debts are primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

  Chapter 7 - Liquidation

  Chapter 11 - Reorganization

  Chapter 12 - Voluntary repayment plan for family farmers or fishermen

  Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | Liquidation |
| --- | --- |
| $245 | filing fee |
| $75 | administrative fee |
| + $15 | trustee surcharge |
| $335 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their nonexempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

  most taxes;

  most student loans;

  domestic support and property settlement obligations;

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

---

**Chapter 11: Reorganization**

|   |        |                    |
|---|--------|--------------------|
|   | $1,167 | filing fee         |
| + | $550   | administrative fee |
|   | $1,717 | total fee          |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

**Read These Important Warnings**

Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.

Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.

You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.

Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

---

**Chapter 12: Repayment plan for family farmers or fishermen**

|   | $200 | filing fee |
|---|------|------------|
| + | $75  | administrative fee |
|   | $275 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

**Chapter 13: Repayment plan for individuals with regular income**

|   | $235 | filing fee |
|---|------|------------|
| + | $75  | administrative fee |
|   | $310 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

  domestic support obligations,

  most student loans,

  certain taxes,

  debts for fraud or theft,

  debts for fraud or defalcation while acting in a fiduciary capacity,

  most criminal fines and restitution obligations,

  certain debts that are not listed in your bankruptcy papers,

  certain debts for acts that caused death or personal injury, and

  certain long-term secured debts.

---

**Warning: File Your Forms on Time**

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/bkforms/bankruptcy_forms.html#procedure.

---

**Bankruptcy crimes have serious consequences**

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

**Make sure the court has your mailing address**

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case.* If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

**Understand which services you could receive from credit counseling agencies**

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days *before* you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://justice.gov/ust/eo/hapcpa/ccde/cc_approved.html .

In Alabama and North Carolina, go to: http://www.uscourts.gov/FederalCourts/Bankruptcy/BankruptcyResources/ApprovedCredit AndDebtCounselors.aspx.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

---

*OLF 8 (Official Local Form 8)*

# United States Bankruptcy Court
### District of Massachusetts

In re   **Brian W. Coughlin**                                              Case No. _____
                                                    Debtor(s)          Chapter     **13**     _____

## ACKNOWLEDGMENT BY DEBTOR(S) AND ATTORNEY FOR DEBTOR(S) OF RESPONSIBILITIES IN CHAPTER 13 CASES

It is important for both the chapter 13 debtor(s) and the attorney for the chapter 13 debtor(s) to understand their responsibilities. To foster such understanding, the following provisions set forth responsibilities for a successful completion of a chapter 13 case. <ins>This Acknowledgment of these responsibilities is not the written agreement required by MLBR Appendix 1, Rule 13-7(c).</ins> Please be sure that the debtor(s) and attorney have also executed such an agreement.

The parties acknowledge by their signatures below that they have read and that they understand the following provisions.

## BEFORE THE CASE IS FILED

The **DEBTOR(S)** agrees to:

1)   Discuss with your attorney your objective in commencing your chapter 13 case after considering filing a case under chapter 7 or chapter 11 and inform your attorney of any imminent deadlines.

2)   Provide your attorney with documentary evidence of your income from all sources and the value of assets in which you have an interest, together with a copy of any declaration of homestead, as well as proof of insurance on any real property or automobiles in which you have an interest, a copy of your last federal tax return, and any other documents that your attorney believes that the trustee might reasonably request in order to assess whether your proposed chapter 13 plan should be confirmed.

3)   Promptly respond to all communications from your attorney.

4)   Cooperate with your attorney in preparing all required bankruptcy forms and other required documents.

5)   Obtain a Certification of Credit Counseling.

6)   Review all drafts of documents and promptly advise your attorney of any corrections or additions that may be required before signing the petition, schedules, and chapter 13 plan.

The **DEBTOR(S)** understands the following and that the Debtor(s) will:

1)   Meet in person with your attorney to review your debts, assets, income, and expenses, as well as your objectives in commencing a chapter 13 case.

2)   Be provided with a fully executed copy of an Engagement Letter or Fee Agreement.

3)   Be advised of the requirements for obtaining a credit counseling certificate before the case is filed and the necessity of completing the financial management course in order to obtain a discharge.

4)   Be required to provide documentation about household income, including pay advices and tax returns, and be advised about the on-going need to both timely file tax returns and pay post-petition taxes.

5)   Be required to provide documents to your attorney such as deeds, mortgages, tax returns, paystubs, and/or other information that may be needed for your attorney to timely prepare, review, and file the petition, statements,

**J.A. 65**

schedules, and chapter 13 plan.

6) Sign your petition and chapter 13 plan and other documents requiring your signature after verifying with your attorney that the information is consistent with documentation provided (redacted where appropriate of all personal identifiable information).

7) Be advised how, when, and where to make the chapter 13 plan payments to the trustee, and, if applicable under the chapter 13 plan, be advised of the obligation to continue making direct payments to secured creditor(s), without interruption, and the likely consequences for failure to do so.

8) Be made aware of the requirement to attend the 11 U.S.C. § 341 meeting of creditors and the consequences of failing to appear.

9) Be required to maintain current and sufficient property and liability insurance if you own any real estate, automobiles, or other valuable personal or business assets.

10) Be aware that some claims will accrue interest after the case is filed and others may not be discharged upon completion of the chapter 13 plan, such as student loans.

## AFTER THE CASE IS FILED

The **DEBTOR(S)** agrees to:

1) Inform your attorney of any changes to your address, telephone number, or other contact information.

2) Timely make chapter 13 plan payments to the trustee as instructed by your attorney or the trustee.

3) Timely make payments directly to secured creditor(s) pursuant to your chapter 13 plan, if applicable.

4) Inform your attorney promptly if any of the following circumstances arise:

   a) you lose your job or have other financial problems (your attorney may be able to have the chapter 13 plan payments reduced or suspended in those circumstances);

   b) you are sued or are contemplating filing a lawsuit or settling a pending lawsuit;

   c) you want to buy, sell, or refinance any real or personal property;

   d) you need to borrow money (e.g., to replace a vehicle);

   e) you receive a tax refund, bonus, or other unexpected funds;

   f) you have suffered a loss with respect to any property (e.g., automobile accident, house fire); and

   g) you experience other circumstances that may require modification of your chapter 13 plan, such as a divorce or the death of a co-debtor spouse;

5) Complete the required instructional course in personal financial management.

6) If you have a domestic support obligation, advise your attorney of your payment obligations and the contact information for the recipient of the domestic support obligation, and be aware that you must make all required payments to be eligible for a discharge.

7) Understand that your attorney cannot guarantee the outcome of your chapter 13 case and understand that the Court might make a ruling adverse to your perceived interests.

8)     Comply with all orders of the Bankruptcy Court.

The **ATTORNEY** understands that services to be delivered include the obligation to:

1)     Provide legal services as necessary for the administration of the case consistent with MLBR 9010-2 and MLBR Appendix 1, Rule 13-6, and all other applicable federal and local rules of bankruptcy procedure.

2)     Appear at the 11 U.S.C. § 341 meeting of creditors with the debtor(s) and inform the debtor(s) as to the date, time, and place of any meeting(s) of creditors.

3)     Where appropriate, prepare, file, and serve motions and notices of hearings in connection with assisting the debtor(s) in achieving the goals of the chapter 13, such as filing modified chapter 13 plan(s), amended schedules and statements, motions to extend or impose the automatic stay, motions for turnover of repossessed property necessary for an effective reorganization, motions to avoid judicial liens on real or personal property, motions to deem a mortgage current, applications s to engage brokers, appraisers or special counsel, and motions for authority to sell property or incur debt.

4)     Review claims filed in the case, object to improper or invalid claims, or file surrogate claims, if warranted, based upon documentation provided by the debtor, and review and address Notices of Mortgage Payment Change, Notices of Fees, Expenses, and Charges, and Responses to Notices of Final Cure.

5)     Respond to reasonable inquiries to assist the debtor(s) in achieving the objectives of the chapter 13 case.

6)     When required, prepare, file, and serve an Application(s) for Compensation.

The attorney and the debtor(s) acknowledge that (i) they have clearly stated in writing the fees to be charged for representing the debtor(s) in the chapter 13 case, (ii) neither the "no look" fee set forth in MLBR 13-7(e) nor any other amount paid by, or on behalf of the debtor(s) for services to be rendered in connection with a chapter 13 case, shall be considered to be a "flat fee" if reasonable fees incurred by the attorney for the debtor(s) for services actually rendered prior to or after the filing of the petition do not exceed compensation paid by or on behalf of the debtor(s), (iii) the debtor(s) may be entitled to a refund of some or all fees paid or retainer given under certain circumstances in the event that services rendered are not consistent with the time and labor expended, the novelty and difficulty of the questions involved, and/or the skill requisite to perform the services efficiently and in accordance with applicable rules and law, and (iv) the debtor(s) is entitled to seek review by the Court of the reasonableness of any fees or expenses.

The signatures below reflect that the debtor(s) understands the responsibilities set forth above and that the attorney for the debtor(s) acknowledges responsibility to comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Massachusetts, including the responsibilities set forth above. By signing below, the parties acknowledge that they have read and understand the foregoing provisions. The debtor(s) additionally acknowledges receiving an executed copy of this form.

| | |
|---|---|
| /s/ Brian W. Coughlin | December  4, 2019 |
| Brian W. Coughlin | Date |
| Debtor | |

| | |
|---|---|
| Joint Debtor | Date |

| | |
|---|---|
| /s/ Richard N. Gottlieb, Esq. BBO # | December  4, 2019 |
| Richard N. Gottlieb, Esq. BBO # 547970 | Date |
| Signature of Attorney for the Debtor(s) | |

**J.A. 67**

## United States Bankruptcy Court
### District of Massachusetts

In re   **Brian W. Coughlin** _____    Case No. _____

                                    Debtor(s)          Chapter    **13** _____

## VERIFICATION OF CREDITOR MATRIX


The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.


Date:   **December  4, 2019** _____        **/s/ Brian W. Coughlin** _____
                                                    **Brian W. Coughlin**
                                                    Signature of Debtor

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**J.A. 68**

```
500 Fast Cash
515 "G" Street SE
Miami, OK 74354

American Web Loans
 3910 W. 6th Avenue
Box 27
Stillwater, OK 74074

AmeriCredit/GM Financial
Attn: Bankruptcy
Po Box 183853
Arlington, TX 76096

Bank of America
4909 Savarese Circle
Fl1-908-01-50
Tampa, FL 33634

Big Picture Loans
P.O. Box 704
Watersmeet, MI 49969

Capital One
Attn: Bankruptcy
Po Box 30285
Salt Lake City, UT 84130

City Of Boston Cu
1 Union St Fl 3
Boston, MA 02108

Clarity Finance
P.O. Box 8
Princeton, ME 04668

Credit One Bank
P.O. Box 98873
Las Vegas, NV 89193-8873

CreditControl
5757 Phantom Drive
Suite 330
Hazelwood, MO 63042

First PREMIER Bank
Attn: Bankruptcy
Po Box 5524
Sioux Falls, SD 57117

Golden Valley Lending
635 East Highway 20 E
Upper Lake, CA 95485
```

**J.A. 69**

Case 19-14142   Doc 1   Filed 12/04/19   Entered 12/04/19 10:38:04   Desc Main
                    Document      Page 51 of 51

```
Greenarrow Loans
P.O. Box 170
Finley, CA 95435

Inbox Credit
P.O. Box 881
Santa Rosa, CA 95402

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Lend Green
P.O. Box 221
Lac Du Flambeau, WI 54538

LVNV Funding/Resurgent Capital
Attn: Bankruptcy
Po Box 10497
Greenville, SC 29603

Midland Credit Management, Inc.
P.O. Box 51319
Los Angeles, CA 90051-5619

Navient
Attn: Bankruptcy
Po Box 9640
Wilkes-Barre, PA 18773

TrueAccord Collections
303 2nd Street
Suite 750 South
San Francisco, CA 94107

Vlizhwaaswi, LLC d/b/a Loan at Last
P.O. Box 1193
Lac Du Flambeau, WI 54538
```

*OLF3 (Official Local Form 3)*
*Effective December 1, 2017*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

In re   BRIAN W. COUGHLIN

Case No.

Chapter 13

Debtor(s)

**CHAPTER 13 PLAN**

*Check one.*  This Plan is:

[✓] Original

[ ]          Amended *(Identify First, Second, Third, etc.)*

[ ] Postconfirmation *(Date Order Confirming Plan Was Entered:*                       *)*

Date this Plan was filed:   December 4, 2019

| PART 1: | NOTICES |
|---|---|

**TO ALL INTERESTED PARTIES:**
You should review carefully the provisions of this Plan as your rights may be affected. In the event the Court enters an order confirming this Plan, its provisions may be binding upon you. The provisions of this Plan are governed by statutes and rules of procedure, including Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), the Massachusetts Local Bankruptcy Rules ("MLBR") and, in particular, the Chapter 13 rules set forth in Appendix 1 of MLBR, all of which you should consult.

**TO CREDITORS:**
Your rights may be affected by this Plan. Your claim may be reduced, modified, or eliminated. Read this Plan carefully and discuss it with your attorney. If you do not have an attorney, you may wish to consult with one. If you oppose this Plan's treatment of your claim or any other provision of this Plan, you or your attorney **must** file with the Court an objection to confirmation on or before the later of (i) thirty (30) days after the date on which the first Meeting of Creditors pursuant to 11 U.S.C. § 341 is held or (ii) thirty (30) days after service of an amended or modified Plan, unless the Court orders otherwise. A copy of your objection must be served on the Debtor(s), the attorney for the Debtor(s), and the Chapter 13 Trustee (the "Trustee"). The Bankruptcy Court may confirm this Plan if no objection to confirmation is filed or if it overrules an objection to confirmation. You have received or will receive a Notice of Chapter 13 Bankruptcy Case from the Bankruptcy Court which sets forth certain deadlines, including the bar date for filing a Proof of Claim. **To receive a distribution, you must file a Proof of Claim.**

**TO DEBTOR(S):**
You (or your attorney) are required to serve a copy of this Plan on all creditors in the manner required under the Bankruptcy Code, the Fed. R. Bankr. P., and MLBR.  Unless the Court orders otherwise, you must commence making payments not later than the earlier of (i) thirty (30) days after the date of the filing of this Plan or (ii) thirty (30) days after the order for relief. **You must check a box on each line below to state whether or not this Plan includes one or more of the following provisions. If you check the provision "Not Included," if you check both boxes, or if you do not check a box, any of the following provisions will be void if set forth later in this Plan. Failure to properly complete this section may result in denial of confirmation of this Plan.**

**FOR EACH LINE BELOW, DO NOT CHECK BOTH BOXES; DO NOT LEAVE BOTH BOXES BLANK.**

| | | | |
|---|---|---|---|
| 1.1 | A limit on the amount of a secured claim, set out in Part 3.B.1, which may result in a partial payment or no payment at all to the secured creditor. | [ ] Included | [✓] Not Included |
| 1.2 | Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Part 3.B(3). | [ ] Included | [✓] Not Included |
| 1.3 | Nonstandard provisions, set out in Part 8. | [✓] Included | [ ] Not Included |

**J.A. 71**

Case 19-14142    Doc 11    Filed 12/04/19    Entered 12/04/19 10:46:31    Desc Main
Document    Page 2 of 12

| PART 2: | PLAN LENGTH AND PAYMENTS |
|---------|--------------------------|

**A.**  **LENGTH OF PLAN:**

☐ 36 Months. 11 U.S.C. § 1325(b)(4)(A)(i)

☑ 60 Months. 11 U.S.C. § 1325(b)(4)(A)(ii)

☐ _____ Months pursuant to 11 U.S.C. § 1322(d)(2). The Debtor(s) states the following cause:

|  |
|--|
|  |

**B.**  **PROPOSED MONTHLY PAYMENTS:**

|       | Monthly Payment Amount | Number of Months |
|-------|------------------------|------------------|
| + - | $1,253.00 | 60 |

**C.**  **ADDITIONAL PAYMENTS:**

*Check one.*

☑ **None.**  *If "None" is checked, the rest of Part 2.C need not be completed and may be deleted from this Plan.*
☐ **The Debtor(s) will make additional payment(s) to the Trustee, as specified below.**  *Set forth the amount, source (e.g., lump sums from sales/refinances, tax refunds), and date of each payment.*

|       | Additional Payment Amount | Source | Date of Payment |
|-------|---------------------------|--------|-----------------|
| + - |  |  |  |

**Total amount of Payments to the Trustee [B+C]:**                                         **$ 75,180.00**

*This amount must be sufficient to pay the total cost of this Plan in Exhibit 1, Line h.*

| PART 3: | SECURED CLAIMS |
|---------|----------------|

☑ **None.**  *If "None" is checked, the rest of Part 3 need not be completed and may be deleted from this Plan.*

**A.**  **CURE OF DEFAULT AND MAINTENANCE OF PAYMENTS:**

*Check one.*

☐ **None.**  *If "None" is checked, the rest of Part 3.A need not be completed and may be deleted from this Plan.*
☐ **Any Secured Claim(s) in default shall be cured and payments maintained as set forth in 1 and/or 2 below.**

*Complete 1 and/or 2.*

**(1)  PREPETITION ARREARS TO BE PAID THROUGH THIS PLAN**

Prepetition arrearage amounts are to be paid through this Plan and disbursed by the Trustee. Unless the Court orders otherwise, the amount(s) of prepetition arrears listed in an allowed Proof of Claim controls over any contrary amount(s) listed below. Unless the Court orders otherwise, if relief from the automatic stay is granted as to any collateral listed in

**J.A. 72**

this paragraph, all payments paid through this Plan as to that collateral will cease upon entry of the order granting relief from stay.

(a)    <u>Secured Claim(s) (Principal Residence)</u>

Address of the Principal Residence: [                                                    ]

The Debtor(s) estimates that the fair market value of the Principal Residence is:  $

| | Name of Creditor | Type of Claim *(e.g., mortgage, lien)* | Amount of Arrears |
|---|---|---|---|
| + - | | | |

Total of prepetition arrears on Secured Claim(s) (Principal Residence):  $

(b)    <u>Secured Claim(s) (Other)</u>

| | Name of Creditor | Type of Claim | Description of Collateral *(or address of real property)* | Amount of Arrears |
|---|---|---|---|---|
| + - | | | | |

Total prepetition arrears on Secured Claim(s) (Other): $

**Total prepetition arrears to be paid through this Plan [(a) + (b)]:  $**

**(2)  MAINTENANCE OF CONTRACTUAL INSTALLMENT PAYMENTS (TO BE PAID DIRECTLY TO CREDITORS):**

Contractual installment payments are to be paid <u>directly</u> by the Debtor(s) to the creditor(s). The Debtor(s) will maintain the contractual installment payments as they arise postpetition on the secured claims listed below with any changes required by the applicable contract and noticed in conformity with any applicable rules.

| | Name of Creditor | Type of Claim | Description of Collateral |
|---|---|---|---|
| + - | | | |

**B.    <u>MODIFICATION OF SECURED CLAIMS:</u>**

*Check one.*

☐ **None**.  *If "None" is checked, the rest of Part 3.B need not be completed and may be deleted from this Plan.*

☐ **Secured Claim(s) are modified as set forth in 1, 2, and/or 3 below.**  *Complete 1, 2, and/or 3 below.*

**(1)** REQUEST FOR VALUATION OF SECURITY, PAYMENT OF FULLY SECURED CLAIMS, AND MODIFICATION OF UNDERSECURED CLAIMS UNDER 11 U.S.C. § 506:

☐ **None**.  *If "None" is checked, the rest of Part 3.B.1 need not be completed and may be deleted from this Plan.*

***The following Plan provisions of Part 3.B.1 are effective only if the box "Included" in Part 1, Line 1.1 is checked.***

The Debtor(s) requests that the Court determine the value of the lien of the following secured claim(s).  For each secured claim listed below, the Debtor(s) states that the amount of the secured claim is as set out in the column headed "Secured Claim Amount." For each listed claim, the allowed amount of the secured claim will be paid in full with interest at the rate stated below, and the creditor will retain its lien to the extent of the value of the lien securing the creditor's allowed secured claim.

Unless the Court orders otherwise, the amount of a modified secured claim held by a nongovernmental creditor, as described in this Plan and treated below, is binding on the creditor and the Debtor(s) upon confirmation of this Plan, even if the creditor has filed a Proof of Claim setting forth a different amount.

Unless the Court orders otherwise, the amount of a secured claim of a governmental unit listed in an allowed Proof of Claim controls over any contrary amount listed below. The amount of a secured claim of a governmental unit may NOT be determined through this Plan.

An allowed claim of a creditor whose claim is secured by a lien on property in which the estate has an interest is a secured claim to the extent of the value of the creditor's interest, and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of the allowed claim. The portion of any allowed claim that exceeds the amount of the secured claim will be treated as an unsecured claim in Part 5 of this Plan. If the secured claim amount is listed below as having NO value, the creditor's allowed claim will be treated in its entirety as an unsecured claim in Part 5 of this Plan.

*In the description of collateral, include the registry of deeds/land court recording information for any real property for which you are modifying a secured claim.*

| | Name of Creditor | Description and Value of Collateral | Secured Claim Amount | Amount of Senior Liens | Interest Rate | Total Claim |
|---|---|---|---|---|---|---|
| + - | | | | | | |

**Total Claim(s) under Part 3.B.1 to be paid through this Plan:  $**

**(2)  SECURED CLAIMS EXCLUDED FROM 11 U.S.C. § 506:**

☐ **None**. *If "None" is checked, the rest of Part 3.B.2  need not be completed and may be deleted from this Plan.*

This section includes any claim(s) that was either (i) incurred within 910 days before the petition date and secured by a purchase-money security interest in a motor vehicle acquired for the personal use of the Debtor(s) or (ii) incurred within one year of the petition date and secured by a purchase-money security interest in any other thing of value.  Such claim(s) will be paid in full through this Plan with interest at the rate stated below. Unless the Court orders otherwise, the claim amount stated on an allowed Proof of Claim controls over any contrary amount listed below.

*If you are treating the claim in Part 3.B.1 or 3.B.3, you should not include the claim in this section.*

| | Name of Creditor | Description of Collateral | Secured Claim Amount | Interest Rate | Total Claim |
|---|---|---|---|---|---|
| + - | | | | | |

**Total Claim(s) under Part 3.B.2 to be paid through this Plan:  $**

**J.A. 74**

(3)   LIEN AVOIDANCE UNDER 11 U.S.C. § 522(f):

☐ **None.** *If "None" is checked, the rest of Part 3.B.3 and Exhibits 3 and 4 need not be completed and may be deleted from this Plan.*

***The following Plan provisions of Part 3.B.3 are effective only if the box "Included" in Part 1, Line 1.2 is checked.***

The judicial lien(s) and/or nonpossessory, nonpurchase-money security interest(s) securing the claim(s) listed below impairs exemptions to which the Debtor(s) would have been entitled under 11 U.S.C. § 522(b).

Subject to 11 U.S.C. § 349(b), a judicial lien or nonpossessory, nonpurchase-money security interest securing a claim listed below will be avoided to the extent that it impairs such exemptions upon entry of the Order confirming this Plan. The amount of the judicial lien or nonpossessory, nonpurchase-money security interest that is avoided will be treated as a nonpriority unsecured claim in Part 5 if a Proof of Claim has been filed and allowed. The amount, if any, of the judicial lien or nonpossessory, nonpurchase-money security interest that is not avoided will be paid in full as a secured claim under this Plan provided a Proof of Claim is filed and allowed.

*For each judicial lien that the Debtor(s) seeks to avoid, the Debtor(s) shall include the information below. The Debtor(s) also shall complete the chart set forth in Exhibit 3 to this Plan and shall attach to Exhibit 3 a true and accurate copy of the document evidencing such judicial lien as filed or recorded with filing or recording information included. The Debtor(s) shall include the evidentiary basis for the valuation asserted. For each judicial lien that the Debtor(s) seeks to avoid, the Debtor(s) shall provide a proposed form(s) of order as Exhibit 4 conforming to Official Local Form 21A. If the Debtor(s) is avoiding more than one lien, the Debtor(s) shall provide the information in a separate table in Exhibit 3 for each lien, and identify the tables as Exhibit 3.1, 3.2, etc.*

*The claim(s) identified below must also be set forth in Exhibit 3.*

| | Name of Creditor | Exhibit Table<br>*(e.g., 3.1, 3.2, 3.3)* |
|---|---|---|
| + - | | |

**Total Claim(s) under Part 3.B.3 to be paid through this Plan: $**

C.   **SURRENDER OF COLLATERAL:**

*Check one.*

☐ **None.** *If "None" is checked, the rest of Part 3.C need not be completed and may be deleted from this Plan.*

☐ **The Debtor(s) elects to surrender to each creditor listed below the collateral that secures the creditor's claim.
The Debtor(s) requests that, upon confirmation of this Plan, the stay under 11 U.S.C. § 362(a) be terminated as to the collateral only and that the stay under 11 U.S.C. § 1301 be terminated in all respects.  Any allowed unsecured claim(s) resulting from the disposition of the collateral will be treated in Part 5 of this Plan.**

| | Name of Creditor | Type of Claim | Description of Collateral |
|---|---|---|---|
| + - | | | |

| PART 4: | PRIORITY CLAIMS |
|---|---|

**J.A. 75**

Case 19-14142    Doc 11    Filed 12/04/19    Entered 12/04/19 10:46:31    Desc Main
Document        Page 6 of 12

*Check one.*

☐ **None.** *If "None" is checked, the rest of Part 4 need not be completed and may be deleted from this Plan.*

☑ **The following priority claim(s) will be paid in full without postpetition interest. Unless the Court orders otherwise, the amount of the priority portion of a filed and allowed Proof of Claim controls over any contrary amount listed below.**

### A.    DOMESTIC SUPPORT OBLIGATIONS:

|  | Name of Creditor | Description of Claim | Amount of Claim |
|---|---|---|---|
| + - |  |  |  |

### B.    OTHER PRIORITY CLAIMS (Except Administrative Expenses):

|  | Name of Creditor | Description of Claim | Amount of Claim |
|---|---|---|---|
| + - | Internal Revenue Service | Tax Liability for 2015 | $5,017.27 |

**Total Priority Claim(s) (except Administrative Expenses) to be paid through this Plan [A + B]:    $ 5,017.27**

### C.    ADMINISTRATIVE EXPENSES:

#### (1)    ATTORNEY'S FEES:

|  | Name of Attorney | Attorney's Fees |
|---|---|---|
| + - |  |  |

If the attorney's fees exceed the amount set forth in MLBR, Appendix 1, Rule 13-7, the Trustee may not pay any amount exceeding that sum until such time as the Court approves a fee application. If no fee application is approved, any plan payments allocated to attorney's fees in excess of MLBR Appendix 1, Rule 13-7 will be disbursed to other creditors up to a 100% dividend.

#### (2)    OTHER (*Describe)*:

|  |
|---|
|  |

**Total Administrative Expenses (excluding the Trustee's Commission) to be paid through this Plan [(1 ) + (2)]: $**

#### (3)    TRUSTEE'S COMMISSION:

The Debtor shall pay the Trustee's commission as calculated in Exhibit 1.

The Chapter 13 Trustee's fee is determined by the United States Attorney General. The calculation of the Plan payment set forth in Exhibit 1, Line (h) utilizes a 10% Trustee's commission. In the event the Trustee's commission is less than 10%, the additional funds collected by the Trustee, after payment of any allowed secured and priority claim(s), and administrative expense(s) as provided for in this Plan, shall be disbursed to nonpriority unsecured creditors up to 100% of the allowed claims.

**J.A. 76**

## PART 5:                    NONPRIORITY UNSECURED CLAIMS

*Check one.*

☐ **None.**  *If "None" is checked, the rest of Part 5 need not be completed and may be deleted from this Plan.*

☑ **Any allowed nonpriority unsecured claim(s) other than those set forth in Part 5.F will be paid as stated below. Only a creditor holding an allowed claim is entitled to a distribution.**

☐ Fixed Amount ("Pot Plan"): each creditor with an allowed claim shall receive a pro rata share of  $ _____ , which the Debtor(s) estimates will provide a dividend of _____ %.

☑ Fixed Percentage: each creditor with an allowed claim  shall receive no less than  100  % of its allowed claim.

**A.**    **GENERAL UNSECURED CLAIMS:**                                        $  62,628.33

**B.**    **UNSECURED OR UNDERSECURED CLAIMS AFTER MODIFICATION IN PART 3.B OR 3.C:**

|        | Name of Creditor | Description of Claim | Amount of Claim |
|--------|------------------|----------------------|-----------------|
| + -    |                  |                      |                 |

**C.**    **NONDISCHARGEABLE UNSECURED CLAIMS (*e.g., student loans*):**

|        | Name of Creditor | Description of Claim | Amount of Claim |
|--------|------------------|----------------------|-----------------|
| + -    |                  |                      |                 |

**D.**    **CLAIMS ARISING FROM REJECTION OF EXECUTORY CONTRACTS OR LEASES:**

|        | Name of Creditor | Description of Claim | Amount of Claim |
|--------|------------------|----------------------|-----------------|
| + -    |                  |                      |                 |

**E.**    **TOTAL TO BE PAID TO NONPRIORITY UNSECURED CREDITORS THROUGH THIS PLAN:**

**The amount paid to any nonpriority unsecured creditor(s) is not less than that required under the Liquidation Analysis set forth in Exhibit 2.**

**Total Nonpriority Unsecured Claims [A + B + C + D]: $** 62,628.33

*Enter Fixed Amount (Pot Plan) or multiply total nonpriority unsecured claim(s) by Fixed Percentage and enter that amount:* **$** 62,628.33

**J.A. 77**

Case 19-14142    Doc 11    Filed 12/04/19    Entered 12/04/19 10:46:31    Desc Main
Document    Page 8 of 12

**F.    SEPARATELY CLASSIFIED UNSECURED CLAIMS (e.g., co-borrower):**

| | | Name of Creditor | Description of Claim | Amount of Claim | Treatment of Claim | Basics of Separate Classification |
|---|---|---|---|---|---|---|
| + | - | Navient | Student Loan | $16,042.65 | Paid Outside of Plan | Term of Loan exceeds life of Plan- § 1322(b)(5) |

**Total of separately classified unsecured claim(s) to be paid through this Plan: $** 16,042.65

## PART 6:                    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*Check one.*

☐ **None.**   *If "None" is checked, the rest of Part 6 need not be completed and may be deleted from this Plan.*

☑ **The executory contract(s) and unexpired leases listed are assumed and will be treated as specified below.**
   **Any other executory contract(s) and/or unexpired lease(s) is rejected. Postpetition contractual payments will be made directly by the Debtor(s). Arrearage payments will be disbursed by the Trustee.**

**A.    REAL PROPERTY LEASES:**

| | | Name of Creditor | Lease Description | Arrears |
|---|---|---|---|---|
| + | - | | | |

**B.    MOTOR VEHICLE LEASES:**

| | | Name of Creditor | Lease Description | Arrears |
|---|---|---|---|---|
| + | - | AmeriCredit/GM Financial | Automobile Lease | $0.00 |

**C.    OTHER CONTRACTS OR LEASES:**

| | | Name of Creditor | Lease Description | Arrears |
|---|---|---|---|---|
| + | - | | | |

**Total amount of arrears to be paid through this Plan: $** 0.00

## PART 7:              POSTCONFIRMATION VESTING OF PROPERTY OF THE ESTATE

If the Debtor(s) receives a discharge, property of the estate will vest in the Debtor(s) upon entry of the discharge. If the Debtor(s) does not receive a discharge, property of the estate will vest upon the earlier of (i) the filing of the Chapter 13 Standing Trustee's Final Report and Account and the closing of the case or (ii) dismissal of the case.

**J.A. 78**

Case 19-14142    Doc 11    Filed 12/04/19    Entered 12/04/19 10:46:31    Desc Main
Document    Page 9 of 12

## PART 8:                         NONSTANDARD PLAN PROVISIONS

*Check one.*

☐ **None.** *If "None" is checked, the rest of Part 8 need not be completed and may be deleted from this Plan.*

☑ **This Plan includes the following nonstandard provisions.** *Under Fed. R. Bankr. P. 3015(c), each nonstandard provision must be set forth below in a separately numbered sentence or paragraph. A nonstandard provision is a provision not otherwise included in Official Local Form 3, or which deviates from Official Local Form 3. Nonstandard provisions set forth elsewhere in this Plan are ineffective. To the extent the provisions in Part 8 are inconsistent with other provisions of this Plan, the provisions of Part 8 shall control if the box "Included" is checked in Part 1, Line 1.3.*

**The following Plan provisions are effective only if the box "Included" in Part 1, Line 1.3 is checked.**

To the extent that the Plan calls for the treatment of any claims under Part 5.F and/or Part 6 of this Chapter 13 Plan, then each such creditor so treated shall provide periodic statements of account showing all payments received and how such receipts were applied in the same level of detail and the same periodicity as provided to the Debtor on a pre-petition basis. Furthermore, with respect to any such claims provided for under Part 5.F and/or Part 6 of this Chapter 13 Plan, said creditor shall permit the Debtor(s) to make any post-petition payments to said creditor in the same manner and with all the same privileges and conveniences concerning said methods of payment that were provided by such creditor to the Debtor(s) on a pre-petition basis, including, but not limited to making payments through electronic means, over the Internet, or over the telephone at no additional cost to the Debtor than required on a pre-petition basis with the creditor.

## PART 9:                                SIGNATURES

By signing this document, the Debtor(s) acknowledges reviewing and understanding the provisions of this Plan and the Exhibits filed as identified below.

By signing this document, the Debtor(s) and, if represented by an attorney, the attorney for the Debtor(s), certifies that the wording and order of the provisions in this Plan are identical to those contained in Official Local Form 3, including the Exhibits identified below, other than any Nonstandard Plan Provisions in Part 8.

| /s/ Brian W. Coughlin | December 4, 2019 |
|---|---|
| Debtor | Date |

| | |
|---|---|
| Joint Debtor | Date |

| /s/ Richard N. Gottlieb | December 4, 2019 |
|---|---|
| Signature of attorney for Debtor(s) | Date |

Print name:  Richard N. Gottlieb
BBO Number (if applicable):  547970
Firm Name (if applicable):  Law Offices of Richard N. Gottlieb
Address:  Ten Tremont St., Suite 11, 3rd Floor
Address (line 2):     Boston, MA 02108
Telephone:  617-742-4491
E-mail Address:  rnglaw@verizon.net

**J.A. 79**

The following Exhibits are filed with this Plan:

☑ **Exhibit 1: Calculation of Plan Payment***
☑ **Exhibit 2: Liquidation Analysis***
☐ **Exhibit 3: Table for Lien Avoidance under 11 U.S.C. § 522(f)****
☐ **Exhibit 4: [Proposed] Order Avoiding Lien Impairing Exemption****

| | |
|---|---|
| | *List additional exhibits if applicable.* |
| + - | |

*\*Denotes a required Exhibit in every plan*
*\*\*Denotes a required Exhibit if the box "Included" is checked in Part 1, Line 1.2.*

**Total number of Plan pages, including Exhibits:**  12

## EXHIBIT 1
## CALCULATION OF PLAN PAYMENT

| | | |
|---|---|---|
| a) | Secured claims (Part 3.A and Part 3.B.1-3 Total): | **$ 0.00** |
| b) | Priority claims (Part 4.A and Part 4.B Total): | **$ 5,017.27** |
| c) | Administrative expenses (Part 4.C.1 and Part 4.C.2 Total): | **$ 0.00** |
| d) | Nonpriority unsecured claims (Part 5.E Total): | **$ 62,628.33** |
| e) | Separately classified unsecured claims (Part 5.F Total): | **$ 0.00** |
| f) | Executory contract/lease arrears claims (Part 6 Total): | **$ 0.00** |
| g) | Total of (a) +(b) + (c) + (d) + (e) + (f): | **$ 67,645.60** |
| h) | Divide (g) by .90 for total Cost of Plan including the Trustee's fee: | **$ 75,161.78** |
| i) | Divide (h), Cost of Plan, by term of Plan,   60   months: | **$ 1,252.70** |
| j) | Round **up** to the nearest dollar amount for Plan payment: | **$ 1,253.00** |

*If this is either an amended Plan and the Plan payment has changed, or if this is a postconfirmation amended Plan, complete (a) through (h) only and the following:*

| | | |
|---|---|---|
| k) | Enter total amount of payments the Debtor(s) has paid to the Trustee: | $ |

**J.A. 80**

Case 19-14142    Doc 11    Filed 12/04/19    Entered 12/04/19 10:46:31    Desc Main
Document      Page 11 of 12

| | | |
|---|---|---|
| l) | Subtract line (k) from line (h) and enter amount here: | $ |
| m) | Divide line (l) by the number of months remaining (          months): | $ |
| n) | Round **up** to the nearest dollar amount for amended Plan payment: | $ |

Date the amended Plan payment shall begin:


# EXHIBIT 2
# LIQUIDATION ANALYSIS

### A.  REAL PROPERTY

| | Address (*Sch. A/B, Part 1*) | Value (*Sch. A/B, Part1*) | Lien (*Sch. D, Part 1*) | Exemption (*Sch. C*) |
|---|---|---|---|---|
| + - | | | | |

| | |
|---|---|
| Total Value of Real Property (*Sch. A/B, line 55*): | $ |
| Total Net Equity for Real Property (*Value Less Liens*): | $ |
| Less Total Exemptions for Real Property (*Sch. C*): | $ |
| Amount Real Property Available in Chapter 7: | $ |

### B.  MOTOR VEHICLES

| | Make, Model and Year (*Sch. A/B, Part 2*) | Value (*Sch. A/B, Part 2*) | Lien (*Sch. D, Part 1*) | Exemption (*Sch. C*) |
|---|---|---|---|---|
| + - | | | | |

| | |
|---|---|
| Total Value of Motor Vehicles (*Sch. A/B, line 55*): | $ |
| Total Net Equity for Motor Vehicles (*Value Less Liens*): | $ |
| Less Total Exemptions for Motor Vehicles (*Sch. C*): | $ |
| Amount Motor Vehicle Available in Chapter 7: | $ |

**J.A. 81**

C.  **ALL OTHER ASSETS** *(Sch. A/B Part 2, no. 4; Part 3 through Part 7, Itemize)*

| | | Asset | Value | Lien<br>*(Sch. D, Part 1)* | Exemption<br>*(Sch. C)* |
|---|---|---|---|---|---|
| + | - | Household Goods and Electronics | $7,600.00 | $0.00 | $7,600.00 |
| + | - | Clothing and Jewelry | $4,850.00 | $0.00 | $4,850.00 |
| + | - | Cash and Bank Accounts | $1,185.00 | $0.00 | $1,185.00 |

| | |
|---|---|
| **Total Value of All Other Assets:** | **$ 13,635.00** |
| **Total Net Equity for All Other Assets** (*Value Less Liens*): | **$ 13,635.00** |
| **Less Total Exemptions for All Other Assets**: | **$ 0.00** |
| **Amount of All Other Assets Available in Chapter 7:** | **$ 0.00** |

D.  **SUMMARY OF LIQUIDATION ANALYSIS**

| Amount available in Chapter 7 | Amount |
|---|---|
| A.  Amount of Real Property Available in Chapter 7 *(Exhibit 2, A)* | **$ 0.00** |
| B.  Amount of Motor Vehicles Available in Chapter 7 *(Exhibit 2, B)* | **$ 0.00** |
| C.  Amount of All Other Assets Available in Chapter 7 *(Exhibit 2, C)* | **$ 0.00** |

**TOTAL AVAILABLE IN CHAPTER 7:  $  0.00**

E.  **ADDITIONAL COMMENTS REGARDING LIQUIDATION ANALYSIS:**

| |
|---|
| |

**J.A. 82**

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br>              Debtor | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO.: 19-14142 |

## CERTIFICATE OF SERVICE

      I, Richard N. Gottlieb, Esq., do hereby certify that I have this day served a copy of the

Debtor's Original Chapter 13 Plan dated December 4, 2019, by First-class mail postage paid

and/or electronically via the CM/ECF Electronic Messaging System on the persons listed below.

Date: <u>December 4, 2019</u>        <u>/s/ Richard N. Gottlieb, Esq.</u>
                                     Richard N. Gottlieb, Esq. BBO # 547970
                                     Law Offices of Richard N. Gottlieb
                                     Ten Tremont Street
                                     Suite 11, 3rd Floor
                                     Boston, Massachusetts 02108
                                     (617) 742-4491
                                     rnglaw@verizon.net

## PERSONS SERVED:

**Carolyn Bankowski, Esq.**
Chapter 13 Trustee
(Served via CM/ECF)

**500 Fast Cash**
515 "G" Street SE
Miami, OK 74354

**American Web Loans**
3910 W. 6th Avenue
Box 27
Stillwater, OK 74074

**AmeriCredit/GM Financial**
Attn: Bankruptcy
Po Box 183853
Arlington, TX 76096

**Bank of America**
4909 Savarese Circle
Fl1-908-01-50
Tampa, FL 33634

**Big Picture Loans**
P.O. Box 704
Watersmeet, MI 49969

**Capital One**
Attn: Bankruptcy
Po Box 30285
Salt Lake City, UT 84130

**City Of Boston Cu**
1 Union St Fl 3
Boston, MA 02108

**J.A. 83**

**Clarity Finance**
P.O. Box 8
Princeton, ME 04668

**Credit One Bank**
P.O. Box 98873
Las Vegas, NV 89193-8873

**CreditControl**
5757 Phantom Drive
Suite 330
Hazelwood, MO 63042

**First Premier Bank**
Attn: Bankruptcy
Po Box 5524
Sioux Falls, SD 57117

**Golden Valley Lending**
635 East Highway 20 E
Upper Lake, CA 95485

**Greenarrow Loans**
P.O. Box 170
Finley, CA 95435

**Inbox Credit**
P.O. Box 881
Santa Rosa, CA 95402

**Internal Revenue Service**
P.O. Box 7346
Philadelphia, PA 19101-7346

**Lend Green**
P.O. Box 221
Lac Du Flambeau, WI 54538

**LVNV Funding/Resurgent Capital**
Attn: Bankruptcy
Po Box 10497
Greenville, SC 29603

**Midland Credit Management, Inc.**
P.O. Box 51319
Los Angeles, CA 90051-5619

**J.A. 84**

Case 19-14142    Doc 11-1    Filed 12/04/19    Entered 12/04/19 10:46:31    Desc
Certificate of Service    Page 3 of 3

**Navient**
Attn: Bankruptcy
Po Box 9640
Wilkes-Barre, PA 18773

**TrueAccord Collections**
303 2nd Street
Suite 750 South
San Francisco, CA 94107

**Vlizhwaaswi, LLC d/b/a Loan at Last**
P.O. Box 1193
Lac Du Flambeau, WI 54538

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br><br>     Debtor | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO. 19-14142-FJB |

## MOTION OF THE DEBTOR TO ENFORCE THE AUTOMATIC STAY

  The Debtor, Brian W. Coughlin, hereby moves, pursuant to 11 U.S.C. §§ 362(a)(6) and 362(k)(1), for an Order enforcing the automatic stay as against Niiwin, LLC doing business as Lendgreen and its parent entities, LDF Holdings, LLC, Lac du Flambeau Business Development Corporation and the Lac du Flambeau Band of Lake Superior Chippewa Indians (collectively, the "Creditor"), and to the extent the court determines that the Creditor has committed acts that constitute a willful violation of the automatic stay, awarding the Debtor attorneys fees and expenses and an award of punitive damages as the court deems reasonable under the circumstances. As grounds therefor, the Debtor states as follows:

### IDENTIFICATION OF PARTIES
### AND BASIS OF JURISDICTION

1.  The Debtor, Brian W. Coughlin, filed his Voluntary Petition under Chapter 13 of the Bankruptcy Code on December 4, 2019.

2.  The creditor, Niiwin, LLC doing business as "Lendgreen" is a creditor of the Debtor and upon information and belief, is a Tribal Enterprise of the Lac Du Flambeau Band of Chippewa Indians, a federally-recognized Indian Tribe with a mailing address of P.O. Box 221 Lac Du Flambeau, Wisconsin 54538.

**J.A. 86**

3.      The creditor Niiwin, LLC doing business as "Lendgreen" is, upon information and belief, is is a wholly owned subsidiary of LDF Holdings, LLC, which, in turn, is a wholly owned subsidiary of the Lac du Flambeau Business Development Corporation, which, in turn, is a wholly owned and operated economic arm and instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe"), a federally recognized Indian tribe. Lendgreen is organized and in good standing under the Laws of the Tribe. Lendgreen is a duly licensed Financial Services Licensee of the Lac du Flambeau Tribal Financial Services Regulatory Authority, an independent regulatory body of the Tribe. Upon information and belief, the offices of the Tribe that relate to Lendgreen have an address of 597 Peace Pipe Road, 2nd Floor, Lac du Flambeau, Wisconsin 54538.

4.      The court's jurisdiction is authorized under the provisions of 28 U.S.C. §§ 1334(b) and 157(b)(1), as matters concerning the administration of the bankruptcy estate are specifically designated as "core proceedings", pursuant to 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF FACTS

5.      Prior to the Debtor's Chapter 13 bankruptcy filing, the Debtor obtained an unsecured "payday" loan from the Creditor and owed,.as of the date of the commencement of this Chapter 13 case $1,594.91.

6.      The Creditor was listed on the Debtor's Schedule of Unsecured Debts (Schedule "E/F") as Item 4.17 listing the Creditor as Lend Green", with a mailing address of P.O. Box 221, Lac Due Flambeau, Wisconsin 54538 and listed the last 4 digits of

**J.A. 87**

the account number relating to said claim of 3572. A true and accurate copy of the

relevant portion of the Debtor's Schedule "E/F" is attached hereto as Exhibit "A".

7.      As a consequence of the Debtor's scheduling of the Creditor's claim, the Creditor

was properly listed on the Debtor's Mailing Matrix with a mailing address of P.O.

Box 221, Lac Due Flambeau, Wisconsin 54538. A true and accurate copy of the

relevant portion of the Debtor's Mailing Matrix is attached hereto as Exhibit "B".

8.      On December 4, 2019, Debtor's Counsel served a copy of the Debtor's Original

Chapter 13 Plan upon the Creditor at its mailing address of P.O. Box 221, Lac

Due Flambeau, Wisconsin 54538 and filed a Certificate of Service regarding the

Debtor's Original Chapter 13 Plan reflecting the same. A true and accurate copy

of Certificate of Service regarding the Debtor's Original Chapter 13 Plan is

attached hereto as Exhibit "C".

9.      On February 26, 2020, after insessant and unrelenting telephone calls from the

Creditor, the Debtor called the Creditor and spoke with one of it's collection

specialists, Linda Ehikpehale, and told her that he had filed for bankruptcy

protection under Chapter 13 of the Bankruptcy Code in December of 2019 and

that they had been previously notified of his bankruptcy filing. Ms. Ehikpehale

then immediately sent an email to the Debtor acknowledging their conversation

and stated "As earlier discussed, the email address to send the Power Of Attorney

documents for your bankruptcy case is administration@lendgreen.com." A true

and accurate copy of the February 26, 2020 email is attached hereto as Exhibit

"D".

10.     Notwithstanding their being notified directly by the Debtor of his bankruptcy

filing on February 26, 2020 and well as having had all the the Court's bankruptcy

notices, and the Debtor's Chapter 13 Plan sent to its mailing address at of P.O.

Box 221, Lac Due Flambeau, Wisconsin 54538, on March 17, 2020, the Creditor

continued with its collection efforts against the Debtor and sent another email

stating as follows:

**150 DAYS OVERDUE AND IT IS BEING REPORTED TO CREDIT REPORTING AGENCIES**
**CALL 1-877-689-1848 NOW TO MAKE**
**A PAYMENT.**
 RE: Lendgreen account #028083572-00
**Balance Due: $1,594.91**
Hi Brian,
Your loan is 150 past due. We have reported this issue to credit reporting agencies and your
ability to receive a loan in the future may be impacted. **Call us now to set up a payment**
**schedule**.

Alternatively, you can authorize a direct payment by sending the following email to

collections@lendgreen.com:

*"I, Brian, authorize Lendgreen to debit the sum of $ from my account on .*

*To verify my identity, the last 4 digits of my SSN are ; the last 4 digits of my routing
number are*
*_____; and the last 4 digits of my account number are ."*

If you have any questions regarding this email, please do not hesitate to contact us. Log
into your self-service account to review your loan details.

Regards,

Lendgreen Collections Department
collections@lendgreen.com
1-877-689-1848
www.lendgreen.com

A true and accurate copy of the Email sent by the Creditor is attached hereto as Exhibit

"E".

**J.A. 89**

11.    The Creditor continues to attempt to contact the Debtor directly, leaving

voicemails for him, saying that they have a "very important message" and again

prompting the Debtor to call the Creditor.

12.    Specifically, on March 18, 2020 at 2:06 pm, the Creditor called the Debtor's

telephone number and left a voicemail for him to contact them about a "very

important matter". A true and accurate copy of the voicemail message is attached

hereto as Exhibit "F".

13.    The following day, on March 19, 2020 at 1:53 pm, the Creditor again called the

Debtor's telephone number and left another voicemail for him to contact them

about a "very important matter". A true and accurate copy of the voicemail

message is attached hereto as Exhibit "G".

## BASIS FOR RELIEF REQUESTED

12.    The provisions of 11 U.S.C. § 362(a)(6), state, in pertinent part, as follows:

  Except as provided in subsection (b) of this section, a petition filed under
section 301, 302, or 303 of this title . . . operates as a stay, applicable to all
entities, of—

. . .

  (6) any act to collect, assess, or recover a claim against the debtor that arose
before the commencement of the case under this title; . . . .

13.    The Creditor's debt collections activities were overtly coercive in nature and

sought to compel the Debtor to make direct payments to the Creditor using

allusions of the fact that it had reported the lack of payment on its claim for the

past 150 days to the "credit reporting agencies" and immediately demanding

payment on its claim, constitute an act to "collect, assess, or recover a claim

**J.A. 90**

against the debtor that arose before the commencement of the case" within the meaning of 11 U.S.C. § 362(a)(6).[1]

14.     With respect to the "willfulness" requirement under 11 U.S.C. § 362(k)(1), a violation of the automatic stay will be deemed to be "willful", if the creditor knew of the bankruptcy case and acted intentionally in such a way that the stay was violated.[2]

15.     The actions taken by the Creditor in continuing its collections activity even after being notified by the Court, by Debtor's Counsel through the submission of the Debtor's Chapter 13 Plan, and by the Debtor directly demonstrate that the Creditor knew or had reason to know that the Debtor was in the midst of a Chapter 13 bankruptcy case at the time its collection activities were carried out.

16.     The violation of the provisions of 11 U.S.C. § 362(a)(6) by the Creditor in this case was clearly done "willfully" if not intentionally by the Creditor as the Creditor, not only received notice of the bankruptcy filing by the Debtor from the court, but also explicitly referenced the bankruptcy filing in the email received by the Debtor on February 26, 2020.

---

[1]     Parenthetically, it is worth noting in this case is that, under the terms of the Debtor's Chapter 13 Plan, the Creditor and all other general unsecured creditors like it who file proofs of claim are to be paid 100% in full. Therefore, had the Creditor bothered to file a Proof of Claim in this case by the bar date of February 12, 2020 (which it did not do), it would have been paid in full.

[2]     **In re Cordle**, 187 B.R. 1 (Bankr., N.D. Cal., 1995).

17.    As a result of the Creditor's violation of the automatic stay, the Debtor suffered

substantial emotion distress in the belief that, notwithstanding their Chapter 13

bankruptcy filing, he might still be hounded by his creditors, even though he is

making substantial Chapter 13 Plan payments, at a particularly vulnerable time

when the Debtor was suffering from suicidal ideation, depression and anxiety.

WHEREFORE, the Debtors request, pursuant to 11 U.S.C. §§ 362(a)(6) and

362(k)(1), that the Court issue an Order:

1.    Finding that the debt collection actions by Niiwin, LLC doing business as Lendgreen

and its responsible parent entities, LDF Holdings, LLC, Lac du Flambeau Business

Development Corporation and the Lac du Flambeau Band of Lake Superior

Chippewa Indians willfully violated the provisions of 11 U.S.C. § 362(a)(6);

2.    Awarding the Debtor his actual damages, including damages for the emotional

distress caused by the debt collection activities of Niiwin, LLC doing business as

Lendgreen and its responsible parent entities, LDF Holdings, LLC, Lac du Flambeau

Business Development Corporation and the Lac du Flambeau Band of Lake Superior

Chippewa Indians in willful violation of 11 U.S.C. § 362(a)(6);

3.    Awarding the Debtor his attorneys' fees and costs in an amount to be determined by

the court for the prosecution of this proceeding;

4.    Awarding the Debtor punitive damages against Niiwin, LLC doing business as

Lendgreen and its responsible parent entities, LDF Holdings, LLC, Lac du Flambeau

Business Development Corporation and the Lac du Flambeau Band of Lake Superior

**J.A. 92**

Chippewa Indians in an amount the court deems appropriate under the circumstances; and

5.  For such other and further relief as the court deems just and proper.

BRIAN W. COUGHLIN, Debtor
By his attorney,

Date:  3/23/2020                    */s/ Richard N. Gottlieb, Esq.*
                                    Richard N. Gottlieb, Esq. BBO # 547970
                                    Law Offices of Richard N. Gottlieb
                                    Ten Tremont Street
                                    Suite 11, 3rd Floor
                                    Boston, MA 02108
                                    (617) 742-4491
                                    rnglaw@verizon.net

**J.A. 93**

Case 19-14142    Doc 27    Filed 03/25/20    Entered 03/25/20 13:20:56    Desc Main
Document    Page 9 of 29

# Exhibit "A"

Debtor 1    **Brian W. Coughlin**

Case number (*if known*) _____

---

| | |
|---|---|
| **4.1 6** | **Inbox Credit** |

Nonpriority Creditor's Name

**P.O. Box 881**
**Santa Rosa, CA 95402**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

☑ No
☐ Yes

**Last 4 digits of account number    HCAI**                **$2,559.94**

**When was the debt incurred?    2019**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify    **Payday Loan**

---

| | |
|---|---|
| **4.1 7** | **Lend Green** |

Nonpriority Creditor's Name

**P.O. Box 221**
**Lac Du Flambeau, WI 54538**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

☑ No
☐ Yes

**Last 4 digits of account number    3572**                **$1,594.91**

**When was the debt incurred?    2019**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify    **Pay Day Loan**

---

| | |
|---|---|
| **4.1 8** | **LVNV Funding/Resurgent Capital** |

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 10497**
**Greenville, SC 29603**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

☑ No
☐ Yes

**Last 4 digits of account number    5624**                **$2,270.00**

**When was the debt incurred?    Opened 06/19**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify    **Factoring Company Account Collection**

---

**J.A. 95**

Case 19-14142    Doc 27    Filed 03/25/20    Entered 03/25/20 13:20:56    Desc Main
Document      Page 11 of 29

# Exhibit "B"

Greenarrow Loans
P.O. Box 170
Finley, CA 95435

Inbox Credit
P.O. Box 881
Santa Rosa, CA 95402

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Lend Green
P.O. Box 221
Lac Du Flambeau, WI 54538

LVNV Funding/Resurgent Capital
Attn: Bankruptcy
Po Box 10497
Greenville, SC 29603

Midland Credit Management, Inc.
P.O. Box 51319
Los Angeles, CA 90051-5619

Navient
Attn: Bankruptcy
Po Box 9640
Wilkes-Barre, PA 18773

TrueAccord Collections
303 2nd Street
Suite 750 South
San Francisco, CA 94107

Vlizhwaaswi, LLC d/b/a Loan at Last
P.O. Box 1193
Lac Du Flambeau, WI 54538

Case 19-14142    Doc 27    Filed 03/25/20    Entered 03/25/20 13:20:56    Desc Main
Document    Page 13 of 29

# Exhibit "C"

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br><div align="right">Debtor</div> | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO.: 19-14142 |

## CERTIFICATE OF SERVICE

I, Richard N. Gottlieb, Esq., do hereby certify that I have this day served a copy of the

Debtor's Original Chapter 13 Plan dated December 4, 2019, by First-class mail postage paid

and/or electronically via the CM/ECF Electronic Messaging System on the persons listed below.

Date: <u>December 4, 2019</u>          <u>/s/ Richard N. Gottlieb, Esq.          </u>
                                      Richard N. Gottlieb, Esq. BBO # 547970
                                      Law Offices of Richard N. Gottlieb
                                      Ten Tremont Street
                                      Suite 11, 3rd Floor
                                      Boston, Massachusetts 02108
                                      (617) 742-4491
                                      rnglaw@verizon.net

## PERSONS SERVED:

**Carolyn Bankowski, Esq.**
Chapter 13 Trustee
(Served via CM/ECF)

**500 Fast Cash**
515 "G" Street SE
Miami, OK 74354

**American Web Loans**
3910 W. 6th Avenue
Box 27
Stillwater, OK 74074

**AmeriCredit/GM Financial**
Attn: Bankruptcy
Po Box 183853
Arlington, TX 76096

**Bank of America**
4909 Savarese Circle
Fl1-908-01-50
Tampa, FL 33634

**Big Picture Loans**
P.O. Box 704
Watersmeet, MI 49969

**Capital One**
Attn: Bankruptcy
Po Box 30285
Salt Lake City, UT 84130

**City Of Boston Cu**
1 Union St Fl 3
Boston, MA 02108

<div align="center">**J.A. 99**</div>

**Clarity Finance**
P.O. Box 8
Princeton, ME 04668

**Credit One Bank**
P.O. Box 98873
Las Vegas, NV 89193-8873

**CreditControl**
5757 Phantom Drive
Suite 330
Hazelwood, MO 63042

**First Premier Bank**
Attn: Bankruptcy
Po Box 5524
Sioux Falls, SD 57117

**Golden Valley Lending**
635 East Highway 20 E
Upper Lake, CA 95485

**Greenarrow Loans**
P.O. Box 170
Finley, CA 95435

**Inbox Credit**
P.O. Box 881
Santa Rosa, CA 95402

**Internal Revenue Service**
P.O. Box 7346
Philadelphia, PA 19101-7346

**Lend Green**
P.O. Box 221
Lac Du Flambeau, WI 54538

**LVNV Funding/Resurgent Capital**
Attn: Bankruptcy
Po Box 10497
Greenville, SC 29603

**Midland Credit Management, Inc.**
P.O. Box 51319
Los Angeles, CA 90051-5619

**J.A. 100**

Case 19-14142    Doc 27    Filed 03/25/20    Entered 03/25/20 13:20:56    Desc Main
Document    Page 16 of 29

**Navient**
Attn: Bankruptcy
Po Box 9640
Wilkes-Barre, PA 18773

**TrueAccord Collections**
303 2nd Street
Suite 750 South
San Francisco, CA 94107

**Vlizhwaaswi, LLC d/b/a Loan at Last**
P.O. Box 1193
Lac Du Flambeau, WI 54538

Case 19-14142    Doc 27    Filed 03/25/20    Entered 03/25/20 13:20:56    Desc Main
Document    Page 17 of 29

# Exhibit "D"

Case 19-14142    Doc 27    Filed 03/25/20    Entered 03/25/20 13:20:56    Desc Main
Document    Page 18 of 29

Begin forwarded message:

On Wednesday, February 26, 2020, 11:58 AM, Linda Ehikpehale <collections@lendgreen.com>
wrote:



*Hello Brian,*

As earlier discussed , the email address to send the Power Of Attorney documents for your
bankruptcy case is administration@lendgreen.com

Keep in mind that you can always call us at 1-855-832-7227 , 8 AM - 7 PM (EST).

Thank you,

**Linda**
Collections Specialist
Lendgreen Collections Department

**J.A. 103**

1-855-832-7227

Niiwin, LLC, d/b/a Lendgreen ("Lendgreen"), is a wholly owned subsidiary of LDF Holdings, LLC, a wholly owned subsidiary of the Lac du Flambeau Business Development Corporation, a wholly owned and operated economic arm and instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe"), a federally recognized Indian tribe. Lendgreen is organized and in good standing under the laws of the Tribe. Lendgreen is a duly licensed Financial Services Licensee of the Lac du Flambeau Tribal Lending Regulatory Authority, an independent regulatory body of the Tribe.

This is an expensive form of borrowing. Lendgreen loans are designed to assist you in meeting your short term borrowing needs and are not intended to be a long term financial solution. The Annual Percentage Rate ("APR") as applied to your loan will range depending on your payment schedule, pay frequency, loan term, and the amount of your loan. Late payments and incidents of non-payment may result in additional fees and collection activities as described in your loan agreement and as allowed by Tribal and applicable federal law. Lendgreen does not lend to residents of AR, CT, GA, MD, MN, NY, PA, VA, WV, WI, and to members of the military and their dependents Availability of installment loans is subject to change at any time at the sole discretion of Lendgreen.

All offers are subject to credit approval. Lendgreen offers loans to consumers with varying degrees of creditworthiness. Prior to offering credit, Lendgreen may conduct a credit check through specialized credit bureaus. Lendgreen does not run credit checks with TransUnion, Experian, or Equifax.

Applications must be processed by speaking with a live Customer Care Specialist before 11:30 AM ET Monday-Friday to receive funds on the same business day. Funds for applications processed after 11:30 AM ET Monday-Friday will be delivered the next business day.

You are receiving this email as a Lendgreen customer or because you have expressed interest in a loan via an affiliate. If you wish to no longer receive our communications, please unsubscribe below.

Read Lendgreen's Privacy Policy.

If you'd like to unsubscribe and stop receiving these emails click here .

**J.A. 104**

Case 19-14142    Doc 27    Filed 03/25/20    Entered 03/25/20 13:20:56    Desc Main
Document    Page 20 of 29

# Exhibit "E"

On Tuesday, March 17, 2020, 9:08 AM, customercare@lendgreen.com wrote:

**150 DAYS OVERDUE AND IT IS BEING REPORTED TO CREDIT REPORTING AGENCIES**

**CALL 1-877-689-1848 NOW TO MAKE A PAYMENT.**

**RE: Lendgreen account #028083572-00**

**Balance Due: $1,594.91**

Hi Brian,

Your loan is  150 past due. We have reported this issue to credit reporting agencies and your ability to receive a loan in the future may be impacted. **Call us now to set up a payment schedule.**

> **CALL NOW TO CLEAR**
> **YOUR DEBT**

Alternatively, you can authorize a direct payment by sending the following email to collections@lendgreen.com:

*"I, Brian, authorize Lendgreen to debit the sum of $_____ from my account on .*

*To verify my identity, the last 4 digits of my SSN are _____; the last 4 digits of my routing number are _____; and the last 4 digits of my account number are _____."*

If you have any questions regarding this email, please do not hesitate to contact us. Log into your self-service

account to review your loan details.

Regards,

Lendgreen Collections Department
collections@lendgreen.com
1-877-689-1848
 www.lendgreen.com

Niiwin, LLC, d/b/a Lendgreen ("Lendgreen"), is a wholly owned subsidiary of LDF Holdings, LLC, a wholly owned subsidiary of the Lac du Flambeau Business Development Corporation, a wholly owned and operated economic arm and instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe"), a federally recognized Indian tribe. Lendgreen is organized and in good standing under the laws of the Tribe. Lendgreen is a duly licensed Financial Services Licensee of the Lac du Flambeau Tribal Financial Services Regulatory Authority, an independent regulatory body of the Tribe

All loan application decisions are made at Lendgreen's office located at 597 Peace Pipe Road, 2nd Floor, Lac du Flambeau, Wisconsin 54538 on the Tribe's reservation. If your loan application is approved by Lendgreen, your loan will be governed by Tribal law, applicable federal law, and the terms and conditions of your loan agreement.

This is an expensive form of borrowing. Lendgreen loans are designed to assist you in meeting your short term borrowing needs and are not intended to be a long term financial solution. The Annual Percentage Rate ("APR") as applied to your loan will range depending on your payment schedule, pay frequency, loan term, and the amount of your loan. Late payments and incidents of non-payment may result in additional fees and collection activities as described in your loan agreement and as allowed by Tribal and applicable federal law. Lendgreen does not lend to residents of AR, CT, GA, MD, MN, NY, PA, VA, WV, and WI or to members of the military and their dependents. Availability of installment loans is subject to change at any time at the sole discretion of Lendgreen.

Please do not reply to this email as we are unable to respond to messages sent to this address. For any inquires please contact customercare@lendgreen.com

Mailing Address:
NIIWIN, LLC d/b/a Lendgreen
PO Box 221
Lac du Flambeau, WI, 54538
1-855-832-7227

 Niiwin, LLC, d/b/a Lendgreen ("Lendgreen"), is a wholly owned subsidiary of LDF Holdings, LLC, a wholly owned subsidiary of the Lac du Flambeau Business Development Corporation, a wholly owned and operated economic arm and instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe"), a federally recognized Indian tribe. Lendgreen is organized and in good standing under the laws of the Tribe. Lendgreen is a duly licensed Financial Services Licensee of the Lac du Flambeau Tribal Lending Regulatory Authority, an independent regulatory body of the Tribe.

This is an expensive form of borrowing. Lendgreen loans are designed to assist you in meeting your short term borrowing needs and are not intended to be a long term financial solution. The Annual Percentage Rate ("APR") as applied to your loan will range depending on your payment schedule, pay frequency, loan term, and the amount of your loan. Late payments and incidents of non-payment may result in additional fees and collection activities as described in your loan agreement and as allowed by Tribal and applicable federal law. Lendgreen does not lend to residents of AR, CT, GA, MD, MN, NY, PA, VA, WV, WI, and to members of the military and their dependents Availability of installment loans is subject to change at any time at the sole discretion of Lendgreen.

All offers are subject to credit approval. Lendgreen offers loans to consumers with varying degrees of creditworthiness. Prior to offering credit, Lendgreen may conduct a credit check through specialized credit bureaus. Lendgreen does not run credit checks with TransUnion, Experian, or Equifax.

Applications must be processed by speaking with a live Customer Care Specialist before 11:30 AM ET Monday-Friday to receive funds on the same business day. Funds for applications processed after 11:30 AM ET Monday-Friday will be delivered the next business day.

**J.A. 107**

Case 19-14142    Doc 27    Filed 03/25/20    Entered 03/25/20 13:20:56    Desc Main
Document    Page 23 of 29

You are receiving this email as a Lendgreen customer or because you have expressed interest in a loan via an affiliate. If you wish to no longer receive our communications, please unsubscribe below.

Read Lendgreen's Privacy Policy.

If you'd like to unsubscribe and stop receiving these emails click here .

**J.A. 108**

Case 19-14142    Doc 27    Filed 03/25/20    Entered 03/25/20 13:20:56    Desc Main
Document    Page 24 of 29

# Exhibit "F"

Case 19-14142    Doc 27    Filed 03/25/20    Entered 03/25/20 13:20:56    Desc Main
Document    Page 25 of 29

**2:06**                                                                    LTE

❮ **Voicemail**

# +1 (877) 329-4638

message    call    video    mail    pay

**Today**

2:05 PM  **Missed Call**

**Share Contact**

**Create New Contact**

**Add to Existing Contact**

**Add to Emergency Contacts**

**Share My Location**

Favorites    Recents    Contacts    Keypad    Voicemail

**J.A. 110**

# Exhibit "G"

**1:53**

        **LTE** ▬

‹ **Recents**

# (877) 329-4638

unknown

message    call    video    mail    pay

## Today

1:52 PM  **Missed Call**

**Share Contact**

**Create New Contact**

**Add to Existing Contact**

**Add to Emergency Contacts**

**Share My Location**

Favorites    Recents    Contacts    Keypad    Voicemail

**J.A. 112**

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

In re                                                    IN PROCEEDINGS UNDER
BRIAN W. COUGHLIN,                          CHAPTER 13
                           Debtor              CASE NO. 19-14142-FJB

<u>**CERTIFICATE OF SERVICE**</u>

   I, Richard N. Gottlieb, Esq., hereby certify that I have this day served a copy of the

Motion of the Debtor to Enforce the Automatic Stay and Affidavit of Debtor in

Support of Motion of the Debtor to Enforce the Automatic Stay attached hereto upon

on persons listed below, via electronic mail on the CM/ECF system.


Date:   3/23/2020                          */s/ Richard N. Gottlieb, Esq.*
                                           Richard N. Gottlieb, Esq. BBO # 547970
                                           Law Offices of Richard N. Gottlieb
                                           Ten Tremont Street
                                           Suite 11, 3rd Floor
                                           Boston, MA 02108
                                           (617) 742-4491
                                           rnglaw@verizon.net

Persons served:

Carolyn Bankowski, Esq.
Chapter 13 Trustee
(Served via CM/ECF)

Niiwin, LLC d/b/a "Lendgreen"
P.O. Box 221
Lac Du Flambeau, Wisconsin 54538

LDF Holdings, LLC
597 Peace Pipe Road,
2nd Floor
Lac du Flambeau, Wisconsin 54538

**J.A. 113**

Case 19-14142    Doc 27    Filed 03/25/20    Entered 03/25/20 13:20:56    Desc Main
Document    Page 29 of 29

Lac du Flambeau Business Development Corporation
597 Peace Pipe Road,
2nd Floor
Lac du Flambeau, Wisconsin 54538

Lac du Flambeau Band of Lake Superior Chippewa Indians
597 Peace Pipe Road,
2nd Floor
Lac du Flambeau, Wisconsin 54538

Case: 21-1153    Document: 00117747096    Page: 121    Date Filed: 06/01/2021    Entry ID: 6425224

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

In re
BRIAN W. COUGHLIN,
                Debtor

IN PROCEEDINGS UNDER
CHAPTER 13
CASE NO. 19-14142-FJB

### AFFIDAVIT OF DEBTOR IN SUPPORT OF MOTION OF THE DEBTOR TO ENFORCE THE AUTOMATIC STAY

NOW COMES the Debtor, Brian W. Coughlin, and in support of the Motion of the Debtor to Enforce the Automatic stay, hereby takes oath and deposes and states as follows:

1. My name is Brian W. Coughlin. I am the Debtor in the above-captioned Chapter 13 proceeding. I make this affidavit based upon my personal knowledge of the facts and events contained herein.

2. Prior to the commencement of this Chapter 13 case on December 4, 2019, I had many debts owed to a number of creditors, including a number of short-term debts that I contracted over the Internet as "pay day" loans. Among these "pay day" loans obligations that I listed on my Bankruptcy Schedules was one owed to "LendGreen".

3. As I recall, to the best of my knowledge without having any documentation before me, I originally borrowed the amount of $1100.00 on or about July, 2019. This information may or may not be correct, but it is my best estimate of the facts due to the lack of information before me and my current state of mind. My account number with LendGreen ended with the digits 3572. As of the date of my bankruptcy filing, I owed LendGreen the sum of $1,594.91.

Case: 21-1153    Document: 00117747096    Page: 122    Date Filed: 06/01/2021    Entry ID: 6425224

This amount and the account number were provided to me by a LendGreen representative prior to my filing when I called them to confirm with them the facts of my account.

4.  My lawyer and I made sure that all of my creditors were accurately listed on both my Bankruptcy Schedules and on the Mailing Matrix used by the Court to send notices of my bankruptcy filing to my creditors. I listed LendGreen on my Bankruptcy Schedule "E/F" and on my Mailing Matrix as follows: "Lend Green, P.O. Box 221, Lac Du Flambeau, WI 54538".

5.  Notwithstanding my inclusion of LendGreen on my Bankruptcy Schedule "E/F" and on my Mailing Matrix and proposing a Chapter 13 Plan that pays creditors 100% in full, since December 4, 2019 when my bankruptcy case started, I have been continually been harried by LendGreen with telephone calls, emails and voicemail messages.

6.  Each time I was contacted I told the LendGreen representative that I had filed for bankruptcy and that they should contact my lawyer instead of me and gave them my lawyer's telephone number and email address if they had any questions.

7.  However, despite these efforts, I would still regularly and during some weeks on nearly a daily basis continue to receive these communications from LendGreen looking to get me to send them more money on the debt I owed them. A vast majority of these calls went unanswered; and therefore, are not documented on any statements from my cellular provider.

8.  All of these collections' efforts by LendGreen has taken a toll on me emotionally. I suffer from Type 1 Diabetes, the genetically-related form of the illness, as well as severe clinical

Case: 21-1153    Document: 00117747096    Page: 123    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 27-1    Filed 03/25/20    Entered 03/25/20 13:20:56    Desc
Affidavit of Debtor in Support of Motion to Enforce the Automatic Stay    Page 3 of 4

depression. Because of the stress of my need to file for bankruptcy protection compounded by the regular and incessant telephone calls, emails and voicemails from LendGreen, I became so despondent that I simply could not rouse myself to even attend my original Meeting of Creditors on January 15, 2020 due to my mental health issues and suicidal ideations.

9.  Even though my lawyer was able to get the Chapter 13 Trustee to agree to continue the Meeting of Creditors until March 18, 2020, I had to then deal with the further emotional stress of now dealing with the Chapter 13 Trustee's Motion to Dismiss because of my inability to attend that Meeting in the first place.

10.  It seemed like every time I got comfortable with my decision to enter into Chapter 13, I would be hassled with another phone call, or email, or more voicemails by Lend Green. I thought they weren't supposed to be doing that. The more that I thought about it, the more I became anxious and second guessed my decision to seek bankruptcy protection.

11. There were weeks of calls from LendGreen after I filed for bankruptcy protection, that I was constantly being reminded me of what I didn't want to even think about any longer. I had hit rock bottom and I was done with all of this, including my life. I had decided that this mental and financial agony would never end. So I took things into my own hands.

12. On the evening of February 9, 2020, I attempted suicide due to my overwhelming stress, anxiety and lack of hope for a better life. I had such an overwhelming sense of nothingness in

my mind about finances and life that it was a culmination of those things that sent me over

the edge and intentionally overdosing on medications.

13. I went into in-hospital rehabilitative therapy, in Massachusetts General Hospital for eleven

days after I was resuscitated for an overdose from February 10, 2020 until February 20, 2020,

after attempting to take my own life. Even so, I had to use vacation days while in the hospital

and for a week after my discharge to mentally prepare myself for my return. I returned to

work on March 2, 2020 and I returned emotionally, a defeated and broken man. Getting calls

from LendGreen, even in recent days, certainly has not helped me in any way. I really hope

these aggressive actions stop because I don't ever want to be in the position again waking up

in the hospital with my family looking down on me thinking I wasn't going to make it. I

don't wish that on anyone. All I want to do is move forward with my life and work on being

healthy and happy and financially sound. My decision to enter into a Chapter 13 case was to

try and give myself a better life. A stress-free life, and one that had some hope for a brighter

future. I did not want to sign onto a plan that would be a consistent reminder of past thoughts

or actions that caused this decision to become a hellish reality.

14. Only by the grace of God I am here today, and luckily, with the help of my team of doctors

and my support at home, I am in a better state of mind. I would like this to be known to be

fact. The actions taken by LendGreen that literally "sent me over the edge" should be known.

THE FOREGOING STATEMENTS ARE TRUE AND ACCURATE TO THE BEST OF MY
KNOWLEDGE AND BELIEF. SIGNED UNDER THE PAINS AND PENALTIES OF
PERJURY THIS 25th DAY OF MARCH, 2020.

Brian W. Coughlin, Affiant

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br>      Debtor | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO. 19-14142-FJB |

## SUPPLEMENTAL CERTIFICATE OF SERVICE

I, Richard N. Gottlieb, Esq., hereby certify that I have this day served a copy of the

Motion of the Debtor to Enforce the Automatic Stay and the Affidavit of Brian W.

Coughlin in Support of Motion of the Debtor to Enforce the Automatic Stay upon the

additional persons listed below, via First-Class Mail, Postage Paid, or, where indicated,

via electronic mail.


Date:   5/11/2020      */s/ Richard N. Gottlieb, Esq.*
             Richard N. Gottlieb, Esq. BBO # 547970
             Law Offices of Richard N. Gottlieb
             Ten Tremont Street
             Suite 11, 3rd Floor
             Boston, MA 02108
             (617) 742-4491
             rnglaw@verizon.net

Persons served:


**Lac du Flambeau Band of Lake**
**Superior Chippewa Indians**
P.O. Box 67
Lac du Flambeau, WI 54538

**Jessi L. Phillips-Lorenzo, President of**
**Board of Directors of LDF Holdings,**
**LLC**
2321 W North B St
Tampa FL 33609

**Nicole  Chapman-Reynolds, as**
**President of the Board of Directors of**
**the Lac Du Flambeau Business**
**Development Corporation**
14284 Highway 70 West
P.O. Box 155
Lac Du Flambeau, Wisconsin 54538

**Joseph Wildcat, Sr., President**
**Lac du Flambeau Band of Lake**
**Superior Chippewa Indians**
418 Little Pines
Lac du Flambeau Wisconsin 54538

**J.A. 119**

Case 19-14142    Doc 42    Filed 05/13/20    Entered 05/13/20 09:22:09    Desc Main
Document      Page 1 of 1

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

In re
BRIAN W. COUGHLIN,
                Debtor

IN PROCEEDINGS UNDER
CHAPTER 13
CASE NO. 19-14142-FJB

## SUPPLEMENTAL CERTIFICATE OF SERVICE

I, Richard N. Gottlieb, Esq., hereby certify that I have this day served a copy of the

Motion of the Debtor to Enforce the Automatic Stay and the Affidavit of Brian W.

Coughlin in Support of Motion of the Debtor to Enforce the Automatic Stay upon the

additional persons listed below, via First-Class Mail, Postage Paid, or, where indicated,

via electronic mail.

Date:   5/13/2020

/s/ Richard N. Gottlieb, Esq.
Richard N. Gottlieb, Esq. BBO # 547970
Law Offices of Richard N. Gottlieb
Ten Tremont Street
Suite 11, 3rd Floor
Boston, MA 02108
(617) 742-4491
rnglaw@verizon.net

Persons served:

**LDF Holdings, LLC**
P.O. Box 231
Lac du Flambeau, WI 54538

**J.A. 120**

Case 19-14142    Doc 43    Filed 05/07/20    Entered 05/14/20 13:04:37    Desc Main
Document    Page 1 of 1



UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| In re: | |
|---|---|
| BRIAN W. COUGHLIN,<br>Debtor | Ch. 13<br>19-14142-FJB |

**Proceeding Memorandum and Order**

**MATTER:**
Telephonic Hearing:
#27 Motion filed by Debtor Brian W. Coughlin to Enforce the Automatic Stay with certificate of service. (Attachments: # 1 Affidavit of Debtor in Support of Motion to Enforce the Automatic Stay) (Gottlieb, Richard)

**Decision set forth more fully as follows:**
Telephonic Hearing held on 5/7/2020. The Court shall hold an evidentiary hearing on this matter on August 17, 2020 at 9:30 A.M.

On or before May 22, 2020, the Debtor shall serve his motion and this order on Niiwin, LLC d/b/a Lendgreen; LDF Holdings, LLC; Lac du Flambeau Business Development Corporation; and the Lac du Flambeau Band of Lake Superior Chippewa Indians by registered mail; and on or before June 22, 2020, the Debtor shall file a certificate of such service and confirmation of its delivery to these entities.

By the Court,

Frank J. Bailey
United States Bankruptcy Judge

Dated: 5/7/2020

**J.A. 121**

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br>          Debtor | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO. 19-14142-FJB |

## <u>CERTIFICATE OF SERVICE CONCERNING ORDER OF MAY 14, 2020</u>

I, Richard N. Gottlieb, Esq., hereby certify that, pursuant to the Court's Order of May 14, 2020, I have this day served a copy of the Court's Order scheduling an Evidentiary Hearing regarding the Motion of the Debtor to Enforce the Automatic Stay (ECF Document No. 43), a copy of which is attached hereto, as well as a copy of the Motion of the Debtor to Enforce the Automatic Stay and the Affidavit of Brian W. Coughlin in Support of Motion of the Debtor to Enforce the Automatic Stay (ECF Document No.'s 27 and 27-1)  upon the persons listed below, via **USPS Certified Mail, Postage Paid, Return Receipt Electronic or Other Proof of Delivery** (copies of the Return Receipt Electronic for each recipient or Proof of Delivery to Post Office and Notification of Availability to Addressee is attached hereto), or, where indicated, via the Court's CM/ECF Electronic Messaging System.

Date:   5/22/2020

*/s/ Richard N. Gottlieb, Esq.*
Richard N. Gottlieb, Esq. BBO # 547970
Law Offices of Richard N. Gottlieb
Ten Tremont Street
Suite 11, 3rd Floor
Boston, MA 02108
(617) 742-4491
rnglaw@verizon.net

**J.A. 122**

Case 19-14142    Doc 45    Filed 05/22/20    Entered 05/22/20 10:12:34    Desc Main
Document        Page 2 of 12

Persons served:

**Carolyn Bankowski, Esq.**
Chapter 13 Trustee
(Served via CM/ECF)

**Niiwin, LLC d/b/a "Lendgreen"**
P.O. Box 221
Lac Du Flambeau, Wisconsin 54538
**Tracking #: 9214890142980450992123**

**LDF Holdings, LLC**
P.O. Box 231
Lac du Flambeau, WI 54538
**Tracking #: 9214890142980450992130**

**Lac du Flambeau Band of Lake
Superior Chippewa Indians**
P.O. Box 67
Lac du Flambeau, WI 54538
**Tracking #: 9214890142980450992239**

**Nicole  Chapman-Reynolds, as
President of the Board of Directors of
the Lac Du Flambeau Business
Development Corporation**
14284 Highway 70 West
P.O. Box 155
Lac Du Flambeau, Wisconsin 54538
**Tracking #: 9214890142980450993014**

**Jessi L. Phillips-Lorenzo, President of
Board of Directors of LDF Holdings,
LLC**
2321 W North B St
Tampa FL 33609
**Tracking #: 9214890142980450992338**

**Joseph Wildcat, Sr., President
Lac du Flambeau Band of Lake
Superior Chippewa Indians**
418 Little Pines
Lac du Flambeau Wisconsin 54538
**Tracking #: 9214890142980450993014**

**J.A. 123**



### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re:* | |
| BRIAN W. COUGHLIN, | Ch. 13 |
| Debtor | 19-14142-FJB |

**Proceeding Memorandum and Order**

**MATTER:**
Telephonic Hearing:
#27 Motion filed by Debtor Brian W. Coughlin to Enforce the Automatic Stay with certificate of service. (Attachments: # 1 Affidavit of Debtor in Support of Motion to Enforce the Automatic Stay) (Gottlieb, Richard)

**Decision set forth more fully as follows:**
Telephonic Hearing held on 5/7/2020. The Court shall hold an evidentiary hearing on this matter on August 17, 2020 at 9:30 A.M.

On or before May 22, 2020, the Debtor shall serve his motion and this order on Niiwin, LLC d/b/a Lendgreen; LDF Holdings, LLC; Lac du Flambeau Business Development Corporation; and the Lac du Flambeau Band of Lake Superior Chippewa Indians by registered mail; and on or before June 22, 2020, the Debtor shall file a certificate of such service and confirmation of its delivery to these entities.

By the Court,

Frank J. Bailey
United States Bankruptcy Judge

Dated: 5/7/2020

**J.A. 124**

**UNITED STATES POSTAL SERVICE**

May 19, 2020

Dear Richard Gottlieb:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 4298 0450 9923 38**.

| Item Details | |
| --- | --- |
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | May 18, 2020, 11:50 am |
| **Location:** | TAMPA, FL 33609 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | Jessi L  Phillips Lorenzo |

| Shipment Details | |
| --- | --- |
| **Weight:** | 3.1oz |

| Recipient Signature |
| --- |

Signature of Recipient:

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**J.A. 125**

**UNITED STATES**
**POSTAL SERVICE**

May 19, 2020

Dear Richard Gottlieb:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 4298 0450 9921 30**.

| Item Details | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | May 18, 2020, 10:42 am |
| **Location:** | LAC DU FLAMBEAU, WI 54538 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | LDF Holdings  LLC |

| Shipment Details | |
|---|---|
| **Weight:** | 3.1oz |

| Recipient Signature | |
|---|---|
| Signature of Recipient: | *Lisa Schultz* |
| Address of Recipient: | *Box 221* |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**J.A. 126**

**UNITED STATES
POSTAL SERVICE**

May 19, 2020

Dear Richard Gottlieb:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 4298 0450 9921 23**.

| Item Details | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | May 18, 2020, 10:42 am |
| **Location:** | LAC DU FLAMBEAU, WI 54538 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | Niiwin  LLC d b a   8220 Lendgreen  8221 |

| Shipment Details | |
|---|---|
| **Weight:** | 3.1oz |

| Recipient Signature |
|---|

Signature of Recipient:    *Lisa Schultz*

Address of Recipient:    *BOX 221*

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**J.A. 127**

 Gmail

**Rick Gottlieb <rickg2007@gmail.com>**

---

**USPS® Ready for Pickup 9214890142980450992239**
1 message

---

**auto-reply@usps.com** <auto-reply@usps.com>
To: RickG2007@gmail.com

Fri, May 22, 2020 at 9:51 AM



Hello **Richard Neil Gottlieb**,

Your package is **ready for pickup** at your designated post office.

Your item arrived at the LAC DU FLAMBEAU, WI 54538 post office at 7:06 am on May 19, 2020 and is ready for pickup.

Tracking Number: **9214890142980450992239**

**Ready for Pickup!**





Visit **USPS Tracking**® to check the most up-to-date status of your package. Sign up for **Informed Delivery**® to digitally preview the address side of your incoming letter-sized mail and manage your packages scheduled to arrive soon! To update how frequently you receive emails from USPS, log in to your **USPS.com** account.

Want regular updates on your package? **Set up text alerts**.

   

Download USPS Mobile®

 

---

USPS.com | Privacy Policy | Customer Service | FAQs

https://mail.google.com/mail/u/0?ik=f23bb8f9d2&view=pt&search=all&permthid=thread-f%3A1667398895588987133&simpl=msg-f%3A166739889558…     1/2

**J.A. 128**

Delivery date and time depends on origin, destination and Post Office™ acceptance time and is subject to change. Delivery options are subject to restrictions and may not be available for your item.

This is an automated email; please do not reply to this message. This message is for the designated recipient only and may contain privileged, proprietary, or otherwise private information. If you have received it in error, please delete. Any other use of the email by you is prohibited.

Copyright © 2017. All rights reserved.

**J.A. 129**

5/22/2020        Case 19-14142    Doc 45    Filed 05/22/20    Entered 05/22/20 10:12:34    Desc Main
                                    Document        Page 9 of 12

 Gmail                                                   Rick Gottlieb <rickg2007@gmail.com>

---

**USPS® Ready for Pickup 9214890142980450992260**
1 message

---

**auto-reply@usps.com** <auto-reply@usps.com>                              Fri, May 22, 2020 at 9:53 AM
To: RickG2007@gmail.com



Hello **Richard Neil Gottlieb**,

Your package is **ready for pickup** at your designated post office.

Your item arrived at the LAC DU FLAMBEAU, WI 54538 post office at 7:06 am on May 19, 2020 and is ready for pickup.

Tracking Number: **9214890142980450992260**

### Ready for Pickup!





Visit **USPS Tracking**® to check the most up-to-date status of your package. Sign up for **Informed Delivery**® to digitally preview the address side of your incoming letter-sized mail and manage your packages scheduled to arrive soon! To update how frequently you receive emails from USPS, log in to your **USPS.com** account.

Want regular updates on your package? **Set up text alerts.**

   

Download USPS Mobile®

 

---

USPS.com | Privacy Policy | Customer Service | FAQs

https://mail.google.com/mail/u/0?ik=f23bb8f9d2&view=pt&search=all&permthid=thread-f%3A1667399011408044552&simpl=msg-f%3A166739901140…    1/2

**J.A. 130**

5/22/2020        Case 19-14142    Doc 45    Filed 05/22/20    Entered 05/22/20 10:12:34    Desc Main
                                  Document        Page 10 of 12

Delivery date and time depends on origin, destination and Post Office™ acceptance time and is subject to change. Delivery options are subject to restrictions and may not be available for your item.

This is an automated email; please do not reply to this message. This message is for the designated recipient only and may contain privileged, proprietary, or otherwise private information. If you have received it in error, please delete. Any other use of the email by you is prohibited.

Copyright © 2017. All rights reserved.

**J.A. 131**



Rick Gottlieb <rickg2007@gmail.com>

---

**USPS® Ready for Pickup 9214890142980450993014**
1 message

---

**auto-reply@usps.com** <auto-reply@usps.com>                                    Fri, May 22, 2020 at 9:52 AM
To: RickG2007@gmail.com



Hello **Richard Neil Gottlieb**,

Your package is **ready for pickup** at your designated post office.

Your item arrived at the LAC DU FLAMBEAU, WI 54538 post office at 7:06 am on May 19, 2020 and is ready for pickup.

Tracking Number: **9214890142980450993014**

**Ready for Pickup!**





Visit **USPS Tracking**® to check the most up-to-date status of your package. Sign up for **Informed Delivery**® to digitally preview the address side of your incoming letter-sized mail and manage your packages scheduled to arrive soon! To update how frequently you receive emails from USPS, log in to your **USPS.com** account.

Want regular updates on your package? **Set up text alerts**.

   

Download USPS Mobile®

 

---

USPS.com | Privacy Policy | Customer Service | FAQs

https://mail.google.com/mail/u/0?ik=f23bb8f9d2&view=pt&search=all&permthid=thread-f%3A1667398949552644989&simpl=msg-f%3A166739894955…     1/2

5/22/2020    Case 19-14142    Doc 45    Filed 05/22/20    Entered 05/22/20 10:12:34    Desc Main
Document      Page 12 of 12

Delivery date and time depends on origin, destination and Post Office™ acceptance time and is subject to change. Delivery options are subject to restrictions and may not be available for your item.

This is an automated email; please do not reply to this message. This message is for the designated recipient only and may contain privileged, proprietary, or otherwise private information. If you have received it in error, please delete. Any other use of the email by you is prohibited.

Copyright © 2017. All rights reserved.

**J.A. 133**

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

In re
BRIAN W. COUGHLIN,
                        Debtor

IN PROCEEDINGS UNDER
CHAPTER 13
CASE NO. 19-14142-FJB

## CERTIFICATE OF SERVICE CONCERNING ORDER OF MAY 14, 2020

I, Richard N. Gottlieb, Esq., hereby certify that, pursuant to the Court's Order of May 14, 2020, I have this day served a copy of the Court's Order scheduling an Evidentiary Hearing regarding the Motion of the Debtor to Enforce the Automatic Stay (ECF Document No. 43), a copy of which is attached hereto, as well as a copy of the Motion of the Debtor to Enforce the Automatic Stay and the Affidavit of Brian W. Coughlin in Support of Motion of the Debtor to Enforce the Automatic Stay (ECF Document No.'s 27 and 27-1)  upon the persons listed below, via **USPS Certified Mail, Postage Paid, Return Receipt Electronic or Other Proof of Delivery** (copies of the Return Receipt Electronic for each recipient or Proof of Delivery to Post Office and Notification of Availability to Addressee is attached hereto), or, where indicated, via the Court's CM/ECF Electronic Messaging System.


Date:   5/26/2020

*/s/ Richard N. Gottlieb, Esq.*
Richard N. Gottlieb, Esq. BBO # 547970
Law Offices of Richard N. Gottlieb
Ten Tremont Street
Suite 11, 3rd Floor
Boston, MA 02108
(617) 742-4491
rnglaw@verizon.net

**J.A. 134**

Persons served:

**Carolyn Bankowski, Esq.**
Chapter 13 Trustee
(Served via CM/ECF)

**Niiwin, LLC d/b/a "Lendgreen"**
P.O. Box 221
Lac Du Flambeau, Wisconsin 54538
**Tracking #: 9214890142980450992123**

**LDF Holdings, LLC**
P.O. Box 231
Lac du Flambeau, WI 54538
**Tracking #: 9214890142980450992130**

**Lac du Flambeau Band of Lake
Superior Chippewa Indians**
P.O. Box 67
Lac du Flambeau, WI 54538
**Tracking #: 9214890142980450992239**

**Nicole  Chapman-Reynolds, as
President of the Board of Directors of
the Lac Du Flambeau Business
Development Corporation**
14284 Highway 70 West
P.O. Box 155
Lac Du Flambeau, Wisconsin 54538
**Tracking #: 9214890142980450993014**

**Jessi L. Phillips-Lorenzo, President of
Board of Directors of LDF Holdings,
LLC**
2321 W North B St
Tampa FL 33609
**Tracking #: 9214890142980450992338**

**Joseph Wildcat, Sr., President
Lac du Flambeau Band of Lake
Superior Chippewa Indians**
418 Little Pines
Lac du Flambeau Wisconsin 54538
**Tracking #: 9214890142980450993014**

**J.A. 135**

Case 19-14142    Doc 46    Filed 05/06/20    Entered 05/26/20 09:06:37    Desc Main
Document      Page 1 of 10



UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| *In re:* | |
|---|---|
| BRIAN W. COUGHLIN,<br>Debtor | Ch. 13<br>19-14142-FJB |

### Proceeding Memorandum and Order

**MATTER:**
Telephonic Hearing:
#27 Motion filed by Debtor Brian W. Coughlin to Enforce the Automatic Stay with certificate of
service. (Attachments: # 1 Affidavit of Debtor in Support of Motion to Enforce the Automatic Stay)
(Gottlieb, Richard)

**Decision set forth more fully as follows:**
Telephonic Hearing held on 5/7/2020. The Court shall hold an evidentiary hearing on this matter
on August 17, 2020 at 9:30 A.M.

On or before May 22, 2020, the Debtor shall serve his motion and this order on Niiwin, LLC d/b/a
Lendgreen; LDF Holdings, LLC; Lac du Flambeau Business Development Corporation; and the Lac
du Flambeau Band of Lake Superior Chippewa Indians by registered mail; and on or before June
22, 2020, the Debtor shall file a certificate of such service and confirmation of its delivery to these
entities.

By the Court,

Frank J. Bailey
United States Bankruptcy Judge

Dated: 5/7/2020

**J.A. 136**

**UNITED STATES**
**POSTAL SERVICE**

May 19, 2020

Dear Richard Gottlieb:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 4298 0450 9921 23**.

| Item Details | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | May 18, 2020, 10:42 am |
| **Location:** | LAC DU FLAMBEAU, WI 54538 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | Niiwin  LLC d b a   8220 Lendgreen  8221 |

| Shipment Details | |
|---|---|
| **Weight:** | 3.1oz |

| Recipient Signature | |
|---|---|

| | |
|---|---|
| Signature of Recipient: | *Lisa Schultz* |
| Address of Recipient: | *Box 221* |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**J.A. 137**

**UNITED STATES**
**POSTAL SERVICE**

May 19, 2020

Dear Richard Gottlieb:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 4298 0450 9921 30**.

| Item Details | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | May 18, 2020, 10:42 am |
| **Location:** | LAC DU FLAMBEAU, WI 54538 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | LDF Holdings  LLC |

| Shipment Details | |
|---|---|
| **Weight:** | 3.1oz |

| Recipient Signature | |
|---|---|

Signature of Recipient:      *Lisa Schultz*

Address of Recipient:      *BOX 221*

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**J.A. 138**

**UNITED STATES POSTAL SERVICE**

May 22, 2020

Dear Richard Gottlieb:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 4298 0450 9922 39**.

| Item Details | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | May 22, 2020, 10:09 am |
| **Location:** | LAC DU FLAMBEAU, WI 54538 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | Lac du Flambeau Band of Lake Superior Chippewa I |

| Shipment Details | |
|---|---|
| **Weight:** | 3.1oz |

**Recipient Signature**

Signature of Recipient:   *Bev Larsurf*
*Bev Larburg*

Address of Recipient:   *P.O. Box 67*

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

5/22/2020    Case 19-14142    Doc 46    Filed 05/26/20    Entered 05/26/20 09:26:46    Desc Main
Document    Page 7 of 10



Rick Gottlieb <rickg2007@gmail.com>

---

**USPS® Ready for Pickup 9214890142980450992260**
1 message

---

**auto-reply@usps.com** <auto-reply@usps.com>
To: RickG2007@gmail.com

Fri, May 22, 2020 at 9:53 AM



Hello **Richard Neil Gottlieb**,

Your package is **ready for pickup** at your designated post office.

Your item arrived at the LAC DU FLAMBEAU, WI 54538 post office at 7:06 am on May 19, 2020 and is ready for pickup.

Tracking Number: **9214890142980450992260**

### Ready for Pickup!



| Tracking & Delivery Options |
|:---:|
| **My Account** |

Visit **USPS Tracking**® to check the most up-to-date status of your package. Sign up for **Informed Delivery**® to digitally preview the address side of your incoming letter-sized mail and manage your packages scheduled to arrive soon! To update how frequently you receive emails from USPS, log in to your **USPS.com** account.

Want regular updates on your package? **Set up text alerts**.



   

Download USPS Mobile®

 

---

**J.A. 140**

Delivery date and time depends on origin, destination and Post Office™ acceptance time and is subject to change. Delivery options are subject to restrictions and may not be available for your item.

This is an automated email; please do not reply to this message. This message is for the designated recipient only and may contain privileged, proprietary, or otherwise private information. If you have received it in error, please delete. Any other use of the email by you is prohibited.

Copyright © 2017. All rights reserved.

**J.A. 141**

**UNITED STATES POSTAL SERVICE**

May 19, 2020

Dear Richard Gottlieb:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 4298 0450 9923 38**.

| Item Details | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | May 18, 2020, 11:50 am |
| **Location:** | TAMPA, FL 33609 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | Jessi L  Phillips Lorenzo |

| Shipment Details | |
|---|---|
| **Weight:** | 3.1oz |

| Recipient Signature |
|---|

Signature of Recipient:

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**J.A. 142**

**UNITED STATES**
**POSTAL SERVICE**

May 22, 2020

Dear Richard Gottlieb:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 4298 0450 9930 14**.

| Item Details | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | May 22, 2020, 10:09 am |
| **Location:** | LAC DU FLAMBEAU, WI 54538 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | Joseph Wildcat  Sr |

| Shipment Details | |
|---|---|
| **Weight:** | 3.1oz |

| Destination Delivery Address | |
|---|---|
| **Street Address:** | 418 LITTLE PINES RD |
| **City, State ZIP Code:** | LAC DU FLAMBEAU, WI 54538-9124 |

| Recipient Signature |
|---|

| | |
|---|---|
| Signature of Recipient: | *[signature]* |
| Address of Recipient: | *P.O. Box 67* |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**J.A. 143**

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

In re
BRIAN W. COUGHLIN,
                    Debtor

IN PROCEEDINGS UNDER
CHAPTER 13
CASE NO. 19-14142-FJB

## AFFIDAVIT OF DEBTOR REGARDING THE ENUMERATION OF DAMAGES IN SUPPORT OF MOTION OF THE DEBTOR TO ENFORCE THE AUTOMATIC STAY

NOW COMES the Debtor, Brian W. Coughlin, and in support of the Motion of the Debtor to Enforce the Automatic stay, hereby takes oath and deposes and states as follows:

1. My name is Brian W. Coughlin. I am the Debtor in the above-captioned Chapter 13 proceeding. I make this affidavit based upon my personal knowledge of the facts and events contained herein.

2. Prior to the commencement of this Chapter 13 case on December 4, 2019, I had many debts owed to a number of creditors, including a number of short-term debts that I contracted over the Internet as "pay day" loans. Among these "pay day" loans obligations that I listed on my Bankruptcy Schedules was one owed to "LendGreen".

3. As I recall, I originally borrowed the amount of $1,100.00 on or about July of 2019. My account number with LendGreen ended with the digits 3572. As of the date of my bankruptcy filing, I owed LendGreen the sum of $1,594.91.

4. Notwithstanding having received notice from both my lawyer and the bankruptcy court that I had filed Chapter 13 and was proposing to pay creditors 100 cents on the dollar through my Chapter 13 Plan, I still continue to receive emails telephone calls and text message is from LendGreen.

**J.A. 144**

5. Each time I was contacted I told the LendGreen representative that I had filed for bankruptcy and that they should contact my lawyer instead of me and gave them my lawyer's telephone number and email address if they had any questions.

6. However, despite these efforts, I would still regularly and during some weeks on nearly a daily basis continue to receive these communications from LendGreen looking to get me to send them more money on the debt I owed them.

7. All of these incessant collections' efforts by LendGreen took a tremendous toll on me emotionally. I suffer from Type 1 Diabetes, the genetically-related form of the illness, as well as severe clinical depression. The stress of my need to file for bankruptcy protection was compounded and escalated by the regular and never-ending telephone calls, emails and voicemails from LendGreen. Ultimately, I became so miserable with this state of affairs that I simply could not rouse myself to even attend my original Meeting of Creditors on January 15, 2020, and even started having suicidal thoughts caused by LendGreen's hectoring and harassment.

8. Even though my lawyer was able to get the Chapter 13 Trustee to agree to continue the Meeting of Creditors until March 18, 2020, I had to then deal with the further emotional stress of now deal with the Chapter 13 Trustee's Motion to Dismiss because of my inability to attend that original Meeting in the first place.

9. It seemed like every time I got comfortable with my decision to enter into Chapter 13, I would be hassled by yet another phone call, or email, or more voicemails from LendGreen.

10. There were weeks of calls from LendGreen after I filed for bankruptcy protection, that I was constantly being reminded me of what I didn't want to even think about any longer. I had hit rock bottom and I was done with all of this, including my life.

**J.A. 145**

11. On February 9, 2020, I attempted suicide due to my overwhelming stress, anxiety and lack of hope for a better life. I had such an overwhelming sense of nothingness in my mind about finances and life that it was a culmination of those things that sent me over the edge and intentionally overdosing on medications.

12. I went into in-hospital rehabilitative therapy at Massachusetts General Hospital in Boston after I was resuscitated for from my attempt to take my own life due to the stresses induced by LendGreen's collections behavior from February 10, 2020 until February 20, 2020, after attempting to take my own life, amounting to eleven (11) days while I recovered. As a result of my hospitalization, I incurred Hospital and related medical bills amounting to a total of $76,828.33. A true and accurate copy of the hospital and medical bills I incurred is attached hereto as Exhibit "A"

13. Furthermore, because of my hospitalization caused by the actions of LendGreen, I was forced to use sick leave and vacation time from my employer, the City of Boston, amounting to a loss of $9,011.55. A true and accurate copy of my pay statement demonstrating this loss is attached hereto as Exhibit "B".

14. I have received from LendGreen since the start of my bankruptcy case on December 4, 2019 to date, approximately thirty-five (35) individual emails, text messages, and voicemail messages, all seeking recovery each once of which caused me to suffer further consternation and distress, manifested first by sleepless nights, rising anxiety and depression, and leading me to attempt to take my own life. These collection attempts by LendGreen did not stop even while I was being hospitalized but continued until March of 2020 when my lawyer, Richard Gottlieb, directly contacted LendGreen's collections manager by telephone directing them to cease and desist their collections actions.

**J.A. 146**

15. In total, I estimate that for eighty-seven (87) days after the filing of my Chapter 13 case was filed on December 4, 2019, LendGreen's consistent, continuous and aggressive collections behavior impacted my mind on a daily basis, to the point where I felt I had no choice but to attempt to end my own life. I believe that the emotional distress caused to me by LendGreen's collections activities caused me to suffer emotional distress damages of at least $1,000 for each day of that time, for a total of $87,000.00.

16. Consequently, the total of my damages therefore amounts to the aggregate sum of $172,839.88, which I believe would fully compensate me for the losses and emotional distress that I have suffered at the hands of LendGreen and its related entities.

THE FOREGOING STATEMENTS ARE TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND BELIEF. SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ___9TH___ DAY OF _____July_____, 2020.

_____
Brian W. Coughlin, Affiant

# Exhibit "A"

Partners HealthCare
399 Revolution Drive STE 402
Somerville, MA 02145-1462

Patient Name: Coughlin, Brian W
Account: 664200
Date: 05/07/20

BRIAN W COUGHLIN
835 SARATOGA ST
APT 1
EAST BOSTON MA 02128-3909

Visit Coverages:
Blue Cross Blue Shield - Blue Cross Ma Ppo Epo

This is an itemization of charges, payments and adjustments for:

Patient:     Coughlin, Brian W
Account:     6117633955
Location     MGH Main Campus

Admission Date:     02/10/20
Discharge Date:     02/14/20
Department:

Total Account Balance: $312.00

Professional Charges

| Date of Service | Billing Provider | Procedure Code | PB Procedure Description | Qty | Amount |
|---|---|---|---|---|---|
| 02/10/2020 | FLORES, EFREN J | 71045 | CHG RADIOLOGIC EXAM CHEST SINGLE VIEW | 1 | 37.00 |
| 02/10/2020 | GRENNAN, KERRY B | 99283 | PR ED VISIT, LEVEL 3, MODERATE MEDICAL DECISION MAKING, CXWD | 1 | 245.00 |
| 02/10/2020 | SONIS, JONATHAN D | 99291 | PR CRITICAL CARE, E/M 30-74 MINUTES | 1 | 885.00 |
| 02/10/2020 | WILCOX, SUSAN R | 76604 | CHG US, CHEST, REAL TIME | 1 | 109.00 |
| 02/10/2020 | WILCOX, SUSAN R | 76857 | CHG SONO PELVIS LIMITED | 1 | 100.00 |
| 02/10/2020 | WILCOX, SUSAN R | 93308 | PR ECHO HEART XTHORACIC, LIMITED | 1 | 103.00 |
| 02/10/2020 | WOOD, MALISSA J | 93010 | PR ELECTROCARDIOGRAM REPORT | 1 | 34.00 |
| 02/11/2020 | GRENNAN, KERRY B | 99231 | PR SBSQ HOSPITAL CARE/DAY 15 MINUTES | 1 | 157.00 |
| 02/11/2020 | GUINEY, TIMOTHY EDWARD | 99223 | PR INITIAL HOSP CARE, LEVEL 3, HIGH MDM - CXWD | 1 | 808.00 |
| 02/11/2020 | HUTTER, ADOLPH MATTHEW | 93010 | PR ELECTROCARDIOGRAM REPORT | 1 | 34.00 |

This is itemization of services for the time period indicated is provided at your request. Please call 617-726-3884 if you have any questions or need assistance with your account.

Page 1 of 2

GID: 664200, 02/10/20

**J.A. 149**

| Date of Service | Billing Provider | Procedure Code | PB Procedure Description | Qty | Amount |
|---|---|---|---|---|---|
| 02/11/2020 | KING, FRANKLIN | 99223 | PR INITIAL HOSP CARE, LEVEL 3, HIGH MDM - CXWD | 1 | 808.00 |
| 02/11/2020 | SONG, ZIRUI | 99223 | PR INITIAL HOSPITAL CARE/DAY 70 MINUTES | 1 | 808.00 |
| 02/12/2020 | GRENNAN, KERRY B | 99231 | PR SBSQ HOSPITAL CARE/DAY 15 MINUTES | 1 | 157.00 |
| 02/12/2020 | SONG, ZIRUI | 99233 | PR SBSQ HOSPITAL CARE/DAY 35 MINUTES | 1 | 415.00 |
| 02/13/2020 | KING, FRANKLIN | 99233 | PR SBSQ HOSPITAL CARE/DAY 35 MINUTES | 1 | 415.00 |
| 02/13/2020 | LYNCH, CASEY ANNE | 99232 | PR SBSQ HOSPITAL CARE/DAY 25 MINUTES | 1 | 291.00 |
| 02/13/2020 | SARMA, AMY A | 99232 | PR SBSQ HOSPITAL CARE/DAY 25 MINUTES | 1 | 291.00 |
| 02/13/2020 | SONG, ZIRUI | 99232 | PR SBSQ HOSPITAL CARE/DAY 25 MINUTES | 1 | 291.00 |
| 02/14/2020 | LYNCH, CASEY ANNE | 99232 | PR SBSQ HOSPITAL CARE/DAY 25 MINUTES | 1 | 291.00 |
| 02/14/2020 | SONG, ZIRUI | 99231 | PR SBSQ HOSPITAL CARE/DAY 15 MINUTES | 1 | 157.00 |

Total professional charges:                                                                6,436.00

**Professional Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 04/22/20 | Blue Cross Blue Shield Payments | -3,552.49 |
| 04/22/20 | Blue Cross Blue Shield Adjustments | -2,571.51 |

Total professional payments and adjustments:                                          -6,124.00

**J.A. 150**

PARTNERS.   FOUNDED BY BRIGHAM AND WOMEN'S HOSPITAL
AND MASSACHUSETTS GENERAL HOSPITAL
399 Revolution Drive STE 402
Somerville, MA 02145-1462

Brian W Coughlin
835 SARATOGA ST
APT 1
EAST BOSTON, MA 02128
United States of America

Visit Coverages:
Blue Cross Blue Shield - Blue Cross Ma Ppo Epo

This is an itemization of charges, payments and adjustments for:

| | | | |
|---|---|---|---|
| Patient: | Coughlin, Brian W | Admission Date: | 02/14/20 |
| Account: | 6118056145 | Discharge Date: | 02/20/20 |
| Location | MGH Main Campus | Department: | MGH ADMISSIONS |

**Total Account Balance: $0.00**

**Hospital Charges**

| Date of Service | Rev Code | Procedure Code | Description | QTY | Amount |
|---|---|---|---|---|---|
| 02/14/2020 | 0124 | | HC R&B - SEMI-PRIVATE TWO BED (MEDICAL OR GENERAL) - PSYCHIATRIC | 1 | 4,583.00 |
| 02/14/2020 | 0250 | | PSEUDOEPHEDRINE 30 MG TAB | 1 | 0.09 |
| 02/14/2020 | 0250 | J1815 | INSULIN GLARGINE PER 5 UNITS | 6 | 10.00 |
| 02/14/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.63 |
| 02/14/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 3 | 2.80 |
| 02/15/2020 | 0124 | | HC R&B - SEMI-PRIVATE TWO BED (MEDICAL OR GENERAL) - PSYCHIATRIC | 1 | 4,583.00 |
| 02/15/2020 | 0250 | | ACETAMINOPHEN 325 MG TAB | 2 | 0.20 |
| 02/15/2020 | 0250 | | ACETAMINOPHEN 325 MG TAB | 2 | 0.20 |
| 02/15/2020 | 0250 | | PSEUDOEPHEDRINE 30 MG TAB | 1 | 0.09 |
| 02/15/2020 | 0250 | | PSEUDOEPHEDRINE 30 MG TAB | 1 | 0.09 |
| 02/15/2020 | 0250 | | SERTRALINE 50 MG TAB | 1 | 1.09 |
| 02/15/2020 | 0250 | J1815 | INSULIN GLARGINE PER 5 UNITS | 6 | 10.00 |
| 02/15/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.70 |
| 02/15/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 2.33 |
| 02/15/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.63 |
| 02/15/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.86 |
| 02/15/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.93 |

This is itemization of services for the time period indicated is provided at your request. Please call 617-726-3884 if you have any questions or need assistance with your account.

Page 1 of 3

GID: 664200, 02/14/20

| Date of Service | Rev Code | Procedure Code | Description | QTY | Amount |
|---|---|---|---|---|---|
| 02/15/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.86 |
| 02/16/2020 | 0124 | | HC R&B - SEMI-PRIVATE TWO BED (MEDICAL OR GENERAL) - PSYCHIATRIC | 1 | 4,583.00 |
| 02/16/2020 | 0250 | | ACETAMINOPHEN 325 MG TAB | 2 | 0.20 |
| 02/16/2020 | 0250 | | ACETAMINOPHEN 325 MG TAB | 2 | 0.20 |
| 02/16/2020 | 0250 | | ACETAMINOPHEN 325 MG TAB | 2 | 0.20 |
| 02/16/2020 | 0250 | | LEVOTHYROXINE 100 MCG TAB | 1 | 5.17 |
| 02/16/2020 | 0250 | | PSEUDOEPHEDRINE 30 MG TAB | 1 | 0.09 |
| 02/16/2020 | 0250 | | PSEUDOEPHEDRINE 30 MG TAB | 1 | 0.09 |
| 02/16/2020 | 0250 | | SERTRALINE 50 MG TAB | 1 | 1.09 |
| 02/16/2020 | 0250 | J1815 | INSULIN GLARGINE PER 5 UNITS | 6 | 10.00 |
| 02/16/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.93 |
| 02/16/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.86 |
| 02/16/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.47 |
| 02/16/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.86 |
| 02/16/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.40 |
| 02/16/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.93 |
| 02/16/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.47 |
| 02/17/2020 | 0124 | | HC R&B - SEMI-PRIVATE TWO BED (MEDICAL OR GENERAL) - PSYCHIATRIC | 1 | 4,583.00 |
| 02/17/2020 | 0250 | | ACETAMINOPHEN 325 MG TAB | 2 | 0.20 |
| 02/17/2020 | 0250 | | ACETAMINOPHEN 325 MG TAB | 2 | 0.20 |
| 02/17/2020 | 0250 | | IBUPROFEN 400 MG TAB | 1 | 0.28 |
| 02/17/2020 | 0250 | | LEVOTHYROXINE 100 MCG TAB | 1 | 5.17 |
| 02/17/2020 | 0250 | | PSEUDOEPHEDRINE 30 MG TAB | 1 | 0.09 |
| 02/17/2020 | 0250 | | PSEUDOEPHEDRINE 30 MG TAB | 1 | 0.09 |
| 02/17/2020 | 0250 | | SERTRALINE 50 MG TAB | 1 | 1.09 |
| 02/17/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.47 |
| 02/17/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.93 |
| 02/17/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.93 |
| 02/17/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.93 |
| 02/17/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.93 |
| 02/17/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 2.33 |
| 02/17/2020 | 0430 | 97150 | HC THERAPEUTIC PROCEDURES GROUP 2/> INDIVIDUALS | 1 | 123.00 |
| 02/17/2020 | 0434 | 97165 | HC OCCUPATIONAL THERAPY EVALUATION, LOW COMPLEXITY | 1 | 506.00 |
| 02/18/2020 | 0124 | | HC R&B - SEMI-PRIVATE TWO BED (MEDICAL OR GENERAL) - PSYCHIATRIC | 1 | 4,583.00 |
| 02/18/2020 | 0250 | | IBUPROFEN 400 MG TAB | 1 | 0.28 |
| 02/18/2020 | 0250 | | IBUPROFEN 400 MG TAB | 1 | 0.28 |
| 02/18/2020 | 0250 | | IBUPROFEN 400 MG TAB | 1 | 0.28 |
| 02/18/2020 | 0250 | | LEVOTHYROXINE 100 MCG TAB | 1 | 5.17 |
| 02/18/2020 | 0250 | | SERTRALINE 50 MG TAB | 1 | 1.09 |
| 02/18/2020 | 0430 | 97150 | HC THERAPEUTIC PROCEDURES GROUP 2/> INDIVIDUALS | 1 | 123.00 |
| 02/19/2020 | 0124 | | HC R&B - SEMI-PRIVATE TWO BED (MEDICAL OR GENERAL) - PSYCHIATRIC | 1 | 4,583.00 |
| 02/19/2020 | 0250 | | IBUPROFEN 400 MG TAB | 1 | 0.28 |
| 02/19/2020 | 0250 | | LEVOTHYROXINE 100 MCG TAB | 1 | 5.17 |
| 02/19/2020 | 0250 | | SERTRALINE 50 MG TAB | 1 | 1.09 |
| 02/19/2020 | 0430 | 97150 | HC THERAPEUTIC PROCEDURES GROUP 2/> INDIVIDUALS | 1 | 123.00 |
| 02/20/2020 | 0250 | | IBUPROFEN 400 MG TAB | 2 | 0.55 |

This is itemization of services for the time period indicated is provided at your request. Please call 617-726-3884 if you have any questions or need assistance with your account.

Page 2 of 3

GID: 664200, 02/14/20

**J.A. 152**

Case 19-14142   Doc 60   Filed 07/07/20   Entered 07/07/20 12:56:13   Desc Main
Document      Page 10 of 20

| Date of Service | Rev Code | Procedure Code | Description | QTY | Amount |
|---|---|---|---|---|---|
| 02/20/2020 | 0250 | | LEVOTHYROXINE 100 MCG TAB | 1 | 5.17 |
| 02/20/2020 | 0250 | | SERTRALINE 50 MG TAB | 1 | 1.09 |
| Total hospital charges: | | | | | 28,467.55 |

**Hospital Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 03/11/20 | Blue Cross Blue Shield Payments | -8,880.00 |
| 03/11/20 | Blue Cross Blue Shield Adjustments | -19,587.55 |
| Total hospital payments and adjustments: | | -28,467.55 |

This is itemization of services for the time period indicated is provided at your request. Please call 617-726-3884 if you have any questions or need assistance with your account.

Page 3 of 3

GID: 664200, 02/14/20

**J.A. 153**

PARTNERS | AND MASSACHUSETTS GENERAL HOSPITAL



Brian W Coughlin
835 SARATOGA ST
APT 1
EAST BOSTON, MA 02128
United States of America

Visit Coverages:
Blue Cross Blue Shield - Blue Cross Ma Ppo Epo

This is an itemization of charges, payments and adjustments for:

| | | | |
|---|---|---|---|
| Patient: | Coughlin, Brian W | Admission Date: | 02/14/20 |
| Account: | 6118110389 | Discharge Date: | 02/20/20 |
| Location | MGH Main Campus | Department: | |

Total Account Balance: $0.00

### Professional Charges

| Date of Service | Billing Provider | Procedure Code | PB Procedure Description | Qty | Amount |
|---|---|---|---|---|---|
| 02/17/2020 | O'CONNOR, THAO T | 99233 | PR SBSQ HOSPITAL CARE/DAY 35 MINUTES | 1 | 415.00 |
| 02/18/2020 | O'CONNOR, THAO T | 99233 | PR SBSQ HOSPITAL CARE/DAY 35 MINUTES | 1 | 415.00 |
| 02/19/2020 | O'CONNOR, THAO T | 99231 | PR SBSQ HOSPITAL CARE/DAY 15 MINUTES | 1 | 157.00 |

Total professional charges:                                                987.00

### Professional Payments and Adjustments

| Date | Description | Amount |
|---|---|---|
| 03/04/20 | Blue Cross Blue Shield Payments | -252.67 |
| 03/04/20 | Blue Cross Blue Shield Adjustments | -734.33 |
| Total professional payments and adjustments: | | -987.00 |

This is itemization of services for the time period indicated is provided at your request. Please call 617-726-3884 if you have any questions or need assistance with your account.

Page 1 of 1

GID: 664200, 02/14/20

**J.A. 154**

**Partners HealthCare**
399 Revolution Drive STE 402
Somerville, MA 02145-1462

Patient: Coughlin, Brian W
Account: 664200
Date: 05/07/20

Brian W Coughlin
835 SARATOGA ST
APT 1
EAST BOSTON, MA 02128
United States of America

Visit Coverages:
Blue Cross Blue Shield - Blue Cross Ma Ppo Epo

This is an itemization of charges, payments and adjustments for:

| Patient: | Coughlin,Brian W | Admission Date: | 02/10/20 |
| Account: | 6117545974 | Discharge Date: | 02/14/20 |
| Location | MGH Main Campus | Department: | MGH EMERGENCY |

**Total Account Balance: $0.00**

**Hospital Charges**

| Date of Service | Rev Code | Procedure Code | Description | QTY | Amount |
|---|---|---|---|---|---|
| 02/10/2020 | 0120 | | HC R&B - SEMI-PRIVATE TWO BED (MEDICAL OR GENERAL) - GENERAL CLASSIFICATION | 1 | 4,583.00 |
| 02/10/2020 | 0250 | | NALOXONE PER 1 MG | 1 | 79.50 |
| 02/10/2020 | 0250 | J1815 | INSULIN GLARGINE PER 5 UNITS | 4 | 7.14 |
| 02/10/2020 | 0250 | J2310 | NALOXONE PER 1 MG | 1 | 1.82 |
| 02/10/2020 | 0250 | J2310 | NALOXONE PER 1 MG | 1 | 1.82 |
| 02/10/2020 | 0250 | J2310 | NALOXONE PER 1 MG | 1 | 1.82 |
| 02/10/2020 | 0250 | J2310 | NALOXONE PER 1 MG | 1 | 1.82 |
| 02/10/2020 | 0250 | J2310 | NALOXONE PER 1 MG | 1 | 36.33 |
| 02/10/2020 | 0250 | J2310 | NALOXONE PER 1 MG | 4 | 457.73 |
| 02/10/2020 | 0250 | J3475 | MAGNESIUM SULFATE 2 GRAM/50 ML (4%) PGBK | 4 | 39.74 |
| 02/10/2020 | 0250 | J3475 | MAGNESIUM SULFATE 2 GRAM/50 ML (4%) PGBK | 4 | 39.74 |
| 02/10/2020 | 0250 | J3490 | DILTIAZEM 5 MG/ML SOLN | 1 | 3.69 |
| 02/10/2020 | 0250 | J3490 | DILTIAZEM 5 MG/ML SOLN | 1 | 2.46 |
| 02/10/2020 | 0250 | J3490 | DILTIAZEM 5 MG/ML SOLN | 1 | 4.91 |
| 02/10/2020 | 0250 | J3490 | DILTIAZEM 5 MG/ML SOLN | 1 | 1.23 |
| 02/10/2020 | 0250 | J3490 | DILTIAZEM 5 MG/ML SOLN 10 ML VIAL | 1 | 29.01 |

This is itemization of services for the time period indicated is provided at your request. Please call 617-726-3884 if you have any questions or need assistance with your account.

GID: 664200, 02/10/20

**J.A. 155**

Case 19-14142   Doc 60   Filed 07/07/20   Entered 07/07/20 12:56:13   Desc Main
Document      Page 13 of 20

| Date of Service | Rev Code | Procedure Code | | QTY | Amount |
|---|---|---|---|---|---|
| 02/10/2020 | 0250 | J3490 | METOPROLOL TARTRATE 5 MG/5 ML SOLN | 1 | 1.21 |
| 02/10/2020 | 0250 | J3490 | METOPROLOL TARTRATE 5 MG/5 ML SOLN | 1 | 1.21 |
| 02/10/2020 | 0250 | J3490 | METOPROLOL TARTRATE 5 MG/5 ML SOLN | 1 | 1.21 |
| 02/10/2020 | 0250 | J3490 | METOPROLOL TARTRATE 5 MG/5 ML SOLN | 1 | 1.21 |
| 02/10/2020 | 0250 | J7050 | NS PER 250 ML J7050, PER 500 ML J7040, PER 1000 ML J7030 | 1 | 7.65 |
| 02/10/2020 | 0250 | J7050 | NS PER 250 ML J7050, PER 500 ML J7040, PER 1000 ML J7030 | 2 | 7.65 |
| 02/10/2020 | 0260 | 96361 | HC IV INFUS HYDRATION EA ADDITIONAL HOUR - 96361 (AKA ...96361) | 2 | 392.00 |
| 02/10/2020 | 0260 | 96365 | HC IV INFUS NON-CHEMO INITIAL UP TO 1 HR - 96365 (AKA ...96365) | 1 | 877.00 |
| 02/10/2020 | 0260 | 96367 | HC IV INFUS NON-CHEMO EA ADD'L SEQ DIFF DRUG UP TO 1 HR - 96367 (AKA ...96367) | 1 | 414.00 |
| 02/10/2020 | 0260 | 96375 | HC THERAPEUTIC INJECTION IV PUSH EACH NEW DRUG (AKA ...96375) | 1 | 299.00 |
| 02/10/2020 | 0260 | 96376 | HC THER PROPH/DX NJX EA SEQL IV PUSH SBST/DRUG FAC (AKA ...96376) | 3 | 873.00 |
| 02/10/2020 | 0300 | 36415 | HC COLLECTION VENOUS BLOOD VENIPUNCTURE (AKA ...36415) | 1 | 16.00 |
| 02/10/2020 | 0300 | 80048 | HC BASIC METABOLIC PANEL CALCIUM TOTAL | 1 | 120.00 |
| 02/10/2020 | 0300 | 80048 | HC BASIC METABOLIC PANEL CALCIUM TOTAL | 1 | 120.00 |
| 02/10/2020 | 0300 | 80048 | HC BASIC METABOLIC PANEL CALCIUM TOTAL | 1 | 120.00 |
| 02/10/2020 | 0300 | 80048 | HC BASIC METABOLIC PANEL CALCIUM TOTAL | 1 | 120.00 |
| 02/10/2020 | 0300 | 80178 | HC DRUG SCREEN QUALITATIVE LITHIUM | 1 | 94.00 |
| 02/10/2020 | 0300 | 82375 | HC CARBOXYHEMOGLOBIN QUANTITATIVE | 1 | 176.00 |
| 02/10/2020 | 0300 | 82550 | HC CREATINE KINASE TOTAL | 1 | 92.00 |
| 02/10/2020 | 0300 | 82550 | HC CREATINE KINASE TOTAL | 1 | 92.00 |
| 02/10/2020 | 0300 | 82803 | HC BLOOD GASES ANY COMBINATION PH PCO2 PO2 CO2 HCO3 | 1 | 278.00 |
| 02/10/2020 | 0300 | 82803 | HC BLOOD GASES ANY COMBINATION PH PCO2 PO2 CO2 HCO3 | 1 | 278.00 |
| 02/10/2020 | 0300 | 82803 | HC BLOOD GASES ANY COMBINATION PH PCO2 PO2 CO2 HCO3 | 1 | 278.00 |
| 02/10/2020 | 0300 | 82803 | HC BLOOD GASES ANY COMBINATION PH PCO2 PO2 CO2 HCO3 | 1 | 278.00 |
| 02/10/2020 | 0300 | 83690 | HC ASSAY OF LIPASE | 1 | 97.00 |
| 02/10/2020 | 0300 | 83735 | HC ASSAY OF MAGNESIUM | 1 | 94.00 |
| 02/10/2020 | 0300 | 83735 | HC ASSAY OF MAGNESIUM | 1 | 94.00 |
| 02/10/2020 | 0300 | 83735 | HC ASSAY OF MAGNESIUM | 1 | 94.00 |
| 02/10/2020 | 0300 | 84100 | HC ASSAY OF PHOSPHORUS INORGANIC | 1 | 69.00 |
| 02/10/2020 | 0300 | 84100 | HC ASSAY OF PHOSPHORUS INORGANIC | 1 | 69.00 |
| 02/10/2020 | 0300 | 84100 | HC ASSAY OF PHOSPHORUS INORGANIC | 1 | 69.00 |
| 02/10/2020 | 0300 | 84443 | HC ASSAY OF THYROID STIMULATING HORMONE TSH | 1 | 241.00 |
| 02/10/2020 | 0300 | 85025 | HC BLOOD COUNT COMPLETE AUTO&AUTO DIFRNTL WBC | 1 | 115.00 |
| 02/10/2020 | 0300 | 85027 | HC BLOOD COUNT COMPLETE AUTOMATED | 1 | 92.00 |
| 02/10/2020 | 0300 | 85610 | HC PROTHROMBIN TIME | 1 | 57.00 |
| 02/10/2020 | 0300 | G0480 | HC ALCOHOL (QUANTITATIVE ALCOHOLS) | 1 | 103.00 |
| 02/10/2020 | 0300 | G0480 | HC DRUG SCREEN ANALGESICS NON-OPIOID 1 OR 2 (ACETAMINOPHEN) | 1 | 101.00 |
| 02/10/2020 | 0300 | G0480 | HC DRUG SCREEN ANALGESICS NON-OPIOID 1 OR 2 | 1 | 101.00 |
| 02/10/2020 | 0301 | 80076 | HC HEPATIC FUNCTION PANEL | 1 | 117.00 |
| 02/10/2020 | 0301 | 80076 | HC HEPATIC FUNCTION PANEL | 1 | 117.00 |

This is itemization of services for the time period indicated is provided at your request. Please call 617-726-3884 if you have any questions or need assistance with your account.

Page 2 of 5

GID: 664200, 02/10/20

Case 19-14142   Doc 60   Filed 07/07/20   Entered 07/07/20 12:56:13   Desc Main
Document      Page 14 of 20

| Date of Service | Rev Code | Procedure Code | Description | QTY | Amount |
|---|---|---|---|---|---|
| 02/10/2020 | 0301 | 80307 | HC PRESUMPTIVE DRUG TEST BY INSTRUMENT CHEMISTRY ANALYZER | 1 | 656.00 |
| 02/10/2020 | 0301 | 80307 | HC PRESUMPTIVE DRUG TEST BY INSTRUMENT CHEMISTRY ANALYZER | 1 | 656.00 |
| 02/10/2020 | 0324 | 71045 | HC RADIOLOGIC EXAM CHEST SINGLE VIEW | 1 | 294.00 |
| 02/10/2020 | 0400 | 76604 | HC US CHEST REAL TIME W/IMAGE DOCUMENTATION (AKA ...76604) | 1 | 505.00 |
| 02/10/2020 | 0400 | 76857 | HC US PELVIC NONOBSTETRIC IMAGE DCMTN LIMITED/F/U (AKA ...76857) | 1 | 645.00 |
| 02/10/2020 | 0450 | 99291 | HC CRITICAL CARE ILL/INJURED PATIENT INIT 30-74 MIN (AKA ...99291) | 1 | 3,910.00 |
| 02/10/2020 | 0483 | 93308 | HC ECHO TRANSTHORC R-T 2D W/WO M-MODE REC F-UP/LMTD (AKA ...93308) | 1 | 1,227.00 |
| 02/10/2020 | 0730 | 93005 | HC ECG ROUTINE ECG W/LEAST 12 LDS TRCG ONLY W/O I&R | 1 | 247.00 |
| 02/10/2020 | 0730 | 93005 | HC ECG ROUTINE ECG W/LEAST 12 LDS TRCG ONLY W/O I&R | 1 | 247.00 |
| 02/10/2020 | 0730 | 93005 | HC ECG ROUTINE ECG W/LEAST 12 LDS TRCG ONLY W/O I&R | 1 | 247.00 |
| 02/10/2020 | 0730 | 93005 | HC ECG ROUTINE ECG W/LEAST 12 LDS TRCG ONLY W/O I&R | 1 | 247.00 |
| 02/10/2020 | 0730 | 93005 | HC ECG ROUTINE ECG W/LEAST 12 LDS TRCG ONLY W/O I&R | 1 | 247.00 |
| 02/10/2020 | 0730 | 93005 | HC ECG ROUTINE ECG W/LEAST 12 LDS TRCG ONLY W/O I&R | 1 | 247.00 |
| 02/10/2020 | 0730 | 93005 | HC ECG ROUTINE ECG W/LEAST 12 LDS TRCG ONLY W/O I&R | 1 | 247.00 |
| 02/10/2020 | 0730 | 93005 | HC ECG ROUTINE ECG W/LEAST 12 LDS TRCG ONLY W/O I&R | 1 | 247.00 |
| 02/10/2020 | 0730 | 93005 | HC ECG ROUTINE ECG W/LEAST 12 LDS TRCG ONLY W/O I&R | 1 | 247.00 |
| 02/11/2020 | 0120 | | HC R&B - SEMI-PRIVATE TWO BED (MEDICAL OR GENERAL) - GENERAL CLASSIFICATION | 1 | 4,583.00 |
| 02/11/2020 | 0250 | | NICOTINE 21 MG/24 HR PT24 | 1 | 6.81 |
| 02/11/2020 | 0250 | | PROPRANOLOL 10 MG TAB | 1 | 0.69 |
| 02/11/2020 | 0250 | | PROPRANOLOL 10 MG TAB | 1 | 0.69 |
| 02/11/2020 | 0250 | J1650 | ENOXAPARIN 40 MG/0.4 ML SYRG | 4 | 23.91 |
| 02/11/2020 | 0250 | J1815 | INSULIN GLARGINE PER 5 UNITS | 4 | 7.14 |
| 02/11/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.47 |
| 02/11/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.23 |
| 02/11/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.47 |
| 02/11/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.70 |
| 02/11/2020 | 0250 | J2060 | LORAZEPAM PER 2 MG | 1 | 3.29 |
| 02/11/2020 | 0250 | J2060 | LORAZEPAM PER 2 MG | 1 | 3.29 |
| 02/11/2020 | 0250 | J2060 | LORAZEPAM PER 2 MG | 1 | 3.29 |
| 02/11/2020 | 0250 | J3475 | MAGNESIUM SULFATE 2 GRAM/50 ML (4%) PGBK | 4 | 33.79 |
| 02/11/2020 | 0250 | J3490 | METOPROLOL TARTRATE 5 MG/5 ML SOLN | 1 | 2.42 |
| 02/11/2020 | 0250 | J3490 | METOPROLOL TARTRATE 5 MG/5 ML SOLN | 1 | 2.42 |
| 02/11/2020 | 0250 | J3490 | METOPROLOL TARTRATE 5 MG/5 ML SOLN | 1 | 2.42 |
| 02/11/2020 | 0250 | J3490 | METOPROLOL TARTRATE 5 MG/5 ML SOLN | 1 | 2.42 |
| 02/11/2020 | 0300 | 80048 | HC BASIC METABOLIC PANEL CALCIUM TOTAL | 1 | 120.00 |
| 02/11/2020 | 0300 | 82375 | HC CARBOXYHEMOGLOBIN QUANTITATIVE | 1 | 176.00 |
| 02/11/2020 | 0300 | 82550 | HC CREATINE KINASE TOTAL | 1 | 92.00 |
| 02/11/2020 | 0300 | 82550 | HC CREATINE KINASE TOTAL | 1 | 92.00 |

This is itemization of services for the time period indicated is provided at your request. Please call 617-726-3884 if you have any questions or need assistance with your account.

Page 3 of 5

GID: 664200, 02/10/20

**J.A. 157**

| Date of Service | Rev Code | Procedure Code | Document | QTY | Amount |
|---|---|---|---|---|---|
| 02/11/2020 | 0300 | 82803 | HC BLOOD GASES ANY COMBINATION PH PCO2 PO2 CO2 HCO3 | 1 | 278.00 |
| 02/11/2020 | 0300 | 82962 | HC GLUC BLD GLUC MNTR DEV CLEARED FDA SPEC HOME USE | 1 | 32.00 |
| 02/11/2020 | 0300 | 82962 | HC GLUC BLD GLUC MNTR DEV CLEARED FDA SPEC HOME USE | 1 | 32.00 |
| 02/11/2020 | 0300 | 83735 | HC ASSAY OF MAGNESIUM | 1 | 94.00 |
| 02/11/2020 | 0300 | 84100 | HC ASSAY OF PHOSPHORUS INORGANIC | 1 | 69.00 |
| 02/11/2020 | 0300 | 85025 | HC BLOOD COUNT COMPLETE AUTO&AUTO DIFRNTL WBC | 1 | 115.00 |
| 02/11/2020 | 0300 | 85610 | HC PROTHROMBIN TIME | 1 | 57.00 |
| 02/11/2020 | 0301 | 80076 | HC HEPATIC FUNCTION PANEL | 1 | 117.00 |
| 02/11/2020 | 0730 | 93005 | HC ECG ROUTINE ECG W/LEAST 12 LDS TRCG ONLY W/O I&R | 1 | 247.00 |
| 02/12/2020 | 0120 | | HC R&B - SEMI-PRIVATE TWO BED (MEDICAL OR GENERAL) - GENERAL CLASSIFICATION | 1 | 4,583.00 |
| 02/12/2020 | 0250 | | NICOTINE 21 MG/24 HR PT24 | 1 | 6.81 |
| 02/12/2020 | 0250 | | POTASSIUM, SODIUM PHOSPHATES 280-160-250 MG PWPK | 1 | 1.73 |
| 02/12/2020 | 0250 | | POTASSIUM, SODIUM PHOSPHATES 280-160-250 MG PWPK | 1 | 1.73 |
| 02/12/2020 | 0250 | | POTASSIUM, SODIUM PHOSPHATES 280-160-250 MG PWPK | 1 | 1.73 |
| 02/12/2020 | 0250 | | PROPRANOLOL 40 MG TAB | 1 | 2.16 |
| 02/12/2020 | 0250 | | PROPRANOLOL 40 MG TAB | 1 | 2.16 |
| 02/12/2020 | 0250 | | PROPRANOLOL 40 MG TAB | 1 | 2.16 |
| 02/12/2020 | 0250 | J1650 | ENOXAPARIN 40 MG/0.4 ML SYRG | 4 | 23.91 |
| 02/12/2020 | 0250 | J1815 | INSULIN GLARGINE PER 5 UNITS | 5 | 8.57 |
| 02/12/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.23 |
| 02/12/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.47 |
| 02/12/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.47 |
| 02/12/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.40 |
| 02/12/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.93 |
| 02/12/2020 | 0250 | J2060 | LORAZEPAM PER 2 MG | 1 | 3.29 |
| 02/12/2020 | 0250 | J3475 | MAGNESIUM SULFATE 2 GRAM/50 ML (4%) PGBK | 4 | 39.74 |
| 02/12/2020 | 0300 | 80048 | HC BASIC METABOLIC PANEL CALCIUM TOTAL | 1 | 120.00 |
| 02/12/2020 | 0300 | 83735 | HC ASSAY OF MAGNESIUM | 1 | 94.00 |
| 02/12/2020 | 0300 | 84100 | HC ASSAY OF PHOSPHORUS INORGANIC | 1 | 69.00 |
| 02/12/2020 | 0300 | 85025 | HC BLOOD COUNT COMPLETE AUTO&AUTO DIFRNTL WBC | 1 | 115.00 |
| 02/12/2020 | 0300 | 85610 | HC PROTHROMBIN TIME | 1 | 57.00 |
| 02/12/2020 | 0301 | 80076 | HC HEPATIC FUNCTION PANEL | 1 | 117.00 |
| 02/13/2020 | 0120 | | HC R&B - SEMI-PRIVATE TWO BED (MEDICAL OR GENERAL) - GENERAL CLASSIFICATION | 1 | 4,583.00 |
| 02/13/2020 | 0250 | | NICOTINE 21 MG/24 HR PT24 | 1 | 6.81 |
| 02/13/2020 | 0250 | | POTASSIUM, SODIUM PHOSPHATES 280-160-250 MG PWPK | 1 | 1.73 |
| 02/13/2020 | 0250 | | POTASSIUM, SODIUM PHOSPHATES 280-160-250 MG PWPK | 1 | 1.73 |
| 02/13/2020 | 0250 | | POTASSIUM, SODIUM PHOSPHATES 280-160-250 MG PWPK | 1 | 1.73 |
| 02/13/2020 | 0250 | | POTASSIUM, SODIUM PHOSPHATES 280-160-250 MG PWPK | 1 | 1.73 |
| 02/13/2020 | 0250 | | PROPRANOLOL 40 MG TAB | 1 | 2.16 |
| 02/13/2020 | 0250 | J1650 | ENOXAPARIN 40 MG/0.4 ML SYRG | 4 | 23.91 |

This is itemization of services for the time period indicated is provided at your request. Please call 617-726-3884 if you have any questions or need assistance with your account.

GID: 664200, 02/10/20



| Date of Service | Rev Code | Procedure Code | Description | QTY | Amount |
|---|---|---|---|---|---|
| 02/13/2020 | 0250 | J1815 | INSULIN GLARGINE PER 5 UNITS | 6 | 10.00 |
| 02/13/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.70 |
| 02/13/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.63 |
| 02/13/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 1.17 |
| 02/13/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 1.17 |
| 02/13/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.40 |
| 02/13/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.63 |
| 02/13/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 1 | 0.93 |
| 02/13/2020 | 0300 | 80048 | HC BASIC METABOLIC PANEL CALCIUM TOTAL | 1 | 120.00 |
| 02/13/2020 | 0300 | 82550 | HC CREATINE KINASE TOTAL | 1 | 92.00 |
| 02/13/2020 | 0300 | 83036 | HC HEMOGLOBIN GLYCOSYLATED A1C | 1 | 137.00 |
| 02/13/2020 | 0300 | 83735 | HC ASSAY OF MAGNESIUM | 1 | 94.00 |
| 02/13/2020 | 0300 | 84100 | HC ASSAY OF PHOSPHORUS INORGANIC | 1 | 69.00 |
| 02/13/2020 | 0300 | 85025 | HC BLOOD COUNT COMPLETE AUTO&AUTO DIFRNTL WBC | 1 | 115.00 |
| 02/13/2020 | 0300 | 85610 | HC PROTHROMBIN TIME | 1 | 57.00 |
| 02/13/2020 | 0301 | 80076 | HC HEPATIC FUNCTION PANEL | 1 | 117.00 |
| 02/14/2020 | 0250 | | POTASSIUM, SODIUM PHOSPHATES 280-160-250 MG PWPK | 1 | 1.73 |
| 02/14/2020 | 0250 | | POTASSIUM, SODIUM PHOSPHATES 280-160-250 MG PWPK | 1 | 1.73 |
| 02/14/2020 | 0250 | J1650 | ENOXAPARIN 40 MG/0.4 ML SYRG | 4 | 23.91 |
| 02/14/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.86 |
| 02/14/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.40 |
| 02/14/2020 | 0250 | J1815 | INSULIN LISPRO (HUMAN) PER 5 UNITS | 2 | 1.40 |
| 02/14/2020 | 0300 | 80048 | HC BASIC METABOLIC PANEL CALCIUM TOTAL | 1 | 120.00 |
| 02/14/2020 | 0300 | 83735 | HC ASSAY OF MAGNESIUM | 1 | 94.00 |
| 02/14/2020 | 0300 | 84100 | HC ASSAY OF PHOSPHORUS INORGANIC | 1 | 69.00 |
| 02/14/2020 | 0300 | 85025 | HC BLOOD COUNT COMPLETE AUTO&AUTO DIFRNTL WBC | 1 | 115.00 |
| 02/14/2020 | 0300 | 85610 | HC PROTHROMBIN TIME | 1 | 57.00 |
| 02/14/2020 | 0301 | 80076 | HC HEPATIC FUNCTION PANEL | 1 | 117.00 |

Total hospital charges: **39,472.30**

**Hospital Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 03/11/20 | Blue Cross Blue Shield Payments | -19,371.75 |
| 03/11/20 | Blue Cross Blue Shield Adjustments | -20,100.55 |

Total hospital payments and adjustments: **-39,472.30**

This is itemization of services for the time period indicated is provided at your request. Please call 617-726-3884 if you have any questions or need assistance with your account.

GID: 664200, 02/10/20

**J.A. 159**



BOSTON EMS
PO BOX 415936
BOSTON MA 02241-5936
PHONE#: 844/353-7842
TAX ID#: 04-3316655

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* S P E C I A L    S T A T E M E N T \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
RESPONSIBLE PARTY:
---------------------------------
BRIAN W COUGHLIN
835 SARATOGA ST                                       DATE...:  05-15-20
APT 1
EAST BOSTON MA 02128                        ACCOUNT BALANCE:   1465.48
                                            SELFPAY BALANCE:      0.00

PATIENT NAME:                                           ACCOUNT NO.
--------------                                          -----------
BRIAN W COUGHLIN                                        5848-8096640


                  ---------- ENCOUNTER# 1 TRANSACTIONS ----------
DATE        QTY   CODE    SITE  DESCRIPTION                          CHARGES
---------------------------------------------------------------------------
02-10-20    1     A0429   MGH   BLS EMERGENCY TRANSPORT              1385.00
                                FROM:SCENE OF ACCIDENT
                                TO  :HOSPITAL
02-10-20    1     A0425   MGH   MILEAGE BLS                            80.48
                                3.1 MILES
                                ** ENCOUNTER TOTAL                   1465.48




---------------------------------------------------------------------------
                                                   BALANCE:     1465.48



If this bill presents a financial hardship to you,
please contact us at 844-353-7842 to explore options
and qualifications for financial assistance.

Case 19-14142    Doc 60    Filed 07/07/20    Entered 07/07/20 12:56:13    Desc Main
Document    Page 18 of 20

# Exhibit "B"

Treasury Department
Pay Begin Date: 02/01/2020
Advice #: 0012354237

Advice Date: 02/21/2020

| Brian Wiliam Coughlin | Employee ID: | 132323 |
| 441 Bennington St. | Department: | 311000-Public Works Department |
| East Boston, MA 02128-1837 | Location: | Pwd Sanitary |
| | Job Title: | Supn-Sanitation |
| | Pay Rate: | $4,742.92 Biweekly |

| | TAX DATA: | Federal | MA State |
|---|---|---|---|
| Tax Status: | | Single | Single |
| Allowances: | | 0 | 0 |
| Addl. Percent: | | | |
| Addl. Amount: | | | |

## HOURS AND EARNINGS

| | | ----- Current ----- | | ----- YTD ----- | | | TAXES | |
|---|---|---|---|---|---|---|---|---|
| Description | Rate | Hours | Earnings | Hours | Earnings | Description | Current | YTD |
| Regular Pay | 59.286483 | 40.00 | 2,371.46 | 236.00 | 13,991.61 | Fed Withholdng | 1,081.46 | 5,340.83 |
| Snow-Over Time | 88.929725 | 23.00 | 2,045.38 | 99.50 | 8,848.50 | Fed MED/EE | 87.65 | 416.74 |
| Sick Leave-Paid-Non-Salaried | 59.286483 | 40.00 | 2,371.46 | 40.00 | 2,371.46 | MA Withholdng | 308.34 | 1,468.97 |
| Reimbursement-Expenses-Unit | 4.500000 | 3.00 | 13.50 | 11.00 | 49.50 | | | |
| Holiday Pay | | 0.00 | | 24.00 | 1,422.87 | | | |
| Overtime-Straight | | 0.00 | | 8.00 | 474.29 | | | |
| Overtime-Time&Half | | 0.00 | | 38.50 | 3,423.80 | | | |
| Personal From Sick NonSalaried | | 0.00 | | 9.00 | 533.58 | | | |
| Vacation-Paid-Non-Salaried | | 0.00 | | 11.00 | 652.15 | | | |
| TOTAL: | | 106.00 | 6,801.80 | 477.00 | 31,767.76 | TOTAL: | 1,477.45 | 7,226.54 |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
|---|---|---|---|---|---|---|---|---|
| Description | Current | YTD | Description | Current | YTD | Description | Current | YTD |
| Blue Care Elect Pref Before Tx | 178.32 | 713.28 | Flex Spending Fee | 2.49 | 9.96 | Blue Care Elect Pref Before Tx | 426.15 | 1,704.60 |
| Basic Life and AD&D 10K BTax | 2.88 | 11.52 | Int.Treasurers USWA (Sena) | 65.16 | 260.64 | Basic Life and AD&D 10K BTax | 2.89 | 11.56 |
| Commonwealth 457 Def Comp Plan | 300.00 | 1,200.00 | | | | | | |
| Flex Spending Med/Dent | 76.93 | 307.72 | | | | | | |
| Retirement 9+2% BT | 498.65 | 1,994.60 | | | | | | |
| TOTAL: | 1,056.78 | 4,227.12 | TOTAL: | 67.65 | 270.60 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|
| Current | 6,801.80 | 5,745.02 | 1,477.45 | 1,124.43 | 4,199.92 |
| YTD | 31,767.76 | 27,540.64 | 7,226.54 | 4,497.72 | 20,043.50 |

| Leave Type | Balance as of Pay End Date | | NET PAY DISTRIBUTION | | |
|---|---|---|---|---|---|
| Vacation: | 232.0 | | Account Type | Account Number | Deposit Amount |
| Personal: | 0.0 | Advice #0012354237 | Checking | XXXXXXXX4492 | 4,199.92 |
| Sick: | 244.8 | | | | |
| | | | TOTAL: | | 4,199.92 |

MESSAGE:

## J.A. 162

Case 19-14142   Doc 60   Filed 07/07/20   Entered 07/07/20 12:56:13   Desc Main
Document   Page 20 of 20

| City of Boston Treasury Department | Pay Group: Pay Begin Date: Pay End Date | 02/15/2020 02/28/2020 | | Business Unit: Advice #: Advice Date | COBBU 0012379871 03/06/2020 |
|---|---|---|---|---|---|

| Brian Wiliam Coughlin 441 Bennington St. East Boston, MA 02128-1837 | Employee ID: Department: Location: Job Title: Pay Rate: | 132323 311000-Public Works Department Pwd Sanitary Supn-Sanitation $4,742.92 Biweekly |
|---|---|---|

| TAX DATA: | Federal | MA State |
|---|---|---|
| Tax Status: | Single | Single |
| Allowances: | 0 | 0 |
| Addl. Percent: | | |
| Addl. Amount: | | |

| HOURS AND EARNINGS | | | | | | | TAXES | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Current | | YTD | | | | | |
| Description | Rate | Hours | Earnings | Hours | Earnings | Description | | Current | YTD |
| Reimbursement-Expenses-Unit | 4.500000 | 1.00 | 4.50 | 12.00 | 54.00 | Fed Withholdng | | 732.55 | 6,073.38 |
| Snow-Over Time | 88.929725 | 5.50 | 489.11 | 105.00 | 9,337.61 | Fed MED/EE | | 64.96 | 481.70 |
| Sick Leave-Paid-Non-Salaried | 59.286483 | -40.00 | -2,371.46 | 0.00 | 0.00 | MA Withholdng | | 230.08 | 1,699.05 |
| Vacation-Paid-Non-Salaried | 59.286483 | 112.00 | 6,640.09 | 123.00 | 7,292.24 | | | | |
| Holiday Pay | 59.286483 | 8.00 | 474.29 | 32.00 | 1,897.16 | | | | |
| Overtime-Straight | | | 0.00 | 8.00 | 474.29 | | | | |
| Overtime-Time&Half | | | 0.00 | 38.50 | 3,423.80 | | | | |
| Personal From Sick NonSalaried | | | 0.00 | 9.00 | 533.58 | | | | |
| Regular Pay | | | 0.00 | 236.00 | 13,991.61 | | | | |
| TOTAL: | | 86.50 | 5,236.53 | 563.50 | 37,004.29 | TOTAL: | | 1,027.59 | 8,254.13 |

| BEFORE-TAX DEDUCTIONS | | | AFTER-TAX DEDUCTIONS | | | EMPLOYER PAID BENEFITS | | |
|---|---|---|---|---|---|---|---|---|
| Description | Current | YTD | Description | Current | YTD | Description | Current | YTD |
| Blue Care Elect Pref Before Tx | 178.32 | 891.60 | Flex Spending Fee | 2.49 | 12.45 | Blue Care Elect Pref Before Tx | 426.15 | 2,130.75 |
| Basic Life and AD&D 10K BTax | 2.88 | 14.40 | Int.Treasurers USWA (Sena) | 65.16 | 325.80 | Basic Life and AD&D 10K BTax | 2.89 | 14.45 |
| Commonwealth 457 Def Comp Plan | 300.00 | 1,500.00 | | | | | | |
| Flex Spending Med/Dent | 76.93 | 384.65 | | | | | | |
| Retirement 9+2% BT | 498.65 | 2,493.25 | | | | | | |
| TOTAL: | 1,056.78 | 5,283.90 | TOTAL: | 67.65 | 338.25 | *TAXABLE | | |

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|
| Current | 5,236.53 | 4,179.75 | 1,027.59 | 1,124.43 | 3,084.51 |
| YTD | 37,004.29 | 31,720.39 | 8,254.13 | 5,622.15 | 23,128.01 |

| Leave Type | Balance as of Pay End Date | NET PAY DISTRIBUTION | | | |
|---|---|---|---|---|---|
| Vacation: | 120.0 | | Account Type | Account Number | Deposit Amount |
| Personal: | 0.0 | Advice #0012379871 | Checking | XXXXXXXX4492 | 3,084.51 |
| Sick: | 289.4 | | | | |
| | | TOTAL: | | | 3,084.51 |

MESSAGE:

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT MASSACHUSETTS
(Eastern Division)**

| | |
|---|---|
| In re: | Chapter 13 |
| BRIAN W. COUGHLIN, | Case No. 19-14142-FJB |
| Debtor. | |

<u>**MOTION TO DISMISS**</u>

**PLEASE TAKE NOTICE** that the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe") moves the Court under Fed. R. Bankr. P. 7012(b) to dismiss Brian W. Coughlin's contested matter against the Tribe as follows:

(1) for failure to state a claim under Fed. R. Civ. P. 12(b)(6); and

(2) for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

This motion is based upon the attached memorandum of law and all the filings, records, and proceedings in this case.

Dated: July 30, 2020                              Respectfully submitted,

                                                    __*/s/ Adrienne K. Walker*___
                                                    Adrienne K. Walker, Esq.
                                                    Aaron M. Williams, Esq.
                                                    MINTZ, LEVIN, COHN, FERRIS,
                                                      GLOVSKY AND POPEO, P.C.
                                                    One Financial Center
                                                    Boston, Massachusetts 02111
                                                    Tel: 617-542-6000
                                                    Fax: 617-542-2241
                                                    E-mail: awalker@mintz.com
                                                              amwilliams@mintz.com

**J.A. 164**

Andrew Adams III, Esq. (pro hac vice)
Peter J. Rademacher, Esq. (pro hac vice)
Hogen Adams PLLC
1935 County Road B2 West, Suite 460
St. Paul, Minnesota 55113
Tel:  651-842-9100
Fax:  651-842-9101
E-mail:  aadams@hogenadams.com
         prademacher@hogenadams.com

2

**J.A. 165**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT MASSACHUSETTS
(Eastern Division)**

| | |
|---|---|
| In re: | Chapter 13 |
| BRIAN W. COUGHLIN, | Case No. 19-14142-FJB |
| Debtor. | |

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

### Introduction

In a brazen attempt to skirt law and facts, Brian Coughlin asks this Court to hold the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe") responsible for Niiwin, LLC's alleged violations of the automatic stay in this bankruptcy proceeding. More, he does so despite making no allegation that the Tribe received notice of this bankruptcy proceeding before the alleged violations. And finally, he does so despite the Tribe being immune to this bankruptcy proceeding. Because any and all of these shortcomings are fatal to Coughlin's adversarial proceeding against the Tribe, the Tribe respectfully asks the Court to dismiss it.

### Statement of Facts

In December 2019, Brian Coughlin petitioned for Chapter 13 bankruptcy in this Court. (Petition, Dkt. 1). The petition triggered an automatic stay under 11 U.S.C. § 362(a). Among Coughlin's creditors is Lendgreen, an alter ego of Niiwin, LLC, with which he had an existing unsecured loan balance of roughly $1,600. (*Id.* at p.24; *see also* Pleading, Dkt. 27 Ex. A). According to Coughlin, Lendgreen—and, therefore, Niiwin—was listed in his mailing matrix and served a copy of his Chapter 13 workout plan in December 2019. (Petition, Dkt. 1 p.51; *see also* Pleading, Dkt. 27 Ex. B).

Case: 21-1153    Document: 00117747096    Page: 173    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 73-1    Filed 07/30/20    Entered 07/30/20 15:44:04    Desc
Memorandum in Support of Motion to Dismiss    Page 2 of 13

Despite the automatic stay, Coughlin alleges that, Niiwin continued to make collection calls and send him emails regarding his unsecured loan, a violation of the stay. (Pleading, Dkt. 27 ¶¶ 9-13; Coughlin Aff., Dkt. 27-1 ¶¶ 5-7). Coughlin claims that the collection calls, coupled with other stressors in his life, led to him attempting suicide in February 2020. (Coughlin Aff., Dkt. 27-1 ¶¶ 8-12).

In March 2020, Coughlin moved the Court to enforce the automatic stay, specifically asking the Court to grant him actual damages, attorney fees and costs, and punitive damages for Niiwin's violations. (Pleading, Dkt. 27 pp.1, 7-8). But instead of just seeking relief against Niiwin, Coughlin also sought relief against LDF Holdings, LLC ("Holdings"), the LDF Business Development Corporation (the "BDC"), and the Tribe. (*Id.*). As Coughlin himself explains, the relationship between these entities is through a chain of corporate equity. (*Id.* ¶ 3). The Tribe wholly owns the BDC, a tribally chartered corporation. (*Id.*). The BDC wholly owns Holdings, a tribally organized limited liability company. (*Id.*). Holdings wholly owns Niiwin, also a tribally organized limited liability company. (*Id.*).

<div align="center">

**Argument**

</div>

**I.  This Court should deny Coughlin's motion because it lacks sufficient allegations to implicate the Tribe in a willful violation of the automatic stay.**

A court may dismiss an adversarial proceeding under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. When faced with a Rule 12(b)(6) motion, "a court must take the allegations . . . as true and must make all reasonable inferences in favor" of the plaintiff. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Still, the court may consider "documents incorporated by reference . . . , matters of public record, and other matters susceptible to judicial notice." *Giraosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (quotation omitted). And it need not "draw unreasonable inferences or credit bald

Case: 21-1153     Document: 00117747096     Page: 174     Date Filed: 06/01/2021     Entry ID: 6425224

Case 19-14142     Doc 73-1     Filed 07/30/20     Entered 07/30/20 15:44:04     Desc
Memorandum in Support of Motion to Dismiss     Page 3 of 13

assertions or empty conclusions." *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (quotation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts to support a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

An automatic stay is "one of the fundamental protections that the Bankruptcy Code affords to debtors." *In re Jamo*, 283 F.3d 392, 398 (1st Cir. 2002). This protection is enforceable under Section 362(k)(1), which provides that a debtor injured by a "willful violation of [an automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." A debtor seeking damages under this provision bears the burden of establishing: "(1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." *Slabicki v. Gleason (In re Slabicki)*, 466 B.R. 572, 577-78 (B.A.P. 1st Cir. 2012). With respect to the Tribe, Coughlin has failed to meet his pleading burden to claim violations of the automatic stay.

**A. Coughlin does not allege that the Tribe violated the automatic stay.**

Perhaps the most glaring problem with Coughlin's claim against the Tribe is that his pleading lacks *any* allegation that the Tribe violated the automatic stay. Coughlin describes alleged violations performed by the "Creditor," which he uses as an umbrella term for Niiwin, Holdings, the BDC, and the Tribe. (Pleading, Dkt. 27 at p.1). But a closer look at his pleading and attached documents reveals that all of the alleged violations involved only Niiwin. For instance, Coughlin describes a conversation with a collection specialist named Linda Ehikpehale

Case: 21-1153    Document: 00117747096    Page: 175    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 73-1    Filed 07/30/20    Entered 07/30/20 15:44:04    Desc
Memorandum in Support of Motion to Dismiss    Page 4 of 13

and attaches a confirmation email from Ehikpehale. (*Id.* ¶ 9 & Ex. D). As the email indicates,

Ehikpehale works for Lendgreen—and, therefore, Niiwin. (*Id.* Ex. D). Similarly, Coughlin

describes collection emails he received and attaches evidence of the same. (*Id.* ¶ 10 & Ex. E).

Again, the attached email clearly indicates that the sender is Lendgreen—and, therefore, Niiwin.

(*Id.*).

Not once in his pleading does Coughlin identify an act performed by the Tribe that

violates the automatic stay. Not once in his pleading does Coughlin identify an act performed by

an employee of the Tribe that violates the automatic stay. And not once do the attachments to

Coughlin's pleading implicate the Tribe in violations of the automatic stay. Therefore, Coughlin

has not met his pleading burden, and this Court should dismiss his adversarial proceeding against

the Tribe.

**B.  Coughlin does not allege that the Tribe had notice of this bankruptcy proceeding at the time of the alleged violations.**

A separate but related problem with Coughlin's claim against the Tribe is that his

pleading lacks *any* allegation that the Tribe had notice of this bankruptcy proceeding at the time

of the alleged violations. "[A] violation of the automatic stay must be 'willful' or the violator

cannot be held liable for damages." *In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004). And a

violation can only be found willful "if the creditor's conduct was intentional (as distinguished

from inadvertent) and committed with knowledge of the pendency of the bankruptcy case." *Id.*;

*see also Fleet Mortg. Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999).

Coughlin alleges that he gave notice of this bankruptcy proceeding to the "Creditor." (*See*

Pleading, Dkt. 27 ¶¶ 6-8). But again, a closer look at his pleading and attached documents

reveals that he only gave notice to Niiwin. Regarding notice, Coughlin alleges as follows:

> 6. The Creditor was listed on the Debtor's Schedule of Unsecured Debts
> (Schedule "E/F") as Item 4.17 listing the Creditor as Lend Green", with a mailing

Case: 21-1153    Document: 00117747096    Page: 176    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 73-1    Filed 07/30/20    Entered 07/30/20 15:44:04    Desc
Memorandum in Support of Motion to Dismiss    Page 5 of 13

address of P.O. Box 221, Lac Due Flambeau, Wisconsin 54538 and listed the last 4 digits of account number relating to said claim of 3572. A true and accurate copy of the relevant portion of the Debtor's Schedule "E/F" is attached hereto as Exhibit "A".

7. As a consequence of the Debtor's scheduling of the Creditor's claim, the Creditor was properly listed on the Debtor's Mailing Matrix with a mailing address of P.O. Box 221, Lac Due Flambeau, Wisconsin 54538. A true and accurate copy of the relevant portion of the Debtor's Mailing Matrix is attached hereto as Exhibit "B".

8. On December 4, 2019, Debtor's Counsel served a copy of the Debtor's Original Chapter 13 Plan upon the Creditor at its mailing address of P.O. Box 221, Lac Due Flambeau, Wisconsin 54538 and filed a Certificate of Service regarding the Debtor's Original Chapter 13 Plan reflecting the same. A true and accurate copy of Certificate of Service regarding the Debtor's Original Chapter 13 Plan is attached hereto as Exhibit "C".

(*Id.*). But Coughlin's Schedule of Unsecured Debts only lists "Lend Green"—and, therefore, Niiwin—and its mailing address. (Petition, Dkt. 1 at p.24; *see also* Pleading, Dkt. 27 Ex. A). And Coughlin's Mailing Matrix only lists "Lend Green"—and, therefore, Niiwin—and its mailing address. (Petition, Dkt. 1 p.51; *see also* Pleading, Dkt. 27 Ex. B). And Coughlin's certificate of service for the original Chapter 13 Plan only lists "Lend Green"—and, therefore, Niiwin—and its mailing address. (Certificate of Service, Dkt. 11-1; *see also* Pleading, Dkt. 27 Ex. C). None of these documents list the Tribe or its mailing address. (Petition, Dkt. 1 at pp.24, 51; Certificate of Service, Dkt. 11-1; *see also* Pleading, Dkt. 27 Exs. A-C). In fact, nothing in the record for this bankruptcy proceeding indicates that anyone served anything on the Tribe at its address until Coughlin served this pleading on May 11, 2020, over a month and a half *after he filed his it*." (Supplemental Certificate of Service, Dkt. 40).[1]

While Coughlin seems to suggest that service on Niiwin amounted to service on the Tribe, the record suggests the contrary. On May 7, 2020, over a month after Coughlin filed his

___

[1] A court may take judicial notice of the record of the proceedings in the case. *See In re Hyde*, 334 B.R. 506, 508 n.2 (Bankr. D. Mass. 2005).

**J.A. 170**

Case: 21-1153     Document: 00117747096     Page: 177     Date Filed: 06/01/2021     Entry ID: 6425224

Case 19-14142    Doc 73-1    Filed 07/30/20    Entered 07/30/20 15:44:04    Desc
Memorandum in Support of Motion to Dismiss    Page 6 of 13

pleading, the Court directed him to serve the Tribe. (Proceeding Memorandum and Order, Dkt. 43). And Coughlin did so, at the Tribe's mailing address, *not Niiwin's*. (Supplemental Certificate of Service, Dkt. 40). In other words, Coughlin has implicitly recognized that service on Niiwin is not the same as service on the Tribe. Therefore, Coughlin simply has not alleged that the Tribe had notice of this bankruptcy proceeding at the time of the alleged violations of the automatic stay, and this Court should dismiss his adversarial proceeding against the Tribe.

**C. There is no basis in Coughlin's pleading to impute the Tribe with Niiwin's knowledge of the proceeding or alleged violations of the automatic stay.**

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003); *see also In re Rowanoak Corp.*, 344 F.3d 126, 132-33 (1st Cir. 2003). Thus, "[c]orporate owners are allowed to avoid liability beyond the extent of their investment because of the fiction that the corporation is a separate entity." *In re Indus. Comm. Elec., Inc.*, 319 B.R. 35, 49 (D. Mass. 2004); *see also Powers v. Texaco, Inc.*, 22 F.3d 1094, at *3 (1st Cir. 1994).

Here, as previously discussed, the relationship between the Tribe and Niiwin is through a chain of corporate equity. And that chain is not simply one link; it is three. Coughlin acknowledges the same in his pleading. (Pleading, Dkt. 27 ¶ 3). What Coughlin fails to acknowledge is that this type of relationship precludes him from simply lumping the Tribe in with Niiwin as the "Creditor." Coughlin, as the plaintiff, bears the burden to allege facts sufficient to support a vicarious-liability theory or an alter-ego theory with respect to the Tribe (and the BDC and Holdings). *See, e.g.*, *Trustees of Detroit Carptenters Frindge Benefit Funds v. Patrie Const. Co.*, 618 Fed. App'x. 246, 252 (6th Cir. 2015); *G.O. Am. Shipping Co., Inc. v. China COSCO Shipping Corp. Ltd.*, 764 Fed. App'x 629, 629-30 (9th Cir. 2019); *LaSpina v. SEIU Penn. State Council*, 413 F. Supp. 3d 383, 391-92 (M.D. Pa. 2019). Coughlin has made

Case: 21-1153    Document: 00117747096    Page: 178    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 73-1    Filed 07/30/20    Entered 07/30/20 15:44:04    Desc
Memorandum in Support of Motion to Dismiss    Page 7 of 13

absolutely no allegations to that effect.[2] Therefore, he has not met his burden to allege sufficient

facts to support his adversarial proceeding against the Tribe, and the Court should dismiss it.

## II. This Court must deny Coughlin's motion because the Tribe is immune from this proceeding.

The First Circuit has long recognized that "tribal sovereign immunity is jurisdictional in

nature." *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Auth.*, 207 F.3d 21, 28

(1st Cir. 2000). And it has explained that Rule 12(b)(1) of the Federal Rules of Civil Procedure is

"a large umbrella overspreading a variety of different types of challenges to subject-matter

jurisdiction," including "those grounded in considerations of . . . sovereign immunity." *Valentin*

*v. Hospital Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001). Thus, courts within the First

Circuit have employed Rule 12(b)(1) when faced with assertions of sovereign-immunity. *See,*

*e.g.*, *Wolski v. Gardner Police Dep't*, 411 F. Supp. 3d 187, 191-92, 194 (D. Mass. 2019);

*Sepulveda v. UMass Correctional Health, Care*, 160 F. Supp. 3d 371, 396 (D. Mass. 2016);

*Great River Indus., Inc. v. Pub. Serv. Comm. of Puerto Rico*, 131 F. Supp. 2d 265, 268 (D.

Puerto Rico 2001); *DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 361 (D. Me. 2012).

Under Rule 12(b)(1), the plaintiff, "as the party asserting subject matter jurisdiction, has

the burden of demonstrating its existence." *In re Capitol BC Restaurants, LLC*, 568 B.R. 574,

583 (Bankr. D. Mass. 2017) (quotations omitted). When a Rule 12(b)(1) motion presents a

"facial challenge" to a court's jurisdiction, *In re Ragge*, 566 B.R. 1, 6 (Bankr. D. Mass. 2017), as

it does here, the court will "credit the plaintiff's well-pled factual allegations and draw all

reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st

---

[2] In fact, because of how deficient Coughlin's allegations are, it is impossible for the
Tribe to predict what arguments it will need to make on reply.

Case: 21-1153    Document: 00117747096    Page: 179    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 73-1    Filed 07/30/20    Entered 07/30/20 15:44:04    Desc
Memorandum in Support of Motion to Dismiss    Page 8 of 13

Cir. 2010). But it may also "consider whatever evidence has been submitted, such as the depositions and exhibits submitted." *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir 1996).

Indian tribes are "separate sovereigns pre-existing the Constitution." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978); *see also Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Auth.*, 207 F.3d 21, 29 (1st Cir. 2000). As such, they possess and continue to exercise "inherent sovereign authority." *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991). "Among the core aspects of [this] sovereignty . . . is the common-law immunity from suit traditionally enjoyed by sovereign powers." *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788 (2014). As the Supreme Court has explained, tribal sovereign immunity is a "necessary corollary to Indian sovereignty." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986).

To be sure, Indian tribes are now treated as "domestic dependent nations," and remain subject to "plenary control by Congress." *Bay Mills*, 572 U.S. at 788. Thus, "Congress has always been at liberty to dispense with [tribal sovereign immunity] or limit it." *Citizen Band Potawatomi Indian Tribe*, 498 U.S. at 510. And in rare instances, Congress has "authorized limited classes of suits against Indian tribes." *Id.* Still, Congress has "consistently reiterated its approval of the immunity doctrine," reflecting its "desire to promote the goal of Indian self-government." *Id.*

Against, this legal and policy backdrop, the Supreme Court has "treated the doctrine of tribal immunity as settled law and dismissed any suit against a tribe absent congressional authorization." *Bay Mills*, 572 U.S. at 789 (quotation omitted). And in delineating the standard for finding congressional authorization for suit against an Indian tribe, the Supreme Court has spoken in no uncertain terms. "The baseline position . . . is tribal immunity; and to abrogate such

Case: 21-1153     Document: 00117747096     Page: 180     Date Filed: 06/01/2021     Entry ID: 6425224

Case 19-14142    Doc 73-1    Filed 07/30/20    Entered 07/30/20 15:44:04    Desc
Memorandum in Support of Motion to Dismiss    Page 9 of 13

immunity, *Congress must unequivocally express that purpose.*" *Id.* at 790 (emphasis added). An

intent to abrogate "cannot be implied." *Martinez*, 436 U.S. at 58 (quotations omitted). "That rule

of construction reflects an enduring principle of Indian law: Although Congress has plenary

authority over tribes, courts will not lightly assume that Congress in fact intends to undermine

Indian self-government." *Bay Mills*, 572 U.S. at 790. And it accords with a foundational rule of

statutory interpretation in federal Indian law: "Ambiguities in federal law [are] construed

generously in order to comport with . . . traditional notions of sovereign and with the federal

policy of encouraging tribal independence." *White Mountain Apache Tribe v. Bracker*, 448 U.S.

136, 143-44 (1980).

   Coughlin has not identified any statutory abrogation of tribal sovereign immunity, but

presumably he will rely on 11 U.S.C. §§ 106(a) and 101(27). Section 106(a) provides that

"sovereign immunity is abrogated as to a governmental unit," with respect to Section 362.

Section 101(27) provides that "governmental unit" means "United States; State; Commonwealth;

District; Territory; municipality; foreign state; department, agency, or instrumentality of the

United States . . . , a State, a Commonwealth, a District, a Territory, a municipality, or a foreign

state; or other foreign or domestic government." 11 U.S.C. § 101(27). Three Circuits Courts have

already addressed whether these statutes abrogate tribal sovereign immunity, and two have come

to the conclusion that it does not.

   *In re Whitaker* involved four adversarial proceedings against the Lower Sioux Indian

Community and one of its subsidiaries. 474 B.R. 687, 689 (8th Cir. 2012). Both defendants

asserted their sovereign immunity, and the trustee argued that their immunity was abrogated by

Sections 106(a) and 101(27). *See id.* at 690. The Eighth Circuit rejected the trustee's argument,

reasoning that, despite knowing the Supreme Court's requirement that abrogation of tribal

Case: 21-1153    Document: 00117747096    Page: 181    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 73-1    Filed 07/30/20    Entered 07/30/20 15:44:04    Desc
Memorandum in Support of Motion to Dismiss    Page 10 of 13

sovereign immunity be "unequivocally expressed," Congress passed and even amended Section

106 without mentioning Indian tribes. *Id.* at 693. It further explained that the Supreme Court has

never treated Indian tribes as either foreign or domestic governments, but rather "domestic

dependent nations," and that Congress made no effort to fold entities with that unique status into

Sections 106(a) and 101(27). *Id.* at 693-94.

     *In re Greektown Holdings, LLC*, involved a request for avoidance and recovery of alleged

fraudulent transfers from the Sault Ste. Marie Tribe of Chippewa Indians and its gaming

authority. 917 F.3d 451, 453 (6th Cir. 2019). As in *Whitaker*, the defendants asserted their

sovereign immunity and the trustee argued that their immunity was abrogated by Sections 106(a)

and 101(27). *See id. at* 453, 456. The Sixth Circuit too rejected the trustee's argument, noting, as

the *Whitaker* court did, that Congress passed and even amended Section 106 with knowledge of

the Supreme Court's extremely high bar for abrogation of tribal sovereign immunity. *Id.* at 456.

It also reflected on previous instances when Congress had "unequivocally expressed" its

intention to abrogate tribal sovereign immunity by specifically mentioning Indian tribes:

> We also need not hypothesize whether Congress understood the meaning of
> "unequivocal," as Congress kindly demonstrated as much in the years
> immediately preceding its enactment of the Bankruptcy Code. *See, e.g.*, Resource
> Conservation and Recovery Act of 1976, 42 U.S.C.
> §§ 6972(a)(1)(A), 6903(13), 6903(15) (authorizing suits against an "Indian
> tribe"); Safe Water Drinking Act of 1974, 42 U.S.C. §§ 300j-9(i)(2)(A), 300f(10),
> 300f(12) (authorizing suits against an "Indian tribe").

*Id.* at 457. Finally, it highlighted that its decision accorded with an important observation made

by the Seventh Circuit: "'[T]here is not one example in all of history where the Supreme Court

has found that Congress intended to abrogate tribal sovereign immunity *without* expressly

mentioning Indian tribes somewhere in the statute.'" *Id.* at 460 (quoting *Meyers v. Oneida Tribe

of Indians of Wisconsin*, 836 F.3d 818, 824 (7th Cir. 2016)).

Case: 21-1153    Document: 00117747096    Page: 182    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 73-1    Filed 07/30/20    Entered 07/30/20 15:44:04    Desc
Memorandum in Support of Motion to Dismiss    Page 11 of 13

As previously suggested, one Circuit Court has diverged from the Eighth and Sixth

Circuits, and no doubt Coughlin will rely on it. But notably, both the *Whitaker* and *Greektown*

courts strongly rejected the reasoning and conflicting outcome in that decision. In *Krystal Energy*

*Company v. Navajo Nation*, the Ninth Circuit concluded that Sections 106(a) and 101(27)

abrogate tribal sovereign immunity, reasoning that Indian tribes are governments, whether

foreign or domestic, a

> Indian tribes are certainly governments, whether considered foreign or domestic
> (and, logically, there is no other form of government outside the foreign/domestic
> dichotomy, unless one entertains the possibility of extra-terrestrial states).
>
> The Supreme Court has recognized that Indian tribes are "'domestic dependent
> nations' that exercise inherent sovereign authority over their members and
> territories." *Potawatomi,* 498 U.S. at 509, 111 S. Ct. 905 (citing *Cherokee Nation
> v. Georgia,*  5 Pet. 1, 17, 8 L. Ed. 25 (1831)); *see also, Blatchford v. Native
> Village of Noatak,* 501 U.S. 775, 782, 111 S. Ct. 2578, 115 L. Ed. 2d
> 686 (comparing Indian tribes to states and foreign sovereigns, and concluding that
> both states and Indian tribes are "domestic" sovereigns). So the category "Indian
> tribes" is simply a specific member of the group of domestic governments, the
> immunity of which Congress intended to abrogate.

357 F.3d 1055, 1057-58 (9th Cir. 2004).

The *Whitaker* court was unconvinced by the *Krystal* court's analysis of Sections 106(a)

and 101(27). As it explained,

> The logic of *Krystal* . . . is that: (1) the Supreme Court has referred to Indian
> tribes as "domestic dependent nations"; (2) Congress enacted §§ 106 and 101(27)
> of the Bankruptcy Code with that reference in mind; (3) Congress abrogated
> sovereign immunity as to states, foreign states, and other foreign or domestic
> governments; and, therefore, (4) Congress must have intended to include Indian
> tribes as "other foreign or domestic governments."
>
> . . .  But the several steps needed to justify the holding in [that case] is far from an
> unequivocal expression of Congressional intent to abrogate the tribes' immunity,
> stated in explicit legislation.

The *Greektown* court further rebuked the *Krystal* court's analysis, again adopting the reasoning

of the Seventh Circuit:

Case: 21-1153    Document: 00117747096    Page: 183    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 73-1    Filed 07/30/20    Entered 07/30/20 15:44:04    Desc
Memorandum in Support of Motion to Dismiss    Page 12 of 13

While not 'weighing in' on the precise issue of 11 U.S.C. §§ 106, 101(27), the Seventh Circuit made clear the flaw it saw in the Ninth Circuit's reasoning:

Meyers argues that the district court dismissed his claim based on its erroneous conclusion that Indian tribes are not governments. . . . Meyers misses the point. The district court did not dismiss his claim because it concluded that Indian tribes are not governments. It dismissed his claim because it could not find a clear, unequivocal statement in FACTA that Congress meant to abrogate the sovereign immunity of Indian [t]ribes. *Meyers has lost sight of the real question in this sovereign immunity case—whether an Indian tribe can claim immunity from suit. The answer to this question must be 'yes' unless Congress has told us in no uncertain terms that it is 'no[,]' [as] [a]ny ambiguity must be resolved in favor of immunity.* Of course Meyers wants us to focus on whether the Oneida Tribe is a government so that we might shoehorn it into FACTA's statement that defines liable parties to include 'any government.' But when it comes to [tribal] sovereign immunity, shoehorning is precisely what we cannot do. Congress' words must fit like a glove in their unequivocality.

917 F.3d at 459 (quoting *Meyers*, 836 F.3d at 826-27) (emphasis added in *Greektown*, 917 F.3d 451).

This Court should heed the *Whitaker*, *Greektown*, and *Meyers* courts' observations about the flawed reasoning in *Krystal* and adopt their approach, which follows the Supreme Court's clear edict that congressional abrogation of tribal sovereign immunity must be "unequivocal." Because Sections 106(a) and 101(27) do not meet that extremely high bar, the Tribe's immunity remains intact, and the Court should dismiss this adversarial proceeding against it.

**Conclusion**

Coughlin asks this Court to hold the Tribe responsible for Niiwin's alleged violations of the automatic stay, violations that occurred before the Tribe even knew that this bankruptcy proceeding existed. But Coughlin's request does not align with his own pleading or the law. Therefore, the Tribe respectfully asks the Court to dismiss this adversarial proceeding against it.

Case: 21-1153    Document: 00117747096    Page: 184    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 73-1    Filed 07/30/20    Entered 07/30/20 15:44:04    Desc
Memorandum in Support of Motion to Dismiss    Page 13 of 13

Dated: July 30, 2020                                  Respectfully submitted,

                                                     _/s/ Adrienne K. Walker_
                                                     Adrienne K. Walker, Esq.
                                                     Aaron M. Williams, Esq.
                                                     MINTZ, LEVIN, COHN, FERRIS,
                                                       GLOVSKY AND POPEO, P.C.
                                                     One Financial Center
                                                     Boston, Massachusetts  02111
                                                     Tel:  617-542-6000
                                                     Fax:  617-542-2241
                                                     E-mail:  awalker@mintz.com
                                                             amwilliams@mintz.com

                                                     Andrew Adams III, Esq. (pro hac vice)
                                                     Peter J. Rademacher, Esq. (pro hac vice)
                                                     Hogen Adams PLLC
                                                     1935 County Road B2 West, Suite 460
                                                     St. Paul, Minnesota 55113
                                                     Tel:  651-842-9100
                                                     Fax:  651-842-9101
                                                     E-mail:  aadams@hogenadams.com
                                                             prademacher@hogenadams.com

13

**J.A. 178**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT MASSACHUSETTS

| | |
|---|---|
| In re: | Chapter 13 |
| BRIAN W. COUGHLIN, | Case No. 19-14142-FJB |
| Debtor. | |

### MOTION TO DISMISS STAY MOTION [DOC. 27]

Niiwin, LLC d/b/a Lendgreen ("Lendgreen"), L.D.F. Business Development Corporation ("BDC") and L.D.F. Holdings, LLC ("Holdings") hereby move the Court, pursuant to Federal Rule of Bankruptcy Procedure 7012,[1] to dismiss Brian W. Coughlin's ("Debtor") Motion to Enforce the Automatic Stay [Doc. 27] (the "Stay Motion") as follows:

(1)      The Stay Motion fails to state a claim upon which the Court may grant relief against BDC or Holdings; and

(2)      The Court lacks subject-matter jurisdiction over the Stay Motion against Lendgreen, BDC, and Holdings.

The attached memorandum of law and all the filings, records, and proceedings in this case support this Motion.

Dated: July 30, 2020

---

[1] Pursuant to an Order dated July 27, 2020, the Court made Federal Rule of Bankruptcy Procedure 7012 applicable to this contested matter pursuant to Bankruptcy Rule 9014(c) [Doc. 71].

WA 15247351.2

**J.A. 179**

Respectfully submitted,


/s/  Adrienne K. Walker
Adrienne K. Walker, Esq.
Aaron M. Williams, Esq.
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts  02111
Tel:  617-542-6000
Fax:  617-542-2241
E-mail: awalker@mintz.com
amwilliams@mintz.com

and

SPENCER FANE LLP

/s/ Scott J. Goldstein
Scott J. Goldstein; admitted pro hac vice
Zachary R.G. Fairlie; admitted pro hac vice
1000 Walnut Street, Suite 1400
Kansas City, Missouri  64106
Tel: (816) 474-8100
Fax: (816) 474-3216
sgoldstein@spencerfane.com
zfairlie@spencerfane.com

2

WA 15247351.2

**J.A. 180**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>BRIAN W. COUGHLIN,<br><br>      Debtor. | Chapter 13<br><br>Case No. 19-14142-FJB |

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Debtor requests this Court hold Niiwin, LLC d/b/a Lendgreen ("Lendgreen"), L.D.F. Business Development Corporation ("BDC"), L.D.F. Holdings, LLC ("Holdings"), and the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe")[2] responsible for Lendgreen's alleged willful violations of the automatic stay. Debtor requests this relief despite his failure to allege that BDC and Holdings specifically had knowledge of his bankruptcy filing prior to the alleged stay violations that purportedly occurred.[3] Debtor further fails to allege that BDC and Holdings sent the two alleged voicemails, placed the alleged phone calls, or sent the email that Debtor claims are willful violations of the automatic stay. Debtor has failed to allege that BDC and Holdings willfully violated the automatic stay and Debtor has therefore failed to state a claim upon which relief this Court may grant relief against BDC and Holdings. Even if Debtor alleged sufficient facts to support a claim for relief, this Court lacks subject matter jurisdiction over Lendgreen, BDC, and Holdings given their entitlement to tribal sovereign immunity. Therefore, two independent grounds exist for this Court to dismiss the Stay Motion.

---

[2] The Tribe retained separate counsel and it is anticipated the Tribe will file its own motion to dismiss the Stay Motion.
[3] As detailed more thoroughly herein, and without any justification or theory to support the same, Debtor makes a collective, vague reference to Lendgreen, BDC, Holdings, and the Tribe as a singular "Creditor." Debtor makes this singular reference despite the reality of Debtor's own allegations and attachments that demonstrate that only Lendgreen made the loan, was listed in the schedules, listed in the mailing matrix, purportedly received notice of the bankruptcy filing prior to the acts complained of, and allegedly made the calls and sent the emails that form the basis of the Stay Motion.

WA 15247351.2

Case: 21-1153    Document: 00117747096    Page: 188    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 2 of 16

## I.    RELEVANT BACKGROUND

In December 2019, Debtor filed for Chapter 13 bankruptcy. Debtor listed Lendgreen in his schedules as an unsecured creditor related to a loan in the approximate amount of $1,600 (the "Lendgreen Loan"). [Doc. 1] BDC and Holdings are not listed in Debtor's schedules. Debtor alleges the mailing matrix listed Lendgreen's address and that Lendgreen received notice of the bankruptcy filing. Stay Motion ¶¶ 6, 7. Debtor does not allege that he or his counsel ever listed BDC and Holdings on the mailing matrix.

Debtor states he attempted to take his life on the evening of February 9, 2020. Affidavit ¶ 12. Debtor states that because of the incident, he was in in-hospital rehabilitative therapy from February 10, 2020 to February 20, 2020. Debtor further states that following the incident, he returned to work on March 2, 2020. Affidavit ¶ 13.

Debtor alleges that the "Creditor", through voicemails and an email, attempted to collect the Lendgreen Loan, and therefore willfully violated the automatic stay. *See* Stay Motion ¶¶ 9-13, Exhibits E, F, G. Specifically, Debtor alleges receiving an email on March 17, 2020, Motion ¶ 10, and voicemails on March 18, 2020, Motion ¶ 12, and on March 19, 2020, Motion ¶ 13. The purported email from "collections@lendgreen.com" states that the correspondence is regarding "Lendgreen account #028083572-00" and requests Debtor to direct correspondence to "collections@lendgreen.com." Stay Motion ¶ 10.

Debtor filed the Stay Motion on March 25, 2020, alleging that phone calls, the two voicemails, and the email were willful violations of the automatic stay and that he is entitled to actual damages under 11 U.S.C. § 363(k)(1). Stay Motion ¶ 14. Debtor claims the phone calls, two voicemails, and email caused Debtor substantial emotional distress "at a particularly vulnerable time when the Debtor was suffering from suicidal ideation, depression and anxiety." Stay Motion ¶ 17. Debtor requests that the Court award him actual damages, in the form of medical bills (which

2

Case: 21-1153    Document: 00117747096    Page: 189    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 3 of 16

insurance apparently covered), time off work, and emotional distress damages, attorney fees and costs, and punitive damages.

Debtor concedes Lendgreen is a wholly-owned subsidiary of Holdings, that Holdings is a wholly-owned subsidiary of BDC, and that BDC is a wholly-owned and operated economic arm and instrumentality of the Tribe, which is a federally recognized Indian tribe. Stay Motion ¶ 3.

## II.    APPLICABLE STANDARDS UNDER RULE 12

### A.    Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations that if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "That is, factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Luciani*, 584 B.R. 449, 454 (Bankr. Mass. 2018) (Feeney, J.) (citing *Bell Atl. Corp.*, 550 U.S. at 555) (quotation marks omitted). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.*

### B.    Federal Rule of Civil Procedure 12(b)(1)

Tribal sovereign immunity is a matter of subject matter jurisdiction, which a party may challenge by a motion to dismiss under Rule 12(b)(1). *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302–03 (10th Cir. 2001); *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1285 (11th Cir. 2001). The standard depends on whether there is a facial or factual challenge. *See e.g.*, *E.F.W.*, 264 F.3d at 1303. Under either approach, however, it is generally the plaintiff's burden to prove jurisdiction exists. *Bell Atl.-Pennsylvania, Inc. v. Pennsylvania Pub. Util.*

3

Case: 21-1153    Document: 00117747096    Page: 190    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 4 of 16

*Comm'n,* 107 F. Supp. 2d 653, 659 (E.D. Pa. 2000), *aff'd in part, appeal dismissed in part and remanded*, 273 F.3d 337 (3d Cir. 2001). Because Debtor admitted that the Tribe owns and/or controls BDC, Holdings, and Lendgreen and operate as economic arms and instrumentalities of the Tribe, Motion ¶ 3, there is no dispute that they are arms of the Tribe, and the challenge is therefore a facial challenge. In a facial challenge, where the allegations of jurisdiction in the complaint are disputed, "the factual allegations of the complaint are presumed to be true and the complaint is reviewed to ensure that each element necessary for jurisdiction is present." *Id.*

## III.    ARGUMENT

The Court should dismiss the Stay Motion pursuant to Rule 12(b)(6) because the Stay Motion fails to state a claim upon which the Court may grant relief against BDC and Holdings. Moreover, this Court should dismiss the Stay Motion pursuant to Rule 12(b)(1) because Lendgreen, BDC, and Holdings enjoy tribal sovereign immunity and the Court therefore lacks subject matter jurisdiction.

### A.    This Court Should Dismiss the Stay Motion Because it Fails to State a Claim Upon Which This Court May Grant Relief Against BDC and Holdings.

The Stay Motion' allegations are insufficient to find it plausible on its face that BDC and Holdings willfully violated the automatic stay. Pursuant to 11 U.S.C. § 362(k)(1), a debtor injured by a "willful violation of [an automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." A debtor seeking damages under this provision bears the burden of proving, by a preponderance of the evidence: "(1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." *Slabicki v.*

4

Case: 21-1153    Document: 00117747096    Page: 191    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 5 of 16

*Gleason (In re Slabicki)*, 466 B.R. 572, 577-78 (B.A.P. 1st Cir. 2012). Debtor cannot meet his

burden with respect to BDC and Holdings.[4]

> **1.    Debtor fails to allege or present evidence demonstrating BDC or Holdings' conduct violated the automatic stay.**

Accepting the allegations in the Stay Motion as true, Debtor cannot meet his burden to

prove that BDC and Holdings willfully violated the automatic stay because Debtor fails to

specifically allege any act or conduct by BDC or Holdings that would constitute a willful violation

of the automatic stay.

Throughout the Stay Motion, Debtor alleges specific violations performed by the

"Creditor." The Stay Motion itself reveals, however, that the alleged "Creditor" is Lendgreen. For

example, Debtor concedes that the Lendgreen Loan was with Lendgreen. Motion ¶ 6; Affidavit

¶¶ 2-3. Debtor concedes that he listed Lendgreen in his schedules because Lendgreen is his creditor

by virtue of the Lendgreen Loan. Motion ¶ 6; Affidavit ¶ 4. Debtor concedes Lendgreen was the

entity that purportedly received notice of the bankruptcy filing by Debtor's listing Lendgreen on

the mailing matrix. Motion ¶ 6-7; Affidavit ¶¶ 4-5. Debtor specifically states, under penalty of

perjury, "My lawyer and I made sure that all of my creditors were accurately listed on both my

Bankruptcy Schedules and on the Mailing Matrix." Affidavit ¶ 4. Despite this, Debtor did not list

BDC or Holdings in the schedules or the mailing matrix. Debtor further describes a conversation

with a collection specialist for the "Creditor" named Linda Ehikpehale and attaches a confirmation

email from Ehikpehale. Motion ¶ 9; Exhibit D. The email indicates Ehikpehale works for

Lendgreen. Exhibit D. Similarly, Debtor describes collection emails he received from the

---

[4] Lendgreen believes Debtor cannot meet his burden to prove a willful violation of the automatic stay, however, Lendgreen believes that such grounds that relate to Lendgreen go to the merits of the Stay Motion, which are premature at the motion to dismiss stage. To the extent any issues remain as to Lendgreen, BDC, and/or Holdings following the Court's resolution of this Motion, the parties reserve all rights, claims, defenses, or otherwise regarding Debtor's failure to meet his burden to prove by a preponderance of the evidence that a willful violation of the stay occurred and that Debtor suffered damages as a result of such alleged violations.

WA 15247351.2

Case: 21-1153    Document: 00117747096    Page: 192    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 6 of 16

"Creditor" and attaches purported evidence of the same. Motion ¶ 10; Exhibit E. The purported emails indicate that the sender is Lendgreen, not BDC or Holdings.

Notably absent from the Stay Motion is a single alleged act performed by BDC or Holdings. The Stay Motion does not specifically identify an act performed by an employee of BDC or Holdings. The attachments to the Stay Motion do not suggest an alleged act performed by BDC, Holdings, or their respective employees. Without alleging a single act by BDC or Holdings, and even accepting the allegations in the Stay Motion as true, Debtor cannot meet his burden to show that BDC or Holdings willfully violated the automatic stay.

> **2.      Debtor fails to allege or present evidence showing BDC or Holdings knew of the bankruptcy at the time of the alleged stay violations.**

Even if the Stay Motion alleged an act by BDC or Holdings, Debtor cannot meet his burden because Debtor fails to allege facts to suggest that BDC or Holdings willfully violated the automatic stay. "[A] violation of the automatic stay must be 'willful' or the violator cannot be held liable for damages." *In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004). A violation is willful "if the creditor's conduct was intentional (as distinguished from inadvertent) and committed with knowledge of the pendency of the bankruptcy case." *Id.*; *see also Fleet Mortg. Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999).

As previously addressed, Debtor makes vague allegations that he gave notice of his bankruptcy filing to the "Creditor." Again, a review of the allegations and supporting documents reveals that the "Creditor" is Lendgreen, not BDC or Holdings. Debtor alleges that he listed Lendgreen in his schedules, not BDC or Holdings. Motion ¶ 6; Affidavit ¶ 4. Debtor alleges that he listed Lendgreen on the mailing matrix, not BDC or Holdings. Motion ¶ 6-7; Affidavit ¶¶ 4-5.

A review of the docket reveals that, according to Debtor's certificate of service, the earliest BDC and Holdings would have even became aware that this case existed was April 10, 2020, when

WA 15247351.2

Case: 21-1153     Document: 00117747096     Page: 193     Date Filed: 06/01/2021     Entry ID: 6425224

Case 19-14142     Doc 74-1     Filed 07/30/20     Entered 07/30/20 15:46:47     Desc
Memorandum in Support of Motion to Dismiss     Page 7 of 16

Debtor provided notice of the status hearing scheduled on the Stay Motion. Even then, it would be difficult to determine what relevance such a status hearing would have for BDC and Holdings as the notice failed to provide in conspicuous manner that Debtor had named BDC and Holdings in the Stay Motion. *See* [Doc. 37]. Despite Rule 9014(b)'s requirement that the Stay Motion be served in the same manner as a summons and complaint pursuant to Rule 7004, the certificate of service on the Stay Motion, dated March 23, 2020, states that Debtor's counsel served the Stay Motion "via electronic mail on the CM/ECF system." That was almost three months prior to any counsel entering an appearance for Lendgreen, BDC, Holdings, or the Tribe. As such, Lendgreen, BDC, and Holdings did not receive notice via electronic mail on the CM/ECF system when Debtor filed the Stay Motion.

According to Debtor's certificate of service, the earliest BDC and Holdings would have received notice of the bankruptcy filing from Debtor was April 10, 2020 [Doc. 37], twenty-two days after Debtor's last specifically alleged stay violation (March 19, 2020). Motion ¶ 13. As such, even assuming Debtor had alleged that BDC or Holdings specifically acted in a way that violated the automatic stay—which BCD and Holdings deny—Debtor has failed to allege that such alleged violation was willful because Debtor has failed to allege that BDC or Holdings specifically acted with knowledge of the pendency of the bankruptcy case. In fact, Debtor's own filings and failures to provide service according to the Bankruptcy Rules indicates otherwise. Therefore, even accepting the allegations in the Stay Motion as true, Debtor cannot meet his burden to show BDC and Holdings willfully violated the automatic stay and therefore, the Stay Motion fails to state a claim upon which the Court may grant relief.

WA 15247351.2

Case: 21-1153    Document: 00117747096    Page: 194    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 8 of 16

3.  **Debtor's implied suggestion that BDC and Holdings are imputed with Lendgreen's alleged knowledge and alleged conduct defies well-settled law.**

Debtor's sole basis for seeking relief against BDC and Holdings is his apparent assumption that he can simply lump BDC, Holdings, and Lendgreen together as one entity, which he refers to as the "Creditor." In this way, he appears to suggest that Lendgreen's alleged knowledge and alleged conduct can be imputed to BDC and Holdings. This assumption is wrong.

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003); *see also In re Rowanoak Corp.*, 344 F.3d 126, 132-33 (1st Cir. 2003). Thus, "[c]orporate owners are allowed to avoid liability beyond the extent of their investment because of the fiction that the corporation is a separate entity." *In re Indus. Comm. Elec., Inc.*, 319 B.R. 35, 49 (D. Mass. 2005); *see also Powers v. Texaco, Inc.*, 22 F.3d 1094, 1994 WL 199075, at *3 (5th Cir. 1994).

As Debtor himself concedes, the relationship between these entities is through a chain of parent-subsidiary, corporate ownership. Motion ¶ 3. The Tribe wholly owns BDC, a tribally chartered corporation. The BDC wholly owns Holdings, a tribally organized limited liability company. Holdings wholly owns Lendgreen, also a tribally organized limited liability company. As separate entities, BDC is not responsible for Holdings' alleged wrongdoing, and Holdings' is not responsible for Lendgreen's alleged wrongdoing, and vice versa.

Notably absent from the Stay Motion is any theory or justification on why corporate parents are liable for the alleged wrongdoing of a subsidiary. Even accepting the allegations in the Stay Motion as true, Debtor cannot meet his burden to show BDC and Holdings willfully violated the automatic stay given his failure to allege any theory or basis to hold ownership liable for the alleged wrongdoing of an entity. Therefore, the Stay Motion fails to state a claim upon which the Court may grant relief.

8

Case: 21-1153    Document: 00117747096    Page: 195    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 9 of 16

**B.    The Court Should Dismiss the Stay Motion Pursuant to Rule 12(b)(1) Because the Court Lacks Subject Matter Jurisdiction.**

Even if the Stay Motion stated a claim upon which this Court could grant relief, Lendgreen, BDC, and Holdings enjoy tribal sovereign immunity, and the Court therefore lacks subject matter jurisdiction.

**1.    Law regarding tribal sovereign immunity.**

Federally recognized Indian tribes are separate sovereigns pre-existing the Constitution and there is long-standing Supreme Court precedent recognizing common law immunity from suit. *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788 (2014) (the doctrine of tribal sovereign immunity has been recognized by the Supreme Court "for well over a century" and has been reaffirmed many times throughout that period) (Sotomayor, J., concurring); *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, (1978); *United States v. United States Fidelity & Guar. Co.*, 309 U.S. 506, 512–513 (1940).); *Parks v. Ross*, 52 U.S. 362 (1850).

Tribal sovereign immunity is a "necessary corollary to Indian sovereignty." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986). Federally recognized tribes "enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities, and whether they were made on or off a reservation or settlement. *In re Whitaker*, 474 B.R. 687, 690-91 (B.A.P. 8th Cir. 2012) (citing *Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc.*, 523 U.S. 751, 754–55 (1998) and *Hagen v. Sisseton–Wahpeton Comm. Coll.*, 205 F.3d 1040 (8th Cir.2000)). "This aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress. But without congressional authorization, the Indian Nations are exempt from suit." *Santa Clara Pueblo*, 436 U.S. at 59

9

Case: 21-1153    Document: 00117747096    Page: 196    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 10 of 16

(internal quotation marks omitted); *See also In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304 (8th Cir. 1994).

Congress's abrogation of tribal sovereign immunity "cannot be implied." *Santa Clara Pueblo*, 436 U.S. at 59. It must be "unequivocally expressed" in "explicit legislation." *Kiowa Tribe*, 523 U.S. at 759. In select instances, Congress has "authorized limited classes of suits against Indian tribes." *Citizen Band Potawatomi Indian Tribe*, 498 U.S. at 510. Still, Congress has "consistently reiterated its approval of the immunity doctrine," reflecting its "desire to promote the goal of Indian self-government." *Id.*

The Supreme Court has "treated the doctrine of tribal immunity as settled law and dismissed any suit against a tribe absent congressional authorization." *Bay Mills*, 572 U.S. at 789 (quotation omitted). In delineating the standard for finding congressional authorization for suit against an Indian tribe, the Supreme Court has spoken in no uncertain terms. "The baseline position . . . is tribal immunity; and to abrogate such immunity, *Congress must unequivocally express that purpose*." *Id.* at 790 (emphasis added). An intent to abrogate "cannot be implied." *Martinez*, 436 U.S. at 58 (quotations omitted). "That rule of construction reflects an enduring principle of Indian law: Although Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends to undermine Indian self-government." *Bay Mills*, 572 U.S. at 790. In accord with a foundational rule of statutory interpretation in federal Indian law: "Ambiguities in federal law [are] construed generously in order to comport with . . . traditional notions of sovereign immunity and with the federal policy of encouraging tribal independence." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980).

WA 15247351.2

Case: 21-1153    Document: 00117747096    Page: 197    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 11 of 16

2.        **Lendgreen, Holdings, and BDC Enjoy Tribal Sovereign Immunity.**

Tribal sovereign immunity is broad and applies to both "governmental" activities as well as "commercial" activities of a tribe, regardless of whether the activity in question took place on- or off-reservation. *Kiowa*, 523 U.S. at 760. It is settled law that immunity extends to a tribe's political and economic subdivisions, known as "arms" of the tribe. *Alabama v. PCI Gaming Authority*, 801 F.3d 1278, 1287-88 (11th Cir. 2015); *see also Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725-26 (9th Cir. 2008) (explaining that "tribal corporations acting as an arm of the tribe enjoy the same sovereign immunity granted to a tribe itself"); *see People v. Miami Nation Enterprises*, 2 Cal.5th 222, 236 (2016); *Wells Fargo Bank, N.A. v. Lake of the Torches Econ. Dev. Corp.*, 677 F. Supp. 2d 1056, 1061 (W.D. Wis. 2010); *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 174 (4th Cir. 2019) (find lending entities were entitled to tribal sovereign immunity as arms of an Indian tribe in an action alleging loans carried unlawfully high interest rates).

As the Stay Motion acknowledges, Lendgreen, BDC, and Holdings are tribal entities that are arms of the Tribe. Motion ¶ 3. Notwithstanding this acknowledgment, the Stay Motion does not challenge or dispute that Lendgreen, BDC, or Holdings are arms of the Tribe and that they are entitled to tribal sovereign immunity. Moreover, a court has specifically found that BDC is an arm of the Tribe entitled to tribal sovereign immunity. *Bruguier v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 237 F. Supp. 3d 867, 873-74, 876 (W.D. Wis. 2017) ("[BDC], which is an economic arm of the Tribe . . . . was established by the Tribe's constitution to promote the economic interests of the Tribe, and the Tribe is its sole owner . . . . and is entitled to sovereign immunity."). Lendgreen, BDC, and Holdings therefore enjoy tribal sovereign immunity from suit, including the Stay Motion.

WA 15247351.2

Case: 21-1153    Document: 00117747096    Page: 198    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 12 of 16

### 3.    The Bankruptcy Code Does Not Abrogate Tribal Sovereign Immunity.

Debtor fails to allege any abrogation or waiver of tribal sovereign immunity, despite his burden to do so in bringing the Stay Motion against entities that enjoy sovereign immunity. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995). Presumably, however, Debtor may argue that the Bankruptcy Code provides abrogation pursuant to 11 U.S.C. § 106(a).

Pursuant to Section 106(a), "sovereign immunity is abrogated as to a governmental unit," with respect to Section 362. Section 101(27) defines "governmental unit" as "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . . , a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27). Section 101(27) does not list federally recognized Indian tribes as a "governmental unit."

Three Circuit Courts have considered whether Section 106(a), coupled with Section 101(27)'s definition of "governmental unit", constitutes the required unequivocal and unmistaken expression of Congressional intent required to abrogate tribal sovereign immunity. *See e.g.*, *In re Greektown Holdings, LLC*, 917 F.3d 451, 459–460 (6th Cir. 2019) (finding that simply because an Indian tribe may qualify as "other foreign or domestic government," section 101(27), is insufficient to meet the standard necessary to abrogate sovereign immunity); *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 824 (7th Cir. 2016) (stating that although "Congress need not invoke 'magic words' to abrogate immunity" precedent indicates that "Congress['s] intent to abrogate tribal sovereign immunity [is not established] without expressly mentioning Indian tribes somewhere in the statute"); *see also In re Whitaker*, 474 B.R. 687, 691–692 (B.A.P. 8th Cir. 2012) (finding abrogation by Congress of sovereign immunity must be unequivocal and explicit, which qualities lack relative to Section 106's application to federally recognized Tribes since Congress did not refer to Indian Tribes in Section 106); *c.f. Krystal Energy Co. v. Navajo Nation*, 357 F.3d

WA 15247351.2

Case: 21-1153    Document: 00117747096    Page: 199    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 13 of 16

1055, 1057, 1058, (9th Cir. 2004), *as amended on denial of reh'g* (Apr. 6, 2004) ("Had Congress simply stated, 'sovereign immunity is abrogated as to all parties who otherwise could claim sovereign immunity,' there can be no doubt that Indian tribes, as parties who could otherwise claim sovereign immunity, would no longer be able to do so. Similarly, here, Congress explicitly abrogated the immunity of any 'foreign or domestic government.' Indian tribes are domestic governments. Therefore, Congress expressly abrogated the immunity of Indian tribes").

As the Sixth Circuit and Eighth Circuit Bankruptcy Appellate Panel noted, Congress passed and even amended Section 106 with knowledge of the Supreme Court's high standard for abrogation of tribal sovereign immunity. *Greektown Holdings*, 917 F.3d at 456; *Whitaker*, 474 B.R. at 692. The Sixth Circuit also reflected on instances where Congress "unequivocally expressed" its intention to abrogate tribal sovereign immunity by specifically mentioning Indian tribes:

> We also need not hypothesize whether Congress understood the meaning of "unequivocal," as Congress kindly demonstrated as much in the years immediately preceding its enactment of the Bankruptcy Code. *See, e.g.*, Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6972(a)(1)(A), 6903(13), 6903(15) (authorizing suits against an "Indian tribe"); Safe Water Drinking Act of 1974, 42 U.S.C. §§ 300j-9(i)(2)(A), 300f(10), 300f(12) (authorizing suits against an "Indian tribe").

*Id*. at 457.

Finally, the Sixth Circuit highlighted that its decision accorded with an important observation made by the Seventh Circuit: "'[T]here is not one example in all of history where the Supreme Court has found that Congress intended to abrogate tribal sovereign immunity *without* expressly mentioning Indian tribes somewhere in the statute.'" *Id.* at 460 (quoting *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 824 (7th Cir. 2016)).

As previously noted, only one Circuit Court has diverged from the Sixth and Seventh Circuits. Notably, both the *Whitaker* and *Greektown* courts strongly rejected the reasoning and

WA 15247351.2

Case: 21-1153    Document: 00117747096    Page: 200    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 14 of 16

conflicting outcome in *Krystal Energy Company v. Navajo Nation*. In that case the Ninth Circuit

reasoned as follows:

> Indian tribes are certainly governments, whether considered foreign or domestic (and, logically, there is no other form of government outside the foreign/domestic dichotomy, unless one entertains the possibility of extra-terrestrial states).

> The Supreme Court has recognized that Indian tribes are "'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Potawatomi*, 498 U.S. at 509, 111 S. Ct. 905 (citing *Cherokee Nation v. Georgia*, 5 Pet. 1, 17, 8 L. Ed. 25 (1831)); *see also, Blatchford v. Native Village of Noatak*, 501 U.S. 775, 782, 111 S. Ct. 2578, 115 L. Ed. 2d 686 (comparing Indian tribes to states and foreign sovereigns, and concluding that both states and Indian tribes are "domestic" sovereigns). So the category "Indian tribes" is simply a specific member of the group of domestic governments, the immunity of which Congress intended to abrogate.

357 F.3d 1055, 1057-58 (9th Cir. 2004). As the *Whitaker* court explained,

> The logic of *Krystal* . . . is that: (1) the Supreme Court has referred to Indian tribes as "domestic dependent nations"; (2) Congress enacted §§ 106 and 101(27) of the Bankruptcy Code with that reference in mind; (3) Congress abrogated sovereign immunity as to states, foreign states, and other foreign or domestic governments; and, therefore, (4) Congress must have intended to include Indian tribes as "other foreign or domestic governments."

> . . . But the several steps needed to justify the holding in [that case] is far from an unequivocal expression of Congressional intent to abrogate the tribes' immunity, stated in explicit legislation.

The *Greektown* adopted a further observation from the Seventh Circuit:

> While not 'weighing in' on the precise issue of 11 U.S.C. §§ 106, 101(27), the Seventh Circuit made clear the flaw it saw in the Ninth Circuit's reasoning:

> Meyers argues that the district court dismissed his claim based on its erroneous conclusion that Indian tribes are not governments. He then dedicates many pages to arguing that Indian tribes are indeed governments. Meyers misses the point. The district court did not dismiss his claim because it concluded that Indian tribes are not governments. It dismissed his claim because it could not find a clear, unequivocal statement in FACTA that Congress meant to abrogate the sovereign immunity of Indian [t]ribes. *Meyers has lost sight of the real question in this sovereign immunity case—whether an Indian tribe can claim immunity from suit. The answer to this question must be 'yes' unless Congress has told us in no uncertain terms that it is 'no[,]' [as] [a]ny ambiguity must be resolved in favor of immunity.* Of course Meyers wants us to focus on whether the Oneida Tribe is a

14

Case: 21-1153    Document: 00117747096    Page: 201    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 15 of 16

government so that we might shoehorn it into FACTA's statement that defines liable parties to include 'any government.' But when it comes to [tribal] sovereign immunity, shoehorning is precisely what we cannot do. Congress' words must fit like a glove in their unequivocally.

917 F.3d at 459 (quoting *Meyers*, 836 F.3d at 826-27) (emphasis added).

For all of these reasons, Lendgreen, BDC, and Holdings urge this Court to adopt the well-reasoned analysis of the Sixth Circuit, Seventh Circuit, Eighth Circuit Bankruptcy Appellate Panel, and the many other lower courts to have considered the issue. *See, e.g.*, *In re Star Group Communications, Inc.*, 568 B.R. 616 (Bankr. D. N.J. 2016) (agreeing with *Whitaker* and explaining that "the inquiry ends if the statutory language is unambiguous and the statutory scheme is coherent and consistent. The plain language of the statute, Section 106(a), is clear and unambiguous. It does not abrogate sovereign immunity for Indian tribes. . . . If Congress had intended to abrogate sovereign immunity to Indian tribes under section 106, it could easily and expressly have done so, but it did not."); *In re Money Center of America, Inc.*, 565 B.R. 87 (Bankr. D. Del. 2017), *order aff'd*, 2018 WL 1535464 (D. Del. 2018) (concluding "that Congress has not unequivocally abrogated the sovereign immunity of Indian tribes" and adhering to *Whitaker*); *In re Greektown Holdings, LLC*, 532 B.R. 680 (E.D. Mich. 2015); *In re Nat'l Cattle Cong.*, 247 B.R. 259, 267 (Bankr. N.D. Iowa 2000); *See also In re Mayes*, 294 B.R. 145, 148 n.10 (B.A.P. 10th Cir. 2003) (noting that 11 U.S.C. §§ 106 and 101(27) "probably" do not abrogate tribal sovereign immunity).

This Court should heed the *Whitaker*, *Greektown*, and *Meyers* courts' observations about the flawed reasoning in *Krystal* and adopt the sound approach they present. In doing so, the conclusion is that Sections 106(a) and 101(27) do not constitute the required unequivocal and unmistaken expression of Congressional intent required to abrogate tribal sovereign immunity. Therefore, the Court lacks subject matter jurisdiction and Lendgreen, BDC, and Holdings are not subject to the Stay Motion.

WA 15247351.2

Case: 21-1153    Document: 00117747096    Page: 202    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 74-1    Filed 07/30/20    Entered 07/30/20 15:46:47    Desc
Memorandum in Support of Motion to Dismiss    Page 16 of 16

## CONCLUSION

Debtor requests this Court hold BDC and Holdings responsible for Lendgreen's alleged violations of the automatic stay, alleged violations that occurred before BDC and Holdings even knew this bankruptcy proceeding existed. Debtor's request does not align with the Bankruptcy Code, Indian law, or corporate law. Notwithstanding the Stay Motion's pleading insufficiencies, the Court lacks subject matter jurisdiction given Lendgreen, BDC, and Holdings enjoy tribal sovereign immunity, which the Bankruptcy Code has not abrogated. Therefore, Lendgreen, BDC, and Holdings respectfully request this Court deny the Stay Motion.

Dated: July 30, 2020

Respectfully submitted,


/s/ Adrienne K. Walker
Adrienne K. Walker, Esq.
Aaron M. Williams, Esq.
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts  02111
Tel:  617-542-6000
Fax:  617-542-2241
E-mail: awalker@mintz.com
amwilliams@mintz.com


SPENCER FANE LLP

/s/  Zachary R.G. Fairlie
Scott J. Goldstein; admitted pro hac vice
Zachary R.G. Fairlie; admitted pro hac vice
1000 Walnut Street, Suite 1400
Kansas City, Missouri  64106
Tel: (816) 474-8100
Fax: (816) 474-3216
sgoldstein@spencerfane.com
zfairlie@spencerfane.com

WA 15247351.2

**J.A. 196**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br>BRIAN W. COUGHLIN,<br><br>             Debtor | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO. 19-14142-FJB |

## OBJECTION OF DEBTOR TO THE MOTION TO DISMISS OF RESPONDENT LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS TO THE MOTION OF DEBTOR TO ENFORCE THE AUTOMATIC STAY

NOW COMES the Debtor, Brian W. Coughlin, and serves notice of his objections to the allowance of the Motion to Dismiss of the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Respondents") to the Motion of Debtor to Enforce the Automatic Stay. As grounds therefor, as more fully set forth in the accompanying Memorandum of Law in Support of Objection of Debtor to the Motion to Dismiss of the Lac du Flambeau Band of Lake Superior Chippewa Indians, hereby asserts as follows:

1. The Motion to Enforce the Automatic Stay states a claim upon which the Court may grant relief against the Lac du Flambeau Band of Lake Superior Chippewa Indians;

2. The Court has subject-matter jurisdiction over the Stay Motion against the Lac du Flambeau Band of Lake Superior Chippewa Indians; and.

3. The Memorandum of Law and all the filings, records, and proceedings in this case are incorporated herein by reference.

WHEREFORE, the Debtor, Brian W. Coughlin respectfully requests that this Court issue an

Order:

1. Denying the Respondents' Motion to Dismiss; and

2. For all further relief deemed mete and just by the Court under the circumstances.

BRIAN W. COUGHLIN, Debtor
By his attorney,

Date:  8/21/2020                          */s/ Richard N. Gottlieb, Esq.*
                                          Richard N. Gottlieb, Esq. BBO # 547970
                                          Law Offices of Richard N. Gottlieb
                                          Ten Tremont Street
                                          Suite 11, 3rd Floor
                                          Boston, MA 02108
                                          (617) 742-4491
                                          rnglaw@verizon.net

**J.A. 198**

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

In re
BRIAN W. COUGHLIN,
                    Debtor

IN PROCEEDINGS UNDER
CHAPTER 13
CASE NO. 19-14142-FJB

## MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MOTION OF THE LAC DE FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, THE "RESPONDENTS")  MOTION TO DISMISS THE MOTION OF DEBTOR TO ENFORCE THE AUTOMATIC STAY

NOW COMES the Debtor, Brian W. Coughlin, and hereby submits the following

Memorandum of Law in Support of the Objection of Debtor to Motion of the Lac de Flambeau

Band of Lake Superior Chippewa Indians (the "Respondents") Motion to Dismiss.

## STATEMENT OF FACTS

Debtor, Brian W. Coughlin, filed voluntary Chapter 13 proceedings on December 4,

2019, listing Niiwin, LLC ("Lendgreen") as an unsecured creditor.  Lendgreen was listed on

Debtor's mailing matrix, and Debtor's Counsel served the Chapter 13 Plan upon Lendgreen, at

its mailing address of P.O. Box 221, Lac du Flambeau, WI  54538. Despite these notifications

from both the Court and Debtor's Counsel, the Respondents, through Lendgreen, continued their

debt-collection activities against the Debtor through December of 2019 and January, February

and March of 2020.

Notwithstanding the Debtor's Chapter 13 Bankruptcy filing and despite being notified by

the Court and by Debtor's Counsel through the mails, including the submission of Chapter 13

Plans proposing to pay unsecured creditors 100% in full over the life of the Debtor's Chapter 13

Plan term, up to and throughout February of 2020, the Respondents, through LendGreen,

continued to contact the Debtor, issuing emails, text messages and leaving numerous voicemails

for him, saying that it had a "very important message" and prompting the Debtor to call

Lendgreen.

On February 6, 2020, as a result of the constant harassment of the Respondents, through

LendGreen, the Debtor suffered such extreme emotional distress that the Debtor began suffering

from suicidal ideation, and , as a consequence, attempted to take his own life. The Debtor then

spent two (2) weeks at Massachusetts General Hospital recovering, and thereby suffered

damages in the form of expending vacation and sick leave with his employer and medical bills

for his care.

After repeated telephone calls from Respondents, through Lendgreen, to Debtor, the

Debtor called Respondents, through Lendgreen, on February 26, 2020 and spoke with its

collection specialist, informing her that he had filed Chapter 13 bankruptcy back in December of

2019 and that Lendgreen had been previously notified. The representative of Lendgreen sent an

email to Debtor acknowledging the conversation, stating, "as earlier discussed, the email address

to send the power of attorney documents for your bankruptcy case is

administration@lendgreen.com."

On March 18, 2020, the Respondents, through Lendgreen, again called the Debtor's

telephone number and left a voicemail for him to contact them about a "very important matter".

On March 19, 2020, Respondents, through Lendgreen, yet again called Debtor's telephone

number and told him to return the call about a "very important matter".

-2-

**J.A. 200**

## ARGUMENTS

**1. THE RESPONDENTS DO NOT ENJOY TRIBAL SOVEREIGN IMMUNITY BY OPERATION OF 11 U.S.C. § 106(a) BASED UPON SEMINAL CASE LAW ARISING FROM THE U.S. COURT OF APPEALS FOR THE NINTH CIRCUIT.**

The seminal appellate case regarding the issue of whether the provisions of 11 U.S.C. § 106(a) effectively abrogate the sovereign immunity of Indian Tribes can be found in **Krystal Energy Co. v. Navajo Nation**[1]. In **Krystal Energy**, the tribe moved to dismiss an adversary proceeding against the Navajo Nation, based upon the claim by the Tribe that it enjoyed "sovereign immunity" from suit and contending that the provisions of 11 U.S.C. § 106(a) did not effect an abrogation of the Tribe's immunity from suit because, it posited, that while sovereign immunity of "governmental units, might have been abrogated, the definition of "governmental unit" under 11 U.S.C. § 101(27) did not explicitly include the term "Indian Tribes" within that definition.[2]

In denying the Tribe's Motion to Dismiss, the Ninth Circuit in **Krystal Energy** acknowledged the common-law doctrine of sovereign immunity of Indian Tribes "by the courts of this country as integral to the sovereignty and self-**governance of Indian tribes.**"[3] However, sovereign immunity is not absolute and can be abrogated by Congress if such an intent

---

[1]    357 F.3d 1055 (9th Cir., 2004).

[2]    *Id.* at 1057.

[3]    *Id.* at 1056

-3-

is "unequivocally expressed" in the text of federal legislation.\4 The salient issue then became

whether the language of 11 U.S.C. § 106(a) and 11 U.S.C. § 101(27) was sufficiently

"unequivocally expressed" to abrogate Indian Tribes' sovereign immunity in matters of federal

Bankruptcy Law.

> The Ninth Circuit approached the matter in a straight-forward fashion:

> It is clear from the face of §§ 106(a) and 101(27) that Congress did intend to abrogate the sovereign immunity of *all* "foreign and domestic governments." Section 106(a) explicitly abrogates the sovereign immunity of all "governmental units." The definition of "governmental unit" first lists a sub-set of all governmental bodies, but then adds a catch-all phrase, "or other foreign or domestic governments." 11 U.S.C. § 101(27). Thus, *all* foreign and domestic governments, including but not limited to those particularly enumerated in the first part of the definition, are considered "governmental units" for the purpose of the Bankruptcy Code, and, under § 106(a), are subject to suit.

> . . .

> The Supreme Court has recognized that Indian tribes are "`domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Potawatomi,* 498 U.S. at 509, 111 S.Ct. 905 (citing **Cherokee Nation v. Georgia**, 5 Pet. 1, 17, 8 L.Ed. 25 (1831)); *see also,* **Blatchford v. Native Village of Noatak**, 501 U.S. 775, 782, 111 S.Ct. 2578, 115 L.Ed.2d 686 (comparing Indian tribes to states and foreign sovereigns, and concluding that both states and Indian tribes are "domestic" sovereigns). So the category "Indian tribes" is simply a specific member of the group of domestic governments, the immunity of which Congress intended to abrogate.

> Had Congress simply stated, "sovereign immunity is abrogated as to all parties who otherwise could claim sovereign immunity," there can be no doubt that Indian tribes, as parties who could otherwise claim sovereign immunity, would no longer be able to do so. Similarly here, Congress explicitly abrogated the immunity of any "foreign or domestic government." Indian tribes are domestic

---

4/    **Kiowa Tribe of Okla. v. Mfg. Techs., Inc.**, 523 U.S. 751, 759, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).

governments. Therefore, Congress expressly abrogated the immunity of Indian tribes.[5]

The decision in **Krystal Energy** is not the "final word" on this topic as the Respondents in this case are more than eager to point out. Those courts that have taken issue with the holding in **Krystal Energy**[6] have done so based upon the belief that the *only* way in which Congress could express its "unequivocal intent" to abrogate sovereign immunity would be to have included the term "Indian Tribe" as part of the *enumerated* list of political entities set forth in 11 U.S.C. § 101(27), effectively ignoring the last clause of the definition as not being explicit enough for the tastes of those courts. The U.S. Court of Appeals for the First Circuit simply has *not* issued any decision regarding whether the provisions of 11 U.S.C. § 106(a) and 11 U.S.C. § 101(27) are sufficiently "unequivocal" to abrogate the purported sovereign immunity of the Tribe. However, the approach offered by those courts and the Respondents in this case runs not only contrary to common sense, but also contrary to rules of statutory construction.

---

[5]/    *Id.* at 1057-1058

[6]/    *See* **Meyers v. Oneida Tribe of Indians of Wisconsin**, 836 F.3d 818 (7th Cir. 2016); **In re Greektown Holdings, LLC**, 917 F.3d 451 (6th Cir. 2019); **In re Whitaker**, 474 B.R. 687 (B.A.P. 8th Cir. 2012).

.

J.A. 203

## 2. THE RESPONDENTS' INTERPRETATIONS OF 11 U.S.C. §§ 101(27) AND 106(a) ARE ERRONEOUS BECAUSE THEY VIOLATE BASIC RULES OF STATUTORY CONSTRUCTION AND LOGIC.

The argument put forward by the Respondents in claiming that 11 U.S.C. § 101(27) does ***not*** encompass the Tribe and its business entities as a "governmental unit" and therefore is not subject to the immunity abrogation provisions of 11 U.S.C. § 106(a) is erroneous because it violates basic rules of statutory construction. The Respondents contend that because Congress did not use the words "Indian Tribe" in the Bankruptcy Code explicitly, it would only be *by implication*[7] that they would be included within the statutory definition of a "governmental unit".

---

[7]   Although the Respondents may argue otherwise, the reality is that the determination that Indian tribes are encompassed within 11 U.S.C. §§ 101(27) and 106(a) is not done by "implication" or by inference at all, but rather by ***logical deduction***. The difference is aptly expressed with respect to the statutes in question by the court in the case of **In re Russell**,:

> Implication and inference are the rhetorical versions of induction, drawing conclusions from examples. For example, if the last phrase were eliminated from § 106(a), one might draw the inference that because sovereign immunity is expressly abrogated as to the United States, the States, the Commonwealths, the Districts, and foreign governments, Congress must have intended to abrogate it as to all governments. That would be reasoning by implication or inference. While that might be equally as sound, and in fact how all new knowledge is achieved, it nevertheless retains the possibility for error. . . .

> But because the statute expressly abrogates sovereign immunity as to all domestic governments, the statute applies to Indian tribes by deduction rather than by implication, so the conclusion is not proscribed by the Court's limitations. In other words, the proscription against abrogation by implication does not require the listing or naming of each government as to which it applies so long as they are unequivocally identified by the statute.

*Infra* Note 14, at 40-41

The most basic of these rules is that a statute should be read so that no one part of it is read as being superfluous, a nullity or as mere surplusage to other language within that statute.[8] The structure of 11 U.S.C. § 101(27) is extremely broad: it covers every conceivable type of political subdivision, from the United States, to individual states, to districts, territories and instrumentalities of all of the above, municipalities or even a foreign state. At the very last, to make sure that there is no other type of polity that may be "left out" of the definition, the statute goes on in the disjunctive to include "or other foreign or domestic government".

The Tribe in this case is decidedly ***not*** one of the several States that compose the United States as a whole, nor can it be said that it is a Commonwealth or a District or a Territory or a Municipality. Supreme Court case law is legion in its description of Indian tribes as a "domestic dependent nation" of the Federal Government.[9] Therefore, it stands to reason that the Indian Tribe represented by its government namely, its "Tribal Council", is encompassed within this last "wrap-around" provision, as an "other . . . domestic government". Congress need not use any talismanic "magical words" in order to accomplish its goal of including the Tribe as a

_____

[8] *See* **Maine Pooled Disability Trust v. Hamilton**, 927 F.3d 52, 58 (1st Cir. 2019), *citing* **Lawless v. Steward Health Care Sys., LLC**, 894 F.3d 9, 23 (1st Cir. 2018).

[9] "Indian tribes are `domestic dependent nations' that exercise inherent sovereign authority over their members and territories." **Potawatomi**, 498 U.S. at 509, 111 S.Ct. 905, *quoting* **Cherokee Nation v. Georgia**, 30 U.S. (5 Pet.) 1, 17, 8 L.Ed. 25 (1831). "Indian tribes are `distinct, independent political communities, retaining their original natural rights' in matters of local self-government." *Martinez*, 436 U.S. at 55, 98 S.Ct. 1670, quoting **Worcester v. Georgia**, 31 U.S. (6 Pet.) 515, 559, 8 L.Ed. 483 (1832). They are "separate sovereigns pre-existing the Constitution." **Martinez**, 436 U.S. at 56, 98 S.Ct. 1670.

-7-

"governmental unit" within the meaning of the statute in question.[10] Moreover, if the Tribe does not fall within the wide expanse created by the last clause of 11 U.S.C. § 101(27), it *necessarily* follows, given the inclusion of every other kind of political and territorial subdivision within the statute, that the last clause *must* then be read as redundant and thereby rendered as a nullity or surplusage in  the statute. As noted by Judge McFeeley in the case of **In re Mayes**[11]:

> So a domestic government would be a group within the lands of the United States that operates through some form of ruling principles. The main body of § 101(27) embraces virtually every form of domestic government including, municipalities, States and their instrumentalities, and the federal government. After examining the statute, the question remains: To what does the phrase following the semicolon "other . . . domestic government" refer?
>
> An important statutory maxim of interpretation requires a court to give operative effect to every word Congress used. ***Because in § 101(27) all other forms of domestic government prior to the semicolon are enumerated, if the phrase following the semicolon is not read as referring to Indian tribes and other indigenous peoples, the phrase becomes meaningless. There are no other forms of domestic government that have not already been specified.***
>
> Reading "other . . . domestic government" as referring to Indian tribes is not without precedent. Historically, Indian tribes have also been called "domestic dependent nations" by both the judiciary and the executive branch. The Supreme Court has characterized Indian tribes as "domestic dependent nations." And a recent Executive Order interpreting the Indian Self Determination and Education Assistance Act, 25 U.S.C. § 450 *et seq.,* characterized Indian tribes as "domestic dependent nations." The fact that Indian tribes have been referred to as "domestic dependent nations" incorporates them into § 106(a). If an Indian tribe is a "domestic dependent nation" then it is also an "other . . . domestic government."[12]

---

[10]/ *See* **Krystal Energy v. Navajo Nations**, 357 F.3d at 1061 (9th Cir., 2004).

[11]/ 294 B.R. 145 (10th Cir. BAP, 2003)

[12]/ *Id.* at 159-160. Emphasis supplied.

-8-

By comparison, the interpretation offered up by the Respondents and the decisions taking

issue with **<u>Krystal Energy</u>**,[13] bear this glaring infirmity in statutory construction encompassed

as a simple question: If the last clause of 11 U.S.C. § 101(27) does ***not*** encompass the polity

represented by the Indian Tribe as the kind of "other . . . domestic government" contemplated by

the statute, then to what type of political subdivision did Congress conceive when it enacted the

statute that might have been encompassed in that clause that would not render that clause

redundant and thereby superfluous? This is of course a rhetorical question, with all that that

implies. ***No other kinds of political subdivisions exist, <u>other than</u> an Indian Tribe***. As the Court

in **<u>In re Russell</u>**,[14] put it:

> Indeed, since the meaning of "or other foreign or domestic government"
> cannot include the United States, or a State, Commonwealth, Territory or District,
> or a municipality, or a foreign state, or an agency, department or instrumentality
> of any of them, because they are all expressly mentioned, it is difficult if not
> impossible to come up with any possible meaning for "other domestic
> government" except Indian tribes. Without another reasonable plausible
> alternative meaning, the abrogation of sovereign immunity as to all domestic
> governments is not equivocal. It could hardly be more absolute.[15]

---

[13]/ **<u>Krystal Energy</u>**, *supra* Note 1 at 1057.

[14]/ 291 B.R. 34 (Bankr. D. Ariz., 2003)

[15]/ *Id.* at 41.

-9-

**J.A. 207**

3.  **THE FIRST CIRCUIT'S RECENT DECISIONS REGARDING THE STATUS OF INDIAN TRIBES INDICATE THAT IT WILL ADOPT THE REASONING OF THE NINTH CIRCUIT COURT OF APPEALS IN *KRYSTAL ENERGY COMPANY V. NAVAJO NATION*.**

In the case of **Narragansett Indian Tribe v. Rhode Island**[16], the First Circuit dealt with the question of whether a claim of tribal sovereign immunity could operate to bar the State of Rhode Island from enforcing a valid search warrant on tribal settlement lands to arrest tribal members for violating the state's cigarette tax laws. Among the arguments made by the Narragansett Indian Tribe was that tribal sovereign immunity was a characteristic of the tribe's "inherent sovereignty". In rejecting this approach, which had been adopted by the dissent, the First Circuit found:

> At the threshold, we pause to confront a point made by our dissenting brethren. They suggest that our approach to this question disregards the "subtle but important" distinction between tribal sovereignty and tribal sovereign immunity announced in a decision of a panel of this court. **Post** at 32 (Lipez, J., with whom Torruella, J., joins, dissenting) (quoting **Aroostook Band of Micmacs v. Ryan**, 404 F.3d 48, 68 (1st Cir.2005)). This criticism rests on shaky ground. The **Aroostook** panel—with scant citation to authority— saw a distinction that is not apparent to us; it framed the distinction as being that the doctrine of tribal sovereignty contemplates that, in certain circumstances, a tribe "is not subject to state laws ... *at all,*" whereas tribal sovereign immunity "means that [a tribe] is not amenable to *state judicial or quasi-judicial proceedings* to enforce those laws." **Aroostook**, 404 F.3d at 68 (emphasis in original). In our view, both the **Aroostook** panel's sculpting of the distinction and its ensuing discussion of the scope of tribal sovereign immunity misread the applicable Supreme Court precedents and, thus, are incorrect. As we already have explained, "the trend has been away from the idea of inherent Indian sovereignty as a bar to state jurisdiction and toward reliance on federal pre-emption," **McClanahan**, 411 U.S. at 172, 93 S.Ct. 1257; *see* **Hicks**, 533 U.S. at 362, 121 S.Ct. 2304, treating sovereignty instead as the source of "tribal power ... to protect tribal self-government or to control internal relations" through tribal regulation of activities on tribal lands, **Montana v. United States**, 450 U.S. 544, 564, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981); *see* **Hicks**, 533 U.S. at 358-60,

---

[16]/    449 F.3d 16 (1st Cir. 2000).

-10-

121 S.Ct. 2304. Consistent with this trend, tribal sovereign immunity is most accurately considered an incidence or subset of tribal sovereignty. *See, e.g.*, **Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe**, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (indicating that tribal sovereign immunity is an incidence of tribal sovereignty). Consequently, we expressly overrule **Aroostook** with respect to the distinction in question and proceed with our bifurcated inquiry.[17]

That same year, the First Circuit, in the case of **Ninegret Development v. Narragansetts Indian Wetuomuck Housing Authority**,[18] examined the issue of whether the assertion of tribal sovereign immunity effectuated a deprivation of federal subject matter jurisdiction, similar to the argument being posited by the Tribe in this case:

Two fundamental premises dictate our order of progression. First, although tribal sovereign immunity is jurisdictional in nature, consideration of that issue always must await resolution of the antecedent issue of federal subject-matter jurisdiction. *See* **In re Prairie Island Dakota Sioux**, 21 F.3d 302, 304-05 (8th Cir. 1994). This sequencing follows inexorably from **Oklahoma Tax Commission v. Graham**, 489 U.S. 838, 841 (1989), in which the Court held that the mere presence of a tribal sovereign immunity defense did not, in and of itself, "convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law." Logically, this reasoning compels a conclusion that a federal court can address such a defense only after it confirms independently that subject-matter jurisdiction exists.

The second premise that affects our sequencing determination concerns the relationship between tribal sovereign immunity and the tribal exhaustion doctrine. The question here (which, as we have said, arises only after the inquiry into subject-matter jurisdiction has been answered affirmatively) relates to whether the federal court or the tribal court should pass upon the sovereign immunity defense, at least initially. On this question, the authorities are in some disarray.

The Eighth Circuit has held that a district court should begin this phase of its inquiry by addressing exhaustion and, if it determines that tribal remedies must be exhausted, give the tribal court the first crack at considering the bona fides of the sovereign immunity defense. *See* **Davis v. Mille Lacs Band of Chippewa Indians**,

---

[17]   449 F.3d at 24.

[18]   207 F.3d 21 (1st Cir., 2000).

-11-

193 F.3d 990, 992 (8th Cir. 1999). That view appears to be based on a misreading of **National Farmers**, and it has mustered  scant support elsewhere. We respectfully decline to adopt it and hold instead that, as long as federal subject-matter jurisdiction exists, a defense predicated on tribal sovereign immunity is susceptible to direct adjudication in the federal courts, without reference to the tribal exhaustion doctrine.[4] *See* **TTEA v. Ysleta Del Sur Pueblo**, 181 F.3d 676, 680-81, 683-84 (5th Cir. 1999); **Altheimer & Gray v. Sioux Mfg. Corp**., 983 F.2d 803, 812-15 (7th Cir. 1993). We believe that this conclusion flows naturally from the reality that the sovereignty of Indian tribes is subject to congressional control, with the result that tribal sovereign immunity is necessarily a matter of federal law. *See* **Kiowa Tribe v. Manufacturing Techs**., 523 U.S. 751, 759 (1998); **Osage Tribal Council v. United States Dep't of Labor,** 187 F.3d 1174, 1180 (10th Cir. 1999).[19]

It therefore follows based upon the foregoing case law, contrary to the positions taken by the Respondents in this matter, that the First Circuit will not view the question of tribal "sovereign immunity" as one related to or otherwise impairing a Federal Court's subject-matter jurisdiction. Further, the First Circuit has clearly indicated that it will necessarily eschew allegedly "'subtle but important' distinctions' in interpreting federal statutes relating to tribal sovereign immunity, such as would be required in attempting to interpret 11 U.S.C. §§ 106(a) and 101(27) as ***not*** encompassing an Indian Tribe with the Bankruptcy Code's broad abrogation of sovereign immunity in bankruptcy matters.

Furthermore, the ersatz reading offered by the Respondents and cases that have not adopted the holding in **Krystal Energy** leads to another violation of basic rules of statutory construction: the creation of absurd results. Case law both within this Circuit and outside it

---

[19]/    *Id.* at 28-29.

-12-

makes it abundantly clear that no statute should be read so as to lead to absurd results.[20] Yet, if

Indian Tribes are not included within the ambit of 11 U.S.C. § 106(a), Indian Tribes activities

relating to such matters as (a) taxation of its own tribal members who seek Federal bankruptcy

protection, (b) holding defaulted mortgage debt on non-tribal residential properties, or (c) as

even where its instrumentalities are Pay-Day Lenders seeking monetary recovery in Tribal

Courts, would not be subject to the Automatic Stay, *at all*, under 11 U.S.C. § 362(a). Given the

Respondents' narrow "construction" of 11 U.S.C. §§ 106(a) and 101(27), a tribal court, tribal

governmental entities and tribal instrumentalities, such as the Respondents here, would enjoy

unprecedented rights and privileges in bankruptcy not even granted to States, Municipalities, the

Federal governments or the instrumentalities of any of them when a debtor files for bankruptcy

protection, be it a large publicly-traded corporation or, like here, a lone individual.

4.  **THE TRIBE IS LEGALLY INDISTINGUISHABLE FROM ITS SUBSIDIARIES SUCH THAT KNOWLEDGE BY LENDGREEN OF THE DEBTOR'S BANKRUPTCY CASE IS IMPUTED TO ALL "ARMS" OR INSTRUMENTALITIES OF THE TRIBE.**

Because the Tribe maintains pervasive control and oversight over both BDC and

LendGreen, the indisputable knowledge of LendGreen of the Debtor's Chapter 13 filing,

necessarily imputes such knowledge "up the line" to the Tribe, making the Tribe and the other

_____

[20]/   *See* **Chung Fook v. White**, 264 U.S 443 (1924). *See also* **Pritzker v. Yari**, 42 F.3d 53, 67-68 (1st Cir., 1994) ("As a fundamental principle of statutory construction, we will not depart from, or otherwise embellish, the language of a statute absent either undeniable textual ambiguity . . . or some other extraordinary consideration, such as the prospect of yielding a patently absurd result") (internal citations omitted).

-13-

Respondents vicariously liable for the wrongs committed by Lendgreen.[21] Furthermore, in the

unusual circumstances of this case, the Respondents admit that LendGreen is "an arm of the

Tribe" and therefore claim that it and its affiliates are protected by the Tribe's claim of sovereign

immunity. However, this assertion "cuts both ways". The First Circuit has held that as an "arm"

of an Indian tribe, an entity is legally indistinguishable from the tribe itself.[22] Therefore, since

the Respondents assert that they are all "arms" of the Lac de Flambeau Band of Lake Superior

Chippewa Indians, the knowledge held by one "arm" of that Tribe is necessarily knowledge held

by all "arms" of the Tribe and the Tribe itself.. The Respondents cannot claim that they are

effectively all one entity for the purpose of claiming tribal sovereign immunity on the one hand,

while simultaneously claiming corporate "separateness" on the other hand. Respondents cannot

"have their cake and eat it too"; by asserting that all of them are "arms" of a single tribe for the

purposes of tribal sovereign immunity, they necessarily ***must*** forego any simultaneous contention

of corporate separateness. This is particularly the case given the circumstances of the manner in

which the Respondents were originally created and operated by the Tribe in this case.

_____

[21] *See e.g.* **Ramirez v. Toops**, _____ B.R. _____, Adv. Pro. No. 13-03067 (Bankr. S.D. Texas, 2014) (Principal corporate entity vicariously held liable for violating the automatic stay under 11 U.S.C. § 362(k) where it failed to turnover truck and caused damage thereto after receiving notice of the Debtor's Chapter 13 bankruptcy filing.)

[22] "The Authority, as an arm of the Tribe, enjoys the full extent of the Tribe's sovereign immunity. Therefore, we shall not distinguish between the Tribe and the Authority in discussing concepts such as tribal immunity and tribal exhaustion." **Ninegret Development v. Narragansetts Indian Wetuomuck Housing Authority**, 207 F.3d at 29 (1st Cir., 2000).

-14-

5. **THE TRIBE "MANUFACTURES" A CORPORATE STRUCTURE FOR LENDGREEN FOR THE PURPOSE OF ATTEMPTING TO INSULATE ITSELF AND ITS "ARMS" FOR THE PURPOSE OF "EXPORTING" THE TRIBE'S CLAIMS OF "SOVEREIGN IMMUNITY" WHILE PREVENTING ANY MEANINGFUL RECOVERY AGAINST THE SAME.**

The salient facts relating to LendGreen's creation and its interrelationship with the Tribe are beyond cavil and this Court may, in evaluating the Respondents' Motions to Dismiss under Rule 12(b)(6), take judicial notice of records of other courts[23] in which Lendgreen and its affiliates have appeared. As it turns out, there is much documentation from the Respondents themselves related to the formation of the Respondents and their interrelationships with each other provided in the case of **Walker v. Lendgreen, et al.**, C.A. 8:16-cv-00862-JDW-AAS (U.S. Dist. Ct., M.D. Fla., 2016). To this end, the documents referenced below are derived from the Exhibits attached to the Declaration of Lendgreen's Officer, Brent McFarland, in their Motion to Dismiss in that District Court action.

The Respondents' "pay-day" lender "arm" is Niiwin, LLC, doing business as "Lendgreen". Lendgreen is, upon information and belief, is a wholly owned subsidiary of LDF

---

[23] **Barnstable Cnty. v. 3M Co.** ____ F.Supp. ____, C.A. No. 17-40002 (D. Mass. 2017).(In evaluating a Motion to Dismiss under Rule 12(b)(6), the Court may consider matters of which judicial notice may be taken.  It is "well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." **Kowalski v. Gagne**, 914 F.2d 299, 305 (1st Cir. 1990),); **Bostwick v. 44 Chestnut St.** ____ F. Supp. ____, C.A. No. 17-CV-12409-ADB (D. Mass. 2019) (The Court may take judicial notice of proceedings in other courts, including state courts. See **Maher**, 272 F.3d at 86 n.3 ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." (*quoting* **Kowalski v. Gagne**, 914 F.2d 299, 305 (1st Cir. 1990))); *See also* **Veg-Mix, Inc. v. U.S. Dep't of Agric**, 832 F.2d 601, 607 (D.C.Cir.1987) ("Courts may take judicial notice of official court records, including bankruptcy pleadings.") **In re 201 Forest Street, LLC**, 404 B.R. 6, 16 (Bankr. Mass. 2009).

-15-

Holdings, LLC, which, in turn, is a wholly owned subsidiary of the Lac du Flambeau Business

Development Corporation, which, in turn, is a wholly owned and operated economic arm and

instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe"), a

federally recognized Indian tribe.

More specifically, the Tribe incorporated the Lac du Flambeau Business Development

Corporation ("BDC") on or about August 27, 2012, by means of Resolution No. 370 (12).[24]

According to the Articles of Organization for BDC under Section 6.01 thereof, "The Lac du

Flambeau Band of Lake Chippewa Indian Tribe is the sole owner of the corporation (the

"Owner")."  Furthermore, the business and affairs of the [BDC] Corporation shall be managed at

the direction of the Board of Directors . . . [who] shall be appointed by the Lac du Flambeau

Tribal Council for two-year staggered terms." *See* Section 7.01 of the Articles of Organization

for BDC. Moreover, The Board of Directors shall report to the Owner [The Lac du Flambeau

Band of Lake Chippewa Indian Tribe] the activities of the Corporation, as directed by the Owner

. . . " *See* Section 7.02 of the Articles of Organization for BDC.

It was the Tribe that, on December 17, 2012, created Niiwin, LLC, along with the

creation of LDF Holdings, LLC, Bezhig, LLC, Niswi, LLC and Naanan, LLC to "be-wholly-

owned by [BDC] for the purposes of operating one or more Tribal lending business{es} and any

---

[24]/    A true and accurate copy of Resolution No. 370 (12) and the Articles of Organization of the
Lac du Flambeau Business Development Corporation are attached hereto as Exhibit "A".

-16-

**J.A. 214**

activity directly related to such purpose" as part of Resolution No. 550(12).[25] Subsequently on

January 9, 2013, Articles of Organization were adopted by the Tribe, but the "sole member" of

Niiwin, LLC was made to be BDC, at the direction of the Tribe. [26]  Subsequently to that event,

on July 17, 2013, an Operating Agreement was entered into between LDF Holdings, LLC (one of

the other limited liability companies that was created simultaneously by the Tribe by operation of

Resolution No. 550(12), (that is *also* wholly-owned and operated by BDC at the direction of the

Tribe) and Niiwin, LLC.[27] Under the terms of the Article I, Section 1.2 of the Operating

Agreement, the intent of the Tribe and the referenced affiliated entities is quite clear:

> It is the intent of the Member [LDF Holdings, LLC] that the Company [Niiwin, LLC]
> shall be a manager-managed limited liability company. It shall always be operated in a manner
> consistent with its treatment as *a tribal entity* for federal and state law purposes. It is also the
> intent of the Member that the Company ***shall be treated as a 100% tribally owned and operated
> company, for federal and state law purposes, including all tax purposes, under the exclusive
> ownership, control, and jurisdiction of the Lac du Flambeau band of Lake Superior Chippewa
> Indians.*** No Member or Manager shall take any action inconsistent with the expressed intent of
> the parties hereto. (Emphasis supplied).

> Furthermore, under Article VI, Sections 6,1 and 6.2, "all profits and losses of the

Company will be allocated to the Member" and "[w]henever, the cash account balance [of

Niiwin, LLC's] exceeds said amount [$500] there shall be an immediate Distribution declared

and paid unless the liabilities of the Company are in excess of its assets." Therefore, pursuant to

---

[25]/    A true and accurate copy of Resolution No. 550 (12) is attached hereto as Exhibit "B".

[26]/    A true and accurate copy of the "Articles of Organization" of Niiwin, LLC is attached
hereto as Exhibit "C".

[27]/    A true and accurate copy of the Operating Agreement of Niiwin, LLC is attached hereto as
Exhibit "D".

these provisions, all profits effectively in excess of $500 must at all times be "upstreamed" to the BDC and from there to the Tribe.

Therefore, the Tribe has created *all* of these corporate entities in order to develop the Pay-Day lending business of the ***Tribe*** and for the express exclusive purpose of serving the ***Tribe's*** needs. To this end, at any given point in time, Niiwin, LLC***, by the terms of its Operating Agreement, cannot hold in its cash accounts more than $500.00,*** as *all* sums in excess of $500 ***must*** be ***immediately*** declared as a dividend and upstreamed to the Tribe's controlled business "arm". Therefore, given the total operational and economic control by the Tribe of LendGreen, LendGreen can be fairly said to be wholly dominated by the Tribe, thereby making the Respondents, each of them, jointly and severally liable for the wrongful acts of Lendgreen.

To further cement the irreducible connection between the Tribe and the rest of the Respondents, the actual language of the form of Loan Agreement that Lendgreen utilizes in forming its contracts with borrowers like the Debtor make it clear that Lendgreen is so identified with the Tribe that they are indistinguishable from one another.[28]

---

[28]/     *See* pp. 4 of Loan Agreement Form of Lendgreen, attached as Exhibit "E" hereto, under **SOVEREIGN IMMUNITY**: "This Loan Agreement and all related documents are being submitted by you to us as an economic arm, instrumentality, and limited liability company of the Tribe. The Tribe is a federally-recognized American Indian Tribe and enjoys governmental sovereign immunity. Because we and the Tribe are entitled to sovereign immunity, you will be limited as to what claims, if any, you may be able to assert against the Tribe and us. To encourage resolution of consumer complaints, any complaint may be submitted by you or on your behalf to the Tribe for review as described below." and **PRESERVATION OF SOVEREIGN IMMUNITY**:"It is the express intention of the Tribe and us operating as an

-18-

6. **THE RESPONDENTS MOTION TO DISMISS SHOULD BE DENIED BASED UPON BASIC FEDERAL LAW PRINCIPLES.**

This Honorable Court should deny the Tribe's Motion to Dismiss because Mr. Coughlin has properly pled a claim for which relief may be sought. A Rule 12(b)(6) motion to dismiss shall fail if a plaintiff pleads allegations grounded in sufficient facts that, if such facts were to be true, plaintiff has "state[d] a claim to relief that is plausible on its face."[29] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…asking for more than a sheer possibility that a defendant has acted unlawfully…" [30]"A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." [31]

The Tribe states that Mr. Coughlin's action should be dismissed because it fails to provide evidence the Tribe's conduct violated the automatic stay, that the Tribe lacked actual

---

economic arm of the Tribe, to fully preserve, and not waive either in whole or in part, exclusive jurisdiction, sovereign governmental immunity, and any other rights, titles, privileges, and immunities, to which we and the Tribe are entitled. To protect and preserve the rights of the parties, no person may assume a waiver of sovereign immunity. No waiver is or can be made except by express written declaration of the Tribe's Tribal Council specifically authorizing a waiver for the matter in question. No such waiver has been made with respect to either your Loan Agreement or your Payment Choice Authorization."

[29] **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007).

[30] **Ashcroft v. Iqbal**, 556 U.S. 662, ____ (2009).

[31] **In re Luciani**, 584 B.R. 449, 454 (Bankr. Mass. 2018) (Feeney, J.) (*citing* **Bell Atl. Corp.**, 550 U.S. at 555) (quotation marks omitted).

-19-

knowledge of Mr. Coughlin's bankruptcy, and that imputation of such knowledge via the tiered

corporate structure linking Lendgreen to the Tribe is improper. [32] Such a contention is deeply

ironic in the face of the language used by the Tribe and its other affiliated Respondents in which

they claim that they are all one entity so as to take advantage of the Tribe's claim of tribal

sovereign immunity and choice of law. The Tribe's efforts to distance itself from the other

Respondents fail: the Tribe allows itself to be bound "hand and foot" with the rest of the

Respondents under the terms of the very form of contract that Lendgreen uses in establishing its

commercial lending relationships with off-reservation borrowers like Mr. Coughlin.[33]

Mr. Coughlin's claims against the Tribe should not be dismissed because its relationship

with Lendgreen is inextricable, as a matter of law. The Tribe wholly owns Holdings; Holdings

wholly owns BDC; and BDC wholly owns Lendgreen. All of the profits, less $500, are

upstreamed to the Tribe. Mr. Coughlin alleges that the Tribe and the affiliated Respondents are

structured in such a way that the subsidiaries are mere instrumentalities of the parent Tribe; and

thereby, corporate separateness fails. Lendgreen, BDC, Holdings, and the Tribe are jointly and

severally liable. By naming the Tribe as a party in his claim in the manner he did, Mr. Coughlin

properly stated his claim for which relief can be sought, consistent with **Twombly** and **Iqbal**.

This Court, therefore, should deny the Tribe's Motion to Dismiss.

---

[32]   Motion to Dismiss, p. 2-6

[33]   *See supra* Footnote 28.

-20-

## CONCLUSIONS

"…As a matter of national policy, the United States has waived its immunity from tort liability and from liability arising out of its commercial activities. Congress has also decided in the Foreign Sovereign Immunities Act of 1976 that foreign states may be sued in the federal and state courts for claims based upon commercial activities carried on in the United States, or such activities elsewhere that have a "direct effect in the United States." And a State may be sued in the courts of another State. ***The fact that the States surrendered aspects of their sovereignty when they joined the Union*** *does not even arguably present a legitimate basis for concluding that the Indian tribes retained-or, indeed, ever had-any sovereign immunity for off-reservation commercial conduct.*"

-Justice John Paul Stevens[34]

This case represents a very unique series of events whereby multiple interrelated entities operating as a unified whole to engage in payday consumer lending have embarked upon a defense that confounds logic as well as common sense. The Respondent avers not only that it is both entitled to sovereign immunity because of the fact that it is a tribe, notwithstanding the provisions of 11 U.S.C. § 106(a), that abrogate that immunity, ***but also*** that the subsidiary entities, created utilizing the law of the tribe itself, that they should be entitled to the benefits of corporate separateness, even though they allege at the same time that they are also "arms" of their parent tribe.

The logic is byzantine at best and circular at worst. Leaving aside questions of judicial estoppel, the Respondent simply cannot "have its cake and eat it too". It cannot claim the benefit of sovereign immunity while at the same time claiming the benefits of corporate separateness;

_____

[34]/ **Kiowa of Oklahoma v. Manufacturing Technologies, Inc**., 523 U.S. 751, 761 (Justice Stevens dissenting) (Emphasis supplied. Internal citations omitted.)

-21-

the two contentions are necessarily inimical to each other, because the extension of sovereign

immunity beyond the tribe itself, necessarily undercuts and nullifies any good faith argument that

they are legally separate entities entitled to the benefits of separate corporate existence. Indeed,

the First Circuit holds that "arms" of Indian tribes are mere instrumentalities of those tribes and,

as such, any action taken by any of those said "arms" is, for all intents and purposes, an action

taken by the tribe itself.[35] For all of these reasons, the Respondents' Motion to Dismiss should

be denied.

                                        RESPECTFULLY SUBMITTED,

                                        BRIAN W. COUGHLIN, Debtor
                                        By his attorney,


Date:   8/21/2020                       */s/ Richard N. Gottlieb, Esq.*
                                        Richard N. Gottlieb, Esq. BBO # 547970
                                        Law Offices of Richard N. Gottlieb
                                        Ten Tremont Street
                                        Suite 11, 3rd Floor
                                        Boston, MA 02108
                                        (617) 742-4491
                                        rnglaw@verizon.net

_____

[35] **Ninigret Dev. V. Narragansett Indian Wetuomuck Housing Auth.**, 207 F.3d 21, 27 (1st
Cir. 2000).

                                        -22-


**J.A. 220**

# Exhibit "A"

**ARTICLES OF INCORPORATION**

**OF**

**L.D.F. BUSINESS DEVELOPMENT CORPORATION**

The purpose of forming the L.D.F. Business Development Corporation is to stimulate economic development for the Lac du Flambeau Tribe within the Reservation boundaries and beyond. The goal is to increase revenue and employment for the Tribal membership. The Mission of the L.D.F. Business Development Corporation is to always serve in the best interest of the Tribal Membership.

These Articles of Incorporation are designed to cultivate stability for the Corporation, and confidence for our business partners, by limiting political influences and allow the Board of Directors to manage the Corporation as an independent economic development arm of the Lac du Flambeau Tribe. These Articles provide for oversight by the Tribal Council, as Owner, over a Board of Directors as is necessary to ensure accountability of the Corporation.

The Lac du Flambeau Band of Lake Chippewa Indian Tribal Council, as the Governing Body under Article III, Section 1 of the Lac du Flambeau Tribal Constitution, hereby adopts the following Articles of Incorporation for the purpose of chartering a Corporation.

ARTICLE 1:        AUTHORITY OF INCORPORATION

SECTION 1.01: The incorporator is the Lac du Flambeau Band of Lake Superior Chippewa Indian Tribe, by the powers vested in the Tribal Council in Article VI, Section 1(o) of the Tribal Constitution.

SECTION 1.02: The registered agent of the Corporation shall be the President of the Board of Directors, located at 418 Little Pines Road, PO Box 67, Lac du Flambeau WI S4538.

ARTICLE 2:        CORPORATION NAME

SECTION 2.01: The Name of the Corporation is L.D.F. Business Development Corporation, hereafter referred to as the Corporation.

ARTICLE 3:        LOCATION

SECTION 3.01: The Corporation is registered and the principal office is located at 418 Little Pines Road, Lac du Flambeau, Wisconsin with the mailing address of Post Office Box 67, Lac du Flambeau, WI S4538.

ARTICLE 4:        PERPETUAL

SECTION 4.01: The Corporation shall be perpetual.

ARTICLE S:        PURPOSE

SECTION 5.01: The purpose of the Corporation is to promote the economic development of the Lac du Flambeau Band of Lake Superior Chippewa  Indians through investment in and development of business

**J.A. 222**

opportunities, and to engage in any lawful act or activity which may be necessary or appropriate for carrying out and accomplishing the foregoing objectives and purpose.

SECTION 5.02: The Corporation shall serve as a business development arm of the Lac du Flambeau Band of Lake Superior Chippewa Indians created solely for the purpose of developing tribal businesses and promoting economic growth and achieving greater employment for the Tribal membership.

ARTICLE 6:    CORPORATE OWNERHIP AND POWERS

SECTION 6.01: The Lac du Flambeau Band of Lake Superior Chippewa Indian Tribe is the sole owner of the corporation (the "Owner").

SECTION 6.02: The Corporation shall have authority to enter into contracts or agreements of every kind and nature with any person, association, corporation, municipality, country, nation, Indian tribe, state or body politic.

SECTION 6.03: The Corporation shall have no power to pledge the credit, encumber property or real estate, nor enter into any agreement, expressly or by implication, on behalf of the Lac du Flambeau Band of Lake Superior Chippewa Indians

SECTION 6.04: The Corporation has the power to incur debts and raise, borrow and secure the payment of any money in any lawful manner.

SECTION 6.05: The Corporation has power to sue and be sued in its corporate name in courts of competent jurisdiction within the United States for disputes arising out of contracts entered into by the Corporation, and has the power to waive the Corporation's immunity from suit. Provided, however, that any such waiver of the sovereign immunity of the Corporation be accompanied by a unanimous vote of all the Directors at a duly called meeting of the Board of Directors where all Directors were present.

ARTICLE 7:    BOARD OF DIRECTORS

SECTION 7.01: The business and affairs of the Corporation shall be managed at the direction of the Board of Directors, who shall possess substantial business skills and experience. The Board of Directors shall be appointed by the Lac du Flambeau Tribal Council for two-year staggered terms.

SECTION 7.02: The Board of Directors shall report to the Owner, the activities of the Corporation, as directed by the Owner or as otherwise provided for in the By-Laws.

ARTICLE 8:    ADOPT BYLAWS

SECTION 8.01: The Board of Directors of the Corporation shall have the power to adopt bylaws for the regulation of the internal affairs of the Corporation consistent with these Articles, subject to the approval of the Owner.

ARTICLE 9:     BOARD OF DIRECTOR LIABILITY

SECTION 9.01: The members of the Board of Directors shall perform their role in good faith and in a manner the Director serves the best interests of the Owner and with such care as an ordinary prudent person would use under similar circumstances in a like position. A Director while acting in the scope of their fiduciary duties shall have no liability for actions taken while serving as a Director in connection with the business of the Corporation.

ARTICLE 10:     LIMITATIONS

SECTION 10.01: Nothing contained within these Articles of Incorporation shall serve to waive the sovereign immunity of the Lac du Flambeau Band of Lake Superior Chippewa Indian Tribe.

SECTION 10.02: The Corporation shall have no authority to pledge, dispose, or otherwise encumber real or personal property of the Lac du Flambeau Band of Lake Superior Chippewa Indians.

Executed on the 27th of August, 2012 on behalf of the Lac du Flambeau Band of Lake Superior Chippewa Tribal Council.

Thomas Maulson, Chairman

Lac du Flambeau Tribe

**J.A. 224**

## RESOLUTION NO. 370(12)

**WHEREAS,** the Lac du Flambeau Band of Lake Superior Chippewa Indians (hereinafter, "Tribe") is a federally recognized Tribe organized under a Constitution pursuant to the Indian Reorganization Act of 1934, 48 Stat. 984 25 U.S.C. § 476, et. Seq. as amended; and

**WHEREAS,** pursuant to Article III, Section 1, of the Tribal Constitution, the governing body of the Tribe is the Tribal Council; and

**WHEREAS,** the Tribe is a federally recognized Tribe with all inherent rights of Tribal Sovereignty possessing inherent powers of Tribal self-government and self-determination; and

**WHEREAS,** pursuant to Article VI, Section 1(o) of the Tribal Constitution, the Tribal Council has right and ability to create business corporations to stimulate economic growth and jobs for Tribal Members; and

**WHEREAS,** the Tribal Council deems it necessary to create the L.D.F. Business Development Corporation for the purpose of expanding business development, generating additional jobs and revenue for the tribe; now, therefore be it

**RESOLVED,** by this Council, in Regular Session assembled, hereby declares that:

1. The tribal Council hereby accepts the Articles of Incorporation for L.D.F. Business Development Corporation as filed with the Tribal Secretary.
2. The Tribal President and Secretary are hereby directed and authorized to issue a Certificate of Incorporation for the L.D.F Business Development Corporation and to affix thereto the Tribal Seal.
3. The Tribal Secretary shall retain an executed original of the Articles of Incorporation of the L.D.F. Business Development Corporation in the tribal records.

### CERTIFICATION

I, the undersigned, as Secretary of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a tribal government operating under a Constitution adopted pursuant to Section 16 of the Indian Reorganization Act, 25 U.S.C., s. 476, do hereby certify that the Tribal Council of the Band is composed of twelve members, of whom twelve constituting a quorum, were present at a Regular Meeting, duly called, noticed, convened, and held on the 27th Day of August, 2012, and that the foregoing resolution was duly adopted at said meeting by an affirmative vote of eleven members, none against, none abstaining, and that the said resolution has not been rescinded or amended in any way.

Elizabeth Diver, Secretary
Lac du Flambeau Band of Lake
Superior Chippewa Indians

**J.A. 225**

Case 19-14142    Doc 82    Filed 08/21/20    Entered 08/21/20 14:11:16    Desc Main
Document    Page 28 of 55

# Exhibit "B"

## RESOLUTION NO. 550(12)

**WHEREAS,**   the Lac du Flambeau Band of Lake Superior Chippewa Indians (hereinafter, "Tribe") is a federally recognized Tribe organized under a Constitution pursuant to the Indian Reorganization Act of 1934, 48 Stat. 984 25 U.S.C. § 476, *et seq.* as amended; and

**WHEREAS,**   pursuant to Article III, Section 1, of the Tribal Constitution, the governing body of the Tribe is the Tribal Council; and

**WHEREAS,**   the Tribe is a federally recognized Tribe with all inherent rights of Tribal sovereignty possessing inherent powers of Tribal self-governance and self-determination; and

**WHEREAS,**   pursuant to Article VI, Section 1(o) of the Tribal Constitution, the Tribal Council has the right and ability to create business corporations to stimulate economic growth and jobs for Tribal Members; and

**WHEREAS,**   Tribal Council Resolution No. 370(12) approved the formation and organization of the L.D.F. Business Development Corporation (the "Corporation") and accepted the L.D.F. Business Development Corporation Articles of Incorporation for filing with the Tribal Secretary pursuant to Tribal law; and

**WHEREAS,**   pursuant to Section 44a.201 of the Tribally Owned Business Organization Ordinance, the Tribal Council is empowered to create subordinate business entities cloaked with sovereign immunity as an arm of the Tribe; now, therefore be it

**RESOLVED,**   by this Council, in Rescheduled Regular Session assembled, hereby approves the creation of LDF Holdings, LLC, Bezhig, LLC, Niizh LLC, Niswi LLC, Niiwin LLC, and Naanan LLC; business entities to be wholly owned by the Corporation for purposes of operating one or more Tribal lending business(es) and any activity directly related to such purpose.

## CERTIFICATION

I, the undersigned, as Secretary of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a tribal government operating under a Constitution adopted pursuant to Section 16 of the Indian Reorganization Act, 25 U.S.C., s. 476, do hereby certify that the Tribal Council of the Band is composed of twelve members, of whom eleven constituting a quorum, were present at a Rescheduled Regular Meeting, duly called, noticed, convened, and held on the 17th Day of December, 2012, and that the foregoing resolution was duly adopted at said meeting by an affirmative vote of ten members, none against, none abstaining, and that the said resolution has not been rescinded or amended in any way.

Elizabeth Diver, Secretary
Lac du Flambeau Band of
Lake Superior Chippewa Indians

Case 19-14142    Doc 82    Filed 08/21/20    Entered 08/21/20 14:11:16    Desc Main
Document      Page 30 of 55

# Exhibit "C"

**ARTICLES OF ORGANIZATION**
**OF THE**
**Niiwin, LLC**

The undersigned, acting as the organizer of a limited liability company pursuant to the powers vested in the Tribal Council, the governing body of the Lac du Flambeau Band of Lake Superior Chippewa Indians, Article VI, Section 1(o) of the Tribal Constitution, and as proscribed by Chapter 44 of the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Code, the Lac du Flambeau Band  of Lake Superior Chippewa  Indians, hereby adopts the following Articles of Organization on January 9, 2013.

**ARTICLE 1 -NAME**

The name of the limited liability company shall be the Niiwin, LLC (the "Company").

**ARTICLE 2 -KNOWN PLACE OF BUSINESS**

The registered office of the limited liability company is 418 Little Pines, PO Box 67, Lac du Flambeau, WI 54538.

**ARTICLE 3- STATUTORY AGENT**

The name and address of the statutory agent of the Company is:
LDF Business Development Corporation
Chief Operating Officer, Brent McFarland
PO Box 67
Lac du Flambeau, WI 54538__

**ARTICLE 4 -PURPOSE**

The Company is being formed to engage in the business of operating one or more Tribal Lending business(es), and in any activities that are directly related to the accomplishment of such purpose which are lawful and consistent with these Articles.

**ARTICLE 5- DISSOLUTION**

The existence of the Company shall be perpetual unless specifically set forth in the Company's Operating Agreement.

**ARTICLE 6- MANAGEMENT**

Management of the limited liability company is vested in a single Manager as appointed or hired by the Member.  This role may also be filled by a management contractor should the Company so desire.  Duties and responsibilities of the Manager shall defined by the Company's Operating Agreement.

**J.A. 229**

**ARTICLE 7- NAME AND ADDRESS OF EACH MANAGER AND MEMBER**

The name and address of each person who is a Manager and Member of the Company is:

Manager:

██████████████

███████████████

██████████████

████████████

--

Member:

Lac du Flambeau Business Development Corporation established pursuant to Tribal Council Resolution 370(12) whose offices are located at located at 418 Little Pines Road, PO Box 67, Lac du Flambeau WI 54538.

Dated: _1-9-13_____

Lac du Flambeau Band of Lake
Superior Chippewa Indians

By:_____
Tom Maulson, President

Approved pursuant to Tribal Council Resolution _550_____.

Case 19-14142    Doc 82    Filed 08/21/20    Entered 08/21/20 14:11:16    Desc Main
Document    Page 33 of 55

# Exhibit "D"

## OPERATING AGREEMENT
### of
### Niiwin, LLC

THIS OPERATING AGREEMENT (this "Agreement") made this _17th_ day of _July_ , 2013, by and between LDF Holdings, LLC, a wholly owned and operated subsidiary of the Lac du Flambeau Business Development Corporation, a wholly owned and operated instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a federally recognized Indian tribe (hereinafter "Member"), and Niiwin, LLC, a limited liability company (hereinafter "Company") each of which were formed pursuant to Tribal Council resolution and under the jurisdiction and laws of the Lac du Flambeau Band of Lake Superior Chippewa Indians.

### Article I
### Formation, Name Purpose, Definitions

**1.1      Formation.** Pursuant to Resolution No. 550 (12) of the Tribal Council of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Resolution"), the parties have formed a tribal limited liability company effective upon the filing of the Articles of Organization of this Company with the Secretary of the Tribal Council. The parties shall immediately and from time to time hereafter, as may be required by law, execute all amendments of the Articles of Organization, and do all filing, recording and other actions as may be appropriate to comply with the operation of the Company under the Resolution.

**1.2      Intent.** It is the intent of the Member that the Company shall be a  manager-managed limited liability company.  It shall always be operated in a manner consistent with its treatment as a tribal entity for federal and state law purposes.  It is also the intent of the Member that the company shall be treated as a 100% tribally owned and operated company, for federal and state law purposes, including all tax purposes, under the exclusive ownership, control, and jurisdiction of the Lac du Flambeau Band of Lake Superior Chippewa Indians.  No Member or Manager shall take any action inconsistent with the express intent of the parties hereto.

**1.3      Name.** The name of this Company shall be:

Niiwin, LLC

**1.4      Registered Office.** The initial registered office of the Company shall be 418 Little Pines, PO Box 221, Lac du Flambeau, WI 54538, within the geographical and jurisdictional boundaries of the Lac du Flambeau Band of Lake Superior Chippewa Indians reservation.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

**J.A. 232**

**1.5    Purpose.** The Company has been formed to engage in the business of operating one or more Tribal Lending business(es), and in any activities that are directly related to the accomplishment of such purpose which are lawful and consistent with the Articles of Organization.

**1.6    Term.** This Company shall commence upon the filing of its Articles of Organization and shall continue until such time as it shall be terminated under the provisions of Article IX hereof.

**1.7    Members.** The names and addresses of each of the sole Member of the Company are:

LDF Holdings LLC
418 Little Pines Road
PO Box 231
Lac du Flambeau WI 54538.

**1.8    Agent for Service of Process.** The name and business address of the agent for service of process for the Company is William R. Beson, Chief Executive Officer- LDF Business Development Corporation, or such other person as the Company shall appoint from time to time.

**1.9    Definitions.** Whenever used in this Agreement, the following terms shall have the following meanings:

(a)    "Agreement" shall mean this written Operating Agreement. No other document or oral agreement shall be treated as part of or superseding this Agreement, unless it is reduced to writing and it has been signed by the Member(s).

(b)    "Articles" shall mean the Articles of Organization filed for the Company pursuant to Tribal Council Resolution 550(12), as such Articles of Organization may be amended from time to time.

(c)    "Business Affairs" shall mean the obligations and responsibilities of the Company pursuant to any and all transaction documents as executed between the Company, Manager, and any relevant third party.

(d)    "Code" shall mean the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Consumer Financial Services Regulatory Code, as may be amended from time to time.

(e)    "Company" shall mean the limited liability company formed pursuant to the Articles and governed by this Agreement.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

2

**J.A. 233**

(f)    "Controller" shall mean the bonded officer of the Company who is responsible for generally supervising the financial affairs and establishing and maintaining the Company accounting system.  The Company may hire a third party to conduct this activity.

(g)    "Distributable Cash" shall mean all cash, revenues and funds received from the Company operations, less the sum of the following to the extent paid or set aside by the Member(s):

(1) all principal and interest payments on indebtedness of the Company and all other sums paid to lenders:

(2) all cash expenditures incurred incident to the normal operation of the Company's business; and

(3) such cash Reserves as the Manager deems reasonably necessary to the proper operation of the Company's business.

(h)    "Fiscal Year" shall mean the Company's fiscal year.  Which shall be the calendar year.

(i)    "Losses" shall mean, for each Fiscal Year, the losses and deductions of the Company determined in accordance with accounting principles consistently applied from year to year plus any expenditures described in the Internal Revenue Code of 1986, as amended.

(j)    "Manager" shall mean ███████████████████████ ███████ or any  persons or person that the Member may otherwise appoint or engage to manage the Company pursuant to the Articles:  The Manager shall conduct the business of the Company to the best of the Manager's ability and subject only to those restrictions set forth in the Resolution or this Agreement, shall have full and complete authority, power and discretion to make any and all decisions and to do any and all things which the Manager deems appropriate to accomplish the purpose of the Company.  The Manager may also contract with a company or companies to manage the Company, if it so desires.

(k)    "Member" shall mean the Lac du Flambeau Business Development Corporation.

(1)    "Profits" shall mean, for each Fiscal year the income and gains of the Company determined in accordance with accounting principles consistently applied from year to year under the cash basis method of accounting and as reported, separately or in the aggregate, as appropriate, on the Company's information tax return filed for federal income tax purposes plus any income described in the Internal Revenue Code of 1986, as amended.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

3

J.A. 234

(m)    "Person" shall mean any individual and any legal entity and their respective heirs, executors, administrators, legal representatives, successors, and assigns.

(n)    "Resolution" shall mean the Resolution No. 550(12), of the Tribal Council of the Lac du Flambeau Band of Lake Superior Chippewa Indians.

## Article II
## Capitalization of the Company

**2.1    Capital Contributions.** The Member has  made contribution of funds of ONE HUNDRED US DOLLARS ($100.00) on behalf of or to the Company.  These contributions shall be considered as equity contributions to the Company in exchange for the Member's 100% ownership of the Company.

**2.2    Additional Capital Contributions.**

(a)    The Member, in its sole discretion, may provide additional Capital Contributions to the capital of the Company based on the Company's obligations as provided in its other transaction documents.

(b)    Prior to the adoption of this Operating Agreement the Member has expended certain funds which may have been expended on behalf of the Company.  This may include, but is not exclusive to attorney fees, consultant fees and other regular expenses of the Company.  The Member shall review past funding of the Member to determine whether these amounts shall also be attributable to the Company as Company expenses. To the extent they are Company expenses they shall also treated as Capital of the Company.


**2.3    Use of Capital Contributions.** All Capital Contributions shall be expended only in furtherance of the business purpose and intent of the Company as set Forth in Sections 1.2 and 1.5.

**2.4    Unauthorized Withdrawals of Capital Contributions.** No Manager shall have the right to withdraw or distribute Capital Contributions except as specifically provided in this Agreement.

**2.5    Third Party Rights.** Nothing contained in this Agreement is intended or will be deemed to benefit any creditor of the Company, nor will any creditor of the Company be entitled to require the Manager to solicit or demand Capital Contributions from the Member. The Company shall not assign the Member's obligation to make Capital Contributions to the Company, if any, to creditors of the Company without the consent of the applicable Member.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

**J.A. 235**

**Article III**
**Management**

**3.1    Management.**

(a)    Once hired or appointed by the Company, the Manager may have the power and authority to do and perform all actions as may be necessary or appropriate to the conduct of the Company's business. Management of the Company's Business Affairs and objectives shall be vested solely in the Manager, except as limited specifically within this Agreement and in Section 3.2. The power and the authority of the Manager shall be further limited to the Business Affairs.

(b)    Any change in Management shall be immediately reported to the Member.

(c)    Any successor Manager shall be appointed by the Member acting as sole member of the Company.

(d)    The Manager may be removed as Manager, by majority vote of the Member if it is found that the Manager has committed an act constituting willful misconduct, fraud, or gross negligence.

(e)    The Manager shall have strict fiduciary relationship to the Company and Member and shall at all times carry out business of the Company in this capacity.

(f)    The Manager will abide by all requirements of the Code, including reporting requirements.

**3.2    Certain Restrictions on Business Powers.**  While Manager has general and broad authority under Section 3.l (a), the Manager shall require express written consent from the Member, and in some instances its parent corporation the LDF Business Development Corporation, to do the following:

(a)    to borrow pledge, assign, convey, encumber, grant security interest in,  guaranty, or otherwise restrict assets of the Company;

(b)    to sell or otherwise dispose of all or substantially all of the assets of the Company;

(c)    waive the sovereign immunity of the Company which may only be waived in accordance with written consent of the LDF Business Development Corporation ("BDC"), the parent corporation, in accordance with Section 6.05 of the BDC's Article of Incorporation as approved by Tribal Council Resolutions 370(12), 80(13) and 134(13).

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

5

**J.A. 236**

Case: 21-1153    Document: 00117747096    Page: 243    Date Filed: 06/01/2021    Entry ID: 6425224

Case Case: 1:19-04842-JDD-A8S    Filed: 08/21/291    Entered: 07/05/21 3/20 Page 116 of Desc Main D 203
Document    Page 39 of 55

### 3.3 Indemnity of Manager, Officers, Employees and Other Agents

(a)    The Company shall indemnify the Manager and make advances for expenses to the maximum extent permitted under the Code and the Management Agreement. The Company shall indemnify its officers and employees and make advances for expenses to the maximum extent permitted under the Code.

(b)    (i)    Notwithstanding any other provision of this Agreement, neither the Manager, nor any officer, or employee of the Manager shall be liable to any Member or to the Company with respect to any act performed or neglected to be performed in good faith and in a manner which such Person believed to be necessary or appropriate in connection with the ordinary and proper conduct of the Business or the preservation of its property, and consistent with the provisions of this Agreement.

(ii)    The Company shall indemnify the Manager and its officers, or employees for and hold them harmless from any liability, whether civil or criminal, and any loss, damage, or expense, including reasonable attorneys' fees, incurred in connection with the ordinary and proper conduct of the Business and the preservation of the Business and the Company's property, or by reason of the fact that such Person is or was a Manager, officer, or employee; and that with respect to any criminal action or proceeding, the Person to be indemnified had no reasonable cause to believe the conduct was unlawful. The foregoing indemnification of the Manager and its officers and employees shall extend not only to the activities of the Manager as the manager of the Company, but also to the activities of the Manager and its officers and employees as the manager of any entities owned, directly or indirectly, by the Company.

(iii)    The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent shall not of itself create a presumption that indemnification is not available hereunder. The Company's obligation to indemnify the Manager, officer, employee, or agent hereunder shall be satisfied out of the assets of the Company and any subsidiary entities of the Company and if the Company's assets are insufficient to satisfy its obligation to indemnify the Manager, such Person shall not be entitled to contribution from any Member or, for the avoidance of doubt, the Lac du Flambeau Band of Lake Superior Chippewa Indians.

(c)    No amendment of this provision for indemnification or advancement of expenses shall have the effect of limiting the rights of any person previously serving as a Manager, officer, employee or agent of the Company to indemnification or advancement of expenses pursuant to this section or in accordance with the Code.

(d)    All expenses, fees and other costs incurred in connection with the provisions of this Section shall constitute operating expenses of the Company.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

6

**3.4     Financial Accounts.**

(a)     Opening and closing of financial institution accounts and disbursement of all Company funds shall require joint approval of the Manager and Controller.

(b)     A financial institution shall be able to rely upon a resolution duly adopted and approved by the Member specifically authorizing the opening, closing, or transacting of business for that specific account or activity.

**3.5     Books and Records.** The Manager, at the expense of the Company shall keep or cause to be kept adequate books and records for the Company, which shall contain an accurate account of all business transactions arising out of and in connection with the conduct of the Company. The financial books and records of the Company shall be kept in the method of accounting determined by the Manager, which shall be the method of accounting followed by the Company. Additionally, at the expense of the Company, the Manager shall maintain or cause to be maintained, for a period of not less than three (3) years, the following records at the Company's known place of business:

(a)     Revenues, expenses, assets, liabilities and equity;

(b)     Daily transactions;

(c)     Contracts, correspondence and other transaction documents relating to all vendors of the Company;

(d)     Customer complaints and their disposition;

1. Enforcement activities pertaining to the Company by the Tribal Lending Regulatory Authority.

2. All audits prepared by or on behalf of the Company.

(e)     A list of the full name and last known business, residence or mailing address of each Member and Manager of the Company, both past and present;

(f)     A copy of the organizational documents for the Company and all amendments thereto;

(g)     Copies of the Company's currently effective Agreement and all amendments thereto, copies of any prior Agreements no longer in effect, and copies of any writings permitted or required with respect to a Member's obligation to contribute cash, property, or services to the Company;

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

7

**J.A. 238**

(h)    Minutes of every meeting of the Members; and,

(i)    Any written consents or approvals obtained from Members for actions taken by the Manager.

**3.6    Confidentiality.**  The Company's information and records are confidential and may not be disclosed to any Person except the Member as sole member of the Company, and in accordance with the regulations that may be established by Tribal Consumer Financial Services Regulatory Authority, and/or any other Person authorized by applicable Tribal or federal law or contract to have access to such information and records.

**3.7    Record Inspection.**  The Manager(s) shall be responsible to ensure that the premises, books and records of the Company are available for inspection during normal business hours by the Tribal Lending Regulatory Authority.

**3.8    Salaries.**  The salaries and other compensation of the Manager and other employees of the Company shall be fixed from time-to-time by the Member.

## Article IV
## Rights and Obligations of Members

**4.1    Limitation of Liability.**  The debts, obligations, and liabilities of the Company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations, and liabilities of the Company, and the Member shall not be obligated for any such debt obligation, or liability of the Company solely by reason of being a Member. Nothing herein shall be construed as a waiver of the Company or Member's Sovereign Immunity.

**4.2    Approval of Sale of All Assets.**  The Members shall have the right, by the affirmative vote of the Tribal Council, to approve the sale, exchange or other disposition of all or substantially all of the Company's assets which is to occur as part of a single transaction or plan.

**4.3    Right to Inspect Company Documents.**  The Member shall have the right and the Manager shall permit, the Member to inspect and copy, at the Member's expense, any and all Company documents, including those required to be maintained pursuant to Section 3.1.

**4.4    All other Rights.**  The Member shall have and reserve all other rights not specifically limited within this Agreement.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

8

**J.A. 239**

<div align="center">

**Article V**
**Meetings of Member**

</div>

**5.1    Annual Meeting of Member.**  The Member shall hold an annual meeting as required under Tribal law.

<div align="center">

**Article VI**
**Profits, Losses; Distributions**

</div>

**6.1    Allocation of Profits and Losses.**  All profits and losses of the Company will be allocated to the Member.

**6.2    Mandatory Distributions.**  There shall at all times remain $500 in the Company's cash accounts.  Whenever the cash account balance exceeds said amount there shall be an immediate Distribution declared and paid unless the liabilities of the Company are in excess of the assets.

**6.3    Loans to Company.**  Nothing in this Operating Agreement shall prevent the Member from making secured or unsecured loans to the Company by agreement with the Company.

**6.4    Accounting Period.**  The Company's accounting period shall be the calendar year.

<div align="center">

**Article VII**
**Restrictions on Transferability**

</div>

**7.1    Restrictions on Transferability.**  The Company at all times shall be owned exclusively by the Lac du Flambeau Business Development Corporation. No transfer of interest in the Company shall be permitted without the express written consent of the Member.

For purposes of this Article VII "transfer" shall include:

    (a)    Transfers by sale;
    (b)    Transfers by gift;
    (c)    Involuntary transfers, including transfers by operation of law,
    (d)    Any other form of transfer.

Transfers and pledges in breach of the terms of this Article VII shall be void and of no effect.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

<div align="center">

9

</div>

<div align="center">

**J.A. 240**

</div>

## Article VIII
## Additional Members

8.1    No additional Members shall be permitted.

## Article IX
## Dissolution and Termination

9.1    **Dissolution.** The Company shall be dissolved upon the occurrence of any of the following events:

(a)    by the unanimous written agreement of the Member;

(b)    upon the entry of any decree of dissolution of the Tribe; or

(c)    upon the issuance of an order of dissolution by a court of competent jurisdiction or by the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Court.

9.2    **Effect of Dissolution.** Upon the dissolution of the Company, the Company shall cease to carry on its business, except insofar as may be necessary for the winding up of its business, but its separate existence shall continue until Articles of Termination have been filed with the Secretary of the Tribe or until a decree dissolving the Company has been entered by a court of competent jurisdiction.

9.3    **Winding Up and Dissolution of** Assets.

(a)    Upon the dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The Member shall immediately proceed to wind up the affairs of the Company.

(b)    If the Company is dissolved and its affairs are to be wound up, the Member shall (1) sell or otherwise liquidate all of the Company's assets as promptly as practicable, unless the Member determines to distribute assets in kind, (2) allocate: any profits or loss resulting from such sales to the Member's Capital Accounts, (3) discharge all liabilities of the Company, other than to Member, including all costs relating to the dissolution, 4) establish such reserves as may be reasonably necessary to provide for contingent liabilities of the Company (for purposes of determining the Capital Accounts of the Member, the amounts of such reserves shall be deemed to be an expense of the Company), (5) discharge any liabilities of the Company to the Member other than on account of their interests in Company capital or profits, and (6) distribute the remaining assets in the following order:

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

10

**J.A. 241**

(1) If any assets are to be distributed in kind, the net fair market value of such assets as of the date of dissolution shall be determined by appraisal or by agreement of the Member. Such assets shall be deemed to have been sold as of the date of dissolution tor their fair market value.

(2) The positive balance of the Member's Capital Account as determined after taking into account all Capital Account adjustments for the Company's taxable year during which the liquidation occurs, shall be distributed to the Member, either in cash or in kind, with any assets distributed in kind being valued for this purpose at their fair market value.

(c)    Notwithstanding anything to the contrary in this Agreement, upon a liquidation, if any Member has a negative deficit Capital Account balance, such Member shall have no obligation to make any contribution to the capital of the Company, and the negative balance of such Member's Capital Account shall not be considered a debt owed by such Member to the Company or to any other person for any purpose whatsoever.

### Article X
### Licensing

**10.1    License.** The Company shall obtain a duly authorized Consumer Financial Services License, or other licenses as may be required under the Tribal Consumer Financial Services Regulatory Code, before engaging in any Lending activities.

### Article XI
### Miscellaneous Provisions

**11.1    Application of Law.** This Operating Agreement and its application and interpretation shall be governed exclusively by its terms and by the laws of the Lac du Flambeau Band of Lake Superior Chippewa Indians, where applicable.

**11.2    Amendments.** This Agreement may not be amended except by a resolution duly adopted by the Member and express approval of the Tribe.

**11.3    Execution.** The Member hereby agrees to execute such other and further statements of interest and holdings, designations, powers of attorney and other instruments necessary to comply with any law, rules or regulations.

**11.4    Severability.** If any provision of this Operating Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent the remainder of this Operating Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

11

**J.A. 242**

**11.5    Non-waiver of Sovereign Immunity.**    Nothing in this Operating Agreement shall be construed to be a waiver of the Company, the Member's, or the Tribe's Sovereign Immunity to suit.

**11.6    Creditors.** None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Company.

LDF HOLDINGS, LLC, Member

By: _____

Name: William R. Beson
Title: CEO, LDF Business Development Corp.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

12

**J.A. 243**

Case 19-14142    Doc 82    Filed 08/21/20    Entered 08/21/20 14:11:16    Desc Main
Document      Page 46 of 55

# Exhibit "E"

**PLEASE TAKE A MOMENT TO REVIEW THIS LOAN AGREEMENT CAREFULLY. YOU WILL BE REQUIRED TO ELECTRONICALLY SIGN AND DATE AT YOUR CONCLUSION AND COMPLETE THE PAYMENT CHOICE AUTHORIZATION.**

Loan # 007792727-00

| Agreement Date: 2/12/2015 | Loan #: 007792727-00 |
|---|---|
| **NIIWIN, LLC d/b/a**<br>**Lendgreen**<br>P.O.Box 221<br>Lac du Flambeau,<br>WI 54538 | Name: May Walker<br>Address: ▮▮▮▮▮▮▮<br>City: ▮▮▮▮▮▮<br>State: FL, Zip: 33770<br>Phone: (727)776-0045<br>Email Address: ▮▮▮▮▮▮l@gmail.com |

In this Loan Agreement (this "Loan Agreement") the words "you" and "your" mean the borrower who has electronically signed it. The words "we", "us" and "our" mean NIIWIN, LLC d/b/a Lendgreen. We are an economic development arm of, instrumentality of, and a limited liability company wholly-owned and controlled by, the Lac du Flambeau Band of Lake Superior Chippewa Indians of Wisconsin (the "Tribe").

We cannot commit to make a loan to you unless your completed application is approved by our underwriting department, located on the Tribe's Reservation.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate.<br><br>838.85% | FINANCE CHARGE<br><br>The dollar amount the credit will cost you.<br><br>$4,290.00 | Amount Financed<br><br>The amount of credit provided to you or on your behalf.<br><br>$500.00 | Total of Payments<br><br>The amount you will have paid after you have made all payments as scheduled.<br><br>$4,790.00 |
|---|---|---|---|

**Your Payment Schedule will be:**

| Number of Payments | Amount of Payment | When Payment is Due |
|---|---|---|
| 1 | $150.00 | 2/27/2015 |
| 1 | $150.00 | 3/13/2015 |
| 1 | $150.00 | 3/27/2015 |
| 1 | $150.00 | 4/10/2015 |
| 1 | $160.00 | 4/24/2015 |
| 1 | $157.00 | 5/8/2015 |
| 1 | $154.00 | 5/22/2015 |
| 1 | $151.00 | 6/5/2015 |
| 1 | $148.00 | 6/19/2015 |
| 1 | $145.00 | 7/6/2015 |
| 1 | $142.00 | 7/17/2015 |
| 1 | $139.00 | 7/31/2015 |
| 1 | $136.00 | 8/14/2015 |
| 1 | $133.00 | 8/28/2015 |
| 1 | $130.00 | 9/11/2015 |
| 1 | $127.00 | 9/25/2015 |

**J.A. 245**

| 1 | $124.00 | 10/9/2015 |
| 1 | $121.00 | 10/23/2015 |
| 1 | $118.00 | 11/6/2015 |
| 1 | $115.00 | 11/20/2015 |
| 1 | $112.00 | 12/4/2015 |
| 1 | $109.00 | 12/18/2015 |
| 1 | $106.00 | 1/4/2016 |
| 1 | $103.00 | 1/15/2016 |
| 1 | $100.00 | 1/29/2016 |
| 1 | $97.00 | 2/12/2016 |
| 1 | $94.00 | 2/26/2016 |
| 1 | $91.00 | 3/11/2016 |
| 1 | $88.00 | 3/25/2016 |
| 1 | $85.00 | 4/8/2016 |
| 1 | $82.00 | 4/22/2016 |
| 1 | $79.00 | 5/6/2016 |
| 1 | $76.00 | 5/20/2016 |
| 1 | $73.00 | 6/3/2016 |
| 1 | $70.00 | 6/17/2016 |
| 1 | $67.00 | 7/1/2016 |
| 1 | $64.00 | 7/15/2016 |
| 1 | $61.00 | 7/29/2016 |
| 1 | $58.00 | 8/12/2016 |
| 1 | $55.00 | 8/26/2016 |
| 1 | $52.00 | 9/9/2016 |
| 1 | $49.00 | 9/23/2016 |
| 1 | $46.00 | 10/7/2016 |
| 1 | $43.00 | 10/21/2016 |
| 1 | $130.00 | 11/4/2016 |

**Late Charge:** If a payment is 5 days or more late, you will be charged $30.

**Prepayment:** If you pay off early, you may be entitled to a refund of part of the finance charge.

See the terms of the Loan Agreement below for any additional information about nonpayment, default, and prepayment refunds.

ITEMIZATION OF AMOUNT FINANCED: Amount Financed/Amount given to you directly $500.00

**SPECIAL NOTICES:**

**\* YOUR LOAN IS AN EXPENSIVE FORM OF BORROWING.**
**\* YOU CAN SAVE FINANCE CHARGES BY PAYING OFF YOUR LOAN EARLY EITHER IN PART OR IN FULL.**
**\* YOUR LOAN IS DESIGNED TO ASSIST YOU IN MEETING YOUR SHORT-TERM CASH NEEDS. IT IS NOT A SOLUTION FOR LONGER TERM FINANCIAL PROBLEMS.**
**\* NON-PROFIT CREDIT COUNSELING SERVICES ARE AVAILABLE IN YOUR COMMUNITY FOR CONSUMERS EXPERIENCING FINANCIAL PROBLEMS.**

**J.A. 246**

**YOUR PROMISE TO PAY:** You promise to pay us the amount you owe plus finance charges according to the payment schedule in the Truth in Lending Disclosures plus all other amounts owed to us under this Loan Agreement. You agree that your finance charges will be calculated at the Annual Percentage Rate in the Truth in Lending Disclosures. You will pay us as you choose in your Payment Choice Authorization. All payments will be applied first to finance charges and fees due and then to principal. If you prepay all or part of the principal amount due on your loan, your finance charges on the amount prepaid will be calculated as of the date the payment is made.

**DISBURSEMENT:** If your Loan is approved, we will process disbursement of your loan proceeds within 1 business days of the day your loan is approved. A business day is a regular work day and does not include Saturday, Sunday or holidays. You authorize us to use commercially reasonable efforts to initiate a credit entry by depositing the proceeds of your loan into Your Bank Account described in your Disbursement and Payment Choice Authorization. The date that your loan proceeds are deposited to Your Bank Account is the "Disbursement Date". Unavoidable delays as a result of bank holidays, the processing schedule of your individual bank, inadvertent processing errors, acts of god", or "acts of terror" may extend the time for the deposit.

**CANCELLATION:** You may cancel your payment obligations under this Loan Agreement, without cost or finance charges, no later than 3:00 p.m. Mountain time of the next business day immediately following the Disbursement Date ("Cancellation Deadline"). Your right to cancel your loan only applies if your loan either hasn't funded or, if it has, the funds are returned to us as explained below. To cancel your payment obligations on this loan, you must inform us **in writing**, by or before the Cancellation Deadline, either by email to customercare@lendgreen.com or by fax at 1-888-875-8801 that you want to cancel the future payment obligations on this loan. If we timely receive your written notice of cancellation on or before the Cancellation Deadline but **before** the loan proceeds have been deposited into Your Bank Account, then we will not debit Your Bank Account and both your and our obligations under this Loan Agreement will be rescinded. However, if we timely receive your written notice of cancellation on or before the Cancellation Deadline but **after** the loan proceeds have been deposited into Your Bank Account, then you authorize us to effect a debit to Your Bank Account or your debit card as you chose in your Payment Choice Authorization for the principal amount of this Loan Agreement. If we receive payment of the principal amount via the debit, then both your and our obligations under this Loan Agreement will be rescinded. If we do not receive payment of the principal amount by debit to Your Bank Account or your debit card, then this Loan Agreement will remain in full force and effect.

**ASSIGNMENT:** This Loan Agreement may not be assigned by you. We may assign or transfer this Loan Agreement and our related rights and obligations without notice to you and your consent is not required if we make such an assignment or transfer.

**DEFAULT:** You will be in default under this Agreement if you do not pay us a scheduled payment or any other amounts you owe us when due or your chosen payment method is stopped, denied or otherwise dishonored by your bank or other third party. If you default on your loan, we can choose to declare all principal, finance charges and other amounts that you owe us to be immediately due and payable in full. If you are in default and you authorized debits from either Your Bank Account or your debit card in your Payment Choice Authorization, you agree that we can debit Your Bank Account or debit card, as applicable, for the full amount that you owe us. Additionally, if you do not cooperate with us on repaying your debt to us we may submit your name to a collection agency and we may also report the incident to a consumer reporting agency database. This may negatively impact your ability to write checks or to receive loans or advances from other companies.

**LATE CHARGE:** You agree to pay a late charge of $30 if a payment is 5 days or more late. If you authorized debits from either Your Bank Account or debit card in your Payment Choice Authorization, you agree that we may debit your Bank Account or debit card, as applicable, for any accrued late charges.

**REFUSED INSTRUMENT CHARGE:** If your payment method is stopped, denied or otherwise dishonored, by your bank or other third party, then you agree to pay us a fee of $30. If you authorized debits from either Your Bank Account or debit card in your Payment Choice Authorization, you agree that we may debit your Bank Account or debit card, as applicable, for any refused instrument charges. Your refused instrument may also cause your payment to be late which could result in your having to also pay a late charge.

**CONSUMER REPORTS:** You authorize us to obtain consumer reports about you now or in the future as long as you owe us money under this Loan Agreement.

**GOVERNING LAW:** The laws of the Tribe will govern this Loan Agreement, without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state. You agree to be bound by Tribal law, and in the event of a bona fide dispute between you and us, Tribal law shall exclusively apply to such dispute.

## J.A. 247

Case: 21-1153   Document: 00117747096   Page: 254   Date Filed: 06/01/2021   Entry ID: 6425224

**SOVEREIGN IMMUNITY:** This Loan Agreement and all related documents are being submitted by you to us as an economic arm, instrumentality, and limited liability company of the Lac du Flambeau band of Lake Superior Chippewa Indian Tribe and enjoys governmental sovereign immunity. Because we and the Tribe are entitled to sovereign immunity, you will be limited as to what claims, if any, you may be able to assert against the Tribe and us. To encourage resolution of consumer complaints, any complaint may be submitted by you or on your behalf to the Tribe for review as described below.

**PRESERVATION OF SOVEREIGN IMMUNITY:** It is the express intention of the Tribe and us operating as an economic arm of the Tribe, to fully preserve, and not waive either in whole or in part, exclusive jurisdiction, sovereign governmental immunity, and any other rights, titles, privileges, and immunities, to which we and the Tribe are entitled. To protect and preserve the rights of the parties, no person may assume a waiver of sovereign immunity. No waiver is or can be made except by express written declaration of the Tribe's Tribal Council specifically authorizing a waiver for the matter in question. No such waiver has been made with respect to either your Loan Agreement or your Payment Choice Authorization.

**TRIBAL HOTLINE:** If you have already contacted Customer Service in an attempt to resolve an issue or concern and still need additional assistance, please contact the Lac du Flambeau Tribal Hotline at 1-844-388-0500 between the hours of 9am and 5pm Central time or email any time at customerservice@ldfcallcenter.com.

### TRIBAL DISPUTE RESOLUTION PROCEDURE PROVISION

As an accommodation to consumers and pursuant to Tribal law, the Tribe has established the following Tribal Dispute Resolution Procedure to receive, review, and consider any and all types of complaints made by or on behalf of our consumers. A consumer who, in the course of his or her otherwise lawful and proper use of our business, has concerns about the operation of any part of us or who otherwise believes himself or herself to be aggrieved by some aspect of any part of our operation shall direct his or her concerns in the first instance to our management, in writing at customercare@lendgreen.com or by fax at 1-888-875-8801. A person's complaint to us shall be considered similar in nature to a petition for redress submitted to a sovereign government, without waiver of sovereign immunity and exclusive jurisdiction, and does not create any binding procedural or substantive rights. In the event that the consumer is dissatisfied with our initial determination, then he or she may request review of our initial determination by submitting such request in writing to the Lac du Flambeau band of Lake Superior Chippewa Indians Tribal Consumer Financial Services Regulatory Authority, re: Tribal Financial Services Dispute Resolution, P.O. Box 155, Lac du Flambeau, WI 54538 no later than ten (10) days after receiving our initial determination, which shall be delivered in writing. Any determination by the Tribe by its designated officials, whether procedural or substantive, shall be made by the Tribe in its sovereign discretion. A complainant may appeal a Tribal Consumer Financial Services Regulatory Authority opinion by filing a written appeal to the Tribal Court within twenty (20) days of receiving the Tribal Consumer Financial Services Regulatory Authority's final written decision in accordance with current rules of court and procedure of the Lac du Flambeau Tribal Court.

**THIS DISPUTE RESOLUTION OPPORTUNITY WITH THE TRIBAL CONSUMER FINANCIAL SERVICES REGULATORY AUTHORITY AND TRIBAL COURT CHARGED WITH OVERSEEING OUR CONDUCT IS INTENDED AS THE SOLE DISPUTE RESOLUTION MECHANISM FOR DISPUTES AND CLAIMS ARISING UNDER THIS LOAN AGREEMENT. THIS MEANS THAT YOU ARE EFFECTIVELY WAIVING YOUR RIGHT TO A JURY TRIAL.**

The words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to this Tribal Dispute Resolution Provision, (this Provision), the validity and scope of this Provision and any claim or attempt to set aside this Provision; (b) all U.S. state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement, the information you gave us before entering into this Loan Agreement, including the customer information application, and/or any past Loan Agreement or Agreements between you and us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against the Tribe, us and/or any of our employees, agents, directors, officers, governors, managers, members, parent company or affiliated entities (collectively, "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties ("Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

All disputes including any Representative Claims against shall be resolved by the Tribal Dispute Resolution Procedure in this Provision only on an individual basis with you. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their dispute and setting forth the subject of the dispute along with the relief requested.

This Provision is binding upon and benefits you, your respective heirs, successors and assigns. This Provision is binding

**J.A. 248**

upon and benefits the Tribe, us, and our successors and assigns. This Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy, this loan agreement, rescission, cancellation, termination, amendment, expiration of performance of any transaction between You and us and continues in full force and effect unless you and we otherwise agree in writing.

**THIS TRIBAL DISPUTE RESOLUTION PROCEDURE PROVISION MEANS THAT:**

**\* YOUR RIGHT TO FILE SUIT AGAINST US FOR ANY CLAIM OR DISPUTE REGARDING THIS LOAN AGREEMENT IS LIMITED BY THIS PROVISION AND SOVEREIGN IMMUNITY.**
**\* YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES.**
**\* YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT OTHER THAN THE TRIBAL COURT IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROCEDURE, TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; AND**
**\* YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT OR ARBITRATION FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

### CONSENT TO ELECTRONIC COMMUNICATIONS

\* The following terms and conditions govern electronic communications in connection with this Loan Agreement and the transaction evidenced hereby (this Consent). By electronically signing this Loan Agreement by clicking the "I AGREE" button and entering your name below, you are confirming that you have agreed to the terms and conditions of this Consent and that you have the ability to download or print a copy of this Consent for your records. You agree that:

\* Any disclosure, notice, record or other type of information that is provided to you in connection with your transaction with us, including but not limited to, this Loan Agreement, this Consent, disclosures, change-in-term notices, fee and transaction information, statements, delayed disbursement letters, notices of adverse action, and transaction information (collectively, Communications), may be sent to you electronically by sending it to you by e-mail or by posting the information at our web site, www.lendgreen.com.

\* We will not be obligated to provide any Communication to you in paper form unless you specifically request us to do so.

\* You may obtain a copy of any Communication by contacting us at www.lendgreen.com writing to us at customercare@lendgreen.com, or by calling us at 1-855-832-7227. You also can withdraw your consent to ongoing electronic communications in the same manner, and ask that they be sent to you in paper or non-electronic form. If you choose to receive Communications in paper or non-electronic form, we may elect to terminate this Loan Agreement and demand payment of the amount then due by the date of your withdrawal of consent; or by the expiration of any minimum term mandated by law, whichever is later.

\* You agree to provide us with your current e-mail address for notices at the address or phone number indicated above. If your e-mail address changes, you must send us a notice of the new address by writing to us or sending us an e-mail, using secure messaging, at least 5 days before the change.

\* In order to receive electronic communications in connection with this transaction, you will need a working connection to the Internet. Your browser must support the Secure Sockets Layer (SSL) protocol. SSL provides a secure channel to send and receive data over the Internet. Microsoft Internet Explorer 6 or equivalent browser and above supports this feature. You will also need either a printer connected to your computer to print disclosures/notices or sufficient hard drive space available to save the information (e.g., 1 megabyte or more). You must have your own Internet service provider. We may amend (add to, delete or change) the terms of this Consent to electronic communication by providing you with advance notice.

### CONSENT TO RECEIVE TEXT MESSAGES

\* As used in this text consent, "Text Message" means any text messaging communication from us to you pertaining to your loan, including but not limited to payment information, account information, due dates, delinquent accounts, and program updates relating to your loan, but excluding advertising or telemarketing Text Messages. All Text Messages from us in electronic format to you will be considered "in writing."

\* How To Unsubscribe: You may withdraw your consent to receive Text Messages by calling us at 1-855-832-7227 or emailing us at customercare@lendgreen.com. At our option, we may treat your provision of an invalid mobile phone number, or the subsequent malfunction of a previously valid mobile phone number, as a withdrawal of your consent to receive Text Messages. We will not impose any fee upon you to process the withdrawal of your consent to receive Text

Messages. Any withdrawal of your consent to use Text Messages will be effective only after we have a reasonable period of time to process your withdrawal.

* In order to access, view, and retain Text Messages that we make available to you, you must have: (1) a Text Message-capable mobile phone, (2) an active mobile phone account with a communication service provider; and (3) sufficient storage capacity on your mobile phone.

* To request additional information, contact us by telephone at 1-855-832-7227.

* The services are available from most of the carriers that offer Text Messaging. Consult your mobile service carrier to confirm that they offer Text Messaging.

* There is no service fee for Text Messages but you are responsible for all charges imposed by your communications service provider, such as fees associated with Text Messaging. Consult your mobile service carrier's pricing plan to determine the charges for sending and receiving Text Messages. These charges will appear on your phone bill. Message frequency depends on account settings.

* You agree that we may send any Text Messages related to your loan through your communication service provider in order to deliver them to you and that your communication service provider is acting as your agent in this capacity. You agree to indemnify, defend and hold us harmless from and against all claims, losses, liability, cost and expenses (including reasonable attorneys' fees) arising from your provision of a mobile phone number that is not your own or your violation of applicable federal, state or local law, regulation or ordinance relating to Text Messages. Your obligation under this paragraph shall survive termination of this Loan Agreement. You agree that Text Messages are provided for your convenience only.

* Receipt of each Text Message may be delayed or impacted by factors pertaining to your communications service provider. We will not be liable for losses or damages arising from any disclosure of account information to third parties, non-delivery, delayed delivery, misdirected delivery or mishandling of, or inaccurate content in, the Text Messages sent by us.

* We may modify or terminate our Text Messaging services from time to time, for any reason, with or without notice, and without liability to you, any other user or third party.

### CONSENT TO RECEIVE ADVERTISING OR TELEMARKETING TEXT MESSAGES AND TELEPHONE CALLS

By signing this section, you consent to our sending you advertising and telemarketing Text Messages to the mobile phone number you have provided below. You also consent to our making advertising or telemarketing calls to you at your mobile phone number using automatic telephone dialing system or an artificial or prerecorded voice.

Signing this section will be deemed to be your signature acknowledging your consent to receive advertising and telemarketing Text Messages and telephone calls as described above to your mobile phone at (727)776-0045.

**You are not required to consent to advertising or telemarketing Text Messages or calls to obtain credit or other services from us.** At any time, you may withdraw your consent to receive advertising or marketing Text Messages or marketing calls to the mobile number provided by calling us at 1-855-832-7227 or emailing us at customercare@lendgreen.com.

You understand that: any Text Messages we send you may be accessed by anyone with access to your Text Messages; and your mobile phone service provider may charge you fees for Text Messages that we send you, and you agree that we shall have no liability for the cost of any Text Messages.

### SIGNATURE AND ACCEPTANCE OF ALL TERMS AND CONDITIONS

**BY ENTERING YOUR NAME AND CLICKING THE "I AGREE" BUTTON BELOW, YOU ARE ELECTRONICALLY SIGNING THIS LOAN AGREEMENT AND AGREEING TO ALL THE TERMS OF THIS LOAN AGREEMENT INCLUDING:**

**\*THE TRIBAL DISPUTE RESOLUTION PROCEDURES PROVISION**
**\*THE CONSENT TO ELECTRONIC COMMUNICATIONS**
**\*THE CONSENT TO RECEIVE TEXT MESSAGES**

**YOU ALSO ACKNOWLEDGE YOUR ABILITY TO DOWNLOAD OR PRINT A FULLY COMPLETED COPY OF THIS LOAN AGREEMENT FOR YOUR RECORDS.**

**[I AGREE]**
**DATE: 2/12/2015**
**May Walker**

| DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION for NIIWIN, LLC d/b/a/ Lendgreen | Loan #: 007792727-00 |
|---|---|
| REVIEW VERY CAREFULLY BEFORE EXECUTING THE LOAN AGREEMENT | |

### DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION

## J.A. 250

By electronically signing this Disbursement and Payment Choice Authorization below, you voluntarily authorize us to initiate debit and credit entries to Your Bank Account as described below. This Disbursement and Payment Choice Authorization is a part of and relates to the Consumer Installment Loan Agreement (the "Loan Agreement"). The words "you" and "your" mean the borrower who has electronically signed this Disbursement and Payment Choice Authorization. The words "we", "us" and "our" mean NIIWIN, LLC d/b/a/ Lendgreen and our successors and assigns.

Disbursements to Your Bank Account. Unless otherwise agreed, disbursement credits of your loan proceeds will be made to the following bank account ("Your Bank Account")

| Bank Name: | ████████ |
| Transit ABA Number: | ████████ |
| Deposit Account Number: | ████████ |

We will make these disbursement credits by using any commercially available method we choose, such as (but not limited to) Automated Clearing House (ACH) entries, wire transfers, or transactions through your debit card accessing Your Bank Account. As a data security measure, you will separately provide us with your debit card information.

**Your Payment Choice (check applicable box):**

⊙ Automatic Payment          ○ Payments you will make directly
from your Bank Account         by Cashier's Check or Money Order

| You authorize us to process payment debit entries out of Your Bank Account by using any commercially available methods we choose, such as (but not limited to) ACH entries, "remote checks" or transactions through your debit card accessing Your Bank Account. You specifically authorize us to use any of these methods to process debit entries from Your Bank Account for your scheduled payments in your payment schedule below plus any late charges and returned payment fees.

If you are in default, you authorize us to process one or more debit entries to pay all principal, finance charges and other amounts due to us as provided in the Loan Agreement. You authorize us to re-process debit entries for the same amounts if any attempted payment transaction is dishonored. We will provide you with 10 days notice prior to processing a debit entry that is larger than the scheduled payment detailed above. | You agree to make your scheduled payments in your payment schedule below by cashier's check or money order, that we receive no later than your payment due date to:

**NIIWIN, LLC d/b/a**
**Lendgreen**
**P.O.Box 221**
**Lac du Flambeau, WI 54538** |

| Number of Payments | Amount of Payment | When Payment is Due |
|---|---|---|
| 1 | $150.00 | 2/27/2015 |
| 1 | $150.00 | 3/13/2015 |
| 1 | $150.00 | 3/27/2015 |
| 1 | $150.00 | 4/10/2015 |
| 1 | $160.00 | 4/24/2015 |
| 1 | $157.00 | 5/8/2015 |
| 1 | $154.00 | 5/22/2015 |
| 1 | $151.00 | 6/5/2015 |

**J.A. 251**

| 1 | $148.00 | 6/19/2015 |
| 1 | $145.00 | 7/8/2015 |
| 1 | $142.00 | 7/17/2015 |
| 1 | $139.00 | 7/31/2015 |
| 1 | $136.00 | 8/14/2015 |
| 1 | $133.00 | 8/28/2015 |
| 1 | $130.00 | 9/11/2015 |
| 1 | $127.00 | 9/25/2015 |
| 1 | $124.00 | 10/9/2015 |
| 1 | $121.00 | 10/23/2015 |
| 1 | $118.00 | 11/6/2015 |
| 1 | $115.00 | 11/20/2015 |
| 1 | $112.00 | 12/4/2015 |
| 1 | $109.00 | 12/18/2015 |
| 1 | $106.00 | 1/4/2016 |
| 1 | $103.00 | 1/15/2016 |
| 1 | $100.00 | 1/29/2016 |
| 1 | $97.00 | 2/12/2016 |
| 1 | $94.00 | 2/26/2016 |
| 1 | $91.00 | 3/11/2016 |
| 1 | $88.00 | 3/25/2016 |
| 1 | $85.00 | 4/8/2016 |
| 1 | $82.00 | 4/22/2016 |
| 1 | $79.00 | 5/6/2016 |
| 1 | $76.00 | 5/20/2016 |
| 1 | $73.00 | 6/3/2016 |
| 1 | $70.00 | 6/17/2016 |
| 1 | $67.00 | 7/1/2016 |
| 1 | $64.00 | 7/15/2016 |
| 1 | $61.00 | 7/29/2016 |
| 1 | $58.00 | 8/12/2016 |
| 1 | $55.00 | 8/26/2016 |
| 1 | $52.00 | 9/9/2016 |
| 1 | $49.00 | 9/23/2016 |
| 1 | $46.00 | 10/7/2016 |
| 1 | $43.00 | 10/21/2016 |
| 1 | $130.00 | 11/4/2016 |

You agree that this Disbursement and Payment Choice Authorization will remain in effect until your loan, including principal, finance charges and other charges, is paid in full. However, if you chose automatic payments, you may revoke your authorization at any time by contacting us directly at 1-855-832-7227 or customercare@lendgreen.com. If you revoke your authorization, then you agree to make payments directly to us as explained above.

**BY TYPING YOUR NAME AND CLICKING THE "I AGREE" BUTTON BELOW, YOU ARE ELECTRONICALLY SIGNING THIS DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION AND AGREEING TO ALL THE TERMS OF THIS AUTHORIZATION.**

**YOU ALSO ACKNOWLEDGE YOUR ABILITY TO DOWNLOAD OR PRINT A FULLY COMPLETED COPY OF THIS DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION FOR YOUR RECORDS.**

**J.A. 252**

[I AGREE]
Date: 2/11/2015
Case 2:19-cv-00462-JDW-ZJS   Doc #2   Filed 08/21/20   Entered 08/21/20 04:13:16 Desc Main
96.254.154.245
Document   Page 55 of 55
May Walker

## PRIVACY POLICY

Rev. November 2012

| FACTS | WHAT DOES NIIWIN, LLC DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| Why? | Financial companies choose how they share your personal information. Consumers have the right to limit some but not all sharing.  This notice tells you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|
| What? | The types of personal information we collect and share depend on the product or service you have with us.  This information can include:<br>* Social Security number and checking account  information<br>* Payment history and income<br>* Employment information and wire transfer instructions |
| How? | All financial companies need to share customers personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers personal information; the reason NIIWIN, LLC chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Lendgreen share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes - such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus. | YES | NO |
| For our marketing purposes to offer our products and services to you | YES | NO |
| For joint marketing with other financial companies | NO | WE DO NOT SHARE |
| For our affiliates' everyday business purposes information about your transactions and experiences | YES | NO |
| For our affiliates' everyday business purposes information about your creditworthiness | YES | YES |
| For our affiliates to market to you | YES | YES |
| For nonaffiliates to market to you | YES | YES |

| To limit our sharing | * Call 855-832-7227 our menu will prompt you through your choices or<br>* Visit us on the web at www.Lendgreen.com<br>* Contact us via email at customercare@lendgreen.com<br>Please note:<br>If you are a new customer, we can begin sharing your information 30 days from the date we sent this notice.  When you are no longer our customer, we can share your information as described in this notice.<br>However, you can contact us at any time to limit our sharing. |
|---|---|
| Questions? | Call 1-855-832-7227 or go to www.Lendgreen.com |

| Who we are: | |
|---|---|
| Who is providing this notice? | NIIWIN, LLC d/b/a/, a business entity of the Lac du Flambeau Band of Lake Superior Chippewa Indians, is providing this privacy policy. |

| What we do: | |
|---|---|
| How does Lendgreen protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures. These measures include computer safeguards and secured files and buildings. |
| How does Lendgreen collect my personal information? | We collect your personal information, for example, when you<br>* Apply for a loan<br>* Give us your income information<br>* Tell us where to send the money<br>* Provide account information<br>* Provide employment information<br>We also collect your personal information from others, such as credit bureaus, affiliates or other companies. |
| Why can't I limit all sharing? | You have the right to limit only<br>* sharing for affiliates' everyday business purposes - information about your creditworthiness<br>* affiliates from using your information to market to you<br>* sharing for nonaffiliates to market to you |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account. |

| Definitions: | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>* Our affiliates include other business entities of the Lac du Flambeau Band of Lake Superior Chippewa Indians. |

## J.A. 253

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:
BRIAN W. COUGHLIN,

Debtor

IN PROCEEDINGS UNDER
CHAPTER 13
CASE NO. 19-14142-FJB

## OBJECTION OF DEBTOR TO THE MOTION TO DISMISS OF RESPONDENTS NIIWIN, LLC D/B/A LENDGREEN , L.D.F. BUSINESS DEVELOPMENT CORPORATION, AND L.D.F. HOLDINGS, LLC TO THE MOTION OF DEBTOR TO ENFORCE THE AUTOMATIC STAY

NOW COMES the Debtor, Brian W. Coughlin, and serves notice of his objections to the allowance of Niiwin, LLC's d/b/a Lendgreen's ("Lendgreen's"), L.D.F. Business Development Corporation's ("BDC's") and L.D.F. Holdings, LLC's ("Holdings'") (collectively, the "Respondents")  Motion to Dismiss. As grounds therefor, as more fully set forth in the accompanying Memorandum of Law in Support of Objection of Debtor to the Motion to Dismiss of Niiwin, LLC d/b/a Lendgreen , L.D.F. Business Development Corporation, and L.D.F. Holdings, LLC, hereby asserts as follows:

1.  The Motion to Enforce the Automatic Stay states a claim upon which the Court may grant relief against Lendgreen, BDC and Holdings; and

2.  The Court has subject-matter jurisdiction over the Stay Motion against Lendgreen, BDC, and Holdings.

3.  The Memorandum of Law and all the filings, records, and proceedings in this case are incorporated herein by reference.

**J.A. 254**

WHEREFORE, the Debtor, Brian W. Coughlin respectfully requests that this Court issue an

Order:

1. Denying the Respondents' Motion to Dismiss; and

2. For all further relief deemed mete and just by the Court under the circumstances.

<div style="text-align:right">

BRIAN W. COUGHLIN, Debtor
By his attorney,

</div>

Date:  8/21/2020                    */s/ Richard N. Gottlieb, Esq.*
                                   Richard N. Gottlieb, Esq. BBO # 547970
                                   Law Offices of Richard N. Gottlieb
                                   Ten Tremont Street
                                   Suite 11, 3rd Floor
                                   Boston, MA 02108
                                   (617) 742-4491
                                   rnglaw@verizon.net

<div style="text-align:center">

**J.A. 255**

</div>

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br><br>                    Debtor | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO. 19-14142-FJB |

**<u>MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MOTION OF NIIWIN,
LLC'S D/B/A LENDGREEN, L.D.F. BUSINESS DEVELOPMENT CORPORATION
AND L.D.F. HOLDINGS, LLC (COLLECTIVELY, THE "RESPONDENTS")  MOTION
TO DISMISS THE MOTION OF DEBTOR TO ENFORCE THE AUTOMATIC STAY</u>**

NOW COMES the Debtor, Brian W. Coughlin, and hereby submits the following

Memorandum of Law in Support of the Objection of Debtor to Motion of Niiwin, LLC's d/b/a

Lendgreen's ("Lendgreen's"), L.D.F. Business Development Corporation's ("BDC's") and

L.D.F. Holdings, LLC's ("Holdings'") (collectively, the "Respondents")  Motion to Dismiss.

**<u>STATEMENT OF FACTS</u>**

The Debtor, Brian W. Coughlin, filed voluntary Chapter 13 proceedings on December 4,

2019, listing Niiwin, LLC ("Lendgreen") as an unsecured creditor.  Lendgreen was listed on

Debtor's mailing matrix, and Debtor's Counsel served the Chapter 13 Plan upon Lendgreen, at

its mailing address of P.O. Box 221, Lac du Flambeau, WI  54538. Despite these notifications

from both the Court and Debtor's Counsel, the Respondents, through Lendgreen, continued their

debt-collection activities against the Debtor through December of 2019 and January, February

and March of 2020.

Notwithstanding the Debtor's Chapter 13 Bankruptcy filing and despite being notified by

the Court and by Debtor's Counsel through the mails, including the submission of Chapter 13

-1-

**J.A. 256**

Plans proposing to pay unsecured creditors 100% in full over the life of the Debtor's Chapter 13 Plan term, up to and throughout February of 2020, the Respondents, through LendGreen, continued to contact the Debtor, issuing emails, text messages and leaving numerous voicemails for him, saying that it had a "very important message" and prompting the Debtor to call Lendgreen.

On February 6, 2020, as a result of the constant harassment of the Respondents, through LendGreen, the Debtor suffered such extreme emotional distress that the Debtor began suffering from suicidal ideation, and , as a consequence, attempted to take his own life. The Debtor then spent two (2) weeks at Massachusetts General Hospital recovering, and thereby suffered damages in the form of expending vacation and sick leave with his employer and medical bills for his care.

After repeated telephone calls from Respondents, through Lendgreen, to Debtor, the Debtor called Respondents, through Lendgreen, on February 26, 2020 and spoke with its collection specialist, informing her that he had filed Chapter 13 bankruptcy back in December of 2019 and that Lendgreen had been previously notified. The representative of Lendgreen sent an email to Debtor acknowledging the conversation, stating, "as earlier discussed, the email address to send the power of attorney documents for your bankruptcy case is administration@lendgreen.com."

On March 18, 2020, the Respondents, through Lendgreen, again called the Debtor's telephone number and left a voicemail for him to contact them about a "very important matter". On March 19, 2020, Respondents, through Lendgreen, yet again called Debtor's telephone number and told him to return the call about a "very important matter".

-2-

**J.A. 257**

## ARGUMENTS

**1.  THE RESPONDENTS DO NOT ENJOY TRIBAL SOVEREIGN IMMUNITY BY OPERATION OF 11 U.S.C. § 106(a) BASED UPON SEMINAL CASE LAW ARISING FROM THE U.S. COURT OF APPEALS FOR THE NINTH CIRCUIT.**

The seminal appellate case regarding the issue of whether the provisions of 11 U.S.C. § 106(a) effectively abrogate the sovereign immunity of Indian Tribes can be found in **Krystal Energy Co. v. Navajo Nation**[1]. In **Krystal Energy**, the tribe moved to dismiss an adversary proceeding against the Navajo Nation, based upon the claim by the Tribe that it enjoyed "sovereign immunity" from suit and contending that the provisions of 11 U.S.C. § 106(a) did not effect an abrogation of the Tribe's immunity from suit because, it posited, that while sovereign immunity of "governmental units, might have been abrogated, the definition of "governmental unit" under 11 U.S.C. § 101(27) did not explicitly include the term "Indian Tribes" within that definition.[2]

In denying the Tribe's Motion to Dismiss, the Ninth Circuit in **Krystal Energy** acknowledged the common-law doctrine of sovereign immunity of Indian Tribes "by the courts of this country as integral to the sovereignty and self-**governance of Indian tribes**."[3] However, sovereign immunity is not absolute and can be abrogated by Congress if such an intent

---

[1]    357 F.3d 1055 (9th Cir., 2004).

[2]    *Id*. at 1057.

[3]    *Id*. at 1056

-3-

**J.A. 258**

is "unequivocally expressed" in the text of federal legislation.[4] The salient issue then became

whether the language of 11 U.S.C. § 106(a) and 11 U.S.C. § 101(27) was sufficiently

"unequivocally expressed" to abrogate Indian Tribes' sovereign immunity in matters of federal

Bankruptcy Law.

    The Ninth Circuit approached the matter in a straight-forward fashion:

       It is clear from the face of §§ 106(a) and 101(27) that Congress did intend to
abrogate the sovereign immunity of *all* "foreign and domestic governments."
Section 106(a) explicitly abrogates the sovereign immunity of all "governmental
units." The definition of "governmental unit" first lists a sub-set of all
governmental bodies, but then adds a catch-all phrase, "or other foreign or
domestic governments." 11 U.S.C. § 101(27). Thus, *all* foreign and domestic
governments, including but not limited to those particularly enumerated in the
first part of the definition, are considered "governmental units" for the purpose of
the Bankruptcy Code, and, under § 106(a), are subject to suit.

                . . .

    The Supreme Court has recognized that Indian tribes are "`domestic
dependent nations' that exercise inherent sovereign authority over their members
and territories." *Potawatomi,* 498 U.S. at 509, 111 S.Ct. 905 (citing **Cherokee
Nation v. Georgia**, 5 Pet. 1, 17, 8 L.Ed. 25 (1831)); *see also,* **Blatchford v.
Native Village of Noatak**, 501 U.S. 775, 782, 111 S.Ct. 2578, 115 L.Ed.2d 686
(comparing Indian tribes to states and foreign sovereigns, and concluding that
both states and Indian tribes are "domestic" sovereigns). So the category "Indian
tribes" is simply a specific member of the group of domestic governments, the
immunity of which Congress intended to abrogate.

    Had Congress simply stated, "sovereign immunity is abrogated as to all
parties who otherwise could claim sovereign immunity," there can be no doubt
that Indian tribes, as parties who could otherwise claim sovereign immunity,
would no longer be able to do so. Similarly here, Congress explicitly abrogated
the immunity of any "foreign or domestic government." Indian tribes are domestic

---

[4] **Kiowa Tribe of Okla. v. Mfg. Techs., Inc.**, 523 U.S. 751, 759, 118 S.Ct. 1700, 140 L.Ed.2d
981 (1998).

governments. Therefore, Congress expressly abrogated the immunity of Indian tribes.[5]

The decision in **Krystal Energy** is not the "final word" on this topic as the Respondents in this case are more than eager to point out. Those courts that have taken issue with the holding in **Krystal Energy**[6] have done so based upon the belief that the *only* way in which Congress could express its "unequivocal intent" to abrogate sovereign immunity would be to have included the term "Indian Tribe" as part of the *enumerated* list of political entities set forth in 11 U.S.C. § 101(27), effectively ignoring the last clause of the definition as not being explicit enough for the tastes of those courts. The U.S. Court of Appeals for the First Circuit simply has *not* issued any decision regarding whether the provisions of 11 U.S.C. § 106(a) and 11 U.S.C. § 101(27) are sufficiently "unequivocal" to abrogate the purported sovereign immunity of the Tribe. However, the approach offered by those courts and the Respondents in this case runs not only contrary to common sense, but also contrary to rules of statutory construction.

_____

[5]  *Id.* at 1057-1058

[6]  *See* **Meyers v. Oneida Tribe of Indians of Wisconsin**, 836 F.3d 818 (7th Cir. 2016); **In re Greektown Holdings, LLC**, 917 F.3d 451 (6th Cir. 2019); **In re Whitaker**, 474 B.R. 687 (B.A.P. 8th Cir. 2012).

.

-5-

## 2. THE RESPONDENTS' INTERPRETATIONS OF 11 U.S.C. §§ 101(27) AND 106(a) ARE ERRONEOUS BECAUSE THEY VIOLATE BASIC RULES OF STATUTORY CONSTRUCTION AND LOGIC.

The argument put forward by the Respondents in claiming that 11 U.S.C. § 101(27) does

*not* encompass the Tribe and its business entities as a "governmental unit" and therefore is not

subject to the immunity abrogation provisions of 11 U.S.C. § 106(a) is erroneous because it

violates basic rules of statutory construction. The Respondents contend that because Congress

did not use the words "Indian Tribe" in the Bankruptcy Code explicitly, it would only be *by*

*implication*[7]   that they would be included within the statutory definition of a "governmental

unit".

_____

[7]   Although the Respondents may argue otherwise, the reality is that the determination that Indian tribes are encompassed within 11 U.S.C. §§ 101(27) and 106(a) is not done by "implication" or by inference at all, but rather by ***logical deduction***. The difference is aptly expressed with respect to the statutes in question by the court in the case of **In re Russell**,:

> Implication and inference are the rhetorical versions of induction, drawing conclusions from examples. For example, if the last phrase were eliminated from § 106(a), one might draw the inference that because sovereign immunity is expressly abrogated as to the United States, the States, the Commonwealths, the Districts, and foreign governments, Congress must have intended to abrogate it as to all governments. That would be reasoning by implication or inference. While that might be equally as sound, and in fact how all new knowledge is achieved, it nevertheless retains the possibility for error. . . .

> But because the statute expressly abrogates sovereign immunity as to all domestic governments, the statute applies to Indian tribes by deduction rather than by implication, so the conclusion is not proscribed by the Court's limitations. In other words, the proscription against abrogation by implication does not require the listing or naming of each government as to which it applies so long as they are unequivocally identified by the statute.

*Infra* Note 14, at 40-41

-6-

The most basic of these rules is that a statute should be read so that no one part of it is read as being superfluous, a nullity or as mere surplusage to other language within that statute.[8] The structure of 11 U.S.C. § 101(27) is extremely broad: it covers every conceivable type of political subdivision, from the United States, to individual states, to districts, territories and instrumentalities of all of the above, municipalities or even a foreign state. At the very last, to make sure that there is no other type of polity that may be "left out" of the definition, the statute goes on in the disjunctive to include "or other foreign or domestic government".

The Tribe in this case is decidedly ***not*** one of the several States that compose the United States as a whole, nor can it be said that it is a Commonwealth or a District or a Territory or a Municipality. Supreme Court case law is legion in its description of Indian tribes as a "domestic dependent nation" of the Federal Government.[9] Therefore, it stands to reason that the Indian Tribe represented by its government namely, its "Tribal Council", is encompassed within this last "wrap-around" provision, as an "other . . . domestic government". Congress need not use any talismanic "magical words" in order to accomplish its goal of including the Tribe as a

---

[8] *See* **Maine Pooled Disability Trust v. Hamilton**, 927 F.3d 52, 58 (1st Cir. 2019), *citing* **Lawless v. Steward Health Care Sys., LLC**, 894 F.3d 9, 23 (1st Cir. 2018).

[9] "Indian tribes are `domestic dependent nations' that exercise inherent sovereign authority over their members and territories." **Potawatomi**, 498 U.S. at 509, 111 S.Ct. 905, *quoting* **Cherokee Nation v. Georgia**, 30 U.S. (5 Pet.) 1, 17, 8 L.Ed. 25 (1831). "Indian tribes are `distinct, independent political communities, retaining their original natural rights' in matters of local self-government." *Martinez*, 436 U.S. at 55, 98 S.Ct. 1670, quoting **Worcester v. Georgia**, 31 U.S. (6 Pet.) 515, 559, 8 L.Ed. 483 (1832). They are "separate sovereigns pre-existing the Constitution." **Martinez**, 436 U.S. at 56, 98 S.Ct. 1670.

-7-

"governmental unit" within the meaning of the statute in question.[10] Moreover, if the Tribe does not fall within the wide expanse created by the last clause of 11 U.S.C. § 101(27), it *necessarily* follows, given the inclusion of every other kind of political and territorial subdivision within the statute, that the last clause *must* then be read as redundant and thereby rendered as a nullity or surplusage in  the statute. As noted by Judge McFeeley in the case of **In re Mayes**[11]:

> So a domestic government would be a group within the lands of the United States that operates through some form of ruling principles. The main body of § 101(27) embraces virtually every form of domestic government including, municipalities, States and their instrumentalities, and the federal government. After examining the statute, the question remains: To what does the phrase following the semicolon "other . . . domestic government" refer?
>
> An important statutory maxim of interpretation requires a court to give operative effect to every word Congress used. *Because in § 101(27) all other forms of domestic government prior to the semicolon are enumerated, if the phrase following the semicolon is not read as referring to Indian tribes and other indigenous peoples, the phrase becomes meaningless. There are no other forms of domestic government that have not already been specified.*
>
> Reading "other . . . domestic government" as referring to Indian tribes is not without precedent. Historically, Indian tribes have also been called "domestic dependent nations" by both the judiciary and the executive branch. The Supreme Court has characterized Indian tribes as "domestic dependent nations." And a recent Executive Order interpreting the Indian Self Determination and Education Assistance Act, 25 U.S.C. § 450 *et seq.,* characterized Indian tribes as "domestic dependent nations." The fact that Indian tribes have been referred to as "domestic dependent nations" incorporates them into § 106(a). If an Indian tribe is a "domestic dependent nation" then it is also an "other . . . domestic government."[12]

---

[10]/   *See* **Krystal Energy v. Navajo Nations**, 357 F.3d at 1061 (9th Cir., 2004).

[11]/   294 B.R. 145 (10th Cir. BAP, 2003)

[12]/   *Id.* at 159-160. Emphasis supplied.

By comparison, the interpretation offered up by the Respondents and the decisions taking

issue with **Krystal Energy**,[13] bear this glaring infirmity in statutory construction encompassed

as a simple question: If the last clause of 11 U.S.C. § 101(27) does ***not*** encompass the polity

represented by the Indian Tribe as the kind of "other . . . domestic government" contemplated by

the statute, then to what type of political subdivision did Congress conceive when it enacted the

statute that might have been encompassed in that clause that would not render that clause

redundant and thereby superfluous? This is of course a rhetorical question, with all that that

implies. ***No other kinds of political subdivisions exist, other than an Indian Tribe***. As the Court

in **In re Russell**,[14] put it:

> Indeed, since the meaning of "or other foreign or domestic government"
> cannot include the United States, or a State, Commonwealth, Territory or District,
> or a municipality, or a foreign state, or an agency, department or instrumentality
> of any of them, because they are all expressly mentioned, it is difficult if not
> impossible to come up with any possible meaning for "other domestic
> government" except Indian tribes. Without another reasonable plausible
> alternative meaning, the abrogation of sovereign immunity as to all domestic
> governments is not equivocal. It could hardly be more absolute.[15]

---

[13] **Krystal Energy**, *supra* Note 1 at 1057.

[14] 291 B.R. 34 (Bankr. D. Ariz., 2003)

[15] *Id.* at 41.

3. **THE FIRST CIRCUIT'S RECENT DECISIONS REGARDING THE STATUS OF INDIAN TRIBES INDICATE THAT IT WILL ADOPT THE REASONING OF THE NINTH CIRCUIT COURT OF APPEALS IN *KRYSTAL ENERGY COMPANY V. NAVAJO NATION*.**

In the case of **Narragansett Indian Tribe v. Rhode Island**[16], the First Circuit dealt with the question of whether a claim of tribal sovereign immunity could operate to bar the State of Rhode Island from enforcing a valid search warrant on tribal settlement lands to arrest tribal members for violating the state's cigarette tax laws. Among the arguments made by the Narragansett Indian Tribe was that tribal sovereign immunity was a characteristic of the tribe's "inherent sovereignty". In rejecting this approach, which had been adopted by the dissent, the First Circuit found:

> At the threshold, we pause to confront a point made by our dissenting brethren. They suggest that our approach to this question disregards the "subtle but important" distinction between tribal sovereignty and tribal sovereign immunity announced in a decision of a panel of this court. **Post** at 32 (Lipez, J., with whom Torruella, J., joins, dissenting) (quoting **Aroostook Band of Micmacs v. Ryan**, 404 F.3d 48, 68 (1st Cir.2005)). This criticism rests on shaky ground. The **Aroostook** panel—with scant citation to authority— saw a distinction that is not apparent to us; it framed the distinction as being that the doctrine of tribal sovereignty contemplates that, in certain circumstances, a tribe "is not subject to state laws ... *at all*," whereas tribal sovereign immunity "means that [a tribe] is not amenable to *state judicial or quasi-judicial proceedings* to enforce those laws." **Aroostook**, 404 F.3d at 68 (emphasis in original). In our view, both the **Aroostook** panel's sculpting of the distinction and its ensuing discussion of the scope of tribal sovereign immunity misread the applicable Supreme Court precedents and, thus, are incorrect. As we already have explained, "the trend has been away from the idea of inherent Indian sovereignty as a bar to state jurisdiction and toward reliance on federal pre-emption," **McClanahan**, 411 U.S. at 172, 93 S.Ct. 1257; *see* **Hicks**, 533 U.S. at 362, 121 S.Ct. 2304, treating sovereignty instead as the source of "tribal power ... to protect tribal self-government or to control internal relations" through tribal regulation of activities on tribal lands, **Montana v. United States**, 450 U.S. 544, 564, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981); *see* **Hicks**, 533 U.S. at 358-60,

---

[16]/   449 F.3d 16 (1st Cir. 2000).

-10-

121 S.Ct. 2304. Consistent with this trend, tribal sovereign immunity is most accurately considered an incidence or subset of tribal sovereignty. *See, e.g.,* **Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe**, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (indicating that tribal sovereign immunity is an incidence of tribal sovereignty). Consequently, we expressly overrule **Aroostook** with respect to the distinction in question and proceed with our bifurcated inquiry.[17]

That same year, the First Circuit, in the case of **Ninegret Development v. Narragansetts Indian Wetuomuck Housing Authority**,[18] examined the issue of whether the assertion of tribal sovereign immunity effectuated a deprivation of federal subject matter jurisdiction, similar to the argument being posited by the Tribe in this case:

Two fundamental premises dictate our order of progression. First, although tribal sovereign immunity is jurisdictional in nature, consideration of that issue always must await resolution of the antecedent issue of federal subject-matter jurisdiction. *See* **In re Prairie Island Dakota Sioux**, 21 F.3d 302, 304-05 (8th Cir. 1994). This sequencing follows inexorably from **Oklahoma Tax Commission v. Graham**, 489 U.S. 838, 841 (1989), in which the Court held that the mere presence of a tribal sovereign immunity defense did not, in and of itself, "convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law." Logically, this reasoning compels a conclusion that a federal court can address such a defense only after it confirms independently that subject-matter jurisdiction exists.

The second premise that affects our sequencing determination concerns the relationship between tribal sovereign immunity and the tribal exhaustion doctrine. The question here (which, as we have said, arises only after the inquiry into subject-matter jurisdiction has been answered affirmatively) relates to whether the federal court or the tribal court should pass upon the sovereign immunity defense, at least initially. On this question, the authorities are in some disarray.

The Eighth Circuit has held that a district court should begin this phase of its inquiry by addressing exhaustion and, if it determines that tribal remedies must be exhausted, give the tribal court the first crack at considering the bona fides of the sovereign immunity defense. *See* **Davis v. Mille Lacs Band of Chippewa Indians**,

---

[17]    449 F.3d at 24.

[18]    207 F.3d 21 (1st Cir., 2000).

-11-

193 F.3d 990, 992 (8th Cir. 1999). That view appears to be based on a misreading of **National Farmers**, and it has mustered scant support elsewhere. We respectfully decline to adopt it and hold instead that, as long as federal subject-matter jurisdiction exists, a defense predicated on tribal sovereign immunity is susceptible to direct adjudication in the federal courts, without reference to the tribal exhaustion doctrine.[4] *See* **TTEA v. Ysleta Del Sur Pueblo**, 181 F.3d 676, 680-81, 683-84 (5th Cir. 1999); **Altheimer & Gray v. Sioux Mfg. Corp**., 983 F.2d 803, 812-15 (7th Cir. 1993). We believe that this conclusion flows naturally from the reality that the sovereignty of Indian tribes is subject to congressional control, with the result that tribal sovereign immunity is necessarily a matter of federal law. *See* **Kiowa Tribe v. Manufacturing Techs**., 523 U.S. 751, 759 (1998); **Osage Tribal Council v. United States Dep't of Labor,** 187 F.3d 1174, 1180 (10th Cir. 1999).\[19]

It therefore follows based upon the foregoing case law, contrary to the positions taken by the Respondents in this matter, that the First Circuit will not view the question of tribal "sovereign immunity" as one related to or otherwise impairing a Federal Court's subject-matter jurisdiction. Further, the First Circuit has clearly indicated that it will necessarily eschew allegedly "'subtle but important' distinctions' in interpreting federal statutes relating to tribal sovereign immunity, such as would be required in attempting to interpret 11 U.S.C. §§ 106(a) and 101(27) as ***not*** encompassing an Indian Tribe with the Bankruptcy Code's broad abrogation of sovereign immunity in bankruptcy matters.

Furthermore, the ersatz reading offered by the Respondents and cases that have not adopted the holding in **Krystal Energy** leads to another violation of basic rules of statutory construction: the creation of absurd results. Case law both within this Circuit and outside it

---

[19]/    *Id.* at 28-29.

makes it abundantly clear that no statute should be read so as to lead to absurd results.[20] Yet, if

Indian Tribes are not included within the ambit of 11 U.S.C. § 106(a), Indian Tribes activities

relating to such matters as (a) taxation of its own tribal members who seek Federal bankruptcy

protection, (b) holding defaulted mortgage debt on non-tribal residential properties, or (c) as

even where its instrumentalities are Pay-Day Lenders seeking monetary recovery in Tribal

Courts, would not be subject to the Automatic Stay, *at all*, under 11 U.S.C. § 362(a). Given the

Respondents' narrow "construction" of 11 U.S.C. §§ 106(a) and 101(27), a tribal court, tribal

governmental entities and tribal instrumentalities, such as the Respondents here, would enjoy

unprecedented rights and privileges in bankruptcy not even granted to States, Municipalities, the

Federal governments or the instrumentalities of any of them when a debtor files for bankruptcy

protection, be it a large publicly-traded corporation or, like here, a lone individual.

### 4. THE TRIBE IS LEGALLY INDISTINGUISHABLE FROM ITS SUBSIDIARIES SUCH THAT KNOWLEDGE BY LENDGREEN OF THE DEBTOR'S BANKRUPTCY CASE IS IMPUTED TO ALL "ARMS" OR INSTRUMENTALITIES OF THE TRIBE.

Because the Tribe maintains pervasive control and oversight over both BDC and

LendGreen, the indisputable knowledge of LendGreen of the Debtor's Chapter 13 filing,

necessarily imputes such knowledge "up the line" to the Tribe, making the Tribe and the other

---

[20] *See* **Chung Fook v. White**, 264 U.S 443 (1924). *See also* **Pritzker v. Yari**, 42 F.3d 53, 67-68 (1st Cir., 1994) ("As a fundamental principle of statutory construction, we will not depart from, or otherwise embellish, the language of a statute absent either undeniable textual ambiguity . . . or some other extraordinary consideration, such as the prospect of yielding a patently absurd result") (internal citations omitted).

-13-

Respondents vicariously liable for the wrongs committed by Lendgreen.[21] Furthermore, in the

unusual circumstances of this case, the Respondents admit that LendGreen is "an arm of the

Tribe" and therefore claim that it and its affiliates are protected by the Tribe's claim of sovereign

immunity. However, this assertion "cuts both ways". The First Circuit has held that as an "arm"

of an Indian tribe, an entity is legally indistinguishable from the tribe itself.[22] Therefore, since

the Respondents assert that they are all "arms" of the Lac de Flambeau Band of Lake Superior

Chippewa Indians, the knowledge held by one "arm" of that Tribe is necessarily knowledge held

by all "arms" of the Tribe and the Tribe itself.. The Respondents cannot claim that they are

effectively all one entity for the purpose of claiming tribal sovereign immunity on the one hand,

while simultaneously claiming corporate "separateness" on the other hand. Respondents cannot

"have their cake and eat it too"; by asserting that all of them are "arms" of a single tribe for the

purposes of tribal sovereign immunity, they necessarily *must* forego any simultaneous contention

of corporate separateness. This is particularly the case given the circumstances of the manner in

which the Respondents were originally created and operated by the Tribe in this case.

---

[21] *See e.g.* **Ramirez v. Toops**, _____ B.R. _____, Adv. Pro. No. 13-03067 (Bankr. S.D. Texas, 2014) (Principal corporate entity vicariously held liable for violating the automatic stay under 11 U.S.C. § 362(k) where it failed to turnover truck and caused damage thereto after receiving notice of the Debtor's Chapter 13 bankruptcy filing.)

[22] "The Authority, as an arm of the Tribe, enjoys the full extent of the Tribe's sovereign immunity. Therefore, we shall not distinguish between the Tribe and the Authority in discussing concepts such as tribal immunity and tribal exhaustion." **Ninegret Development v. Narragansetts Indian Wetuomuck Housing Authority**, 207 F.3d at 29 (1st Cir., 2000).

-14-

5. **THE TRIBE "MANUFACTURES" A CORPORATE STRUCTURE FOR LENDGREEN FOR THE PURPOSE OF ATTEMPTING TO INSULATE ITSELF AND ITS "ARMS" FOR THE PURPOSE OF "EXPORTING" THE TRIBE'S CLAIMS OF "SOVEREIGN IMMUNITY" WHILE PREVENTING ANY MEANINGFUL RECOVERY AGAINST THE SAME.**

The salient facts relating to LendGreen's creation and its interrelationship with the Tribe are beyond cavil and this Court may, in evaluating the Respondents' Motions to Dismiss under Rule 12(b)(6), take judicial notice of records of other courts[23] in which Lendgreen and its affiliates have appeared. As it turns out, there is much documentation from the Respondents themselves related to the formation of the Respondents and their interrelationships with each other provided in the case of **Walker v. Lendgreen, et al.**, C.A. 8:16-cv-00862-JDW-AAS (U.S. Dist. Ct., M.D. Fla., 2016). To this end, the documents referenced below are derived from the Exhibits attached to the Declaration of Lendgreen's Officer, Brent McFarland, in their Motion to Dismiss in that District Court action.

The Respondents' "pay-day" lender "arm" is Niiwin, LLC, doing business as "Lendgreen". Lendgreen is, upon information and belief, is a wholly owned subsidiary of LDF

---

[23] **Barnstable Cnty. v. 3M Co.** ____ F.Supp. ____, C.A. No. 17-40002 (D. Mass. 2017).(In evaluating a Motion to Dismiss under Rule 12(b)(6), the Court may consider matters of which judicial notice may be taken.  It is "well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." **Kowalski v. Gagne**, 914 F.2d 299, 305 (1st Cir. 1990),); **Bostwick v. 44 Chestnut St.** ____ F. Supp. ____, C.A. No. 17-CV-12409-ADB (D. Mass. 2019) (The Court may take judicial notice of proceedings in other courts, including state courts. See **Maher**, 272 F.3d at 86 n.3 ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." (*quoting* **Kowalski v. Gagne**, 914 F.2d 299, 305 (1st Cir. 1990))); *See also* **Veg-Mix, Inc. v. U.S. Dep't of Agric**, 832 F.2d 601, 607 (D.C.Cir.1987) ("Courts may take judicial notice of official court records, including bankruptcy pleadings.") **In re 201 Forest Street, LLC**, 404 B.R. 6, 16 (Bankr. Mass. 2009).

-15-

Holdings, LLC, which, in turn, is a wholly owned subsidiary of the Lac du Flambeau Business

Development Corporation, which, in turn, is a wholly owned and operated economic arm and

instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe"), a

federally recognized Indian tribe.

     More specifically, the Tribe incorporated the Lac du Flambeau Business Development

Corporation ("BDC") on or about August 27, 2012, by means of Resolution No. 370 (12).[24]

According to the Articles of Organization for BDC under Section 6.01 thereof, "The Lac du

Flambeau Band of Lake Chippewa Indian Tribe is the sole owner of the corporation (the

"Owner")."  Furthermore, the business and affairs of the [BDC] Corporation shall be managed at

the direction of the Board of Directors . . . [who] shall be appointed by the Lac du Flambeau

Tribal Council for two-year staggered terms." *See* Section 7.01 of the Articles of Organization

for BDC. Moreover, The Board of Directors shall report to the Owner [The Lac du Flambeau

Band of Lake Chippewa Indian Tribe] the activities of the Corporation, as directed by the Owner

. . . " *See* Section 7.02 of the Articles of Organization for BDC.

     It was the Tribe that, on December 17, 2012, created Niiwin, LLC, along with the

creation of LDF Holdings, LLC, Bezhig, LLC, Niswi, LLC and Naanan, LLC to "be-wholly-

owned by [BDC] for the purposes of operating one or more Tribal lending business{es} and any

---

[24]/    A true and accurate copy of Resolution No. 370 (12) and the Articles of Organization of the
Lac du Flambeau Business Development Corporation are attached hereto as Exhibit "A".

activity directly related to such purpose" as part of Resolution No. 550(12).[25] Subsequently on

January 9, 2013, Articles of Organization were adopted by the Tribe, but the "sole member" of

Niiwin, LLC was made to be BDC, at the direction of the Tribe. [26]  Subsequently to that event,

on July 17, 2013, an Operating Agreement was entered into between LDF Holdings, LLC (one of

the other limited liability companies that was created simultaneously by the Tribe by operation of

Resolution No. 550(12), (that is *also* wholly-owned and operated by BDC at the direction of the

Tribe) and Niiwin, LLC.[27] Under the terms of the Article I, Section 1.2 of the Operating

Agreement, the intent of the Tribe and the referenced affiliated entities is quite clear:

> It is the intent of the Member [LDF Holdings, LLC] that the Company [Niiwin, LLC]
> shall be a manager-managed limited liability company. It shall always be operated in a manner
> consistent with its treatment as *a tribal entity* for federal and state law purposes. It is also the
> intent of the Member that the Company ***shall be treated as a 100% tribally owned and operated
> company, for federal and state law purposes, including all tax purposes, under the exclusive
> ownership, control, and jurisdiction of the Lac du Flambeau band of Lake Superior Chippewa
> Indians.*** No Member or Manager shall take any action inconsistent with the expressed intent of
> the parties hereto. (Emphasis supplied).

> Furthermore, under Article VI, Sections 6,1 and 6.2, "all profits and losses of the

Company will be allocated to the Member" and "[w]henever, the cash account balance [of

Niiwin, LLC's] exceeds said amount [$500] there shall be an immediate Distribution declared

and paid unless the liabilities of the Company are in excess of its assets." Therefore, pursuant to

---

[25] A true and accurate copy of Resolution No. 550 (12) is attached hereto as Exhibit "B".

[26]  A true and accurate copy of the "Articles of Organization" of Niiwin, LLC is attached
hereto as Exhibit "C".

[27]  A true and accurate copy of the Operating Agreement of Niiwin, LLC is attached hereto as
Exhibit "D".

-17-

these provisions, all profits effectively in excess of $500 must at all times be "upstreamed" to the
BDC and from there to the Tribe.

Therefore, the Tribe has created *all* of these corporate entities in order to develop the
Pay-Day lending business of the ***Tribe*** and for the express exclusive purpose of serving the
***Tribe's*** needs. To this end, at any given point in time, Niiwin, LLC, ***by the terms of its
Operating Agreement, cannot hold in its cash accounts more than $500.00,*** as *all* sums in
excess of $500 ***must*** be ***immediately*** declared as a dividend and upstreamed to the Tribe's
controlled business "arm". Therefore, given the total operational and economic control by the
Tribe of LendGreen, LendGreen can be fairly said to be wholly dominated by the Tribe, thereby
making the Respondents, each of them, jointly and severally liable for the wrongful acts of
Lendgreen.

To further cement the irreducible connection between the Tribe and the rest of the
Respondents, the actual language of the form of Loan Agreement that Lendgreen utilizes in
forming its contracts with borrowers like the Debtor make it clear that Lendgreen is so identified
with the Tribe that they are indistinguishable from one another.\[28]

_____

[28]/    *See* pp. 4 of Loan Agreement Form of Lendgreen, Attached as Exhibit "E" hereto, under
**SOVEREIGN IMMUNITY**: "This Loan Agreement and all related documents are being
submitted by you to us as an economic arm, instrumentality, and limited liability company of the
Tribe. The Tribe is a federally-recognized American Indian Tribe and enjoys governmental
sovereign immunity. Because we and the Tribe are entitled to sovereign immunity, you will be
limited as to what claims, if any, you may be able to assert against the Tribe and us. To
encourage resolution of consumer complaints, any complaint may be submitted by you or on
your behalf to the Tribe for review as described below." and **PRESERVATION OF
SOVEREIGN IMMUNITY**:"It is the express intention of the Tribe and us operating as an
-18-

**J.A. 273**

6.  **THE RESPONDENTS' MOTION TO DISMISS SHOULD BE DENIED BASED UPON BASIC FEDERAL LAW PRINCIPLES.**

     This Honorable Court should therefore deny Respondents' Motion to Dismiss because Mr. Coughlin has properly pled a claim for which relief may be sought.  A Rule 12(b)(6) Motion to Dismiss shall fail if a plaintiff pleads allegations grounded in sufficient facts that, if such facts were to be true, plaintiff has "state[d] a claim to relief that is plausible on its face."[29] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…asking for more than a sheer possibility that a defendant has acted unlawfully…" [30] "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." [31]

---

economic arm of the Tribe, to fully preserve, and not waive either in whole or in part, exclusive jurisdiction, sovereign governmental immunity, and any other rights, titles, privileges, and immunities, to which we and the Tribe are entitled. To protect and preserve the rights of the parties, no person may assume a waiver of sovereign immunity. No waiver is or can be made except by express written declaration of the Tribe's Tribal Council specifically authorizing a waiver for the matter in question. No such waiver has been made with respect to either your Loan Agreement or your Payment Choice Authorization."

[29] **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007).

[30] **Ashcroft v. Iqbal,** 556 U.S. 662 (2009).

[31] **In re Luciani**, 584 B.R. 449, 454 (Bankr. Mass. 2018) (Feeney, J.) (*citing* **Bell Atl. Corp.,** 550 U.S. at 555) (quotation marks omitted).

-19-

The Court must assess the Rule 12(b)(6) Motion to Dismiss under the "'assumption that all the allegations in the complaint are true (even if doubtful in fact).'"[32] A well-pled case "requires a complaint with enough factual matter (taken as true) to suggest [a claim for which relief may be sought]."[33] As shown in the Statement of Facts, *infra*, the Debtor has alleged that the Respondents knew of the Debtor's Chapter 13 bankruptcy filing, and nonetheless continued to engage in multiple debt-collection activities. As a result of these wrongful activities, the Debtor was made to suffer substantial damages, include great emotional distress.

Respondents state that Mr. Coughlin's action should be dismissed because it "fails to allege or present evidence demonstrating BDC or Holdings' conduct violated the automatic stay…," that BDC and Holdings lacked actual knowledge of Mr. Coughlin's bankruptcy, and that imputation of such knowledge via their corporate relationships is improper.[34] Respondents however do not challenge the claim against Lendgreen.   "Lendgreen believes Debtor cannot meet his burden to prove a willful violation of the automatic stay, however, Lendgreen believes that such grounds that relate to Lendgreen go to the merits of the Stay Motion, which are premature at the motion to dismiss stage." [35]   In other words, Respondents agree that Mr.

---

[32]   **Bell Atlantic Corp. v. Twombly**, 550 U.S. 554, 555 (2007) citing ***Swierkiewicz v. Sorema N. A.***, 534 U.S. 506, 508 (2002).

[33]   *Id.* at 555-556.

[34]   Motion to Dismiss, p. 5-8.

[35]   *Id.* at p. 5.

-20-

**J.A. 275**

Coughlin has, in fact, stated a claim for which relief can be sought against the Tribe's "arms",
including Lendgreen.

Mr. Coughlin's claims against BDC and Holdings should not be dismissed because their
relationships with Lendgreen are inextricably linked. By naming Lendgreen, BDC, and Holdings
as parties in his claim as he did, Mr. Coughlin properly stated his claim for which relief can be
sought, consistent with **Twombly** and **Iqbal**.  This Court, therefore, should deny Defendants'
Motion to Dismiss.

## CONCLUSIONS

"…As a matter of national policy, the United States has waived its immunity
from tort liability and from liability arising out of its commercial activities.
Congress has also decided in the Foreign Sovereign Immunities Act of 1976 that
foreign states may be sued in the federal and state courts for claims based upon
commercial activities carried on in the United States, or such activities elsewhere
that have a "direct effect in the United States." And a State may be sued in the
courts of another State. ***The fact that the States surrendered aspects of their
sovereignty when they joined the Union does not even arguably present a
legitimate basis for concluding that the Indian tribes retained-or, indeed, ever
had-any sovereign immunity for off-reservation commercial conduct.***"

-Justice John Paul Stevens[36]

This case represents a very unique series of events whereby multiple interrelated entities
operating as a unified whole to engage in payday consumer lending have embarked upon a
defense that confounds logic as well as common sense. The Respondents aver that the Tribe's

---

[36]/  **Kiowa of Oklahoma v. Manufacturing Technologies, Inc**., 523 U.S. 751, 761 (Justice
Stevens dissenting) (Emphasis supplied. Internal citations omitted.)

-21-

**J.A. 276**

"arms" are both entitled to sovereign immunity because they are all "arms" of their parent tribe; while, at the same time, they argue that because they have created artificial entities utilizing the law of the tribe itself, that they should be entitled to the benefits of corporate separateness.

Leaving aside questions of judicial estoppel, the Respondents simply cannot "have their cake and eat it too". They cannot claim the benefit of sovereign immunity while at the same time claiming the benefits of corporate separateness; the two contentions are necessarily inimical to each other, because the extension of sovereign immunity beyond the tribe itself, necessarily undercuts and nullifies any good faith argument that they are legally separate entities entitled to the benefits of separate corporate existence. Indeed, the First Circuit holds that "arms" of Indian tribes are mere instrumentalities of those tribes and, as such, any action taken by any of those said "arms" is, for all intents and purposes, an action taken by the tribe itself.[37]

_____

[37] **Ninigret Dev. V. Narragansett Indian Wetuomuck Housing Auth.**, 207 F.3d 21, 27 (1st Cir. 2000).

-22-

For all of these reasons, the Respondents' Motion to Dismiss should be denied.

RESPECTFULLY SUBMITTED,

BRIAN W. COUGHLIN, Debtor
By his attorney,

Date:   8/21/2020                        /s/ Richard N. Gottlieb, Esq.
                                         Richard N. Gottlieb, Esq. BBO # 547970
                                         Law Offices of Richard N. Gottlieb
                                         Ten Tremont Street
                                         Suite 11, 3rd Floor
                                         Boston, MA 02108
                                         (617) 742-4491
                                         rnglaw@verizon.net

-23-

**J.A. 278**

# Exhibit "A"

**ARTICLES OF INCORPORATION**

**OF**

**L.D.F. BUSINESS DEVELOPMENT CORPORATION**

The purpose of forming the L.D.F. Business Development Corporation is to stimulate economic development for the Lac du Flambeau Tribe within the Reservation boundaries and beyond. The goal is to increase revenue and employment for the Tribal membership.  The Mission of the L.D.F. Business Development Corporation is to always serve in the best interest of the Tribal Membership.

These Articles of Incorporation are designed to cultivate stability for the Corporation, and confidence for our business partners, by limiting political influences and allow the Board of Directors to manage the Corporation as an independent economic development arm of the Lac du Flambeau Tribe. These Articles provide for oversight by the Tribal Council, as Owner, over a Board of Directors as is necessary to ensure accountability of the Corporation.

The Lac du Flambeau Band of Lake Chippewa Indian Tribal Council, as the Governing Body under Article III, Section 1 of the Lac du Flambeau Tribal Constitution, hereby adopts the following Articles of Incorporation for the purpose of chartering a Corporation.

ARTICLE 1:     AUTHORITY OF INCORPORATION

SECTION 1.01: The incorporator is the Lac du Flambeau Band of Lake Superior Chippewa Indian Tribe, by the powers vested in the Tribal Council in Article VI, Section 1(o) of the Tribal Constitution.

SECTION 1.02: The registered agent of the Corporation shall be the President of the Board of Directors, located at 418 Little Pines Road, PO Box 67, Lac du Flambeau WI S4538.

ARTICLE 2:     CORPORATION NAME

SECTION 2.01: The Name of the Corporation is L.D.F. Business Development Corporation, hereafter referred to as the Corporation.

ARTICLE 3:     LOCATION

SECTION 3.01: The Corporation is registered and the principal office is located at 418 Little Pines Road, Lac du Flambeau, Wisconsin with the mailing address of Post Office Box 67, Lac du Flambeau, WI S4538.

ARTICLE 4:     PERPETUAL

SECTION 4.01: The Corporation shall be perpetual.

ARTICLE S:     PURPOSE

SECTION 5.01: The purpose of the Corporation is to promote the economic development of the Lac du Flambeau Band of Lake Superior Chippewa  Indians through investment in and development of business

Case: 21-1153    Document: 00117747096    Page: 287    Date Filed: 06/01/2021    Entry ID: 6425224

Case Case 1:19-cv-01382-JDW-AOS Document 84-5 Filed 08/21/20 Entered 07/08/21 20 Page 498 of 13 Desc Main
Document    Page 26 of 56

opportunities, and to engage in any lawful act or activity which may be necessary or appropriate for carrying out and accomplishing the foregoing objectives and purpose.

SECTION 5.02: The Corporation shall serve as a business development arm of the Lac du Flambeau Band of Lake Superior Chippewa Indians created solely for the purpose of developing tribal businesses and promoting economic growth and achieving greater employment for the Tribal membership.

ARTICLE 6:        CORPORATE OWNERHIP AND POWERS

SECTION 6.01: The Lac du Flambeau Band of Lake Superior Chippewa Indian Tribe is the sole owner of the corporation (the "Owner").

SECTION 6.02: The Corporation shall have authority to enter into contracts or agreements of every kind and nature with any person, association, corporation, municipality, country, nation, Indian tribe, state or body politic.

SECTION 6.03: The Corporation shall have no power to pledge the credit, encumber property or real estate, nor enter into any agreement, expressly or by implication, on behalf of the Lac du Flambeau Band of Lake Superior Chippewa Indians

SECTION 6.04: The Corporation has the power to incur debts and raise, borrow and secure the payment of any money in any lawful manner.

SECTION 6.05: The Corporation has power to sue and be sued in its corporate name in courts of competent jurisdiction within the United States for disputes arising out of contracts entered into by the Corporation, and has the power to waive the Corporation's immunity from suit. Provided, however, that any such waiver of the sovereign immunity of the Corporation be accompanied by a unanimous vote of all the Directors at a duly called meeting of the Board of Directors where all Directors were present.

ARTICLE 7:        BOARD OF DIRECTORS

5ECTION 7.01: The business and affairs of the Corporation shall be managed at the direction of the Board of Directors, who shall possess substantial business skills and experience. The Board of Directors shall be appointed by the Lac du Flambeau Tribal Council for two-year staggered terms.

SECTION 7.02: The Board of Directors shall report to the Owner, the activities of the Corporation, as directed by the Owner or as otherwise provided for in the By-Laws.

ARTICLE 8:        ADOPT BYLAWS

SECTION 8.01: The Board of Directors of the Corporation shall have the power to adopt bylaws for the regulation of the internal affairs of the Corporation consistent with these Articles, subject to the approval of the Owner.

ARTICLE 9:     BOARD OF DIRECTOR LIABILITY

SECTION 9.01: The members of the Board of Directors shall perform their role in good faith and in a manner the Director serves the best interests of the Owner and with such care as an ordinary prudent person would use under similar circumstances in a like position. A Director while acting in the scope of their fiduciary duties shall have no liability for actions taken while serving as a Director in connection with the business of the Corporation.

ARTICLE 10:     LIMITATIONS

SECTION 10.01: Nothing contained within these Articles of Incorporation shall serve to waive the sovereign immunity of the Lac du Flambeau Band of Lake Superior Chippewa Indian Tribe.

SECTION 10.02: The Corporation shall have no authority to pledge, dispose, or otherwise encumber real or personal property of the Lac du Flambeau Band of Lake Superior Chippewa Indians.

Executed on the 27th of August, 2012 on behalf of the Lac du Flambeau Band of Lake Superior Chippewa Tribal Council.

Thomas Maulson, Chairman

Lac du Flambeau Tribe

## RESOLUTION NO. 370(12)

**WHEREAS,** the Lac du Flambeau Band of Lake Superior Chippewa Indians (hereinafter, "Tribe") is a federally recognized Tribe organized under a Constitution pursuant to the Indian Reorganization Act of 1934, 48 Stat. 984 25 U.S.C. § 476, et. Seq. as amended; and

**WHEREAS,** pursuant to Article III, Section 1, of the Tribal Constitution, the governing body of the Tribe is the Tribal Council; and

**WHEREAS,** the Tribe is a federally recognized Tribe with all inherent rights of Tribal Sovereignty possessing inherent powers of Tribal self-government and self-determination; and

**WHEREAS,** pursuant to Article VI, Section 1(o) of the Tribal Constitution, the Tribal Council has right and ability to create business corporations to stimulate economic growth and jobs for Tribal Members; and

**WHEREAS,** the Tribal Council deems it necessary to create the L.D.F. Business Development Corporation for the purpose of expanding business development, generating additional jobs and revenue for the tribe; now, therefore be it

**RESOLVED,** by this Council, in Regular Session assembled, hereby declares that:

1. The tribal Council hereby accepts the Articles of Incorporation for L.D.F. Business Development Corporation as filed with the Tribal Secretary.
2. The Tribal President and Secretary are hereby directed and authorized to issue a Certificate of Incorporation for the L.D.F Business Development Corporation and to affix thereto the Tribal Seal.
3. The Tribal Secretary shall retain an executed original of the Articles of Incorporation of the L.D.F. Business Development Corporation in the tribal records.

## CERTIFICATION

I, the undersigned, as Secretary of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a tribal government operating under a Constitution adopted pursuant to Section 16 of the Indian Reorganization Act, 25 U.S.C., s. 476, do hereby certify that the Tribal Council of the Band is composed of twelve members, of whom twelve constituting a quorum, were present at a Regular Meeting, duly called, noticed, convened, and held on the 27th Day of August, 2012, and that the foregoing resolution was duly adopted at said meeting by an affirmative vote of eleven members, none against, none abstaining, and that the said resolution has not been rescinded or amended in any way.

*Elizabeth Diver*

Elizabeth Diver, Secretary
Lac du Flambeau Band of Lake
Superior Chippewa Indians

**J.A. 283**

# Exhibit "B"

## RESOLUTION NO. 550(12)

**WHEREAS,**   the Lac du Flambeau Band of Lake Superior Chippewa Indians (hereinafter, "Tribe") is a federally recognized Tribe organized under a Constitution pursuant to the Indian Reorganization Act of 1934, 48 Stat. 984 25 U.S.C. § 476, *et seq.* as amended; and

**WHEREAS,**   pursuant to Article III, Section 1, of the Tribal Constitution, the governing body of the Tribe is the Tribal Council; and

**WHEREAS,**   the Tribe is a federally recognized Tribe with all inherent rights of Tribal sovereignty possessing inherent powers of Tribal self-governance and self-determination; and

**WHEREAS,**   pursuant to Article VI, Section 1(o) of the Tribal Constitution, the Tribal Council has the right and ability to create business corporations to stimulate economic growth and jobs for Tribal Members; and

**WHEREAS,**   Tribal Council Resolution No. 370(12) approved the formation and organization of the L.D.F. Business Development Corporation (the "Corporation") and accepted the L.D.F. Business Development Corporation  Articles of Incorporation for filing with the Tribal Secretary pursuant to Tribal law; and

**WHEREAS,**   pursuant to Section 44a.201 of the Tribally Owned Business Organization Ordinance, the Tribal Council is empowered to create subordinate business entities cloaked with sovereign immunity as an arm of the Tribe; now, therefore be it

**RESOLVED,**   by this Council, in Rescheduled Regular Session assembled, hereby approves the creation of LDF Holdings, LLC, Bezhig, LLC, Niizh LLC, Niswi LLC, Niiwin LLC, and Naanan LLC; business entities to be wholly owned by the Corporation for purposes of operating one or more Tribal lending business(es) and any activity directly related to such purpose.

## CERTIFICATION

I, the undersigned, as Secretary of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a tribal government operating under a Constitution adopted pursuant to Section 16 of the Indian Reorganization Act, 25 U.S.C., s. 476, do hereby certify that the Tribal Council of the Band is composed of twelve members, of whom eleven constituting a quorum, were present at a Rescheduled Regular Meeting, duly called, noticed, convened, and held on the 17th Day of December, 2012, and that the foregoing resolution was duly adopted at said meeting by an affirmative vote of ten members, none against, none abstaining, and that the said resolution has not been rescinded or amended in any way.

Elizabeth Diver, Secretary
Lac du Flambeau Band of
Lake Superior Chippewa Indians

Case 19-14142    Doc 84    Filed 08/21/20    Entered 08/21/20 14:14:18    Desc Main
Document    Page 31 of 56

# Exhibit "C"

**ARTICLES OF ORGANIZATION**
**OF THE**
**Niiwin, LLC**

The undersigned, acting as the organizer of a limited liability company pursuant to the powers vested in the Tribal Council, the governing body of the Lac du Flambeau Band of Lake Superior Chippewa Indians, Article VI, Section 1(o) of the Tribal Constitution, and as proscribed by Chapter 44 of the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Code, the Lac du Flambeau Band  of Lake Superior Chippewa  Indians, hereby adopts the following Articles of Organization on January 9, 2013.

**ARTICLE 1 -NAME**

The name of the limited liability company shall be the Niiwin, LLC (the "Company").

**ARTICLE 2 -KNOWN PLACE OF BUSINESS**

The registered office of the limited liability company is 418 Little Pines, PO Box 67, Lac du Flambeau, WI 54538.

**ARTICLE 3- STATUTORY AGENT**

The name and address of the statutory agent of the Company is:
LDF Business Development Corporation
Chief Operating Officer, Brent McFarland
PO Box 67
Lac du Flambeau, WI 54538__

**ARTICLE 4 -PURPOSE**

The Company is being formed to engage in the business of operating one or more Tribal Lending business(es), and in any activities that are directly related to the accomplishment of such purpose which are lawful and consistent with these Articles.

**ARTICLE 5- DISSOLUTION**

The existence of the Company shall be perpetual unless specifically set forth in the Company's Operating Agreement.

**ARTICLE 6- MANAGEMENT**

Management of the limited liability company is vested in a single Manager as appointed or hired by the Member.  This role may also be filled by a management contractor should the Company so desire.  Duties and responsibilities of the Manager shall defined by the Company's Operating Agreement.

**J.A. 287**

**ARTICLE 7- NAME AND ADDRESS OF EACH MANAGER AND MEMBER**

The name and address of each person who is a Manager and Member of the Company is:

Manager:

███████████
███████████
█████████

--

Member:

Lac du Flambeau Business Development Corporation established pursuant to Tribal Council Resolution 370(12) whose offices are located at located at 418 Little Pines Road, PO Box 67, Lac du Flambeau WI 54538.

Dated: _1-9-13_____

Lac du Flambeau Band of Lake
Superior Chippewa Indians

By:_____
Tom Maulson, President

Approved pursuant to Tribal Council Resolution _550_____.

J.A. 288

Case 19-14142    Doc 84    Filed 08/21/20    Entered 08/21/20 14:14:18    Desc Main
Document      Page 34 of 56

# Exhibit "D"

# OPERATING AGREEMENT
### of
### Niiwin, LLC

THIS OPERATING AGREEMENT (this "Agreement") made this 17ᵗʰ day of July, 2013, by and between LDF Holdings, LLC, a wholly owned and operated subsidiary of the Lac du Flambeau Business Development Corporation, a wholly owned and operated instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a federally recognized Indian tribe (hereinafter "Member"), and Niiwin, LLC, a limited liability company (hereinafter "Company") each of which were formed pursuant to Tribal Council resolution and under the jurisdiction and laws of the Lac du Flambeau Band of Lake Superior Chippewa Indians.

### Article I
### Formation, Name Purpose, Definitions

**1.1    Formation.** Pursuant to Resolution No. 550 (12) of the Tribal Council of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Resolution"), the parties have formed a tribal limited liability company effective upon the filing of the Articles of Organization of this Company with the Secretary of the Tribal Council. The parties shall immediately and from time to time hereafter, as may be required by law, execute all amendments of the Articles of Organization, and do all filing, recording and other actions as may be appropriate to comply with the operation of the Company under the Resolution.

**1.2    Intent.** It is the intent of the Member that the Company shall be a manager-managed limited liability company. It shall always be operated in a manner consistent with its treatment as a tribal entity for federal and state law purposes. It is also the intent of the Member that the company shall be treated as a 100% tribally owned and operated company, for federal and state law purposes, including all tax purposes, under the exclusive ownership, control, and jurisdiction of the Lac du Flambeau Band of Lake Superior Chippewa Indians. No Member or Manager shall take any action inconsistent with the express intent of the parties hereto.

**1.3    Name.** The name of this Company shall be:

Niiwin, LLC

**1.4    Registered Office.** The initial registered office of the Company shall be 418 Little Pines, PO Box 221, Lac du Flambeau, WI 54538, within the geographical and jurisdictional boundaries of the Lac du Flambeau Band of Lake Superior Chippewa Indians reservation.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

**1.5    Purpose.** The Company has been formed to engage in the business of operating one or more Tribal Lending business(es), and in any activities that are directly related to the accomplishment of such purpose which are lawful and consistent with the Articles of Organization.

**1.6    Term.** This Company shall commence upon the filing of its Articles of Organization and shall continue until such time as it shall be terminated under the provisions of Article IX hereof.

**1.7    Members.** The names and addresses of each of the sole Member of the Company are:

LDF Holdings LLC
418 Little Pines Road
PO Box 231
Lac du Flambeau WI 54538.

**1.8    Agent for Service of Process.** The name and business address of the agent for service of process for the Company is William R. Beson, Chief Executive Officer- LDF Business Development Corporation, or such other person as the Company shall appoint from time to time.

**1.9    Definitions.** Whenever used in this Agreement, the following terms shall have the following meanings:

(a)    "Agreement" shall mean this written Operating Agreement. No other document or oral agreement shall be treated as part of or superseding this Agreement, unless it is reduced to writing and it has been signed by the Member(s).

(b)    "Articles" shall mean the Articles of Organization filed for the Company pursuant to Tribal Council Resolution 550(12), as such Articles of Organization may be amended from time to time.

(c)    "Business Affairs" shall mean the obligations and responsibilities of the Company pursuant to any and all transaction documents as executed between the Company, Manager, and any relevant third party.

(d)    "Code" shall mean the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Consumer Financial Services Regulatory Code, as may be amended from time to time.

(e)    "Company" shall mean the limited liability company formed pursuant to the Articles and governed by this Agreement.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

2

**J.A. 291**

(f)    "Controller" shall mean the bonded officer of the Company who is responsible for generally supervising the financial affairs and establishing and maintaining the Company accounting system. The Company may hire a third party to conduct this activity.

(g)    "Distributable Cash" shall mean all cash, revenues and funds received from the Company operations, less the sum of the following to the extent paid or set aside by the Member(s):

(1) all principal and interest payments on indebtedness of the Company and all other sums paid to lenders:

(2) all cash expenditures incurred incident to the normal operation of the Company's business; and

(3) such cash Reserves as the Manager deems reasonably necessary to the proper operation of the Company's business.

(h)    "Fiscal Year" shall mean the Company's fiscal year. Which shall be the calendar year.

(i)    "Losses" shall mean, for each Fiscal Year, the losses and deductions of the Company determined in accordance with accounting principles consistently applied from year to year plus any expenditures described in the Internal Revenue Code of 1986, as amended.

(j)    "Manager" shall mean ███████████████████████ ███████ or any persons or person that the Member may otherwise appoint or engage to manage the Company pursuant to the Articles: The Manager shall conduct the business of the Company to the best of the Manager's ability and subject only to those restrictions set forth in the Resolution or this Agreement, shall have full and complete authority, power and discretion to make any and all decisions and to do any and all things which the Manager deems appropriate to accomplish the purpose of the Company. The Manager may also contract with a company or companies to manage the Company, if it so desires.

(k)    "Member" shall mean the Lac du Flambeau Business Development Corporation.

(1)    "Profits" shall mean, for each Fiscal year the income and gains of the Company determined in accordance with accounting principles consistently applied from year to year under the cash basis method of accounting and as reported, separately or in the aggregate, as appropriate, on the Company's information tax return filed for federal income tax purposes plus any income described in the Internal Revenue Code of 1986, as amended.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

3

**J.A. 292**

(m)     "Person" shall mean any individual and any legal entity and their respective heirs, executors, administrators, legal representatives, successors, and assigns.

(n)     "Resolution" shall mean the Resolution No. 550(12), of the Tribal Council of the Lac du Flambeau Band of Lake Superior Chippewa Indians.

## Article II
## Capitalization of the Company

**2.1     Capital Contributions.** The Member has  made contribution of funds of ONE HUNDRED US DOLLARS ($100.00) on behalf of or to the Company.  These contributions shall be considered as equity contributions to the Company in exchange for the Member's 100% ownership of the Company.

**2.2     Additional Capital Contributions.**

(a)     The Member, in its sole discretion, may provide additional Capital Contributions to the capital of the Company based on the Company's obligations as provided in its other transaction documents.

(b)     Prior to the adoption of this Operating Agreement the Member has expended certain funds which may have been expended on behalf of the Company.  This may include, but is not exclusive to attorney fees, consultant fees and other regular expenses of the Company.  The Member shall review past funding of the Member to determine whether these amounts shall also be attributable to the Company as Company expenses. To the extent they are Company expenses they shall also treated as Capital of the Company.

**2.3     Use of Capital Contributions.** All Capital Contributions shall be expended only in furtherance of the business purpose and intent of the Company as set Forth in Sections 1.2 and 1.5.

**2.4     Unauthorized Withdrawals of Capital Contributions.** No Manager shall have the right to withdraw or distribute Capital Contributions except as specifically provided in this Agreement.

**2.5     Third Party Rights.** Nothing contained in this Agreement is intended or will be deemed to benefit any creditor of the Company, nor will any creditor of the Company be entitled to require the Manager to solicit or demand Capital Contributions from the Member. The Company shall not assign the Member's obligation to make Capital Contributions to the Company, if any, to creditors of the Company without the consent of the applicable Member.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

4

**J.A. 293**

## Article III
## Management

**3.1    Management.**

(a)    Once hired or appointed by the Company, the Manager may have the power and authority to do and perform all actions as may be necessary or appropriate to the conduct of the Company's business. Management of the Company's Business Affairs and objectives shall be vested solely in the Manager, except as limited specifically within this Agreement and in Section 3.2.  The power and the authority of the Manager shall be further limited to the Business Affairs.

(b)    Any change in Management shall be immediately reported to the Member.

(c)    Any successor Manager shall be appointed by the Member acting as sole member of the Company.

(d)    The Manager may be removed as Manager, by majority vote of the Member if it is found that the Manager has committed an act constituting willful misconduct, fraud, or gross negligence.

(e)    The Manager shall have strict fiduciary relationship to the Company and Member and shall at all times carry out business of the Company in this capacity.

(f)    The Manager will abide by all requirements of the Code, including reporting requirements.

**3.2    Certain Restrictions on Business Powers.**  While Manager has general and broad authority under Section 3.l (a), the Manager shall require express written consent from the Member, and in some instances its parent corporation the LDF Business Development Corporation, to do the following:

(a)    to borrow pledge, assign, convey, encumber, grant security interest in,  guaranty, or otherwise restrict assets of the Company;

(b)    to sell or otherwise dispose of all or substantially all of the assets of the Company;

(c)    waive the sovereign immunity of the Company which may only be waived in accordance with written consent of the LDF Business Development Corporation ("BDC"), the parent corporation, in accordance with Section 6.05 of the BDC's Article of Incorporation as approved by Tribal Council Resolutions 370(12), 80(13) and 134(13).

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

5

**J.A. 294**

### 3.3    Indemnity of Manager, Officers, Employees and Other Agents

(a)     The Company shall indemnify the Manager and make advances for expenses to the maximum extent permitted under the Code and the Management Agreement.  The Company shall indemnify its officers and employees and make advances for expenses to the maximum extent permitted under the Code.

(b)     (i)     Notwithstanding any other provision of this Agreement, neither the Manager, nor any officer, or employee of the Manager shall be liable to any Member or to the Company with respect to any act performed or neglected to be performed in good faith and in a manner which such Person believed to be necessary or appropriate in connection with the ordinary and proper conduct of the Business or the preservation of its property, and consistent with the provisions of this Agreement.

(ii)     The Company shall indemnify the Manager and its officers, or employees for and hold them harmless from any liability, whether civil or criminal, and any loss, damage, or expense, including reasonable attorneys' fees, incurred in connection with the ordinary and proper conduct of the Business and the preservation of the Business and the Company's property, or by reason of the fact that such Person is or was a Manager, officer, or employee; and that with respect to any criminal action or proceeding, the Person to be indemnified had no reasonable cause to believe the conduct was unlawful. The foregoing indemnification of the Manager and its officers and employees shall extend not only to the activities of the Manager as the manager of the Company, but also to the activities of the Manager and its officers and employees as the manager of any entities owned, directly or indirectly, by the Company.

(iii)     The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent shall not of itself create a presumption that indemnification is not available hereunder.  The Company's obligation to indemnify the Manager, officer, employee, or agent hereunder shall be satisfied out of the assets of the Company and any subsidiary entities of the Company and if the Company's assets are insufficient to satisfy its obligation to indemnify the Manager, such Person shall not be entitled to contribution from any Member or, for the avoidance of doubt, the Lac du Flambeau Band of Lake Superior Chippewa Indians.

(c)     No amendment of this provision for indemnification or advancement of expenses shall have the effect of limiting the rights of any person previously serving as a Manager, officer, employee or agent of the Company to indemnification or advancement of expenses pursuant to this section or in accordance with the Code.

(d)     All expenses, fees and other costs incurred in connection with the provisions of this Section shall constitute operating expenses of the Company.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

6

**3.4     Financial Accounts.**

(a)     Opening and closing of financial institution accounts and disbursement of all Company funds shall require joint approval of the Manager and Controller.

(b)     A financial institution shall be able to rely upon a resolution duly adopted and approved by the Member specifically authorizing the opening, closing, or transacting of business for that specific account or activity.

**3.5     Books and Records.** The Manager, at the expense of the Company shall keep or cause to be kept adequate books and records for the Company, which shall contain an accurate account of all business transactions arising out of and in connection with the conduct of the Company.  The financial books and records of the Company shall be kept in the method of accounting determined by the Manager, which shall be the method of accounting followed by the Company.  Additionally, at the expense of the Company, the Manager shall maintain or cause to be maintained, for a period of not less than three (3) years, the following records at the Company's known place of business:

(a)     Revenues, expenses, assets, liabilities and equity;

(b)     Daily transactions;

(c)     Contracts, correspondence and other transaction documents relating to all vendors of the Company;

(d)     Customer complaints and their disposition;

1.  Enforcement activities pertaining to the Company by the Tribal Lending Regulatory Authority.

2.  All audits prepared by or on behalf of the Company.

(e)     A list of the full name and last known business, residence or mailing address of each Member and Manager of the Company, both past and present;

(f)     A copy of the organizational documents for the Company and all amendments thereto;

(g)     Copies of the Company's currently effective Agreement and all amendments thereto, copies of any prior Agreements no longer in effect, and copies of any writings permitted or required with respect to a Member's obligation to contribute cash, property, or services to the Company;

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

(h)    Minutes of every meeting of the Members; and,

(i)    Any written consents or approvals obtained from Members for actions taken by the Manager.

**3.6    Confidentiality.**  The Company's information and records are confidential and may not be disclosed to any Person except the Member as sole member of the Company, and in accordance with the regulations that may be established by Tribal Consumer Financial Services Regulatory Authority, and/or any other Person authorized by applicable Tribal or federal law or contract to have access to such information and records.

**3.7    Record Inspection.**  The Manager(s) shall be responsible to ensure that the premises, books and records of the Company are available for inspection during normal business hours by the Tribal Lending Regulatory Authority.

**3.8    Salaries.**  The salaries and other compensation of the Manager and other employees of the Company shall be fixed from time-to-time by the Member.

<div align="center">

**Article IV**
**Rights and Obligations of Members**

</div>

**4.1    Limitation of Liability.**  The debts, obligations, and liabilities of the Company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations, and liabilities of the Company, and the Member shall not be obligated for any such debt obligation, or liability of the Company solely by reason of being a Member. Nothing herein shall be construed as a waiver of the Company or Member's Sovereign Immunity.

**4.2    Approval of Sale of All Assets.**  The Members shall have the right, by the affirmative vote of the Tribal Council, to approve the sale, exchange or other disposition of all or substantially all of the Company's assets which is to occur as part of a single transaction or plan.

**4.3    Right to Inspect Company Documents.**  The Member shall have the right and the Manager shall permit, the Member to inspect and copy, at the Member's expense, any and all Company documents, including those required to be maintained pursuant to Section 3.1.

**4.4    All other Rights.**  The Member shall have and reserve all other rights not specifically limited within this Agreement.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

<div align="center">

8

</div>

<div align="center">

**J.A. 297**

</div>

Case: 21-1153     Document: 00117747096     Page: 304     Date Filed: 06/01/2021     Entry ID: 6425224

Case 1:19-cv-01042-JDB-AK    Doc #: 84    Filed: 08/21/20    Entered: 07/05/20 14:18 of Desc Main    PageID 206
Document     Page 43 of 56

### Article V
### Meetings of Member

**5.1     Annual Meeting of Member.**  The Member shall hold an annual meeting as required under Tribal law.

### Article VI
### Profits, Losses; Distributions

**6.1     Allocation of Profits and Losses.**  All profits and losses of the Company will be allocated to the Member.

**6.2     Mandatory Distributions.** There shall at all times remain $500 in the Company's cash accounts.  Whenever the cash account balance exceeds said amount there shall be an immediate Distribution declared and paid unless the liabilities of the Company are in excess of the assets.

**6.3     Loans to Company.**  Nothing in this Operating Agreement shall prevent the Member from making secured or unsecured loans to the Company by agreement with the Company.

**6.4     Accounting Period.**  The Company's accounting period shall be the calendar year.

### Article VII
### Restrictions on Transferability

**7.1     Restrictions on Transferability.** The Company at all times shall be owned exclusively by the Lac du Flambeau Business Development Corporation. No transfer of interest in the Company shall be permitted without the express written consent of the Member.

For purposes of this Article VII "transfer" shall include:

    (a)     Transfers by sale;
    (b)     Transfers by gift;
    (c)     Involuntary transfers, including transfers by operation of law,
    (d)     Any other form of transfer.

Transfers and pledges in breach of the terms of this Article VII shall be void and of no effect.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

<div align="center">

**Article VIII**
**Additional Members**

</div>

8.1    No additional Members shall be permitted.

<div align="center">

**Article IX**
**Dissolution and Termination**

</div>

9.1    **Dissolution.** The Company shall be dissolved upon the occurrence of any of the following events:

      (a)    by the unanimous written agreement of the Member;

      (b)    upon the entry of any decree of dissolution of the Tribe; or

      (c)    upon the issuance of an order of dissolution by a court of competent jurisdiction or by the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Court.

9.2    **Effect of Dissolution.** Upon the dissolution of the Company, the Company shall cease to carry on its business, except insofar as may be necessary for the winding up of its business, but its separate existence shall continue until Articles of Termination have been filed with the Secretary of the Tribe or until a decree dissolving the Company has been entered by a court of competent jurisdiction.

9.3    **Winding Up and Dissolution of** Assets.

      (a)    Upon the dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The Member shall immediately proceed to wind up the affairs of the Company.

      (b)    If the Company is dissolved and its affairs are to be wound up, the Member shall (1) sell or otherwise liquidate all of the Company's assets as promptly as practicable, unless the Member determines to distribute assets in kind, (2) allocate: any profits or loss resulting from such sales to the Member's Capital Accounts, (3) discharge all liabilities of the Company, other than to Member, including all costs relating to the dissolution, 4) establish such reserves as may be reasonably necessary to provide for contingent liabilities of the Company (for purposes of determining the Capital Accounts of the Member, the amounts of such reserves shall be deemed to be an expense of the Company), (5) discharge any liabilities of the Company to the Member other than on account of their interests in Company capital or profits, and (6) distribute the remaining assets in the following order:

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

<div align="center">

10

</div>

(1) If any assets are to be distributed in kind, the net fair market value of such assets as of the date of dissolution shall be determined by appraisal or by agreement of the Member. Such assets shall be deemed to have been sold as of the date of dissolution tor their fair market value.

(2) The positive balance of the Member's Capital Account as determined after taking into account all Capital Account adjustments for the Company's taxable year during which the liquidation occurs, shall be distributed to the Member, either in cash or in kind, with any assets distributed in kind being valued for this purpose at their fair market value.

(c)    Notwithstanding anything to the contrary in this Agreement, upon a liquidation, if any Member has a negative deficit Capital Account balance, such Member shall have no obligation to make any contribution to the capital of the Company, and the negative balance of such Member's Capital Account shall not be considered a debt owed by such Member to the Company or to any other person for any purpose whatsoever.

## Article X
### Licensing

**10.1    License.** The Company shall obtain a duly authorized Consumer Financial Services License, or other licenses as may be required under the Tribal Consumer Financial Services Regulatory Code, before engaging in any Lending activities.

## Article XI
### Miscellaneous Provisions

**11.1    Application of Law.** This Operating Agreement and its application and interpretation shall be governed exclusively by its terms and by the laws of the Lac du Flambeau Band of Lake Superior Chippewa Indians, where applicable.

**11.2    Amendments.** This Agreement may not be amended except by a resolution duly adopted by the Member and express approval of the Tribe.

**11.3    Execution.** The Member hereby agrees to execute such other and further statements of interest and holdings, designations, powers of attorney and other instruments necessary to comply with any law, rules or regulations.

**11.4    Severability.** If any provision of this Operating Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent the remainder of this Operating Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

**11.5    Non-waiver of Sovereign Immunity.**    Nothing in this Operating Agreement shall be construed to be a waiver of the Company, the Member's, or the Tribe's Sovereign Immunity to suit.

**11.6    Creditors.** None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Company.

LDF HOLDINGS, LLC, Member

By: _____

Name: William R. Beson
Title: CEO, LDF Business Development Corp.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

12

**J.A. 301**

Case 19-14142    Doc 84    Filed 08/21/20    Entered 08/21/20 14:14:18    Desc Main
Document    Page 47 of 56



# Exhibit "E"

**PLEASE TAKE A MOMENT TO REVIEW THIS LOAN AGREEMENT CAREFULLY. YOU WILL BE REQUIRED TO ELECTRONICALLY SIGN AND DATE AS YOU DO ELECTRONIC AND DATE THIS PAYMENT CHOICE AUTHORIZATION.**

Document    Page 48 of 56

Loan # 007792727-00

| Agreement Date: 2/12/2015 | Loan #: 007792727-00 |
|---|---|
| **NIIWIN, LLC d/b/a** **Lendgreen** P.O.Box 221 Lac du Flambeau, WI 54538 | Name: May Walker Address: ▮▮▮▮▮ City: ▮▮▮▮ State: FL, Zip: 33770 Phone: (727)776-0045 Email Address: ▮▮▮▮▮l@gmail.com |

In this Loan Agreement (this "Loan Agreement") the words "you" and "your" mean the borrower who has electronically signed it. The words "we", "us" and "our" mean NIIWIN, LLC d/b/a Lendgreen. We are an economic development arm of, instrumentality of, and a limited liability company wholly-owned and controlled by, the Lac du Flambeau Band of Lake Superior Chippewa Indians of Wisconsin (the "Tribe").

We cannot commit to make a loan to you unless your completed application is approved by our underwriting department, located on the Tribe's Reservation.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. 838.85% | FINANCE CHARGE The dollar amount the credit will cost you. $4,290.00 | Amount Financed The amount of credit provided to you or on your behalf. $500.00 | Total of Payments The amount you will have paid after you have made all payments as scheduled. $4,790.00 |
|---|---|---|---|

**Your Payment Schedule will be:**

| Number of Payments | Amount of Payment | When Payment is Due |
|---|---|---|
| 1 | $150.00 | 2/27/2015 |
| 1 | $150.00 | 3/13/2015 |
| 1 | $150.00 | 3/27/2015 |
| 1 | $150.00 | 4/10/2015 |
| 1 | $160.00 | 4/24/2015 |
| 1 | $157.00 | 5/8/2015 |
| 1 | $154.00 | 5/22/2015 |
| 1 | $151.00 | 6/5/2015 |
| 1 | $148.00 | 6/19/2015 |
| 1 | $145.00 | 7/6/2015 |
| 1 | $142.00 | 7/17/2015 |
| 1 | $139.00 | 7/31/2015 |
| 1 | $136.00 | 8/14/2015 |
| 1 | $133.00 | 8/28/2015 |
| 1 | $130.00 | 9/11/2015 |
| 1 | $127.00 | 9/25/2015 |

**J.A. 303**

| | | |
|---|---|---|
| 1 | $124.00 | 10/9/2015 |
| 1 | $121.00 | 10/23/2015 |
| 1 | $118.00 | 11/6/2015 |
| 1 | $115.00 | 11/20/2015 |
| 1 | $112.00 | 12/4/2015 |
| 1 | $109.00 | 12/18/2015 |
| 1 | $106.00 | 1/4/2016 |
| 1 | $103.00 | 1/15/2016 |
| 1 | $100.00 | 1/29/2016 |
| 1 | $97.00 | 2/12/2016 |
| 1 | $94.00 | 2/26/2016 |
| 1 | $91.00 | 3/11/2016 |
| 1 | $88.00 | 3/25/2016 |
| 1 | $85.00 | 4/8/2016 |
| 1 | $82.00 | 4/22/2016 |
| 1 | $79.00 | 5/6/2016 |
| 1 | $76.00 | 5/20/2016 |
| 1 | $73.00 | 6/3/2016 |
| 1 | $70.00 | 6/17/2016 |
| 1 | $67.00 | 7/1/2016 |
| 1 | $64.00 | 7/15/2016 |
| 1 | $61.00 | 7/29/2016 |
| 1 | $58.00 | 8/12/2016 |
| 1 | $55.00 | 8/26/2016 |
| 1 | $52.00 | 9/9/2016 |
| 1 | $49.00 | 9/23/2016 |
| 1 | $46.00 | 10/7/2016 |
| 1 | $43.00 | 10/21/2016 |
| 1 | $130.00 | 11/4/2016 |

**Late Charge:** If a payment is 5 days or more late, you will be charged $30.

**Prepayment:** If you pay off early, you may be entitled to a refund of part of the finance charge.

See the terms of the Loan Agreement below for any additional information about nonpayment, default, and prepayment refunds.

ITEMIZATION OF AMOUNT FINANCED: Amount Financed/Amount given to you directly $500.00

### SPECIAL NOTICES:

* **YOUR LOAN IS AN EXPENSIVE FORM OF BORROWING.**
* **YOU CAN SAVE FINANCE CHARGES BY PAYING OFF YOUR LOAN EARLY EITHER IN PART OR IN FULL.**
* **YOUR LOAN IS DESIGNED TO ASSIST YOU IN MEETING YOUR SHORT-TERM CASH NEEDS. IT IS NOT A SOLUTION FOR LONGER TERM FINANCIAL PROBLEMS.**
* **NON-PROFIT CREDIT COUNSELING SERVICES ARE AVAILABLE IN YOUR COMMUNITY FOR CONSUMERS EXPERIENCING FINANCIAL PROBLEMS.**

**J.A. 304**

**YOUR PROMISE TO PAY:** You promise to pay us the amount financed plus finance charges according to the payment schedule in the Truth in Lending Disclosures plus all other amounts owed to us under this Loan Agreement. You agree that your finance charges will be calculated at the Annual Percentage Rate in the Truth in Lending Disclosures. You will pay us as you choose in your Payment Choice Authorization. All payments will be applied first to finance charges and fees due and then to principal. If you prepay all or part of the principal amount due on your loan, your finance charges on the amount prepaid will be calculated as of the date the payment is made.

**DISBURSEMENT:** If your Loan is approved, we will process disbursement of your loan proceeds within 1 business days of the day your loan is approved. A business day is a regular work day and does not include Saturday, Sunday or holidays. You authorize us to use commercially reasonable efforts to initiate a credit entry by depositing the proceeds of your loan into Your Bank Account described in your Disbursement and Payment Choice Authorization. The date that your loan proceeds are deposited to Your Bank Account is the "Disbursement Date". Unavoidable delays as a result of bank holidays, the processing schedule of your individual bank, inadvertent processing errors, acts of god", or "acts of terror" may extend the time for the deposit.

**CANCELLATION:** You may cancel your payment obligations under this Loan Agreement, without cost or finance charges, no later than 3:00 p.m. Mountain time of the next business day immediately following the Disbursement Date ("Cancellation Deadline"). Your right to cancel your loan only applies if your loan either hasn't funded or, if it has, the funds are returned to us as explained below. To cancel your payment obligations on this loan, you must inform us **in writing**, by or before the Cancellation Deadline, either by email to customercare@lendgreen.com or by fax at 1-888-875-8801 that you want to cancel the future payment obligations on this loan. If we timely receive your written notice of cancellation on or before the Cancellation Deadline but **before** the loan proceeds have been deposited into Your Bank Account, then we will not debit Your Bank Account and both your and our obligations under this Loan Agreement will be rescinded. However, if we timely receive your written notice of cancellation on or before the Cancellation Deadline but **after** the loan proceeds have been deposited into Your Bank Account, then you authorize us to effect a debit to Your Bank Account or your debit card as you chose in your Payment Choice Authorization for the principal amount of this Loan Agreement. If we receive payment of the principal amount via the debit, then both your and our obligations under this Loan Agreement will be rescinded. If we do not receive payment of the principal amount by debit to Your Bank Account or your debit card, then this Loan Agreement will remain in full force and effect.

**ASSIGNMENT:** This Loan Agreement may not be assigned by you. We may assign or transfer this Loan Agreement and our related rights and obligations without notice to you and your consent is not required if we make such an assignment or transfer.

**DEFAULT:** You will be in default under this Agreement if you do not pay us a scheduled payment or any other amounts you owe us when due or your chosen payment method is stopped, denied or otherwise dishonored by your bank or other third party. If you default on your loan, we can choose to declare all principal, finance charges and other amounts that you owe us to be immediately due and payable in full. If you are in default and you authorized debits from either Your Bank Account or your debit card in your Payment Choice Authorization, you agree that we can debit Your Bank Account or debit card, as applicable, for the full amount that you owe us. Additionally, if you do not cooperate with us on repaying your debt to us we may submit your name to a collection agency and we may also report the incident to a consumer reporting agency database. This may negatively impact your ability to write checks or to receive loans or advances from other companies.

**LATE CHARGE:** You agree to pay a late charge of $30 if a payment is 5 days or more late. If you authorized debits from either Your Bank Account or debit card in your Payment Choice Authorization, you agree that we may debit your Bank Account or debit card, as applicable, for any accrued late charges.

**REFUSED INSTRUMENT CHARGE:** If your payment method is stopped, denied or otherwise dishonored, by your bank or other third party, then you agree to pay us a fee of $30. If you authorized debits from either Your Bank Account or debit card in your Payment Choice Authorization, you agree that we may debit your Bank Account or debit card, as applicable, for any refused instrument charges. Your refused instrument may also cause your payment to be late which could result in your having to also pay a late charge.

**CONSUMER REPORTS:** You authorize us to obtain consumer reports about you now or in the future as long as you owe us money under this Loan Agreement.

**GOVERNING LAW:** The laws of the Tribe will govern this Loan Agreement, without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state. You agree to be bound by Tribal law, and in the event of a bona fide dispute between you and us, Tribal law shall exclusively apply to such dispute.

## J.A. 305

Case: 21-1153    Document: 00117747096    Page: 312    Date Filed: 06/01/2021    Entry ID: 6425224

**SOVEREIGN IMMUNITY:** This Loan Agreement and all related documents are being submitted by you to us as an economic arm, instrumentality, and limited liability company of the Lac du Flambeau band of Lake Superior American Indian Tribe and enjoys governmental sovereign immunity. Because we and the Tribe are entitled to sovereign immunity, you will be limited as to what claims, if any, you may be able to assert against the Tribe and us. To encourage resolution of consumer complaints, any complaint may be submitted by you or on your behalf to the Tribe for review as described below.

**PRESERVATION OF SOVEREIGN IMMUNITY:** It is the express intention of the Tribe and us operating as an economic arm of the Tribe, to fully preserve, and not waive either in whole or in part, exclusive jurisdiction, sovereign governmental immunity, and any other rights, titles, privileges, and immunities, to which we and the Tribe are entitled. To protect and preserve the rights of the parties, no person may assume a waiver of sovereign immunity. No waiver is or can be made except by express written declaration of the Tribe's Tribal Council specifically authorizing a waiver for the matter in question. No such waiver has been made with respect to either your Loan Agreement or your Payment Choice Authorization.

**TRIBAL HOTLINE:** If you have already contacted Customer Service in an attempt to resolve an issue or concern and still need additional assistance, please contact the Lac du Flambeau Tribal Hotline at 1-844-388-0500 between the hours of 9am and 5pm Central time or email any time at customerservice@ldfcallcenter.com.

**TRIBAL DISPUTE RESOLUTION PROCEDURE PROVISION**

As an accommodation to consumers and pursuant to Tribal law, the Tribe has established the following Tribal Dispute Resolution Procedure to receive, review, and consider any and all types of complaints made by or on behalf of our consumers. A consumer who, in the course of his or her otherwise lawful and proper use of our business, has concerns about the operation of any part of us or who otherwise believes himself or herself to be aggrieved by some aspect of any part of our operation shall direct his or her concerns in the first instance to our management, in writing at customercare@lendgreen.com or by fax at 1-888-875-8801. A person's complaint to us shall be considered similar in nature to a petition for redress submitted to a sovereign government, without waiver of sovereign immunity and exclusive jurisdiction, and does not create any binding procedural or substantive rights. In the event that the consumer is dissatisfied with our initial determination, then he or she may request review of our initial determination by submitting such request in writing to the Lac du Flambeau band of Lake Superior Chippewa Indians Tribal Consumer Financial Services Regulatory Authority, re: Tribal Financial Services Dispute Resolution, P.O. Box 155, Lac du Flambeau, WI 54538 no later than ten (10) days after receiving our initial determination, which shall be delivered in writing. Any determination by the Tribe by its designated officials, whether procedural or substantive, shall be made by the Tribe in its sovereign discretion. A complainant may appeal a Tribal Consumer Financial Services Regulatory Authority opinion by filing a written appeal to the Tribal Court within twenty (20) days of receiving the Tribal Consumer Financial Services Regulatory Authority's final written decision in accordance with current rules of court and procedure of the Lac du Flambeau Tribal Court.

**THIS DISPUTE RESOLUTION OPPORTUNITY WITH THE TRIBAL CONSUMER FINANCIAL SERVICES REGULATORY AUTHORITY AND TRIBAL COURT CHARGED WITH OVERSEEING OUR CONDUCT IS INTENDED AS THE SOLE DISPUTE RESOLUTION MECHANISM FOR DISPUTES AND CLAIMS ARISING UNDER THIS LOAN AGREEMENT. THIS MEANS THAT YOU ARE EFFECTIVELY WAIVING YOUR RIGHT TO A JURY TRIAL.**

The words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to this Tribal Dispute Resolution Provision, (this Provision), the validity and scope of this Provision and any claim or attempt to set aside this Provision; (b) all U.S. state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement, the information you gave us before entering into this Loan Agreement, including the customer information application, and/or any past Loan Agreement or Agreements between you and us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against the Tribe, us and/or any of our employees, agents, directors, officers, governors, managers, members, parent company or affiliated entities (collectively, "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties ("Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

All disputes including any Representative Claims against shall be resolved by the Tribal Dispute Resolution Procedure in this Provision only on an individual basis with you. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their dispute and setting forth the subject of the dispute along with the relief requested.

This Provision is binding upon and benefits you, your respective heirs, successors and assigns. This Provision is binding

**J.A. 306**

upon and benefits the Tribe, us, and our successors and assigns. This Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. This Provision survives any cancellation, termination, amendment, expiration of performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.

**THIS TRIBAL DISPUTE RESOLUTION PROCEDURE PROVISION MEANS THAT:**

\* **YOUR RIGHT TO FILE SUIT AGAINST US FOR ANY CLAIM OR DISPUTE REGARDING THIS LOAN AGREEMENT IS LIMITED BY THIS PROVISION AND SOVEREIGN IMMUNITY.**
\* **YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES.**
\* **YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT OTHER THAN THE TRIBAL COURT IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROCEDURE, TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; AND**
\* **YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT OR ARBITRATION FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

## CONSENT TO ELECTRONIC COMMUNICATIONS

\* The following terms and conditions govern electronic communications in connection with this Loan Agreement and the transaction evidenced hereby (this Consent). By electronically signing this Loan Agreement by clicking the "I AGREE" button and entering your name below, you are confirming that you have agreed to the terms and conditions of this Consent and that you have the ability to download or print a copy of this Consent for your records. You agree that:

\* Any disclosure, notice, record or other type of information that is provided to you in connection with your transaction with us, including but not limited to, this Loan Agreement, this Consent, disclosures, change-in-term notices, fee and transaction information, statements, delayed disbursement letters, notices of adverse action, and transaction information (collectively, Communications), may be sent to you electronically by sending it to you by e-mail or by posting the information at our web site, www.lendgreen.com.

\* We will not be obligated to provide any Communication to you in paper form unless you specifically request us to do so.

\* You may obtain a copy of any Communication by contacting us at www.lendgreen.com writing to us at customercare@lendgreen.com, or by calling us at 1-855-832-7227. You also can withdraw your consent to ongoing electronic communications in the same manner, and ask that they be sent to you in paper or non-electronic form. If you choose to receive Communications in paper or non-electronic form, we may elect to terminate this Loan Agreement and demand payment of the amount then due by the date of your withdrawal of consent; or by the expiration of any minimum term mandated by law, whichever is later.

\* You agree to provide us with your current e-mail address for notices at the address or phone number indicated above. If your e-mail address changes, you must send us a notice of the new address by writing to us or sending us an e-mail, using secure messaging, at least 5 days before the change.

\* In order to receive electronic communications in connection with this transaction, you will need a working connection to the Internet. Your browser must support the Secure Sockets Layer (SSL) protocol. SSL provides a secure channel to send and receive data over the Internet. Microsoft Internet Explorer 6 or equivalent browser and above supports this feature. You will also need either a printer connected to your computer to print disclosures/notices or sufficient hard drive space available to save the information (e.g., 1 megabyte or more). You must have your own Internet service provider. We may amend (add to, delete or change) the terms of this Consent to electronic communication by providing you with advance notice.

## CONSENT TO RECEIVE TEXT MESSAGES

\* As used in this text consent, "Text Message" means any text messaging communication from us to you pertaining to your loan, including but not limited to payment information, account information, due dates, delinquent accounts, and program updates relating to your loan, but excluding advertising or telemarketing Text Messages. All Text Messages from us in electronic format to you will be considered "in writing."

\* How To Unsubscribe: You may withdraw your consent to receive Text Messages by calling us at 1-855-832-7227 or emailing us at customercare@lendgreen.com. At our option, we may treat your provision of an invalid mobile phone number, or the subsequent malfunction of a previously valid mobile phone number, as a withdrawal of your consent to receive Text Messages. We will not impose any fee upon you to process the withdrawal of your consent to receive Text

**J.A. 307**

Messages. Any withdrawal of your consent to use Text Messages will be effective only after we have a reasonable period of time to process your withdrawal.

Case 19-14142   Doc 84   Filed 08/21/20   Entered 08/21/20 14:13:18   Desc Main
Document      Page 53 of 56

* In order to access, view, and retain Text Messages that we make available to you, you must have: (1) a Text Message-capable mobile phone, (2) an active mobile phone account with a communication service provider; and (3) sufficient storage capacity on your mobile phone.

* To request additional information, contact us by telephone at 1-855-832-7227.

* The services are available from most of the carriers that offer Text Messaging. Consult your mobile service carrier to confirm that they offer Text Messaging.

* There is no service fee for Text Messages but you are responsible for all charges imposed by your communications service provider, such as fees associated with Text Messaging. Consult your mobile service carrier's pricing plan to determine the charges for sending and receiving Text Messages. These charges will appear on your phone bill. Message frequency depends on account settings.

* You agree that we may send any Text Messages related to your loan through your communication service provider in order to deliver them to you and that your communication service provider is acting as your agent in this capacity. You agree to indemnify, defend and hold us harmless from and against all claims, losses, liability, cost and expenses (including reasonable attorneys' fees) arising from your provision of a mobile phone number that is not your own or your violation of applicable federal, state or local law, regulation or ordinance relating to Text Messages. Your obligation under this paragraph shall survive termination of this Loan Agreement. You agree that Text Messages are provided for your convenience only.

* Receipt of each Text Message may be delayed or impacted by factors pertaining to your communications service provider. We will not be liable for losses or damages arising from any disclosure of account information to third parties, non-delivery, delayed delivery, misdirected delivery or mishandling of, or inaccurate content in, the Text Messages sent by us.

* We may modify or terminate our Text Messaging services from time to time, for any reason, with or without notice, and without liability to you, any other user or third party.

### CONSENT TO RECEIVE ADVERTISING OR TELEMARKETING TEXT MESSAGES AND TELEPHONE CALLS

By signing this section, you consent to our sending you advertising and telemarketing Text Messages to the mobile phone number you have provided below. You also consent to our making advertising or telemarketing calls to you at your mobile phone number using automatic telephone dialing system or an artificial or prerecorded voice.

Signing this section will be deemed to be your signature acknowledging your consent to receive advertising and telemarketing Text Messages and telephone calls as described above to your mobile phone at (727)776-0045.

**You are not required to consent to advertising or telemarketing Text Messages or calls to obtain credit or other services from us.** At any time, you may withdraw your consent to receive advertising or marketing Text Messages or marketing calls to the mobile number provided by calling us at 1-855-832-7227 or emailing us at customercare@lendgreen.com.

You understand that: any Text Messages we send you may be accessed by anyone with access to your Text Messages; and your mobile phone service provider may charge you fees for Text Messages that we send you, and you agree that we shall have no liability for the cost of any Text Messages.

### SIGNATURE AND ACCEPTANCE OF ALL TERMS AND CONDITIONS

**BY ENTERING YOUR NAME AND CLICKING THE "I AGREE" BUTTON BELOW, YOU ARE ELECTRONICALLY SIGNING THIS LOAN AGREEMENT AND AGREEING TO ALL THE TERMS OF THIS LOAN AGREEMENT INCLUDING:**

**\*THE TRIBAL DISPUTE RESOLUTION PROCEDURES PROVISION
\*THE CONSENT TO ELECTRONIC COMMUNICATIONS
\*THE CONSENT TO RECEIVE TEXT MESSAGES**

**YOU ALSO ACKNOWLEDGE YOUR ABILITY TO DOWNLOAD OR PRINT A FULLY COMPLETED COPY OF THIS LOAN AGREEMENT FOR YOUR RECORDS.**

**[I AGREE]
DATE: 2/12/2015
May Walker**

| DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION for NIIWIN, LLC d/b/a/ Lendgreen | Loan #: 007792727-00 |
| --- | --- |
| REVIEW VERY CAREFULLY BEFORE EXECUTING THE LOAN AGREEMENT | |

### DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION

## J.A. 308

By electronically signing this Disbursement and Payment Choice Authorization below, you voluntarily authorize us to initiate Case 1:19-cv-01400-DJC-JGD Document 98-2 Filed 03/31/20 Page 54 of 95 Disbursement and Payment Choice Authorization is a part of and relates to the Loan Agreement dated 02/13/2015 (the "Loan Agreement"). The words "you" and "your" mean the borrower who has electronically signed this Disbursement and Payment Choice Authorization. The words "we", "us" and "our" mean NIIWIN, LLC d/b/a/ Lendgreen and our successors and assigns.

Disbursements to Your Bank Account. Unless otherwise agreed, disbursement credits of your loan proceeds will be made to the following bank account ("Your Bank Account")

| Bank Name: | ███████ |
|---|---|
| Transit ABA Number: | ███████ |
| Deposit Account Number: | ███████ |

We will make these disbursement credits by using any commercially available method we choose, such as (but not limited to) Automated Clearing House (ACH) entries, wire transfers, or transactions through your debit card accessing Your Bank Account. As a data security measure, you will separately provide us with your debit card information.

**Your Payment Choice (check applicable box):**

  ⊙ Automatic Payment    ○ Payments you will make directly
    from your Bank Account    by Cashier's Check or Money Order

| | |
|---|---|
| You authorize us to process payment debit entries out of Your Bank Account by using any commercially available methods we choose, such as (but not limited to) ACH entries, "remote checks" or transactions through your debit card accessing Your Bank Account. You specifically authorize us to use any of these methods to process debit entries from Your Bank Account for your scheduled payments in your payment schedule below plus any late charges and returned payment fees.<br><br>If you are in default, you authorize us to process one or more debit entries to pay all principal, finance charges and other amounts due to us as provided in the Loan Agreement. You authorize us to re-process debit entries for the same amounts if any attempted payment transaction is dishonored. We will provide you with 10 days notice prior to processing a debit entry that is larger than the scheduled payment detailed above. | You agree to make your scheduled payments in your payment schedule below by cashier's check or money order, that we receive no later than your payment due date to:<br><br>**NIIWIN, LLC d/b/a**<br>**Lendgreen**<br>**P.O.Box 221**<br>**Lac du Flambeau, WI 54538** |

| Number of Payments | Amount of Payment | When Payment is Due |
|---|---|---|
| 1 | $150.00 | 2/27/2015 |
| 1 | $150.00 | 3/13/2015 |
| 1 | $150.00 | 3/27/2015 |
| 1 | $150.00 | 4/10/2015 |
| 1 | $160.00 | 4/24/2015 |
| 1 | $157.00 | 5/8/2015 |
| 1 | $154.00 | 5/22/2015 |
| 1 | $151.00 | 6/5/2015 |

**J.A. 309**

| 1 | $148.00 | 6/19/2015 |
| 1 | $145.00 | 7/3/2015 |
| 1 | $142.00 | 7/17/2015 |
| 1 | $139.00 | 7/31/2015 |
| 1 | $136.00 | 8/14/2015 |
| 1 | $133.00 | 8/28/2015 |
| 1 | $130.00 | 9/11/2015 |
| 1 | $127.00 | 9/25/2015 |
| 1 | $124.00 | 10/9/2015 |
| 1 | $121.00 | 10/23/2015 |
| 1 | $118.00 | 11/6/2015 |
| 1 | $115.00 | 11/20/2015 |
| 1 | $112.00 | 12/4/2015 |
| 1 | $109.00 | 12/18/2015 |
| 1 | $106.00 | 1/4/2016 |
| 1 | $103.00 | 1/15/2016 |
| 1 | $100.00 | 1/29/2016 |
| 1 | $97.00 | 2/12/2016 |
| 1 | $94.00 | 2/26/2016 |
| 1 | $91.00 | 3/11/2016 |
| 1 | $88.00 | 3/25/2016 |
| 1 | $85.00 | 4/8/2016 |
| 1 | $82.00 | 4/22/2016 |
| 1 | $79.00 | 5/6/2016 |
| 1 | $76.00 | 5/20/2016 |
| 1 | $73.00 | 6/3/2016 |
| 1 | $70.00 | 6/17/2016 |
| 1 | $67.00 | 7/1/2016 |
| 1 | $64.00 | 7/15/2016 |
| 1 | $61.00 | 7/29/2016 |
| 1 | $58.00 | 8/12/2016 |
| 1 | $55.00 | 8/26/2016 |
| 1 | $52.00 | 9/9/2016 |
| 1 | $49.00 | 9/23/2016 |
| 1 | $46.00 | 10/7/2016 |
| 1 | $43.00 | 10/21/2016 |
| 1 | $130.00 | 11/4/2016 |

You agree that this Disbursement and Payment Choice Authorization will remain in effect until your loan, including principal, finance charges and other charges, is paid in full. However, if you chose automatic payments, you may revoke your authorization at any time by contacting us directly at 1-855-832-7227 or customercare@lendgreen.com. If you revoke your authorization, then you agree to make payments directly to us as explained above.

**BY TYPING YOUR NAME AND CLICKING THE "I AGREE" BUTTON BELOW, YOU ARE ELECTRONICALLY SIGNING THIS DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION AND AGREEING TO ALL THE TERMS OF THIS AUTHORIZATION.**

**YOU ALSO ACKNOWLEDGE YOUR ABILITY TO DOWNLOAD OR PRINT A FULLY COMPLETED COPY OF THIS DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION FOR YOUR RECORDS.**

**J.A. 310**

**[I AGREE]**
Date: 2/12/2015
Case 3:19-cv-01402-JDW-BAS   Doc 84   Filed 08/21/201   Entered 07/06/21 04:13:18   Desc Main
96.254.154.245
Document   Page 56 of 56

May Walker

# PRIVACY POLICY

Rev. November 2012

| FACTS | WHAT DOES NIIWIN, LLC DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| | |
|---|---|
| Why? | Financial companies choose how they share your personal information. Consumers have the right to limit some but not all sharing. This notice tells you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>* Social Security number and checking account information<br>* Payment history and loan amounts<br>* Employment information and wire transfer instructions |
| How? | All financial companies need to share customers personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers personal information; the reason NIIWIN, LLC chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Lendgreen share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes - such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus. | YES | NO |
| For our marketing purposes to offer our products and services to you | YES | NO |
| For joint marketing with other financial companies | NO | WE DO NOT SHARE |
| For our affiliates' everyday business purposes information about your transactions and experiences | YES | NO |
| For our affiliates' everyday business purposes information about your creditworthiness | YES | YES |
| For our affiliates to market to you | YES | YES |
| For nonaffiliates to market to you | YES | YES |

| | |
|---|---|
| To limit our sharing | * Call 855-832-7227 our menu will prompt you through your choices or<br>* Visit us on the web at www.Lendgreen.com<br>* Contact us via email at customercare@lendgreen.com<br>Please note:<br>If you are a new customer, we can begin sharing your information 30 days from the date we sent this notice. When you are no longer our customer, we can share your information as described in this notice.<br>However, you can contact us at any time to limit our sharing. |
| Questions? | Call 1-855-832-7227 or go to www.Lendgreen.com |

| Who we are: | |
|---|---|
| Who is providing this notice? | NIIWIN, LLC d/b/a/, a business entity of the Lac du Flambeau Band of Lake Superior Chippewa Indians, is providing this privacy policy. |

| What we do: | |
|---|---|
| How does Lendgreen protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures. These measures include computer safeguards and secured files and buildings. |
| How does Lendgreen collect my personal information? | We collect your personal information, for example, when you<br>* Apply for a loan<br>* Give us your income information<br>* Tell us where to send the money<br>* Provide account information<br>* Provide employment information<br>We also collect your personal information from others, such as credit bureaus, affiliates or other companies. |
| Why can't I limit all sharing? | You have the right to limit only<br>* sharing for affiliates' everyday business purposes - information about your creditworthiness<br>* affiliates from using your information to market to you<br>* sharing for nonaffiliates to market to you |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account. |

| Definitions: | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>* *Our affiliates include other business entities of the Lac du Flambeau Band of Lake Superior Chippewa Indians.* |

<div align="center">

**J.A. 311**

</div>

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT MASSACHUSETTS
### (Eastern Division)

|  |  |
|---|---|
| In re: | Chapter 13 |
| BRIAN W. COUGHLIN, | Case No. 19-14142-FJB |
| Debtor. |  |

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### Introduction

Faced with insurmountable deficiencies in his claim against the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe"), Brian Coughlin tries to draw in new allegations and over 30 pages extrinsic documents and tries to add a claim. And for good measure, he asks this Court to disregard the U.S. Supreme Court's decades-old heightened standard for abrogation of tribal sovereign immunity. The Tribe respectfully asks the Court to reject Coughlin's procedural and legal errors.

### Argument

**I.  Coughlin's allegations do not support any claim against the Tribe.**

**A.  Coughlin cannot supplement his allegations and introduce over 30 pages of extrinsic documents on a motion to dismiss for failure to state a claim.**

When reviewing a motion to dismiss for failure to state a claim, a court may "consider the complaint, documents annexed to it, and other materials fairly incorporated within it. This sometimes includes documents referred to in the complaint but not annexed to it. Finally, the jurisprudence of Rule 12(b)(6) permits courts to

**J.A. 312**

consider matters that are susceptible to judicial notice." *Rodi v. Southern New England School of Law*, 389 F.3d 5, 12 (1st Cir. 2004) (citations omitted). But notably, while a court "may take judicial notice of court records and judicial proceedings . . . , it may not do so in order to discern the truth of the facts asserted within that filing." *Giardiello v. Marcus, Errico, Emmer & Brooks, P.C.*, 261 F. Supp. 3d 86, 89-90 (D. Mass. 2017).

Coughlin's sole allegation against the Tribe is that it wholly owns and operates the LDF Business Development Corporation, and his sole claim is for a direct violation of the automatic stay. ¶¶ 3, 12-17. But now Coughlin asks the Court to consider a host of new allegations about the nature of the relationship between the Tribe and the tribal entities, as well as raise a new claim against it. *See generally* Resp. Br. Moreover, Coughlin asks the Court to consider the *substance* of over 30 pages of documents that he did not mention in his original allegations and that are from a four-year-old case. The Court should not consider these new allegations, documents, and claim.

**B. Coughlin's new allegations do not support his original or new claims.**

On response to the Tribe's motion to dismiss, Coughlin asks the Court to draw the monumental conclusion that because the Tribe's sovereign immunity is shared by the tribal entities, it is *per se* not entitled to recognition of the corporate separateness of those entities. Coughlin cites zero authority that supports this proposition. Indeed, *Ninigret Development v. Narragansetts Indian Wetuomuck Housing Authority*, 207 F.3d 21, 29 (1st Cir. 2000), the only case relied on by Coughlin, says nothing about the corporate separateness of tribal entities. It merely says that the Court "shall not distinguish

2

**J.A. 313**

between the Tribe and the Authority *in discussing concepts such as tribal sovereign immunity and tribal exhaustion*." *Id.* at 29 (emphasis added).

As the Tribe previously explained, "[a] basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). "Corporate owners are allowed to avoid liability beyond the extent of their investment because of the fiction that the corporation is a separate entity." *In re Indus. Comm. Elec., Inc.*, 319 B.R. 35, 49 (D. Mass. 2004). It is "[o]nly in rare instances, in order to prevent gross inequity," that courts "will look beyond the corporate form." *In re Indus. Comm. Elec., Inc.*, 319 B.R. 35, 49 (D. Mass. 2005). Coughlin has not identified the elements or alleged facts to look beyond the corporate form of *all three tribal entities* or explained why doing so is necessary to prevent gross inequity.

Though not clearly laid out, Coughlin also appears to introduce a new claim for vicarious liability. Again, Coughlin has not identified the elements necessary to establish vicarious liability, nor has he alleged facts to support a claim under that theory. Instead, he makes a passing reference to it and cites *In re Ramirez*, No. 13-3067, 2014 WL 2522148 (S.D. Tex. June 4, 2014), an unpublished decision in a case that has absolutely no applicability to the facts of this case. The Court should not entertain this eleventh-hour, undeveloped, and unpled claim for relief against the Tribe.

## II. The Bankruptcy Code does not abrogate tribal sovereign immunity.

Coughlin asks this Court to *deduce* that Congress abrogated tribal sovereign immunity under Section 106(a) and 101(27). Resp. Br. at 6-9. Coughlin misses the mark.

3

**J.A. 314**

"Among the core aspects of sovereignty that tribes possess . . . is the common-law immunity from suit traditionally enjoyed by sovereign powers." *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788 (2014) (quotation omitted). "That immunity . . . is a necessary corollary to Indian sovereignty and self-governance." *Id.* (quotation omitted). And while that aspect of tribal self-governance, like others, is subject to Congress's plenary authority, there remains "an enduring principle of Indian law" that "courts will not lightly assume that Congress in fact intends to undermine Indian self-government." *Id.* at 790.

To that end, when faced with the question of whether Congress has abrogated tribal sovereign immunity, the U.S. Supreme Court has long required that Congress "unequivocally express that purpose." *Id.* (quotations omitted). *That* is the "rule of construction" that the U.S. Supreme Court requires this Court to apply. *Id.* And that rule accords with the generations-old Indian law canon of construction: "Ambiguities in federal law [are] construed generously in order to comport with . . . traditional notions of sovereignty and with the federal policy of encouraging tribal independence." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980).

Coughlin refers to *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055 (9th Cir. 2004), as the "seminal appellate case" on whether Sections 101(27) and 106(a) abrogate tribal sovereign immunity. That is an odd characterization, considering that every circuit court to review *Krystal Energy* has outright rejected it, including the Sixth, Seventh, and the Eighth Circuits. *In re Greektown Holdings, LLC*, 917 F.3d 451 (6th Cir.

2019); *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 824 (7th Cir. 2016); *In re Whitaker*, 474 B.R. 687 (8th Cir. 2012). Even the Tenth Circuit has stated that Section 106 "probably does not apply to . . . an Indian nation." *In re Mayes*, 294 B.R. 145, 148 n.10 (10th Cir. 2003). And numerous bankruptcy courts outside of these circuits have agreed with these circuit courts. *See, e.g., In re Money Center of America, Inc.*, 565 B.R. 87, 103 (D. Del. 2017); *In re Star Group Communications, Inc.*, 568 B.R. 616, 624-25 (D.N.J. 2016). This Court should not be deceived. *Krystal Energy* is an outlier, not a leader. And it remains a serious deviation from U.S. Supreme Court precedent.

Coughlin's reliance on *Narragansett Indian Tribe v. Rhode Island*, 449 F.3d 16 (1st Cir. 2000), and *Ninegret Development v. Narragansett Indian Wetuomuck Housing Authority*, 207 F.3d 21 (1st Cir. 2000), serves his position no better. Neither of those cases involve the question of whether a federal statute that makes absolutely no reference to Indian tribes or even hints at its application to Indian tribes evidences Congress's unequivocal purpose to abrogate tribal sovereign immunity. Those cases do not in any way suggest that the First Circuit will break from U.S. Supreme Court precedent.

Because Sections 101(27) and 106(a) do not evince Congress's unequivocal purpose to abrogate tribal sovereign immunity, the Tribe's immunity remains a bar to Coughlin's claims against it.

### Conclusion

The Tribe respectfully asks the Court to disregard Coughlin's new allegations, new claim, and erroneous application of the law, and to dismiss the claim against it.

Dated: September 4, 2020                    Respectfully submitted,

                                            __/s/ *Adrienne K. Walker*_____
                                            Adrienne K. Walker, Esq.
                                            Aaron M. Williams, Esq.
                                            MINTZ, LEVIN, COHN, FERRIS,
                                              GLOVSKY AND POPEO, P.C.
                                            One Financial Center
                                            Boston, Massachusetts  02111
                                            Tel:  617-542-6000
                                            Fax:  617-542-2241
                                            E-mail: awalker@mintz.com
                                                    amwilliams@mintz.com

                                            Andrew Adams III, Esq. (pro hac vice)
                                            Peter J. Rademacher, Esq. (pro hac vice)
                                            Hogen Adams PLLC
                                            1935 County Road B2 West, Suite 460
                                            St. Paul, Minnesota 55113
                                            Tel:  651-842-9100
                                            Fax:  651-842-9101
                                            E-mail: aadams@hogenadams.com
                                                    prademacher@hogenadams.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT MASSACHUSETTS

| | |
|---|---|
| In re: | Chapter 13 |
| BRIAN W. COUGHLIN, | Case No. 19-14142-FJB |
| Debtor. | |

## REPLY TO OBJECTION TO MOTION TO DISMISS STAY MOTION [DOC. 27][1]

**I.    Congress Did Not Unequivocally Abrogate Tribal Immunity Under the Code.**

There is not a single "example in all of history where the Supreme Court has found that Congress intended to abrogate tribal sovereign immunity without expressly mentioning Indian tribes somewhere in the statute." *In re Greektown Holdings, LLC*, 917 F.3d 451, 460 (6th Cir. 2019) (quoting *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 824 (7th Cir. 2016)).[2] It is undisputed §§ 101(27) and 106 do not list Indian tribes. It is also undisputed that to abrogate tribal immunity, Congress must unequivocally express that intent in explicit legislation. *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 791 (2014) ("The baseline position, we have often held, is tribal immunity; and to abrogate such immunity, Congress must 'unequivocally' express that purpose."); *Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc.*, 523 U.S. 751, 754–55 (1998) (finding abrogation must be "unequivocally expressed" in "explicit legislation"). Despite this, Debtor relies on "deduction" to add Indian tribes to § 101(27)'s language. Whether by deduction, implication, or inference, the attempted maneuvering falls short of the Supreme Court's high standard. The several theories Debtor has on the subject—appearing for the first time

---

[1] Capitalized terms used, but not defined herein shall have the meanings given in the Motion to Dismiss [Doc. 74]. The Tribe's reply is incorporated herein by reference as if stated fully herein.

[2] In contrast, there are numerous examples of circuit courts finding Congress abrogated tribal sovereign immunity where the statute specifically referred to an "Indian tribe," and refusing to do so where it did not. *See e.g.*, *Greektown*, 917 F.3d at 460 (collecting cases).

WA 15247351.2

**J.A. 318**

in the Objection and which numerous courts explicitly reject—itself illustrates Congress has not unequivocally expressed an intent to abrogate tribal immunity via §§ 101(27) and 106. *Greektown*, 917 F.3d at 457 ("to abrogate tribal sovereign immunity, Congress must leave no doubt about its intent."). Evidence of Congress leaving doubt regarding its intent in §§ 101(27) and 106 is several courts reaching two irreconcilable conclusions. *Id.* (collecting cases).

Debtor's interpretation of § 101(27) violates the statutory cannon he relies on; that courts avoid interpretations rendering statutory language surplusage. Debtor claims "or other foreign or domestic government" is a catchall for every government form, including Indian tribes. Ironically, Debtor's interpretation violates this very cannon by making the entire provision, save the last six words, superfluous and surplusage. If these six words captured every government form, the listed examples, such as the United States and States, would be superfluous and surplusage. Instead, by listing specific government examples and not specifically listing Indian tribes supports the cannon of *expressio unius*, which is "certainly more sensible than" Debtor's interpretation. *Id.* at 462.

Debtor is mistaken that "other foreign or domestic government" must include Indian tribes because no other government form falls under the language. This is a logical fallacy. Failure to prove[3] does not prove the existence of anything; or here, the meaning of language. Even accepting the proposition as true, if no other government form falls under the language except Indian tribes, it begs the question why Congress did not just list Indian tribes, as it has unequivocally done in other legislation. *Greektown*, 917 F.3d at 457 (listing examples).

Debtor's cited cases[4] do not suggest the First Circuit will adopt *Krystal Energy*.[5]

---

[3] Respondents do not concede that no other examples of government forms fall under this language. It is Debtor's burden to prove Congress unequivocally abrogated tribal immunity. *Murphy v. U.S.*, 45 F.3d 520, 522 (1st Cir. 1995).

[4] *Narragansett Indian Tribe v. Rhode Island*, 449 F.3d 16, 25 (1st Cir. 2006); *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Authority*, 207 F.3d 21, 29 (1st Cir. 2000).

[5] *Krystal Energy* is not the seminal case on this issue, as Debtor contends. All of the Circuit Courts that have considered *Krystal Energy* have explicitly rejected its reasoning. *Krystal Energy* is an outlier and represents a significant departure from the United State Supreme Court's heightened standard for abrogation of tribal immunity.

WA 15247351.2

First, Debtor's cases support adopting *Greektown*, as the First Circuit recognizes the high bar required for abrogation. *Narragansett*, 449 F.3d at 25 (explaining abrogation "must be clear and unequivocal"); *Ninigret*, 207 F.3d at 29 ("[T]he doctrine of tribal sovereign immunity precludes a suit against an Indian tribe except in instances in which Congress has abrogated that immunity"). Second, neither case dealt with whether Congress abrogated tribal immunity under the Bankruptcy Code. In fact, only *Narragansett* considered whether Congress unequivocally abrogated tribal immunity, which is at issue here. *See Ninigret*, 207 F.3d at 29.[6] Also, the statute in *Narragansett* represented Congress's unequivocal intent to abrogate immunity, which is missing here. *Narragansett*, 449 F.3d at 25 (25 U.S.C. § 1708(a) provided Indian "settlement lands shall be subject to the civil and criminal laws and jurisdiction of the State of Rhode Island"). Debtor's cases are of little relevance to whether Congress unequivocally expressed an intent to abrogate tribal immunity under the Bankruptcy Code. Debtor cannot meet his burden to prove Congress abrogated tribal immunity. *Murphy*, 45 F.3d at 522. Lendgreen, BDC, and Holdings[7] enjoy tribal immunity and the Court should dismiss the Stay Motion pursuant to Rule 12(b)(1) or 12(b)(6).

## II.     The Stay Motion Fails to State a Claim for Relief.

The Objection attempts to cure the Stay Motion's deficiencies by requesting the Court take judicial notice of facts not alleged in the Stay Motion.[8] "Judicial notice is a rule of convenience, intended to save time and resources by dispensing with the *presentation of evidence*, and is intended to avoid the formal introduction of evidence in limited circumstances where the fact

---

[6] The tribal exhaustion doctrine is a further distinction regarding the Rule 12(b)(1) analysis. Given Congress did not abrogate tribal immunity under the Code, the Stay Motion is properly dismissed under Rule 12(b)(1) or 12(b)(6).

[7] Debtor concedes Lendgreen, BDC, and Holdings are arms of the Tribe. Stay Motion ¶ 3; Objection p.14; *Ninigret Dev. Corp.*, 207 F.3d at 29 ("an arm of the Tribe enjoys the full extent of the Tribe's sovereign immunity").

[8] As detailed in the Motion, and without any justification or theory alleged to support the same, Debtor makes a collective reference to Lendgreen, BDC, Holdings, and the Tribe as a singular "Creditor." Debtor makes this singular reference despite the reality of Debtor's own allegations and attachments demonstrating that only Lendgreen made the loan, was listed in the schedules, listed in the mailing matrix, purportedly received notice of the bankruptcy filing prior to the acts complained of, and allegedly made the calls and sent the emails forming the basis of the Stay Motion.

3

sought to be proved is so well known that evidence in support thereof is unnecessary." AM. JUR. EVIDENCE § 24. (citations omitted) (emphasis added). Judicial notice does not cure a party's failure to allege facts as an initial matter, as Debtor has here. The Stay Motion fails to allege facts Debtor now requests the Court take judicial notice. Moreover, the contents of the filings are not susceptible to judicial notice. Judicial notice of four-year-old filings in an unrelated case merely operates to introduce that parties in an unrelated case filed certain pleadings on certain dates. *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court *not for the truth of the matters asserted in the other litigation*, but rather to establish the fact of such litigation and related filings.") (emphasis added). The Objection's new allegations and the exhibits attached thereto are improper, and not subject to consideration for purposes of the Motion to Dismiss. The Court should strike the same.

Despite the complete absence of allegations in the Stay Motion on the issue, the Objection attempts to create a narrative that Lendgreen, BDC, and Holdings cannot have tribal immunity and retain corporate form, or as Debtor states, they "cannot have their cake and eat it too." The law does not support this narrative. Courts cannot disregard corporate form absent a recognized legal justification. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."); *In re Indus. Comm. Elec., Inc.*, 319 B.R. 35, 49 (D. Mass. 2005) ("Only in rare instances, in order to prevent gross inequity, will a . . . court look beyond the corporate form").

Debtor's theories for disregarding corporate form here are not recognized in law, unsupported by allegations, or both, and all are entirely absent from the Stay Motion. First, Debtor alleges, for the first in the Objection, that the "arm of the tribe determination" somehow automatically disregards corporate form. The law does not support this theory, as evidenced by

4

WA 15247351.2

Debtor's failure to cite a single case in support. Debtor cites *Ninigret* for the suggestion that an

arm is "legally indistinguishable from the tribe." This is a mischaracterization.[9] The *Ninigret* court

merely stated it "shall not distinguish between the Tribe and the [arm] in *discussing concepts such*

*as tribal sovereign immunity and tribal exhaustion*." *Ninigret*, 207 F.3d at 29 (emphasis added).

This is an entirely different, independent analysis from whether to disregard corporate form, which

was not at issue in *Ninigret*. Despite Debtor's assertions to the contrary and failure to cite a single

case in support, an arm's tribal immunity and corporate separateness are not mutually exclusive.

Second, while Debtor makes a conclusory reference to vicarious liability in the Objection, the Stay

Motion fails to allege facts to support application of this theory. Debtor's only cited case—in the

Objection—on vicarious liability is distinguishable, as *Ramirez v. Toops*, Case No. 13-03067

(Bankr. S.D. Tex. June 4, 2014) concerned a lienholder contracting with a third party to repossess

a truck, and the court found the lienholder vicarious liable for the third party's failure to return the

truck after the debtor filed bankruptcy. The debtor in *Ramirez* alleged facts to support application

of vicarious liability. The Stay Motion fails to even mention vicarious liability or any facts to

support its application. Finally, Debtor appears to argue, for the first time in the Objection, that

mere "whole ownership" of subsidiaries somehow renders a parent liable *per se* for a subsidiary's

alleged conduct. Again, Debtor fails to cite a single case in support of this proposition.

Debtor has failed to state a claim for relief against Lendgreen, BDC, and Holdings.

Moreover, the Court lacks subject matter jurisdiction given Lendgreen, BDC, and Holdings enjoy

tribal sovereign immunity, which Congress has not unequivocally abrogated under the Code.

Therefore, Lendgreen, BDC, and Holdings respectfully request this Court dismiss the Stay Motion.

---

[9] Debtor's claim that "Respondents agree Mr. Coughlin has, in fact, stated a claim for which relief can be sought against the Tribe's arms" is another mischaracterization, which Respondents deny. Respondents also deny that finding Congress has not abrogated tribal immunity under the Code will lead to absurd results.

WA 15247351.2

**J.A. 322**

Dated: September 4, 2020

Respectfully submitted,


/s/  *Adrienne K. Walker*
Adrienne K. Walker, Esq.
Aaron M. Williams, Esq.
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts  02111
Tel:  617-542-6000
Fax:  617-542-2241
E-mail: awalker@mintz.com
amwilliams@mintz.com


SPENCER FANE LLP

/s/  *Zachary R.G. Fairlie*
Scott J. Goldstein; admitted pro hac vice
Zachary R.G. Fairlie; admitted pro hac vice
1000 Walnut Street, Suite 1400
Kansas City, Missouri  64106
Tel: (816) 474-8100
Fax: (816) 474-3216
sgoldstein@spencerfane.com
zfairlie@spencerfane.com


## CERTIFICATE OF SERVICE

I, Adrienne K. Walker, do hereby certify that on the September 4, 2020, I caused a copy of the foregoing to be served through the ECF system, and that copies will be sent electronically to registered participants and paper copies will be sent to those indicated as non-registered participants requesting notice as of the date herein.

Dated:  September 4, 2020

/s/  *Adrienne K. Walker*

WA 15247351.2

**J.A. 323**

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br><div align=right>Debtor</div> | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO. 19-14142-FJB |

**MOTION OF DEBTOR FOR LEAVE TO SUBMIT
RESPONSE BRIEF  TO REPLY BRIEFS OF NIIWIN, LLC'S D/B/A LENDGREEN,
L.D.F. BUSINESS DEVELOPMENT CORPORATION AND L.D.F. HOLDINGS, LLC
AND THE LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS**

**NOW COMES** the Debtor, Brian W. Coughlin, and hereby requests leave to file a

Memorandum of Law in Response to the Reply Briefs of the Respondents and in support thereof

hereby states as follows:

1. The Debtor filed his Objection and Memorandum of Law to Respondents', Niiwin, LLC's

D/B/A Lendgreen, L.D.F. Business Development Corporation's and L.D.F. Holdings, LLC's,

Motion to Dismiss.

2. The Respondents filed a reply to Debtor's Objection.

3. The Debtor wishes to file Memorandum of Law in Response to the Reply Briefs of the

Respondents as a further aid to the Court in arriving at its decision on the Respondents' Motions

to Dismiss.

4. Allowing the filing of a sur-reply is in the sound discretion of the court.

**J.A. 324**

WHEREFORE Brian W. Coughlin respectfully requests:

A. That this Honorable Court permit Brian W. Coughlin to file Memorandum of Law in

   Response to the Reply Briefs of the Respondents; and

B. Any other relief as just and necessary.

> BRIAN W. COUGHLIN, Debtor
> By his attorney,

Date:  9/18/2020                          */s/ Richard N. Gottlieb, Esq.*
                                          Richard N. Gottlieb, Esq. BBO # 547970
                                          Law Offices of Richard N. Gottlieb
                                          Ten Tremont Street
                                          Suite 11, 3rd Floor
                                          Boston, MA 02108
                                          (617) 742-4491
                                          rnglaw@verizon.net

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br>                    Debtor | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO. 19-14142-FJB |

**MEMORANDUM OF LAW IN RESPONSE TO
THE REPLY BRIEFS NIIWIN, LLC D/B/A "LENDGREEN", LDF HOLDINGS,
LLC, AND THE LAC DU FLAMBEAU BUSINESS DEVELOPMENT CORPORATION
AND THE LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS
MOTION TO DISMISS THE MOTION OF DEBTOR TO ENFORCE THE
AUTOMATIC STAY**

NOW COMES the Debtor, and in support of the Debtor's Opposition to the Motions of

Niiwin, LLC d/b/a "LendGreen", LDF Holdings, LLC, and the Lac du Flambeau Business

Development Corporation and the Lac Du Flambeau Band of Lake Chippewa Indians

(collectively, the "Respondents") to Dismiss the Debtor's Motion to Enforce the Automatic Stay,

hereby submits the following Memorandum of Law in response to the Reply Briefs of the

Respondents.

**I.      THE CONCEPT OF "TRIBAL IMMUNITY" IS A COMMON-LAW DOCTRINE
OF THE SUPREME COURT OF THE UNITED STATES WHICH HAS OUTLIVED ITS
USEFULNESS AND OUGHT TO BE REVISITED AND OVERTURNED BY IT.**

To be clear, for the purposes of this proceeding and contested matter, and for the record

created within that proceeding, the Debtor does not accept and expressly seeks to overturn the

proposition that an Indian tribe engaged in off-reservation commercial activity ought to be

entitled to any form of common-law immunity for injuries or other wrongs occasioned by such

commercial activity, including violations of the Automatic Stay. The debtor reserves the right to

**J.A. 326**

Case: 21-1153    Document: 00117747096    Page: 333    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 97-1    Filed 09/18/20    Entered 09/18/20 15:19:16    Desc
Memorandum of Law in Response to Reply Briefs of Respondents    Page 2 of 7

challenge any such proposition in any further appellate litigation that should arise from these

proceedings.

Thus, the Debtor believes that the holding in the case of **Kiowa Tribe of Oklahoma**

**v. Manufacturing Technologies, Inc.** [1] ought to be overruled.  The Debtor expressly states for

the record that the Supreme Court should act to dismantle this "judge-made" tribal immunity law

because Congress has not acted to do so.  A tribe should enjoy no broader immunity than the

federal government, the states, or foreign nations.  Tribal immunity must not be used as a shield

for questionable conduct, and it must not be used as a mechanism to mitigate risk in a business

venture.

## II.    LENDGREEN AND ITS PARENT ENTITIES ARE "ARMS OF THE TRIBE" AND THEREFORE NONE OF THE RESPONDENTS ENJOY ANY LEGAL BENEFIT OF CLAIMED "COPORATE SEPARATENESS"

Based upon the factors set forth in **Breakthrough Management Group, Inc. v.**

**Chukchansi Gold Casino & Resort** [2], it is clear that, as an "Arm of the Tribe", Lendgreen, all

of its parent entities, including the Tribe itself, are so intertwined as to be deemed one single,

unified entity, such that the Tribe and its subsidiaries should be deemed to be one single entity

for the purposes of this contested matter and proceeding.  Thus, Lendgreen, LLC, BDC, LLC and

Holdings, LLC ("tribal entities") are susceptible to suit.

The Debtor is not "disregarding corporate structure," as in the manner that the

Respondents have claimed. While it is true that "…a parent corporation … is not liable for the

_____

[1] 523 U.S. 751 (1998).

[2] 629 F.3d 1171, 1185 (10th Cir. 2010).

Case: 21-1153    Document: 00117747096    Page: 334    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 97-1    Filed 09/18/20    Entered 09/18/20 15:19:16    Desc
Memorandum of Law in Response to Reply Briefs of Respondents    Page 3 of 7

acts of its subsidiaries… beyond the assets of the subsidiary…"[3]  Yet, the "veil may be pierced and the [parent entity] held liable for the corporation's conduct when…the corporate form would otherwise be misused to accomplish certain wrongful purposes…"[4] and when the parent company uses the subsidiary "as a mere agency or instrumentality of the owning company."[5]  In this case, given it's status as "Arms of the Tribe" as defined by federal case law, the Respondents necessarily act and are viewed for all legal purposes as a single entity.

### A.  The "Breakthrough Test"

The test set forth in **Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort** [6] is widely accepted to determine if a tribal entity is a "mere agency or instrumentality" of a tribe[7]. The elements of that test are as follows:

---

[3] **United States v. Bestfoods**, 524 U.S. 51, 61-62 (U.S. 1998).

[4] *Id.* at 62.

[5] **Chicago, M. & St. P. R. Co. v. Minneapolis Civic and Commerce Assn.**, 247 U.S. 490, 494 (1918) (While stating that determining whether a subsidiary and parent companies are merely one in the same is a question "of both fact and law," the Supreme Court concluded that subsidiary railroad companies that had different managing members and owned distinctly separate assets were not "mere [agents]…of the owning company.")

[6] 629 F.3d 1171, 1185 (10th Cir. 2010).

[7] **Williams v. Big Picture Loans**, LLC, 929 F.3d 170, (4th Cir. 2019);  **See also McCoy v. Salish Kootenai College, Inc.**, 785 Fed.Appx 414, 415 (9th Cir 2019) No. 18-35729, citing **White v. Univ. of Cal.**, 765 F.3d 1010, 1025 (9th Cir. 2014) (In an unpublished decision, stating that "To determine whether an entity is entitled to sovereign immunity as an "arm of a tribe," this circuit considers the [**Breakthrough**] factors: "(1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities.")

Case: 21-1153    Document: 00117747096    Page: 335    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 97-1    Filed 09/18/20    Entered 09/18/20 15:19:16    Desc
Memorandum of Law in Response to Reply Briefs of Respondents    Page 4 of 7

1.    **Method of creation**: whether they are created by the tribe as part of larger scheme of corporate organization or was the company formed independently, and whether incorporation was under tribal law[8];

2.    **Purpose of the company**: whether or not the companies serve the interests of the tribe's "broader goals" of self-governance[9];

3.    **Control over the company**: whether there is tribal control over the entity. "…[R]elevant to this factor are the entities' formal governance structure, the extent to which the entities are owned by the tribe, and the day-to-day management of the entities"[10];

4.    **Tribal intent:** whether the tribe's intent is "to extend its immunity to the entities. In some cases, the tribal ordinances or articles of incorporation creating the entities will state whether the tribe intended the entities to share in the tribe's immunity."[11] ; and

5.    **Financial relationship**: whether "a judgment against an entity would reach the tribe's [and to what] extent to which the Tribe depends on these entities for revenue to fund its governmental functions and other tribal development." [12]

---

[8] **Williams v. Big Picture Loans, LLC**, 929 F.3d 170, 177 (4th Cir. 2019), citing **Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort**, 629 F.3d 1173 (10th Cir. 2010).

[9] *Id.* at 178.

[10] *Id.* at 183.

[11] *Id.* at 184.

[12] *Id.*

Case: 21-1153    Document: 00117747096    Page: 336    Date Filed: 06/01/2021    Entry ID: 6425224

Case 19-14142    Doc 97-1    Filed 09/18/20    Entered 09/18/20 15:19:16    Desc
Memorandum of Law in Response to Reply Briefs of Respondents    Page 5 of 7

### B.  Applying the <u>Breakthrough</u> Test to the Case at Bar

**1.    Method of creation.**  The Tribe incorporated Lendgreen, BDC, and Holdings all under tribal law, organized so that Holdings wholly owns BDC, and BDC wholly owns Lendgreen.   Through this chain, the Tribe owns them all, demonstrating that these entities are arms of the Tribe.  Additionally, all of these companies are formed under tribal law, further validating that these companies, including Lendgreen, are arms of the Tribe.

**2.    Purpose.**  The purpose of Lendgreen, LLC is to operate a payday loan company to generate revenue for the Tribe.  BDC and Holdings hold Lendgreen and serve as pass-through entities which stream revenue to the Tribe.  This structure serves the Tribe's purpose of using its arms to collect revenue, and after doing so, to funnel those revenues to the Tribe.

**3.    Control.**  Lendgreen, BDC, and Holdings are all run by members of the Tribe. Holdings has complete control over its subsidiary, BDC; likewise, BDC has complete control over its subsidiary, Lendgreen.  Formed by the Tribe, Holdings and all subsidiary companies are subservient to it.  Therefore, Tribe's absolute control over these entities demonstrates that they are arms of the Tribe.

**4.    Intent.**  The Tribe's intent is clear:  Lendgreen is to serve the Tribe.  Lendgreen's formation documents indicate that it shares tribal immunity with the Tribe, further demonstrating the Tribe's intent that Lendgreen is an extension of itself.

**5.    Financial Relationship.**  A financial current directs money from Lendgreen to the Tribe.  Lendgreen's sole stated purpose is to generate revenue for the Tribe.  This fact, alone, satisfies the financial prong of the "<u>Breakthrough</u> Test." In addition, any suit against Lendgreen for monetary damages would be a direct attack on Tribe's profit margin.  Lendgreen only maintains $500.00 and all other profits it generates are up-streamed to BDC, Holdings, and then

Case: 21-1153     Document: 00117747096     Page: 337     Date Filed: 06/01/2021     Entry ID: 6425224

Case 19-14142    Doc 97-1    Filed 09/18/20    Entered 09/18/20 15:19:16    Desc
Memorandum of Law in Response to Reply Briefs of Respondents    Page 6 of 7

to the Tribe.[13]  This financial structure demonstrates that Lendgreen exists solely to do the

Tribe's bidding and is, therefore, an "Arm of the Tribe".

### III.    THE COURT MAY PROPERLY CONSIDER THE DOCUMENTS OFFERED AND ATTACHED TO THE MEMORANDUM OF LAW IN SUPPORT OF THE DEBTOR'S OPPOSITION TO THE RESPONDENTS MOTIONS TO DISMISS.

The documents offered as part of the Debtor's Memorandum of Law in Support of his

Opposition to the Respondents' Motions to Dismiss t are derived from the affidavit of Lendgreen

in the case of **Walker v. Lendgreen**[14],  a United States District Court case before the Middle

District of Florida.  As part of the docket, a court may take judicial notice of those records as

they are official records of court proceedings.[15] Furthermore, and in any event, at this early stage

of the proceedings, there is nothing to prevent the Debtor from amending his motion to provide

additional detail in a more formal fashion if the Court so requires. Therefore, the documents

referenced by the Debtor may be properly taken into account with respect to the instant Motions

to Dismiss.

---

[13] *See* Tribal Code, Chapter 44a, Tribally-Owned Business Organization Code, §44a.406(2) (Tribal assets not specifically pledged to the Tribally-owned limited liability company…shall not be considered an asset of the company…")

[14] Case #8:16-CV-00862-JDW-AAS

[15] **See Waterson v. Page,** F.2d 1, 4 (1st Cir. 1992) (Stating that the Court is allowed to take judicial notice with documents for which "authenticity [is] not disputed…for official public records, for documents central to plaintiffs' claim or for documents sufficiently referred to in the complaint.") *See also*  **Khoja v. Orexigan Therapeutics, Inc.**, 899 F.3d 988, 1002 (9th Cir. 2018). (Stating The Court must treat "documents as though they are part of the complaint itself.")

For all of these reasons and those set forth in the Debtor's previously submitted

Memorandum of Law, the Respondents' Motion to Dismiss should be denied.

> RESPECTFULLY SUBMITTED,
>
> BRIAN W. COUGHLIN, Debtor
> By his attorney,

Date:  9/18/2020                    */s/ Richard N. Gottlieb, Esq.*
                                    Richard N. Gottlieb, Esq. BBO # 547970
                                    Law Offices of Richard N. Gottlieb
                                    Ten Tremont Street
                                    Suite 11, 3rd Floor
                                    Boston, MA 02108
                                    (617) 742-4491
                                    rnglaw@verizon.net

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT MASSACHUSETTS

| | |
|---|---|
| In re: | Chapter 13 |
| BRIAN W. COUGHLIN, | Case No. 19-14142-FJB |
| Debtor. | |

### JOINT MOTION TO STRIKE DEBTOR'S SUR-REPLY [DOC. 97]
#### (Emergency Determination Requested)

Niiwin, LLC d/b/a Lendgreen, L.D.F. Business Development Corporation, L.D.F. Holdings, LLC, and the Lac du Flambeau Band of Lake Superior Chippewa Indians hereby jointly move (this "Motion to Strike") this Court to strike the sur-reply filed on September 18, 2020 [Doc. 97] (the "Sur-Reply") by Brian W. Coughlin (the "Debtor"). As the hearing on this matter is scheduled for tomorrow, September 22, 2020 (the "Hearing"), emergency determination pursuant to MLBR 9013-1(g)(1)(A) is requested[1]. The Sur-Reply is improper, should be stricken, and its new allegations and legal theories should not be considered for purposes of the Court's resolution of the Motion to Dismiss. The respondents request that this Motion to Strike be heard at the outset of the Hearing. In support of this Motion to Strike, the respondents state as follows:

#### PRELIMINARY STATEMENT

1.      A month after filing his objections [Docs. 81-84] to the motions to dismiss [Docs. 73-74] (the "Motion to Dismiss")[2] and two weeks after respondents filed their replies [Doc. 92-93] (the "Reply") and this matter was fully-briefed and ready for oral argument, at the eleventh hour Debtor filed a motion for leave to file the Sur-Reply that attempts to introduce new allegations and entirely new legal theories.

---

[1]  The Debtor was not requested to consent to the relief requested herein as the relief is sought on an emergency basis.
[2]  Capitalized terms used, but not defined herein shall have the meanings given in the Motion to Dismiss [Doc. 74].

Debtor did not consult respondents prior to filing the Sur-Reply as required under MLBR 9013-1(b). As a result, the Court was not aware of the respondent's objections to the substance of the Sur-Reply.

## **ARGUMENT**

2.      It is well settled in the First Circuit (and in courts across the country) that arguments and issues that are raised for the first time in a reply memorandum should not be considered by the court. *See, e.g., Johnson v. Indymac Mortg. Serv'g*, No. 12-10808-MBB, 2014 WL 1652594, at *5 n.14 (D. Mass. Apr. 22, 2014) ("Although a litigant may use a reply brief to clarify arguments previously made or to respond to an argument an opposing party raises in an opposition, ordinarily it is not appropriate to use a reply brief to raise a new argument."); *Del. County Employees Retirement Fund v. Portnoy*, No. 13-10405-DJC, 2014 WL 1271528, at *9 n.6 (D. Mass. Mar. 26, 2014) ("The Court need not address substantive arguments raised in the Plaintiffs' reply that were available to them at the time they filed their motion and which do not respond to the arguments raised by the Defendants in their oppositions."); *Napert v. Gov't Employees Ins*. Co., No. 13-10530-FDS, 2013 WL 3989645, at *2 n.4 (D. Mass. Aug. 1, 2013) ("Where, as here, a moving party raises an argument for the first time in a reply brief, that argument is waived."); *Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) (concluding that arguments raised for the first time on reply were waived, noting that "[t]he purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum") (citing cases).

3.      The Debtor's attempts to assert new arguments in the Sur-Reply are inappropriate. "Courts are entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion." *Genereux v. Hardric Laboratories, Inc*., 2013 WL 12303198 (D. Mass. May 29, 2013) (citing *McCoy v. Massachusetts Inst. of Tech*., 950 F.2d 13, 22 n.7 (1st Cir. 1991); *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc*., 97 F.3d 1504, 1526 (1st Cir. 1996)). Thus, "[a]rguments raised for the first time in a reply memorandum will not be considered." *Rivera Concepcion*

*v. Puerto Rico*, 682 F. Supp. 2d 164, 170 n.5 (D.P.R. 2010); *see also Berwind Prop. Grp. Inc. v. Envtl.*

*Mgmt. Grp., Inc.*, Civ. A. No. 04–11411–NMG, 2007 WL 4707647, at *6 (D. Mass. Feb. 5, 2007)

("defendant . . . will not be permitted to amend the nature of its motion in a reply brief"); *Graham v.*

*Sabol*, 734 F. Supp. 2d 194, 199 (D. Mass. 2010) ("[a] reply brief is not an opportunity to raise new

arguments"). "Sur–reply briefs, too, may not be used to offer new arguments or to renounce previously

agreed-upon facts or legal premises." *Genereux*, 2013 WL 12303198.

4.    The logic of not considering new arguments and evidence in a reply applies equally to

arguments and evidence raised for the first time in a sur-reply. Indeed, if a party is permitted to include

new arguments and evidence in any secondary submission–whether in a reply filed in support of a motion

or in a sur-reply filed in opposition to a motion–the submission is no longer a "reply" at all. It becomes

instead a second primary brief to which respondents have no opportunity to respond. That is precisely

what occurred here.

5.    As detailed in the Motion to Dismiss and Reply, the Court should dismiss the Stay Motion

because respondents are entitled to tribal immunity and the Stay Motion fails to allege a willful violation

of the automatic stay against BDC, Holdings, and the Tribe. Regarding tribal immunity, the Sur-Reply

attempts to introduce an entirely new argument that he "expressly seeks to overturn the proposition that

an Indian tribe engaged in off-reservation commercial activity ought to be entitled to any form of

common-law immunity for injuries or other wrongs occasioned by such commercial activity." Sur-Reply

at 1.

6.    Regarding the Stay Motion's failure to allege a willful violation of the automatic stay

against BDC, Holdings, and the Tribe, the Sur-Reply attempts to argue for the first time that based on

*Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173 (10th Cir.

2010), that the respondents should all be "deemed one single, unified entity" and that they should be

"viewed for all legal purposes as a single entity." Sur-Reply *Id.* at 2-3.

3

7.      There is no reason Debtor could not have raised these new allegations or theories in the Stay Motion. In fact, the basis for the Debtor's purported introduction of these new allegations and theories at this late juncture is that "Debtor wishes to file Memorandum of Law in Response to the Reply Briefs of the Respondents as a further aid to the Court in arriving at its decision on the Respondents' Motions to Dismiss." Meaning, the Debtor does not even state a basis or justification for his highly irregular and prejudicial late-hour request. Debtor had every opportunity to raise these new theories and allegations but failed to do so. He has waived them. The purposes of a reply memorandum is not to file new arguments that could have been raised previously and the Court should not consider them for purposes of resolving the Motion to Dismiss. The Sur-Reply should be stricken.

4

**J.A. 336**

WHEREFORE, Lendgreen, BDC, Holdings, and the Tribe respectfully request this Court enter an order (i) striking the Sur-Reply; (ii) granting the Motion to Dismiss; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: September 21, 2020


SPENCER FANE LLP

/s/      *Zachary R.G. Fairlie*
Scott J. Goldstein; admitted pro hac vice
Zachary R.G. Fairlie; admitted pro hac vice
1000 Walnut Street, Suite 1400
Kansas City, Missouri  64106
Tel: (816) 474-8100
sgoldstein@spencerfane.com
zfairlie@spencerfane.com


*Counsel to Niiwin, LLC d/b/a Lendgreen,*
*L.D.F. Business Development Corporation,*
*L.D.F. Holdings, LLC*

Respectfully submitted,

/s/      *Adrienne K. Walker*
Adrienne K. Walker, Esq.
Aaron M. Williams, Esq.
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts  02111
Tel:  617-542-6000
awalker@mintz.com


*Counsel to Niiwin, LLC d/b/a Lendgreen, L.D.F.*
*Business Development Corporation, L.D.F.*
*Holdings, LLC, and Lac du Flambeau Band of*
*Lake Superior Chippewa Indians*


HOGEN ADAMS PLLC

/s/      *Peter J. Rademacher*
Andrew Adams III, Esq. (pro hac vice)
Peter J. Rademacher, Esq. (pro hac vice)
Hogen Adams PLLC
1935 County Road B2 West, Suite 460
St. Paul, Minnesota 55113
Tel:  651-842-9100
aadams@hogenadams.com
prademacher@hogenadams.com


*Counsel to Lac du Flambeau Band of Lake Superior*
*Chippewa Indians*

WA 15247351.2

**J.A. 337**



## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re:* | |
| BRIAN W. COUGHLIN, | Ch. 13 |
| Debtor | 19-14142-FJB |

**Proceeding Memorandum and Order**

**MATTER:**

Zoom Hearing:
#73 Motion filed by Creditor Lac du Flambeau Band of Lake Superior Chippewa Indians Motion to Dismiss Contested Matter Re: 27 Motion to Enforce the Automatic Stay.  (Walker, Adrienne)
#81 Objection filed by Debtor Brian W. Coughlin RE: [73] Motion to Dismiss Contested Matter (Gottlieb, Richard)
#82 Memorandum of Law In Support of [81] Objection filed by Debtor Brian W. Coughlin

**Decision set forth more fully as follows:**
Zoom Hearing held on 9/22/2020.  The matter is taken under advisement.

By the Court,

Frank J. Bailey
United States Bankruptcy Judge

Dated: 9/22/2020

**J.A. 338**

Case 19-14142    Doc 106    Filed 09/22/20    Entered 09/23/20 09:34:18    Desc Main
Document    Page 1 of 1



UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re:* | |
| BRIAN W. COUGHLIN,<br>    Debtor | Ch. 13<br>19-14142-FJB |

**Proceeding Memorandum and Order**

**MATTER:**
Zoom Hearing:
#74 Motion filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Niiwin, LLC d/b/a Lendgreen Motion to Dismiss Contested Matter Re: 27 Motion to Enforce the Automatic Stay.  (Walker, Adrienne)
#83 Objection filed by Debtor Brian W. Coughlin RE: [74] Motion to Dismiss Contested Matter (Gottlieb, Richard)
#84 Memorandum of Law In Support of  [83] Objection  filed by Debtor Brian W. Coughlin (Gottlieb, Richard)
#92 Reply Memorandum of Law in Support of [74] Motion to Dismiss Contested Matter.  (Walker, Adrienne)
#93 Reply to [83] Objection to [74] Motion to Dismiss Contested Matter.  (Walker, Adrienne)

**Decision set forth more fully as follows:**
Zoom Hearing held on 9/22/2020. The matter is taken under advisement.

By the Court,

Frank J. Bailey
United States Bankruptcy Judge

Dated: 9/22/2020

**J.A. 339**



## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re:* | |
| BRIAN W. COUGHLIN, | Ch. 13 |
| Debtor | 19-14142-FJB |

**Order**

**MATTER:**

#104 Emergency Joint Motion filed by Creditors L.D.F. Business Development Corporation, LDF Holdings, LLC, Lac du Flambeau Band of Lake Superior Chippewa Indians, Niiwin, LLC d/b/a Lendgreen to Strike (Re: 97 Motion For Leave to File)

The motion to strike is hereby denied. On or before September 30, 2020, the moving parties may file a response or responses to the sur-reply. Thereafter, the Court will accept no further briefing, and the motions to dismiss will be deemed taken under advisement.

By the Court,

Frank J. Bailey
United States Bankruptcy Judge

Dated: 9/23/2020

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT MASSACHUSETTS**
**(Eastern Division)**

| | |
|---|---|
| In re: | Chapter 13 |
| BRIAN W. COUGHLIN, | Case No. 19-14142-FJB |
| Debtor. | |

**FINAL REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**Introduction**

Once again, Brian Coughlin injects new arguments, allegations, and theories for relief into this case. In any event, his ever-shifting positions only further highlight that his claim is barred by tribal sovereign immunity and improperly pled. Therefore, the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe") respectfully asks the Court to grant its motion to dismiss.

**Argument**

**I.  The Supreme Court has not limited the application of tribal sovereign immunity to off-reservation commercial activity.**

   **A.  Coughlin's argument against applying tribal sovereign immunity to off-reservation commercial activity is untimely, improper, and unpreserved.**

Coughlin now states that he "does not accept and expressly seeks to overturn the proposition that an Indian tribe engaged in off-reservation commercial activity ought to be entitled to any form of common-law immunity," a holding from *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751 (1998). (Sur-Reply Br., Dkt. 97-

**J.A. 341**

1 p.1). He goes on to state that he reserves the right to argue on appeal that "the

Supreme Court should act to dismantle [*Kiowa Tribe of Oklahoma v. Manufacturing

Technologies, Inc.*, 523 U.S. 751 (1998),] because Congress has not acted to do so." (*Id.* at

1-2). This argument is not properly before the Court or preserved for appeal.

First, the argument is too late. As the Tribe and tribal entities outlined in their

joint motion to strike, new arguments cannot be raised in reply or sur-reply briefs.

(Motion to Strike, Dkt. pp.2-3). Those briefs must be limited to addressing the

arguments raised in the principal and response briefs. (*Id.*). There is no hint of this

argument in Coughlin's response brief, except for a block quote from Justice Stevens's

dissent in *Kiowa*. But Coughlin put that block quote in the conclusion of his brief, not in

the body of his arguments. And he did not provide any argument or explanation that he

intended for this Court or any other court to adopt that dissenting opinion. (*See* Resp.

Br., Dkt. 82 p.21). His quotation was, at best, a perfunctory argument, which this Court

should deem forfeited. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)

("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived.").

Second, Coughlin does not appear to ask *this* Court to overturn *Kiowa*. Instead, he

appears to state that he does not accept it and "reserves the right" to raise his argument

on appeal and specifically argues that the *Supreme Court* should dismantle it. (*See* Sur-

Reply Br., Dkt. 97-1 pp.1-2). Because Coughlin is not asking this Court for a ruling on

this argument, it is forfeited, if not waived. *See U.S. Aviation Underwriters, Inc. v. Pilatus*

*Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1142 (10th Cir. 2009) ("An issue is not preserved for

appeal unless a party alerts the district court to the issue *and seeks a ruling*." (emphasis

added)).

For the above reasons, this Court should decline to address Coughlin's

argument. Regardless, the argument only further reveals how divergent Coughlin's

position is from the law.

**B.  The Supreme Court and, more importantly, Congress have consistently
upheld tribal sovereign immunity for off-reservation commercial activity.**

"*Kiowa* itself was no one-off . . . ." *Michigan v. Bay Mills Indian Community*, 572

U.S. 782, 798 (2014). Rather, it "reaffirmed a long line of precedents, concluding that the

doctrine of tribal immunity—without any exceptions for commercial or off-reservation

conduct—is settled law." *Id.* (quotations omitted). The Supreme Court, Indian tribes,

and those doing business with them have relied on it for decades. *See id.* at 798-99.

Indeed, the Supreme Court expressly reaffirmed it six years ago in *Bay Mills*,

which involved off-reservation gaming activity. *See id.* at 786-87, 803. In doing so, the

Supreme Court reiterated an important principle of Indian law, a principle that

Coughlin appears to miss entirely: "[I]t is fundamentally Congress's job, not ours, to

determine whether or how to limit tribal immunity." *Id.* at 800. But the *Bay Mills* Court

added one important observation:

> Following *Kiowa*, Congress considered several bills to substantially
> modify tribal immunity in the commercial context. Two in particular—
> drafted by the chair of the Senate Appropriations Subcommittee on the
> Interior—expressly referred to *Kiowa* and broadly abrogated tribal

3

**J.A. 343**

immunity for most torts and breaches of contract. But instead of adopting those reversals of *Kiowa*, Congress chose to enact a far more modest alternative requiring tribes either to disclose or to waive their immunity in contracts needing the Secretary of the Interior's approval. . . . So rather than confronting, as we did in *Kiowa*, a legislative vacuum as to the precise issue presented, we act today against the backdrop of a congressional choice: to retain tribal immunity . . . in a case like this one.

*Id.* at 801-02.

Congress has had yet another six years to reflect on *Kiowa*—and now *Bay Mills*. And as Coughlin acknowledges, it has not acted to abrogate that precedent or to otherwise limit tribal sovereign immunity in the context of off-reservation commercial activity. (*See* Sur-Reply Br., Dkt. 97-1 pp.1-2). So Coughlin raises a vague policy basis for the Supreme Court to do it. (*Id.* at 2.) This flies in the face of the very foundation of *Kiowa* and *Bay Mills*. Again, "it is fundamentally Congress's job"—not the Supreme Court's job—"to determine whether or how to limit tribal immunity." *Bay Mills*, 572 U.S. at 800.

Notably, "Congress is in a position to weigh and accommodate the competing policy concerns and reliance interests" involved in this issue. *Kiowa*, 573 U.S. at 759. And although unnecessary, it seems apropos to reflect on one of the competing policies that Coughlin fails to consider. Justice Sotomayor's concurrence in *Bay Mills* provides a good summary:

A key goal of the Federal Government is to render Tribes more self-sufficient, and better positioned to fund their own sovereign functions, rather than relying on federal funding. And tribal business operations are critical to the goals of tribal self-sufficiency because such enterprises in some cases may be the only means by which a tribe can raise revenues[.]"

4

**J.A. 344**

> This is due in large part to the insuperable (and often state-imposed)
> barriers Tribes face in raising revenue through more traditional means.

*Id.* at 810 (Sotomayor, J., concurring) (citations omitted). Congress must weigh this and

other policies against the policy now offered by Coughlin. And on balance, it has

chosen to leave tribal sovereign immunity intact in the context of off-reservation

commercial activity.

In summary, tribal sovereign immunity applies to off-reservation commercial

activity, the same as it does in other contexts. *E.g.*, *Bay Mills*, 572 U.S. 782; *Kiowa*, 523

U.S. 751. As Coughlin acknowledges, Congress has never unequivocally expressed its

intention to change that.

## II. Coughlin's newest theory for relief is not plausibly pled.

Coughlin asks this Court to entertain yet another new theory for relief: piercing

the corporate veil. (Sur-Reply Br., Dkt. 97-1 pp.2-3). This theory must fail because even

with the gratuitous number of extrinsic documents that Coughlin has injected into this

proceeding, he has not alleged a plausible basis to pierce all of the corporate veils of the

tribal entities.[1]

*United States v. Bestfoods*—a case that Coughlin relies on—explains that corporate

ownership and its concomitant control are not bases for piercing the corporate veil:

---

[1] The Tribe relies on its previous arguments that Coughlin cannot raise new allegations
and request the Court to take judicial notice of the substance of over 30 pages of
extrinsic documents. (*See* Reply Br., Dkt. 92 pp.1-2). And the Tribe reiterates the concern
it raised in its principal brief: Coughlin's approach left the Tribe without sufficient
notice of the claim against it. (Prin. Br., Dkt. 73-1 p.7 n.2).

**J.A. 345**

> It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries. Thus it is hornbook law that the exercise of the "control" which stock ownership gives to the stockholders will not create liability beyond the assets of the subsidiary. That "control" includes the election of directors, the making of by-laws and the doing of all other acts incident to the legal status of stockholders. Nor will a duplication of some or all of the directors or executive officers be fatal.

524 U.S. 51, 61-62 (1998) (quotations and citations omitted). Rather, piercing the corporate veil is appropriate when "the corporate form would otherwise be *misused* to accomplish certain *wrongful purposes*, most notably fraud, on the shareholder's behalf." *Id.* at 62 (emphasis added).

Here, Coughlin did not allege that the Tribe has misused the corporate form of the tribal entities to accomplish wrongful acts on its behalf. (*See generally* Pleading, Dkt. 27). And the extrinsic documents that he has introduced only show ownership and control generally held by stockholders. (*See generally* Resp. Br., Dkt. 82 pp.23-55). They do not plausibly support misuse of the tribal entities for the purpose of conducting wrongful acts on the Tribe's behalf.

Coughlin may feel that his response brief and sur-reply contain sufficient allegations to support misuse for wrongful acts, but those allegations are not before the Court on this motion to dismiss. Indeed, while Coughlin argued in his sur-reply that this Court can take judicial notice of his extrinsic documents, he did not argue that the Court can consider the new allegations that he has introduced. (*See generally* Sur-Reply Br., Dkt. 97-1 p.6).

**J.A. 346**

In summary, this Court should hold Coughlin to his pleading obligations and conclude that he has not supported a theory for piercing the corporate veil of the tribal entities and, more to the point, that he has failed to allege any plausible claim for relief against the Tribe.

### Conclusion

Coughlin's new arguments and theories only further entrench him on the wrong side of the law and demonstrate the deficiencies in his pleading. The Tribe respectfully asks this Court to grant its motion to dismiss.

Dated: September 30, 2020                    Respectfully submitted,

                                             /s/ Adrienne K. Walker
                                            Adrienne K. Walker, Esq.
                                            Aaron M. Williams, Esq.
                                            MINTZ, LEVIN, COHN, FERRIS,
                                              GLOVSKY AND POPEO, P.C.
                                            One Financial Center
                                            Boston, Massachusetts  02111
                                            Tel:  617-542-6000
                                            Fax:  617-542-2241
                                            E-mail: awalker@mintz.com
                                                    amwilliams@mintz.com

                                            Andrew Adams III, Esq. (pro hac vice)
                                            Peter J. Rademacher, Esq. (pro hac vice)
                                            Hogen Adams PLLC
                                            1935 County Road B2 West, Suite 460
                                            St. Paul, Minnesota 55113
                                            Tel:  651-842-9100
                                            Fax:  651-842-9101
                                            E-mail: aadams@hogenadams.com
                                                    prademacher@hogenadams.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT MASSACHUSETTS

|  |  |
|---|---|
| In re: | Chapter 13 |
| BRIAN W. COUGHLIN, | Case No. 19-14142-FJB |
| Debtor. | |

### RESPONSE TO DEBTOR'S SUR-REPLY [DOC. 97]

Niiwin, LLC d/b/a Lendgreen ("Lendgreen"), L.D.F. Business Development Corporation ("BDC"), L.D.F. Holdings, LLC ("LDF" and together with Lendgreen and BDC, the "Respondents"),[1] pursuant to this Court's order dated September 23, 2020 [Doc. 107], file this response to debtor Brian Coughlin's ("Debtor") sur-reply filed on September 18, 2020 [Doc. 97] (the "Sur-Reply"). In support, the Respondents state as follows:

### PRELIMINARY STATEMENT

1.      While Debtor received leave to file the Sur-Reply, the new allegations and legal theories in the Sur-Reply are improper and should not be considered for purposes of the Court's resolution of the Motion to Dismiss [Doc. 74]. Even if considered, the Sur-Reply's new allegations and legal theories do not save the Stay Motion from this Court's proper dismissal.

### ARGUMENT

**A.      The Sur-Reply's New Theories and Allegations Should Not be Considered.**

2.      As detailed in the Motion to Strike [Doc. 104], it is well settled in the First Circuit that arguments and issues raised for the first time in a reply should not be considered by the court. *See, e.g., Johnson v. Indymac Mortg. Serv'g*, No. 12-10808-MBB, 2014 WL 1652594, at *5 n.14

---

[1] The Tribe retained separate counsel and it is anticipated the Tribe will file its own response to the Sur-Reply, which Respondents incorporate herein by reference.

(D. Mass. Apr. 22, 2014) ("Although a litigant may use a reply brief to clarify arguments previously made or to respond to an argument an opposing party raises in an opposition, ordinarily it is not appropriate to use a reply brief to raise a new argument."); *Del. County Employees Retirement Fund v. Portnoy*, No. 13-10405-DJC, 2014 WL 1271528, at \*9 n.6 (D. Mass. Mar. 26, 2014) ("The Court need not address substantive arguments raised in the Plaintiffs' reply that were available to them at the time they filed their motion and which do not respond to the arguments raised by the Defendants in their oppositions."); *Napert v. Gov't Employees Ins. Co.*, No. 13-10530-FDS, 2013 WL 3989645, at \*2 n.4 (D. Mass. Aug. 1, 2013) ("Where, as here, a moving party raises an argument for the first time in a reply brief, that argument is waived."); *Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) (concluding that arguments raised for the first time on reply were waived, noting that "[t]he purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum") (citing cases). "Sur–reply briefs, too, may not be used to offer new arguments or to renounce previously agreed-upon facts or legal premises." *Genereux v. Hardric Laboratories, Inc*., 2013 WL 12303198 (D. Mass. May 29, 2013).

3.      There is no reason Debtor could not have raised his new allegations or legal theories in the Stay Motion. Debtor does not even state a basis or justification for his failure to include the new allegations and legal theories in the Stay Motion. Debtor had every opportunity to raise the new theories and allegations but failed to do so. He has waived them. The purpose of a sur-reply is not to raise new arguments and allegations that could have been raised previously and the Court should not consider them for purposes of resolving the Motion to Dismiss.

4.      The Sur-Reply's new theories and allegations include (i) challenging the United States Supreme Court's holding in *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*,

2

523 U.S. 751, 760 (1998) that "Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation"; (ii) arguing that *Breakthrough Management Group Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1171 (10th Cir. 2020) supports treating four distinct entities as one; (iii) requesting that the Court should take judicial notice of pleadings in an unrelated case (*Walker v. Lendgreen*, Case No. 8:16-CV-00862-JDW-AAS (M.D. Fla. 2016)) despite the complete absence of allegations in the Stay Motion on the facts sought to be judicially noticed; and (iv) attempting to introduce new allegations regarding the Respondents' alleged creation, purpose, intent, and corporate structure, among other allegations. Debtor's new legal theories and allegations raised in the Sur-Reply do not save the Stay Motion from dismissal.

> **B.     The Sur-Reply's New Challenge to *Kiowa* Fails.**

5.      Debtor's new challenge to *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 760 (1998) is raised for the first time in the Sur-Reply and is an apparent attempt to preserve an appellate argument. Any challenge to *Kiowa* is not properly before the Court or preserved for appeal. As addressed in the Motion to Strike and as addressed herein, new arguments cannot be raised in sur-replies. Motion to Strike p. 2-4. Moreover, Debtor does not even request that this Court overturn *Kiowa*. Instead, Debtor appears to state that he does not accept *Kiowa* and "reserves the right" to raise his argument on appeal and specifically argues that the Supreme Court should dismantle it; not this Court. *See* Sur-Reply p.1-2. Because Debtor is not asking this Court for a ruling on this challenge, it is forfeited and waived. *See U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1142 (10th Cir. 2009) ("An issue is not preserved for appeal unless a party alerts the district court to the issue *and seeks a ruling*." (emphasis added)).

WA 15247351.2

6.      Notwithstanding the improper nature of Debtor challenging *Kiowa* for the first time in the Sur-Reply, and his waiver of such challenge as a practical matter, the Supreme Court and Congress have consistently upheld tribal immunity for off-reservation commercial activity. *See e.g., Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 798 (2014) ("*Kiowa* itself was no one-off . . . . [it] reaffirmed a long line of precedents, concluding that the doctrine of tribal immunity—without any exceptions for commercial or off-reservation conduct—is settled law.").

7.      Congress has had several years to reflect on *Kiowa* and *Bay Mills*, yet, it has not acted to abrogate that precedent or to otherwise limit tribal sovereign immunity in the context of off-reservation commercial activity. Debtor's vague policy argument is unpersuasive and flies in the face of the foundation of *Kiowa* and *Bay Mills*.

8.      Tribal sovereign immunity applies to off-reservation commercial activity, the same as it does in other contexts. *E.g.*, *Bay Mills*, 572 U.S. 782; *Kiowa*, 523 U.S. 751. Congress has not unequivocally expressed its intention to change this Supreme Court precedent, and the doctrine of stare decisis binds this Court. *United States v. Moore-Bush*, 963 F.3d 29, 37 (1st Cir. 2020) ("The doctrine [of stare decisis] is commonly divided into horizontal and vertical precedent. Vertical precedents are decisions in 'the path of appellate review,' meaning Supreme Court decisions control all lower federal courts and circuit court decisions control federal district courts in their circuits.") (citations omitted)).

**C.      The Sur-Reply's New Reliance on *Breakthrough Management* is Misplaced.**

9.      Debtor argues that based on *Breakthrough Management*, the Court should deem Lendgreen, BDC, Holdings, and the Tribe as one entity susceptible to suit, and should therefore hold the four distinct entities each liable for the alleged actions of Lendgreen. The argument fails as both a legal and factual matter.

4

10.    First, *Breakthrough Management* does not address disregarding corporate form and separateness, which Debtor is ostensibly attempting to accomplish here. This was not even an issue in *Breakthrough Management.* Instead, *Breakthrough Management* addressed the circumstances under which a tribe's economic entity qualifies as a subordinate economic entity entitled to share in the tribe's immunity—*i.e.*, when an entity is an arm of the tribe. *Id*. at 1187. Debtor concedes, however, that Lendgreen, BDC, and Holdings are arms of the Tribe (Stay Motion ¶ 3; Objection p.14; Sur-Reply p.2), and does not dispute that Lendgreen, BDC, and Holdings are otherwise entitled to the Tribe's tribal immunity. Thus, *Breakthrough Management*, which merely addresses the circumstances under which an entity is an arm of the tribe, is irrelevant to Debtor's apparent attempt to disregard the Respondent's corporate form and separateness.

11.    Moreover, *Breakthrough Management* does not support Debtor's argument that as arms of the Tribe, Lendgreen, BDC, and Holdings cannot also retain corporate form and separateness. When and whether an entity is an arm of a tribe entitled to tribal immunity is a separate and distinct legal determination from when and whether to disregard corporate form and separateness. While the proximity of a relationship may be one of several factors a court might consider in weighing whether to disregard corporate form and separateness pursuant to a recognized legal theory, it is not dispositive on the issue. More importantly, Debtor fails to cite a single case that holds that being an arm of the tribe is a *per se* forfeiture of corporate form and separateness. Again, these are distinct legal concepts that Debtor is attempting to conflate. Neither *Breakthrough Management* nor any other case cited by Debtor provides a legal basis for disregarding the Respondents' corporate form and separateness.

12.    Second, even if *Breakthrough Management* provided a legal basis for holding BDC, Holdings, and the Tribe liable for Lendgreen's alleged actions—which Respondents strongly

5

deny—the Stay Motion fails to allege facts to support any legal basis for disregarding corporate form and separateness. In an apparent recognition of this flaw, Debtor requests the Court take judicial notice of facts not alleged in the Stay Motion. Specifically, Debtor requests the Court take judicial notice of pleadings filed in an unrelated case four years ago in an attempt to introduce new allegations concerning the Respondents' alleged creation, purpose, intent, and corporate structure, among other allegations.

13.     These new allegations are conspicuously absent from the Stay Motion and Debtor's attempt to use judicial notice to cure this failure similarly fails. "Judicial notice is a rule of convenience, intended to save time and resources by dispensing *with the presentation of evidence*, and is intended to avoid the formal introduction of evidence in limited circumstances where the fact sought to be proved is so well known that evidence in support thereof is unnecessary." AM. JUR. EVIDENCE § 24. (citations omitted) (emphasis added). Judicial notice does not cure a party's failure to allege facts as an initial matter, as Debtor has here. The Stay Motion fails to allege facts Debtor now requests the Court take judicial notice. Moreover, the contents of the filings are not susceptible to judicial notice. Judicial notice of four-year-old filings in an unrelated case merely operates to introduce that parties in an unrelated case filed certain pleadings on certain dates. *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court *not for the truth of the matters asserted* in the other litigation, but rather to establish the fact of such litigation and related filings.") (emphasis added). The Sur-Reply's new allegations are improper, and not subject to consideration for purposes of the Motion to Dismiss.

6

WA 15247351.2

**J.A. 353**

14.    Finally, Debtor's passing reference to corporate veil piercing is not plausibly pled. *See* Sur-Reply p. 2-3.[2] As an initial matter, *Breakthrough Management* did not address veil piercing and does not provide a basis for applying that doctrine here. *United States v. Bestfoods*—a case Debtor relies on—explains that corporate ownership and its concomitant control are not bases for piercing the corporate veil:

> It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries. Thus it is hornbook law that the exercise of the "control" which stock ownership gives to the stockholders will not create liability beyond the assets of the subsidiary. That "control" includes the election of directors, the making of by-laws and the doing of all other acts incident to the legal status of stockholders. Nor will a duplication of some or all of the directors or executive officers be fatal.

524 U.S. 51, 61-62 (1998) (quotations and citations omitted). Rather, piercing the corporate veil is appropriate when "the corporate form would otherwise be *misused* to accomplish certain *wrongful purposes*, most notably fraud, on the shareholder's behalf." *Id.* at 62 (emphasis added). The Stay Motion does not allege that Respondents have misused corporate form to accomplish any wrongful acts. While Debtor may attempt to cure this fatal flaw by attempting to introduce pleadings from an unrelated case, he has not argued that the Court should consider his new allegations, or that there is even a basis for the

---

[2] For the avoidance of doubt, the Respondents argue it is improper for Debtor to raise a veil piercing theory (along with the other new theories and allegations) for the first time in the Sur-Reply, and the Respondents reserve all rights to challenge any consideration of new legal theories or allegations for purposes of resolving the Motion to Dismiss.

WA 15247351.2

**J.A. 354**

Court to consider his new allegations. Moreover, these new allegations do not support application of veil piercing.

### D.    The Sur-Reply does not cure the fatal flaws of the Stay Motion.

15.    The Stay Motion's fatal flaws include the failure to allege a factual or legal basis for treating Lendgreen, BDC, Holdings, and the Tribe as one entity. Of course, the Court must accept all well-pleaded factual allegations in the Stay Motion as true, drawing reasonable inferences in Debtor's favor. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court can dismiss the Stay Motion, however, if Debtor has failed to demonstrate a plausible entitlement to relief. *Id.*

16.    The inquiry into plausibility is a two-step process, whereby the Court must first "sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)" and then "consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." *In re Blast Fitness Group, LLC*, 2020 WL 2027219 (Bankr. Mass. April 27, 2020) (quoting *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citing *Morales–Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [a court] 'to draw on' [its] 'judicial experience and common sense.' " *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). " 'Moreover, *each* defendant's role in the adverse action must be sufficiently alleged to make him or her a plausible defendant. After all, we must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted.' " *Blast Fitness*, 2020 WL 2027219 *2 (quoting *Rodriguez-Ramos v. Hernandez-Gregorat*, 685 F.3d 34, 40-41 (1st Cir.

WA 15247351.2

2012) (quoting *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 16 (1st Cir. 2011) (alteration in original); *see also Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 594 (1st Cir. 2011) ("[S]ave under special conditions, an adequate complaint must include not only a plausible claim but also a plausible defendant.").

17.    The Stay Motion does not plead a plausible entitlement to relief against BDC, Holdings, or the Tribe. As detailed in the Motion to Dismiss and the Reply [Doc. 93], Lendgreen is the party Debtor alleges committed a willful violation of the automatic stay, not BDC, Holdings, or the Tribe. *See* Motion to Dismiss at 4-8; Reply at 3-5. Moreover, the Stay Motion fails to plead a plausible entitlement—both a factual and legal basis—for holding BDC, Holdings, and the Tribe liable for the alleged actions of Lendgreen. *Id*. The Sur-Reply does not—and for the reasons addressed herein, cannot—change this inescapable conclusion.


[*Remainder of Page Intentionally Left Blank*]

WA 15247351.2

WHEREFORE, Lendgreen, BDC, and Holdings respectfully request this Court enter an order (i) granting the Motion to Dismiss; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: September 30, 2020

Respectfully submitted,

/s/  Adrienne K. Walker
Adrienne K. Walker, Esq.
Aaron M. Williams, Esq.
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts  02111
Tel:  617-542-6000
Fax:  617-542-2241
E-mail: awalker@mintz.com
amwilliams@mintz.com

SPENCER FANE LLP

/s/  Zachary R.G. Fairlie
Scott J. Goldstein; admitted pro hac vice
Zachary R.G. Fairlie; admitted pro hac vice
1000 Walnut Street, Suite 1400
Kansas City, Missouri  64106
Tel: (816) 474-8100
Fax: (816) 474-3216
sgoldstein@spencerfane.com
zfairlie@spencerfane.com

## CERTIFICATE OF SERVICE

I, Adrienne K. Walker, do hereby certify that on the September 30, 2020, I caused a copy of the foregoing to be served through the ECF system, and that copies will be sent electronically to registered participants and paper copies will be sent to those indicated as non-registered participants requesting notice as of the date herein.

Dated:  September 30, 2020

/s/  Adrienne K. Walker

10

WA 15247351.2

**J.A. 357**

Case 19-14142   Doc 118   Filed 10/27/20   Entered 10/27/20 11:56:58   Desc Main
Document        Page 1 of 1



## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re:* | |
| BRIAN W. COUGHLIN, | Ch. 13 |
|     Debtor | 19-14142-FJB |

### Order

**MATTER:**

#117 Motion filed by Debtor Brian W. Coughlin to Extend Time to Appeal Under Rule 8002(c) [Re: 113 Opinion Issued, 114 Order on Motion For Sanctions/Costs]

Granted.  The time to file a notice of appeal is hereby extended to November 23, 2020.

Dated: 10/27/2020

By the Court,

Frank J. Bailey
United States Bankruptcy Judge

**J.A. 358**

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br><br>               Debtor. | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO.: 19-14142-FJB |

## <u>NOTICE OF APPEAL</u>

NOW COMES Brian W. Coughlin, the Debtor in the above-captioned Chapter 13 bankruptcy case, and, pursuant to Fed. R. Bankr. Pro. 8002 and 8003, and hereby serves notice of his appeal, pursuant to 28 U.S.C. § 158(d)(2)(A), from the Order issued by the Honorable Frank J. Bailey, United States Bankruptcy Judge for the District of Massachusetts, Eastern Division, in the above captioned-case, as entered on the docket of the above-captioned case on October 19, 2020, granting the Appellees' Motions to Dismiss the Motion of the Debtor to Enforce the Automatic Stay based upon a lack of subject-matter jurisdiction over Indian tribes and entities acting as "arms of the tribe" based upon a claim of common-law tribal sovereign immunity from suit.

A copy of the aforementioned Order is attached hereto as Exhibit "A". The Appellant/Debtor elects to have this appeal heard by the United States Circuit Court of Appeals of the First Circuit, pursuant to Fed. R. Bankr. Pro. 8006(f) and Fed. R. of App. Pro. 6(c).

The names of all parties to the Order referenced above who have entered appearances with respect to the foregoing Order appealed from and their names, addresses and telephone numbers of their respective attorneys are as follows:

### <u>Brian W. Coughlin, Appellant</u>

Richard N. Gottlieb, Esq.
Law Offices of Richard N. Gottlieb
Ten Tremont Street
Suite 11, 3rd Floor
Boston, MA 02108
(617) 742-4491

Terrie Harman
Alfano Law Offices
129 Water Street
Exeter, NH 03883
(603) 431-0666

Michael D. Cameron
Alfano Law Offices
4 Park Street, Suite 405
Concord, NH 03301
(603) 581-4684

**J.A. 359**

**L.D.F. Business Development Corporation, Appellee**

Adrienne Walker, Esq.
Mintz, Levin, Cohn, Ferris,
Glovsky & Popeo, LLP
One Financial Center
Boston, MA 02111
(617)-542-6000
awalker@mintz.com

Zachary Fairlie, Esq.
Spencer Fane
1000 Walnut Street
Suite 1400
Kansas City, MO 64106
(816) 292-8223

Scott J. Goldstein, Esq.
Spencer Fane Britt & Brownie
1000 Walnut Streett
Suite 1400
Kansas City, MO 64106
(816) 292-8218

**LDF Holdings, LLC, Appellee**

Adrienne Walker, Esq.
Mintz, Levin, Cohn, Ferris,
Glovsky & Popeo, LLP
One Financial Center
Boston, MA 02111
(617)-542-6000
awalker@mintz.com

Zachary Fairlie
Spencer Fane
1000 Walnut Street
Suite 1400
Kansas City, MO 64106
(816) 292-8223

Scott J. Goldstein, Esq.
Spencer Fane Britt & Brownie
1000 Walnut Street
Suite 1400
Kansas City, MO 64106
(816) 292-8218

**Lac du Flambeau Band of Lake Superior Chippewa Indians, Appellee**

Adrienne Walker, Esq.
One Financial Center
Mintz, Levin, Cohn, Ferris,
Glovsky & Popeo, LLP
Boston, MA 02111
(617)-542-6000
awalker@mintz.com

Andrew Adams, III, Esq.
1935 County Road B2 West
Suite 460
St. Paul, MN 55113
(617)-542-6000
awalker@mintz.com

Zachary Fairlie, Esq.
Spencer Fane
1000 Walnut Street
Suite 1400
Kansas City, MO 64106
(816) 292-8223

Scott J. Goldstein, Esq.
Spencer Fane Britt & Brownie
1000 Walnut Streett
Suite 1400
Kansas City, MO 64106
(816) 292-8218

Peter J. Rademacher, Esq.                         (651) 842-9100
1935 County Road B2 West
Suite 460
St. Paul, MN 55113
**Niiwin, LLC d/b/a Lendgreen, Appellee**

Adrienne Walker, Esq.                            Zachary Fairlie, Esq.
Mintz, Levin, Cohn, Ferris,                       Spencer Fane
Glovsky & Popeo, LLP                              1000 Walnut Street
One Financial Center                              Suite 1400
Boston, MA 02111                                  Kansas City, MO 64106
(617)-542-6000                                    (816) 292-8223
awalker@mintz.com
                                                  Scott J. Goldstein, Esq.
                                                  Spencer Fane Britt & Brownie
                                                  1000 Walnut Street
                                                  Suite 1400
                                                  Kansas City, MO 64106
                                                  (816) 292-8218

                                                  Respectfully submitted,

                                                  BRIAN W. COUGHLIN, Debtor/Appellant,
                                                  By his attorneys,

Date: November 2, 2020                            */s/ Richard N. Gottlieb, Esq.*
                                                  Richard N. Gottlieb, Esq.
                                                  Mass. BBO #547970
                                                  Law Offices of Richard N. Gottlieb
                                                  Eleven Beacon Street
                                                  Suite 325
                                                  Boston, MA 02108
                                                  (617) 742-4491

                                                  */s/Terrie Harman, Esq.*
                                                  Terrie Harman, Esq., Pro Hac Vice
                                                  Alfano Law Offices
                                                  129 Water Street
                                                  Exeter, NH 03883
                                                  (603) 431-0666

                                                  */s/Michael D. Cameron, Esq.*
                                                  Michael D. Cameron, Esq.
                                                  Alfano Law Offices
                                                  4 Park Street, Suite 405
                                                  Concord, NH 03301
                                                  (603) 581-4684

Case 19-14142    Doc 121    Filed 11/02/20    Entered 11/02/20 13:48:01    Desc Main
Document     Page 4 of 7

# Exhibit "A"



## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re:*<br><br>BRIAN W. COUGHLIN,<br>Debtor | Ch. 13<br><br>19-14142-FJB |

### Order

**MATTER:**

#27 Motion filed by Debtor Brian W. Coughlin to Enforce the Automatic Stay

For the reasons set forth in the separate memorandum of decision issued today, the Debtor's Motion to Enforce the Automatic Stay is hereby denied for lack of subject matter jurisdiction.

Dated: 10/19/2020

By the Court,

*Frank J Bailey*

Frank J. Bailey
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

| | |
|---|---|
| In re<br><br>BRIAN W. COUGHLIN<br><br>                    Debtor | Chapter 13<br>Case No. 19-14142-FJB |

### CERTIFICATION REGARDING DIRECT APPEAL

The chapter 13 debtor, Brian W. Coughlin ("the Debtor"), having filed a motion under 11 U.S.C. §

362(k)(1) to enforce the automatic stay against the Lac du Flambeau Band of Lake Superior Chippewa

Indians ("the Tribe"), a federally recognized Indian tribe, and against three of the Tribe's subsidiary

entities, specifically the Lac du Flambeau Business Development Corporation, LDF Holdings, LLC, and

Niiwin, LLC (collectively, "the "Respondents") ("the Motion");

The Respondents having moved to dismiss the Motion on the basis that, as a federally

recognized Indian tribe and arms thereof, they enjoy immunity from suit and that such immunity has not

been abrogated by 11 U.S.C. § 106(a)(1);

The Debtor having opposed dismissal on the basis of his argument that § 106(a)(1) does

abrogate such immunity;

The Court having agreed with the Respondents that § 106(a)(1) does not abrogate the

Respondents' immunity and, on the basis of the resulting lack of subject matter jurisdiction, denied the

Motion ("the Order");

The Debtor having filed a notice of appeal to the Bankruptcy Appellate Panel from the Order;

In conjunction with this appeal, the Debtor having now moved under 28 U.S.C. § 158(d)(2)(B)(i)

for this court's certification that the circumstances specified in 28 U.S.C. § 158(d)(2)(A)(i), (ii), and (iii)

exist;

**J.A. 364**

No opposition having been filed;

The court being satisfied that circumstances (i) and (iii) exist; and

The court being bound by § 158(d)(2)(B) to make the requested certification if any one of the

circumstances in question exists;

The court now hereby certifies that

> (i) the order that is the subject of the appeal involves a question of law as to which there
>
> is no controlling decision of the Court of Appeals for the First Circuit or of the Supreme
>
> Court of the United States, such that the circumstance identified in § 158(d)(2)(A)(i)
>
> exists; and
>
> (ii) an immediate appeal from the order may materially advance the progress of the
>
> Motion, such that the circumstance identified in § 158(d)(2)(A)(iii) exists.

Date:  November 18, 2020

_____
Frank J. Bailey
United States Bankruptcy Judge

**J.A. 365**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS - BOSTON


IN THE MATTER OF:              :    Case No. 19-14142

BRIAN W. COUGHLIN,             :    Boston, Massachusetts
                                    **Tuesday, September 22, 2020**
      Debtor.                  :    2:04:53 p.m.


: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :


TRANSCRIPT OF HEARING ON:
[73] MOTION FILED BY CREDITOR, LAC DU FLAMBEAU BAND
OF LAKE SUPERIOR CHIPPEWA INDIANS, TO DISMISS
CONTESTED MATTER RE: 27 MOTION TO ENFORCE
AUTOMATIC STAY AND DEBTOR'S OBJECTION THERETO;
[#74] MOTION FILED BY CREDITORS, L.D.F. BUSINESS
DEVELOPMENT CORPORATION, LDF HOLDINGS, LLC,
NIIWIN, LLC D/B/A LENDGREEN, TO DISMISS CONTESTED
MATTER RE: 27 MOTION TO ENFORCE AUTOMATIC STAY
AND DEBTOR'S OBJECTION THERETO
BEFORE THE HONORABLE FRANK J. BAILEY, J.U.S.B.C.

**APPEARANCES (via Zoom):**

<u>For the Debtor</u>:                RICHARD N. GOTTLIEB, ESQ.
                                 Ten Tremont Street, Suite 11
                                 Boston, MA  02108

                                 Alfano Law Office, PLLC
                                 BY:  TERRIE HARMAN, ESQ.
                                      MICHAEL D. CAMERON, ESQ.
                                 129 Water Street
                                 Exeter, NH  03833


<u>Audio Operator</u>:              LISA BELANGER, ECRO


Transcript prepared by:          JANICE RUSSELL TRANSCRIPTS
                                 1418 Red Fox Circle
                                 Severance, CO  80550
                                 (757) 422-9089
                                 trussell31@tdsmail.com


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.


**J.A. 366**

2

```
 1    APPEARANCES (via Zoom):

 2    For Creditors, L.D.F. Business      Spencer Pane
      Development Corporation, LDF        BY   ZACHARY FAIRLIE, ESQ.
 3    Holdings, LLC, Niiwin, LLC          1000 Walnut St., Suite 1400
      d/b/a Lendgreen, and Lac du         Kansas City, MO  64106
 4    Flambeau Band of Lake Superior
      Chippewa Indians:                   Mintz Levin
 5                                         BY:  ADRIENNE WALKER, ESQ.
                                          One Financial Center
 6                                         Boston, MA  02111

 7    For Creditor Lac du Flambeau Band   PETER J. RADEMACHER, ESQ.
      of Lake Superior Chippewa Indians:  1935 County Rd B2 West, #460
 8                                         St. Paul, MN  55113

 9    .

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

<center>P R O C E E D I N G S</center>

1

2      THE COURT:  All right.  Good afternoon, everyone.

3      MS. WALKER:  Good afternoon, your Honor.

4      MR. GOTTLIEB:  Good afternoon, your Honor.

5      THE COURTROOM DEPUTY:  Judge Bailey, just to let you

6  know, one of the attorneys got dropped already, Attorney

7  Zachary Fairlie.  So I'll let him back in as soon as he tries

8  to get back in.

9      THE COURT:  Okay.  All right.  Well, let's give him a

10  second here.

11     (Pause)

12     THE COURTROOM DEPUTY:  Here we go.  Give me a second.

13     Okay, your Honor.  He is back in.

14     THE COURT:  Okay.  All right.

15     Mary, go ahead and call the case.

16     THE COURTROOM DEPUTY:  Thank you, your Honor.

17     19-14142, Brian W. Coughlin.  This is the hearing on

18  No.74, Motion filed by Creditors, L.D.F. Business Development

19  Corporation, LDF Holdings, Niiwin, LLC, to Dismiss Contested

20  Matter Regarding 27, Motion to Enforce the Automatic Stay.

21  It's also a hearing on No. 73, Motion filed by the Debtor -- by

22  the -- sorry.  Excuse me -- the Creditor, Lac du Flambeau Band

23  of Lake Superior Chippewa Indians, to Dismiss the Contested

24  Matter Regarding 27, Motion to Enforce the Automatic Stay.

25     Will the parties please state their names for the

#19-14142                                              9-22-2020

<center>**J.A. 368**</center>

**4**

```
 1   record?

 2          MR. GOTTLIEB:  Attorney Richard Neal Gottlieb

 3   representing Brian W. Coughlin, your Honor.

 4          MS. HARMAN:  Terrie Harman of Alfano Law Offices

 5   representing the debtor, Brian Coughlin.

 6          MR. CAMERON:  Attorney Mike Cameron from Alfano Law

 7   Offices also representing Mr. Coughlin.

 8          MS. WALKER:  Good afternoon, your Honor.  This is

 9   Adrienne Walker on behalf of Niiwin, LLC d/b/a Lendgreen,

10   L.D.F. Business Development Corporation, and LDF Holdings as

11   well as local counsel to Lac du Flambeau Band of the Lake

12   Superior Chippewa Indians.  Your Honor, I'm going to let my co-

13   colleagues announce themselves.

14          MR. FAIRLIE:  Good afternoon, your Honor.  Zach

15   Fairlie on behalf of Niiwin, LLC d/b/a Lendgreen, L.D.F.

16   Business Development Corporation, and LDF Holdings, LLC.

17          MR. RADEMACHER:  And, your Honor, Peter Rademacher,

18   counsel for the Lac du Flambeau Band of Lake Superior Chippewa

19   Indians.

20          THE COURT:  Okay.  Is that everyone?  Sounds like it.

21   It looks like it.  Okay.

22          So who's going to be arguing for the debtor?

23          MR. GOTTLIEB:  I will be, your Honor.  Attorney

24   Richard Gottlieb.

25          THE COURT:  Okay.
```

**J.A. 369**

**5**

```
 1         And let's see.  So if we work our way through the,
 2  through the list, I, will we hear from each of Ms. Walker,
 3  Mr. Fairlie, Mr. Rademacher?
 4         MS. WALKER:  Your Honor, this is Adrienne Walker.  And
 5  I think we -- we discussed before the hearing how best to
 6  proceed and if we could just suggest a bit of an agenda as well
 7  as who's going to be taking some of the different arguments.
 8         So we do have the two matters on, the motion to strike
 9  as well as the substantive motion to dismiss.  I'm going to
10  address the motion to strike and then the main motion to
11  dismiss, there are two primary arguments, one more on sovereign
12  immunity and jurisdiction.  And Mr. Rademacher's going to take
13  lead on that and Mr. Fairlie is going to take lead on the, on
14  the failure to state a claim and those related arguments.
15  Those arguments and issues do overlap by all the parties on the
16  respondents' side.
17         So they're available to address any questions and, of
18  course, any particulars relating to their client groups.
19         THE COURT:  Okay.  Let me, let me just repeat some of
20  that.  So, Ms. Walker, you're handling the motion to strike;
21  Mr. Rademacher is handling the sovereign immunity/
22  jurisdictional issue, which applies equally to, to all parties
23  or is briefed on behalf of all parties; and Mr. Fairlie is
24  going to handle what issues?
25         MS. WALKER:  The failure to state a claim.  So the,
```

**#19-14142**                                                    **9-22-2020**

**J.A. 370**

**6**

```
 1  whether or not the, those parties ought to be in there, you

 2  know, the 12 -- the 12 --

 3          THE COURT:  The 12(b)(6).  The 12(b)(6) arguments?

 4          MS. WALKER:  Yes.

 5          THE COURT:  Okay.  All right.

 6          Okay.  Okay.  Any other preliminaries?

 7          MR. GOTTLIEB:  I don't believe so, your Honor.

 8          THE COURT:  Very good.

 9          All right.  So I, I have this preliminary.

10  Jurisdiction always comes first, right?  So ultimately, I, I

11  need to make a determination about -- I -- I -- we looked at

12  whether sovereign immunity, you know, is, in fact, a

13  jurisdictional issue, and it is.  It does appear to be in the

14  First Circuit, at least, a jurisdictional issue.  If, if the

15  entity is immune under that doctrine, then I lack jurisdiction

16  to handle it.

17          So that may not matter so much except that it

18  certainly ought to come first and I have to decide that first.

19          But let's turn, then, I guess, to the procedural issue

20  of the motion to strike the most recent filing.  And I

21  recognize that I allowed that brief to be filed, just one of

22  those things, you know.  Came, came flying in and I sent the

23  order flying out, so.  But now I have a motion to strike it,

24  and I will tell you this.  When I saw the motion to strike, I

25  decided not to read it.  So I haven't read it yet, okay?
```

7

```
1              MS. WALKER:  Thank you.

2              THE COURT:  All right.

3              MS. WALKER:  Yes, your Honor.  Again, Adrienne Walker

4    for the respondents.

5              And, and, your Honor, it, it is atypical to file a

6    motion to strike and I think it is, generally, appropriate if

7    there is a discrete issue that needs, perhaps, needs to be

8    clarified, but it is usually within the four corners of the

9    reply.  So if the reply needed some point or, or some

10   particular response to a particular issue in the reply, that,

11   perhaps, is appropriate.

12             So I can understand and we understand why that would

13   be, generally, allowed and moved on.  Yet, when you take a look

14   at the surreply, you'll notice that for the first time after a

15   month of briefing that the debtor introduces new arguments and

16   new allegations and new theories, perhaps, as to the merits of

17   the underlying arguments, didn't prove it, came up with

18   additional arguments.

19             So this is an extraordinary measure on a Friday before

20   a hearing to introduce new allegations, new theories, and, in

21   essence, trying to argue rather than the discrete issues that

22   we have before you on, on, on the two issues brings in an

23   additional layer that, that is just beyond, beyond the four

24   corners of, of what we had before.  So we, we do think it is

25   inappropriate.
```

#19-14142                                                9-22-2020

1          And, and bear with you, myself, as I move my little

2    piece of paper over.

3          So our arguments really framed two points.  The

4    respondents are entitled to tribal immunity and the stay motion

5    fails to allege claims for the willful violations of the stay.

6          So in the, in the surreply for the first time the

7    debtors argue this new theory of whether or not there's a

8    single entity, whether or not there's a unity of interests

9    amongst the parties and brings back and brings in for the first

10   time this Breakthrough Management case and its standard.

11         So it is precisely because we're dealing with new

12   items that should have been briefed a month ago, if they were

13   to be appropriate, but certainly not at the last hour and

14   certainly beyond the scope of the motion to dismiss.  So it's

15   precisely for those discrete issues, which warranted the unique

16   response on the motion to strike, that, perhaps, would have not

17   otherwise been a typical course.

18         THE COURT:  So would you say that what's argued in

19   that surreply is not responsive to what had gone on before it?

20         MS. WALKER:  Exactly.  So the surreply raises these,

21   an entirely additional theory as to bringing in the parties and

22   goes beyond whether or not the, the parties and their

23   independent actions on the motion.  The stay violation motion

24   itself never raised any of these unity of interests arguments

25   and it's really for this first time that it's raised.

1         So it's, it's precisely because it's a new and

2    different allegation and theory.

3         THE COURT:  Okay.

4         All right.  Mr. Gottlieb.

5         MR. GOTTLIEB:  Your Honor, I believe that my sister

6    counsel loses the forest for the trees.  This is a motion to

7    enforce the automatic stay.  They, they filed an objection to

8    it asserting, among other things, the right of sovereign

9    immunity or tribal immunity, more appropriately.  I then file

10   a, a responsive brief basically saying that they don't have

11   sovereign immunity in this situation and furthermore, that they

12   are, in fact, an arm of the tribe and that there is, in fact, a

13   unity of interests which is in part of my response to their

14   motion to dismiss.  They file a response to my response

15   basically arguing now for the first time factors that had not

16   been raised in their prior objection.  It seemed only fair in

17   light of the fact that they raised for the first time new case

18   law in the form of the Bay Mills decision as well as the Kiowa,

19   the Kiowa case before the Supreme, that was before the Supreme

20   Court that I go forth and explicate the rationale that they

21   are, or at least defending my rationale that all of these

22   entities, in fact, are one entity for all important legal

23   purposes under the circumstances.

24        So I don't believe in the, in the larger scheme of

25   things that this is, this should be stricken from the record

#19-14142                                                  9-22-2020

**J.A. 374**

1  because it's merely there to assist the Court in making a

2  determination in the first instance whether there is sovereign

3  immunity and, therefore, court jurisdiction, as the Court

4  points out, to entertain a motion to enforce the automatic stay

5  under Title 11 of the United States Code.  Under those

6  circumstances, your Honor, I believe that this does not raise

7  any new arguments, *per se*, because the point that we're making

8  is that they violated the automatic stay.  It is they,

9  themselves, that are raising the issue of sovereign immunity.

10  I'm merely responding to their allegation of sovereign immunity

11  as against this Court.

12        THE COURT:  See, I'm, I'm quite mindful that in this

13  instance -- in this -- with respect to this motion your motion,

14  Mr. Gottlieb --

15        MR. GOTTLIEB:  Yes.

16        THE COURT:  -- for, for a 362(k) violation.  And then

17  we had what amounted to a preliminary hearing and at that

18  hearing I outlined what the briefing schedule would be.  I went

19  so far as to, in an effort to keep control of the briefing, I

20  did the extraordinary, somewhat extraordinary step for me at

21  least, to, to, to provide page limits, but I didn't add a

22  surreply.

23        MR. GOTTLIEB:  Granted, your Honor.  That's why we

24  filed a motion for leave to file it in the first instance.  It

25  was only -- there had been -- we felt that under the

1   circumstances that it was appropriate, given their reply to my

2   response, that I provide a surreply to it that ex, further

3   explicates the point of view that I made in my earlier

4   response.  I did not add anything that I had not already argued

5   before.

6           THE COURT:  Well, why do we need more, then, if what

7   you filed does nothing more than, doesn't add anything?

8           MR. GOTTLIEB:  It adds one thing which I believe is

9   important in the larger scheme of things towards the future of

10  this particular case and that is, that is preserving my

11  client's rights specifically with respect to an appeal that

12  will likely come upwards to the First Circuit and the question

13  is whether or not -- and this was the point of the exercise

14  from my side's point of view -- that we assert that,

15  notwithstanding the Supreme Court's decision in Kiowa, that

16  tribal immunity ought to be revisited and upon being revisited

17  invalidated.

18          THE COURT:  Why did you think that you needed to say

19  more in order to preserve your rights on appeal?

20          MR. GOTTLIEB:  Because it's been -- the case law is

21  fairly legion that those matters that are not specifically set

22  forth in the pleadings or in the matter below are deemed to be

23  issues that are waived, ultimately, on appeal before the First

24  Circuit or Supreme Court, as the, the case may be, your Honor.

25  That's the reason it was done.

1          THE COURT:  All right.  I, you know, I haven't, again,

2    I haven't read it because I saw the motion to strike and I

3    thought, then I looked at my order setting forth the briefing

4    schedule, realized that, you know, this really exceeded what I

5    had allowed.

6          Let's do this.  Well, first, I'll just ask 'cause I

7    don't know.

8          Ms. Walker, would the obvious curative response here,

9    other than striking it, is to offer your side an opportunity to

10   further respond to it.  Is that something that you'd like to

11   do?  Would that cure it from your standpoint?

12         MS. WALKER:  Your Honor, it truly goes beyond the

13   scope of the, the issues.  If you look back to the gating issue

14   of, on the stay motion, it just lists parties and doesn't bring

15   up any facts or any theories and it's only after all of that

16   briefing that now we have this new veil piercing unity of

17   interests which I don't think that there are enough even

18   allegations in the underlying to now get to this point and how

19   can we possibly respond to it.

20         So to me, it's just, actually, just adding an argument

21   without any basis to do so as a potential saving for a future

22   appellate argument.  So I --

23         THE COURT:  Well, you lost me, you lost me there,

24   though.  When you say -- so a -- my order allowing you some

25   time to respond wouldn't cure the, the unfairness of what's

13

1    been done?

2        MS. WALKER:  Well, to, to be candid, of course if we

3    had more time, then we could respond and, and then illustrate

4    to your Honor why those arguments are inappropriate here.  We

5    could do that, but it still loses sight of the underlying

6    stayed motion violations by -- there were no allegations as to

7    this unity.  It's just an entirely new theory of liability that

8    wasn't in the original issue before your Court.

9        So if you come back to what -- the, the substance of

10    the allegations are now being twisted to this new veil piercing

11    unity of interests without the substance behind it and,

12    perhaps, you know, he could bring other motions, but we could

13    certainly articulate.  I just think at this stage, your Honor,

14    we've already had a month of briefing.

15        THE COURT:  Yeah.

16        MS. WALKER:  And -- and it's -- it feels like a little

17    bit of fishing net here.

18        THE COURT:  Okay.  All right.

19        I'm going to go forward with everything else and I'll

20    come back to this at the end, but I'll -- I -- I -- I recognize

21    the issue.  Again, I haven't read the brief.  I was told first

22    that it was, didn't add anything new and then told that it was

23    critical, so.  And that, otherwise, appellate rights might not

24    have been preserved.  Anyway, problematic.

25        It also smacks, frankly, of two other things, in my

**J.A. 378**

1   mind.  One is we got new counsel and, and they decided, told me

2   I better do more, Mr. Gottlieb.  And secondly, I went first and

3   I want to go last.  That's what it sounds like.  So it's not,

4   you know, everybody always wants to help me by giving me more

5   argument --

6            MR. GOTTLIEB:  There --

7            THE COURT:  -- and more paper.  It's always in my best

8   interest to have that, but -- so --

9            MR. GOTTLIEB:  I -- I -- again, it's not a question

10  from our point of view, your Honor, from my side's point of

11  view, that we're trying to sandbag anyone.  If the opposing

12  side wishes to make a, a further submission and I'll stand pat

13  exactly where I am insofar as that's concerned.

14            But this was not the question of me getting the last

15  word in.  I, I recognize, your Honor, and from my experience

16  with your Honor that that doesn't always work for me, in any

17  event.  And I can honestly say that, again, part of the

18  rationale behind this was the raising of issues that were

19  raised in the, the reply briefs of the respondents, both of

20  them, particularly, as I said, the Kiowa decision and the Bay

21  Mills decision, that made me feel as though the, what I had

22  submitted previously did not -- that may -- may -- that wasn't

23  explicit enough in that regard to preserve whatever appellate

24  rights my client may have with respect to those discrete legal

25  issues whether or not Kiowa stands as good case law at this

**J.A. 379**

```
 1   moment in time.

 2          And I'll leave it at that, your Honor.

 3          THE COURT:  Well, you could have found those cases and

 4   you could have argued them in one of your earlier briefs, no?

 5          MR. GOTTLIEB:  I was not necessarily -- I could have,

 6   I suppose, but it wasn't really brought to the fore until the

 7   reply briefs were actually submitted and I had a chance to

 8   review them.

 9          THE COURT:  All right.

10          All right.  Let's, let's keep moving here.  So I --

11   any other preliminaries?

12      (No response)

13          THE COURT:  If not, let's turn to Mr., is it

14   Rademacher?

15          MR. RADEMACHER:  Rademacher, your Honor.

16          THE COURT:  Rademacher, okay.

17          Mr. Rademacher, you want to get us started on the

18   sovereign immunity issue here?

19          MR. RADEMACHER:  Thank you, your --

20          THE COURT:  And I'll, I'll tell everyone.  I've read,

21   I've read everything except for the very last brief.  I, I

22   actually also read some of the, several of the cases, certainly

23   the three divergent, two and one divergent views of, the

24   circuits have taken on what appears to be a circuit split.

25          So I have read everything, but go ahead,
```

1  Mr. Rademacher.

2          MR. RADEMACHER:  Thank you, your Honor.  And may it

3  please the Court:

4          I, along with Andrew Adams, III, represent the

5  respondent, the Lac du Flambeau Band of Lake Superior Chippewa

6  Indians, a federally recognized Indian tribe organized under

7  Section 16 of the Indian Reorganization Act of 1934.

8          Your Honor, this is a case of baseless and unlawful

9  overreach.  As his claim plainly demonstrates, the debtor asked

10  the Court for recourse against the Tribe for the alleged acts

11  of one of its economic arms and he does so in complete

12  disregard of the Tribe's sovereign immunity, immunity supported

13  by generations of Supreme Court precedent.  The Tribe

14  respectfully asks this Court to reject this invitation and

15  dismiss the claim against it.

16          Now as Ms. Walker previously indicated, the issues

17  presented by both of the pending motions to dismiss largely

18  overlap and today, Mr. Fairlie's and my arguments will also

19  overlap in some ways, but in the interest of judicial economy

20  Mr. Fairlie will focus on deficiencies in the debtor's claim

21  and I intend to focus on the application of tribal sovereign

22  immunity.  Specifically, I intend to cover two points with my

23  time.  One, tribal sovereign immunity is properly raised under

24  Rule 12(b)(1) and, two, Congress did not unequivocally express

25  its intent to abrogate tribal sovereign immunity in the

**J.A. 381**

1   Bankruptcy Code.  I'll now briefly turn to my first point.

2        Relying on Ninigret Development Corp. v. Narragansett

3   Indian Wetuomuck Housing Authority, the debtor makes a passing

4   remark that the First Circuit does not view sovereign immunity

5   as a challenge to subject matter jurisdiction under Rule

6   12(b)(1).  The debtor is wrong.  The Ninigret court simply

7   explained that before it addresses an assertion of sovereign

8   immunity a court must first determine if it has independent

9   subject matter jurisdiction.  The point that the court was

10  making is that when a party sues a tribe for, say, a state

11  common law tort, the case cannot be brought to federal court

12  simply because the tribe asserts sovereign immunity.  There

13  must be an independent basis for the federal court's

14  jurisdiction.

15       But contrary to the debtor's arguments, the Ninigret

16  court never posited that sovereign immunity is not an attack on

17  the court's subject matter jurisdiction.  In fact, the court

18  observed that, "Sovereign immunity is jurisdictional in

19  nature," and it later explained in Valentin v. Hospital Bella

20  Vista that Rule 12(b)(1) is a "large umbrella overspreading the

21  variety of different types of challenges to subject matter

22  jurisdiction," including sovereign immunity.

23       As we have noted in our brief, other courts in this

24  Circuit have applied Rule 12(b)(1) in cases involving sovereign

25  immunity and the debtor has provided no reason for this Court

1   to deviate from that sound practice.  The Tribe's motion is

2   proper under Rule 12(b)(1).  I'll now turn to my second point.

3          The Supreme Court has long recognized that Indian

4   tribes are separate sovereigns pre-existing the Constitution

5   and that they retain aspects of their inherent sovereign

6   authority.  Among the core aspects of this sovereignty is the

7   common law immunity from suit traditionally enjoyed by

8   sovereign powers.  This, the Supreme Court has explained, is a

9   necessary corollary to Indian sovereignty and self-governance,

10  policies at the very heart of the ongoing relationship between

11  Indian tribes and the Federal Government.  While Congress does

12  retain plenary authority to abrogate that aspect of tribal

13  sovereignty, the Supreme Court has been clear and has

14  instructed that it must unequivocally express that purpose.  It

15  can't be implied.  It can't be deduced, that it, it must be

16  unmistakably clear.  That is the law.  That is the standard.

17  That is the rule of construction that governs this case and we

18  have examples of when Congress has made this showing.

19         For those, I'd like to Share my screen.  Is everyone

20  seeing a PDF file right now?

21         THE COURT:  Yes.  I, I see it.

22         MR. RADEMACHER:  Thank you, your Honor.

23         This first slide shows the relevant text of the

24  Resource Conservation and Recovery Act of 1976.  Note that the

25  abrogation of sovereign immunity applies to municipalities

1  which the Act specifically defines to include Indian tribes,

2  among a host of other types of governmental entities.

3          This slide shows the relevant text of the Safe Water

4  Drinking Act of 1974.  Again, note that the abrogation of

5  sovereign immunity applies to municipalities which the Act

6  specifically defines to include Indian tribes.  These statutes

7  were enacted in the years immediately preceding passage of the

8  Bankruptcy Code and Congress has continued this practice in

9  more recent years.

10         This slide shows the relevant text of the Indian

11  Gaming Regulatory Act of 1988.  This entire Act pertains to

12  tribal gaming and the abrogation pertains to gaming conducted

13  in violation of any tribal state compact to which a tribe must

14  be a party.

15         As you can see, in each of these cases Congress

16  referenced Indian tribes in order to effectuate an abrogation

17  of their immunity.  Congress knows full and well how to

18  abrogate tribal sovereign immunity.  It knows how to

19  unequivocally express that intention and it has not done so in

20  the Bankruptcy Code.  That is the conclusion reached by two of

21  the three circuit courts to rule on the very issue now pending

22  before this Court, those being the Sixth Circuit in In re

23  Greektown Holdings, LLC and the Eighth Circuit in In re

24  Whitaker.  And it is also the position shared by the Seventh

25  Circuit in Meyers v. Oneida Tribe of Indians of Wisconsin, a

**J.A. 384**

1    case involving FACTA, which has a very similar provision to

2    that in the Bankruptcy Code, and the Tenth Circuit in In re

3    Mayes where it, where it in *dicta* that the Bankruptcy Code

4    probably does not abrogate tribal sovereign immunity.

5          The debtor asks this Court to simply disregard this

6    Supreme Court precedent, these Circuit Court decisions, and the

7    policies they stand on.  In fact, on a number of occasions the

8    debtor goes so far as to outright disavow certain Supreme Court

9    decisions and cite dissenting opinions as persuasive authority.

10   This Court should not be persuaded.  Instead, it should see

11   these arguments for what they are, indicia of just how far

12   astray the debtor is from the law.

13         The debtor also points to -- I'm sorry.  Do you

14   have --

15         THE COURT:  Let me, let me ask a couple questions

16   here.  I -- I -- I read the cases, but I haven't researched it.

17   The Ninth Circuit, obviously, went the other way.  Is -- have,

18   have any courts followed the Ninth Circuit's lead in that -- in

19   -- in -- in -- in that determination?

20         MR. RADEMACHER:  Your Honor, the vast majority of

21   district courts to follow the Ninth Circuit's leads are courts

22   within the Ninth Circuit.  I do believe that there is one court

23   outside of the Ninth Circuit -- I believe it's in the Tenth

24   Circuit -- out of New Mexico that has ruled similar to Crystal

25   Energy.  I would say, your Honor, that that decision is in

#19-14142                                              9-22-2020

**J.A. 385**

1   direct conflict with the position that the Tenth Circuit has

2   taken, at least in *dicta*.

3           THE COURT:  I see.  Okay.

4           And the Sixth Circuit case and the Eighth Circuit

5   case, did they involve 362(k) violations?

6           MR. RADEMACHER:  Your Honor, I don't recall off the

7   top of my head -- I apologize -- what specific provisions that

8   they involved as far as, if they were violations of the

9   automatic stay.  I can tell you that they did involve the

10  specific question of whether or not sections 101 and 106

11  abrogate tribal sovereign immunity and those are the provisions

12  that apply for a 362 violation claim.

13          THE COURT:  But you would say it doesn't matter.  They

14  -- they -- they arose -- they're cases that arose under the

15  Bankruptcy Code?

16          MR. RADEMACHER:  Yes, your Honor.  And ultimately, the

17  same, the same provisions regarding abrogation of immunity

18  would apply.

19          THE COURT:  Right.

20          If I look at 101, 11 U.S.C. § 101, section 27, that,

21  the critical definition of "governmental unit" here and I get

22  to the last few words of that statute and it, it includes the

23  words "or other foreign or domestic government," what does

24  "foreign government" mean?

25          MR. RADEMACHER:  Your Honor, it could mean a host of

1   things.  It could mean, obviously, foreign states.  It could

2   mean, perhaps, international governmental organizations, such

3   as the EU.  It -- there's a, there's quite a bounty of case law

4   on that question and there are a variety of answers to it.

5        THE COURT:  And so here, you're saying that the

6   failure to include Indian tribes by name is enough to say that

7   it's not unequivocally stated that sovereign immunity is

8   abrogated but if some arm of the Canadian government were to

9   have done what the debtor alleges was done here, that entity

10  would fall within the ambit of this abrogation statute.  Is

11  that fair to say?

12       MR. RADEMACHER:  Your Honor, I'll have to admit that

13  that question sort of exceeds my scope of expertise a little

14  bit.  I have not read a number of cases regarding abrogation of

15  immunity for foreign nations.  My, my primary specialty is in

16  Indian law and with respect to this case, abrogation of tribal

17  sovereign immunity.  What I can say is that the relationship

18  that the United States has with Indian tribes is unique to the

19  relationship that it has with other governments.  There are

20  generations of Supreme Court precedent that outline the

21  guardian-ward relationship that's in place and the ultimate

22  fiduciary duty that the Federal Government has to Indian tribes

23  to bolster their self-governance, to bolster their economic

24  developments.

25       And so it may or may not be the case that a agency of

#19-14142                                                    9-22-2020

**J.A. 387**

1    Canada could be susceptible to liability under the Bankruptcy

2    Code separate from, or at different results from a Indian

3    tribe, but there is a basis for that in the ongoing

4    relationship between the Federal Government and tribes.

5             THE COURT:  I see.  All right.  So you take that head

6    on and, and say it could perfectly well be that an entity of,

7    an agency of Canada would have abrogated or would be deemed to

8    have abrogated its sovereign immunity under the Bankruptcy

9    Code, but an Indian tribe would not and that makes perfect

10   sense.

11            MR. RADEMACHER:  Yes.  And again, your Honor, I don't

12   know and I don't want to speculate too much about the specific

13   hypothetical, but I am comfortable saying that there is, there

14   is a policy basis for the special treatment of Indian tribes in

15   this particular arena.

16            THE COURT:  Okay.  So a, an Indian tribe here, you

17   know, is, it, it doesn't matter that the Indian tribe was

18   acting in a commercial pursuit, is that right?

19            MR. RADEMACHER:  It -- that is correct, your Honor,

20   and that comes out of Kia, Kiowa, which the debtor has, or is

21   seeking to reserve an appellate argument on.  It's also

22   reaffirmed in Bay Mills, which was briefed in our principal

23   brief, your Honor.  There is no distinction -- the Supreme

24   Court has determined that there is no distinction in the

25   capacity in which tribes are operating, whether that's what we

#19-14142                                                    9-22-2020

**J.A. 388**

1   might view as a traditional government capacity or a commercial

2   capacity.  And one of the reasons for that, your Honor, is that

3   tribes are in a unique position that many governments aren't

4   really in.  This is pretty well fleshed out in Bay Mills.

5          One of the unique situations is that Indian tribes

6   don't have the types, types of tax basis that other governments

7   have.  And so they have to look to other types of sources of

8   revenue in order to keep themselves going, offering services to

9   their members and keeping their tribe, the future of their

10  tribes in a good way.  And so the Supreme Court has absolutely

11  rejected any type of distinction based on traditional

12  governmental actions and commercial actions of a tribe.

13         THE COURT:  The -- would a debtor like the debtor in

14  this case have any recourse in any court against an Indian

15  tribe who engaged in the alleged conduct alleged here?

16         MR. RADEMACHER:  Yes, your Honor.  And I, I did expect

17  you to ask that question today.  This is something that comes

18  up --

19         THE COURT:  I'm noth -- I'm noth -- I'm nothing if not

20  predictable.  That's for sure.

21         MR. RADEMACHER:  This is something that comes up in

22  the debtor's brief.  The debtor does share a parade of

23  horribles as a policy basis to deviate from Supreme Court

24  precedent suggesting that he and other debtors will have no

25  recourse against tribes or tribal economic arms otherwise, but

1   this is illusory.  Debtors still have both private and judicial

2   remedies.  For instance, debtors can procure waivers of tribal

3   sovereign immunity or other dispute resolution provisions in

4   their financing documents.  They can also ask for waivers or

5   direct remediation later on, depending on if something happens

6   during the life of their financial agreements.  And more to the

7   Court's question, if necessary, debtors can assert Ex Parte

8   Young claims against tribal officials and employees to enjoin

9   alleged unlawful conduct.

10          So, if, if the debtor in this case had concerns

11  initially about receiving calls in violation of the automatic

12  stay, he could have brought a claim under Ex Parte Young to

13  stop employees of the, of Lendgreen, of Niiwin, LLC from

14  continuing to violate that automatic stay.  He would not have

15  had direct access to monetary relief in that regard, but he

16  would have had a way to stop it in its tracks and move on.

17          THE COURT:  Okay.  All right.  And, and would I have

18  jurisdiction to entertain such a request?

19          MR. RADEMACHER:  I believe so, your Honor.  There may

20  be a question of personal jurisdiction, but I, in general, an

21  Ex Parte Young claim would raise a question of, particularly

22  when it involves a violation of federal law, it would raise a

23  federal question.

24          THE COURT:  Okay.  All right.  Well, I, I interrupted

25  you a number of times and I probably will again, but go -- why

```
 1   don't -- any, anything else you'd like to say on the

 2   jurisdictional issue?

 3           MR. RADEMACHER:  Your Honor, the debtor also posits

 4   the Crystal Energy Company v. Navajo Nation is the seminal case

 5   on this issue.  It isn't.  Bay Mills v. Michigan is and the

 6   seminal, is the seminal case and are, as are the long line of

 7   Supreme Court decisions culminating in it.  In fact, Crystal

 8   Energy has been universally rejected by other circuit courts

 9   and a majority of district courts outside of those circuits and

10   for good reason.  The Crystal Energy court did the very thing

11   that the Supreme Court has said it cannot do, find an

12   abrogation of tribal sovereign immunity by implication, or, as

13   the debtor prefers to characterize it, by deduction.

14           Notwithstanding the authority rejecting Crystal

15   Energy, the debtor argues that Ninigret and Narragansett Indian

16   Tribe v. Rhode Island foreshadow the First Circuit's adoption

17   of it.  Again, he is wrong.  The Nin, in Ninigret, a contractor

18   sued a tribal housing authority under a development contract.

19   The First Circuit concluded that the housing authority had

20   waived its immunity for the claims.  In reaching this decision,

21   the court honed in on a tribal ordinance that authorized

22   contractual waivers in an arbitration provision in the

23   development contract that said -- that -- that said it "shall

24   be specifically enforceable under prevailing law."  Coupling

25   these passages, the court correctly found the housing
```

1   authority's unequivocal intent to waive its own sovereign

2   immunity.  Our case doesn't involve a tribal ordinance

3   authorizing a waiver of sovereign immunity, nor does it involve

4   a privately agreed-to arbitration provision.  In fact, it

5   doesn't involve a single passage agreed to by the Tribe or that

6   even references Indian tribes.

7            In Narragansett Indian Tribe, the tribe engaged in

8   decades of litigation with the state which culminated in a

9   memorandum agreement that provided the tribe 1800 acres of

10  settlement land in return for an agreement that "all laws of

11  the State of Rhode Island shall be in full force and effect on

12  the settlement lands."  The spirit of that provision was

13  adopted into the Rhode Island Indian Claims Settlement Act,

14  which provided that the settlement lands would be "subject to

15  the civil and criminal laws and jurisdiction of the State of

16  Rhode Island."  Again, the First Circuit found a waiver and an

17  abrogation of tribal sovereign immunity, but in doing so it

18  read the passages in their "unique historical context."  It

19  noted that both the memorandum and the Settlement Act were

20  products of mutual consent and that the provisions represented

21  a *quid pro quo* for the 1800 acres of settlement land.

22           Again, our case doesn't involve a private agreement or

23  a *quid pro quo*, nor does it, nor does this case involve the

24  unique historical context on which the First Circuit rested its

25  decision, nor does this case involve a statute that specific,

1   specifically applies to a tribe.  In fact, the whole of Title

2   11 of the U. S. Code never once references the words "Indian"

3   or "tribe," not once.  These cases simply have no bearing on

4   the issue presented to this Court and they certainly can't be

5   viewed as foreshadows that the First Circuit will deviate from

6   the well-settled Supreme Court precedent on this point.

7         In closing, your Honor, the debtor asks this Court to

8   upset well-settled tribal sovereign immunity precedent, all in

9   a folly attempt to attain recourse from the Tribe for acts that

10  it had nothing to do with, but for the reasons Mr. Fairlie and

11  I discussed today and the reasons we have briefed, we

12  respectfully ask this Court to grant the Tribe's motion to

13  dismiss the claim against it.

14        Unless the Court has additional questions, I'll save

15  my comments, additional comments for rebuttal.

16        THE COURT:  All right.  I'll allow you that

17  opportunity.

18        Okay, Mr. Gottlieb, on jurisdiction and sovereign

19  immunity.

20        MR. GOTTLIEB:  Your Honor, there are a number of basic

21  problems with the argument being put forward by the Tribe today

22  as well as the other respondents.

23        In the first instance -- well, let me suggest at the

24  very outset, your Honor, that in considering what I am saying

25  and what the, the other parties are saying that the Court

#19-14142                                              9-22-2020

**J.A. 393**

1   should bear in mind that this may be a situation in the, while

2   you're listening, that 28 United States Code § 158(d)(2)(A)

3   may, may be worthy of consideration with respect to whether or

4   not the ultimate issues need to be adopt, need to be confronted

5   by the First Circuit.  But I'll merely state that in passing.

6         It's very clear, your Honor, that there really is

7   divergence of opinion between those entities, those cases that

8   look to finding that there is sovereign immunity to prevent the

9   prosecution of, say, as in this case, a, an objection, a motion

10  to enforce the automatic stay as against an Indian tribe and

11  those like Crystal Energy that say that an Indian tribe is part

12  of those listing of entities under section 10, 101(27) in the

13  last clause that encompasses that and as a result, section

14  106(a)'s abrogation provisions are, in fact, applicable.

15        But getting back to the, the, the nub of it, it really

16  comes down, I believe, to a question of, first of all, whether

17  or not there is sovereign immunity to be abrogated in the first

18  instance here.  And I am not entirely certain that that is, in

19  fact, the case.  In the -- but I will leave that, also, point

20  aside for the moment.

21        Section 106(a) was enacted in 1994 as a direct result

22  of the Supreme Court's decisions in both Hoffman and in Nordic

23  Village, which found that states, that the Bankruptcy Code's

24  then existing provisions under section 106 were insufficient to

25  abrogate sovereign immunity.  In its decision -- in its -- in

1  its wisdom confronting that, the legislative history behind

2  section 106(a) and 106, generally, takes a full-brush approach

3  to resolving that problem.  It doesn't mere, it doesn't merely

4  say that, if they had merely said all entities of any kind that

5  claim sovereign immunity is hereby abrogated, they went, they

6  were very, very broad in their brush in this regard.  They

7  defined every type of polity that one can possibly imagine,

8  both domestic on the one hand, and foreign on the other.

9         You asked my brother counsel regarding whether or not

10  there had ever been a case involving a foreign entity, such as,

11  as you, you posited, an arm of, say, the Canadian Government

12  violating the automatic stay.  There actually is a case,

13  believe it or not, that deals with the idea of foreign

14  sovereign immunity and section 106(a) and it's called In re

15  Tuli, T-U-L-I.  The cite for it is 172 F.3d 707 and the

16  specific cite to it is Page 712, which says that, "Iraq" -- in

17  this case it was Iraq -- "as a governmental unit, is not

18  entitled to sovereign immunity in this adversary proceeding."

19         So there actually is a situation where a foreign

20  sovereign has been found to have, not to have sovereign

21  immunity, at least in the context of the Bankruptcy Code and

22  even in this particular case.  I think that more recent case

23  law from the Supreme Court also makes it even more problematic.

24  The nature of the problem that's being presented here from a

25  policy standpoint.

#19-14142                                              9-22-2020

**J.A. 395**

1        As the Court is probably aware, there was a, a

2   decision back in 2006 of the <u>Central Virginia Community College</u>

3   <u>v. Katz</u>, which dealt with the question of whether or not

4   section 106(a) abrogated a state's sovereign immunity for the

5   purpose of a trustee recovering a preferential transfer.

6   The -- rather than deal with section 106(a) at all, it

7   basically found that there was no sovereign immunity, *per se*,

8   that the state had because of the fact that they were --

9   they -- it was unnecessary to even look at section 106(a) in

10  that particular context because of the fact of the bankruptcy

11  clause provision of Article, Article 1, Section 8 of the

12  Constitution.

13       Now as a result of that, there was a very interesting

14  decision out of the Eleventh Circuit fairly recently called

15  <u>Omine</u>, O-M-I-N-E, which was out of the Eleventh Circuit 2007,

16  which basically found that the violation of an, the automatic

17  stay by, in this case a governmental entity -- in that

18  situation it was the State of Florida -- was, in fact,

19  recoverable because of the fact that the automatic stay is a

20  foundational provision of the Bankruptcy Code itself that

21  overrode and, in light of the Supreme Court's decision in <u>Katz</u>,

22  essentially overrode state sovereign immunity, altogether.

23       Now how does this relate in this particular case?

24  This relates in this particular case, your Honor, because what

25  the, what the respondents are effectively arguing is that they

#19-14142                                        9-22-2020

**J.A. 396**

1   have greater rights based upon, based upon their assertion of

2   tribal sovereign immunity than even states or foreign countries

3   or any other type of polity might otherwise enjoy on the basis

4   of the fact that it has not been -- they -- that Congress chose

5   not to use the phrase "Indian tribes" in the definition of, set

6   forth in section 101, subparagraph 27.

7        THE COURT:  But they take that head on.  They -- I

8   asked that very question and, and the answer that I received

9   was, yes, indeed.  Iraq may be deemed to have waived sovereign

10  immunity or -- I'm sorry -- may be deemed to have -- Congress

11  may have been, may be deemed to have abrogated sovereign

12  immunity as to Canada or Iraq.  Same thing for a state.  We

13  don't have to look too hard at the statute to figure that out

14  because it starts with United States, State.  So Florida, no

15  surprise there.

16       But what I'm hearing is that because of the unique

17  nature -- and none of us could say otherwise that Indian rights

18  or Indian tribes are not unique in, in this country, both

19  historically and as a matter of law -- that the Supreme Court

20  has required a more demanding approach to statutory

21  interpretation, that it has to be an unequivocal abrogation and

22  that isn't present here.  It could, apparently, only be done if

23  the words "Indian tribe" were present in the definition at

24  101(27).

25       How do you respond to that?

33

1          MR. GOTTLIEB:  I respond by saying that it is -- there

2     is no -- there are no magic words, no talismanic phrase that

3     need to be used in order to effectuate abrogation.  Bear in

4     mind, what Congress was doing all along -- and this -- you have

5     -- again, we're looking to a question of congressional intent.

6     If the question is one of congressional intent, it is

7     impossible to imagine a more comprehensive way in which

8     Congress expressed itself in 101(27).  Because they wanted to

9     be absolutely certain that every kind of governmental polity

10    that could be possibly conceived of, whether on this planet or

11    another planet, including Indian tribes, they first dealt with

12    a series of enumerated entities, municipality, state,

13    territory, district.  But even after they, if they had stopped

14    there, the, the Tribe in this particular case might have an

15    argument, but they didn't stop there.  Congress didn't stop

16    there.  They went on to state "or any other foreign or domestic

17    government."

18          Now even in the cases cited by the Tribe and by

19    Lendgreen, there is a plethora of Supreme Court cases that

20    describe Indian tribes as domestic, dependent nations.  Their

21    rights as a domestic, dependent entity is still a government,

22    but think of it in these terms.  If this entity is not a

23    governmental entity, then what is it if not?  And more

24    importantly, if, as they assert, that they're not a government,

25    governmental entity and this does not apply to them, then to

**J.A. 398**

1   what does it apply?  I would say that that by itself violates

2   basic rules of statutory construction, notwithstanding the

3   special status that I believe is, I think that's a dubious

4   argument these days in light of the fact that there have been

5   numerous cases, a more recent one involving, if memory serves,

6   the St. Regis Tribe essentially exporting its claim of

7   sovereign immunity to Allergan so that it could utilize or

8   Allergan could utilize the tribe's claim of sovereign immunity

9   to stop any attempt to undermine the patents that the company

10  had developed by essentially renting them out to a tribe.

11          What you have in this particular case, your Honor, and

12  particularly in the context of a bankruptcy case, you're having

13  a, an Indian tribe choosing, perhaps, I think, with the

14  assistance of a third-party capital provider, to engage in

15  payday lending across state lines over the internet at

16  extremely high interest rates and essentially ignoring, for all

17  intents and purposes, the automatic stay.  They say that you'll

18  be able to still go in and make a request for a waiver of

19  sovereign immunity, but that's not a, that is not a remedy,

20  that is not a resolution for a violation that would otherwise

21  impact both a state or any other kind of governmental entity.

22  Surely Congress when it enacted in 1994 section 106(a) and

23  101(27) knew that by doing something so radical as including

24  all "other domestic or foreign governments," it knew that there

25  were Indian tribes at that point, but they chose to go and made

**J.A. 399**

1   a superset of that as well.  And because there is no talismanic

2   or magic words that need to be added, nothing in any federal

3   statute of which I am aware, there is no constitutional

4   provision of which I am aware that says that you have to

5   include the words "Indian tribe" in order to include an Indian

6   tribe in a federal --

7          THE COURT:  No, no.  That, that may be true, but just

8   a few moments ago I saw on my screen, as did you, examples --

9          MR. GOTTLIEB:  Uh-huh (indicating an affirmative

10  response.)

11         THE COURT:  -- around the same time period of where

12  Congress know how to use those words because they did and,

13  and --

14         MR. GOTTLIEB:  But they -- the point here is that

15  Congress made its change in 1994.  All of the case, all of the

16  citations, the statutes that they're looking to are at least 20

17  years junior to that.  Congress wanted a superset that exceeded

18  the words "Indian tribe."

19         Back in 19, back in 1976, 1974, there was no

20  Bankruptcy Code.  It was the Bankruptcy Act of 1898 as changed

21  by the, the Chandler Act of 1938.  The Bankruptcy Code simply

22  did not exist.  In 1994, Congress changed the way it approached

23  this.  It wanted to overrule the idea that sovereign immunity

24  would somehow be utilized to the benefit of, of governmental

25  entities to basically undermine the Bankruptcy Code and the

36

1    bankruptcy court's jurisdiction.  That is precisely, let me

2    suggest to you, precisely what is being put forth here.  It is

3    precisely the same situation that Congress was looking to over

4    turn, to overrule in both Hoffman and in Nordic Village.

5            From my point of view, your Honor, Ex Parte Young as,

6    as a remedy is a very weak one.  If Congress wanted to do that,

7    if Congress wanted to merely say, "Oh, you can't enforce the

8    automatic stay," it might have said so in legislation.  In this

9    particular case, Congress spoke not only loudly, it spoke with

10   a megaphone saying all, all claims of sovereign immunity are

11   abrogated and essentially did so by using a superset

12   analysis --

13           THE COURT:  But it didn't -- but it didn't say that.

14   It, it made a list and I -- you keep talking about

15   congressional intent and I only get to congressional intent

16   when I can't perceive it from the words of the statute, itself.

17   And when I read this statute -- I, I think you'll agree with me

18   -- the words "Indian tribe" do not exist in the -- in -- in --

19   in 101(27), right?  We agree on that.

20           MR. GOTTLIEB:  Absolutely.

21           THE COURT:  All right.  So how do we -- then it's only

22   through inference or deduction or implication that one could

23   add a, a sovereign, we have to agree that Indian tribes are

24   sovereign, right?  Maybe you don't, but let's start with that.

25           MR. GOTTLIEB:  Okay.

**J.A. 401**

1            THE COURT:  We have -- that -- I would have to infer

2     or imply that entity into that list, correct?

3            MR. GOTTLIEB:  No.  There's actually a case that

4     actually discusses that particular point, your Honor, called In

5     re Russell.  Let's see.  That would be from the District of

6     Arizona, 291 B.R. 34.  And to quote it, your Honor:

7            "Implication and inference are the rhetorical versions

8            of induction, drawing conclusions from examples.  For

9            example, if the last phrase were eliminated in section

10           106(a), one might draw the inference that because

11           sovereign immunity is expressly abrogated as to the

12           United States, the States, the Commonwealths, the

13           Districts, and foreign governments, Congress must have

14           intended to abrogate it as to all governments.  That

15           would be reasoning by implication or by inference.

16           While it might be equally as sound, and in fact how

17           all new knowledge is achieved, it nevertheless retains

18           a possibility of error."

19           However, "because the statute expressly abrogates

20           sovereign immunity as to all domestic governments, the

21           statute applies to Indian tribes by deduction rather

22           than by implication, so the conclusion is not

23           proscribed by the Court's limitations.  In other

24           words, the proscription against abrogation by

25           implication does not require the listing or naming of

1          each government as to which it applies so long as they

2          are unequivocally identified in the statute.":

3          And in this case, that's actually done.

4          THE COURT:  You -- this -- Indian tribes are

5  unequivocally identified in this statute?

6          MR. GOTTLIEB:  As put -- again:

7          "Since the meaning of 'or other foreign or domestic

8          government' cannot include the United States, or a

9          State, or a Commonwealth, Territory or District, or a

10          municipality, as a foreign state, a government or

11          department or any instrumentality, because all of them

12          are expressly mentioned, it is difficult if not to

13          imagine to come up with any other possible meaning for

14          the phrase 'other domestic government' other than

15          Indian tribes.  Without another reasonable plausible

16          alternative to the meaning, the abrogation of

17          sovereign immunity as to all domestic governments is

18          not equivocal. It could hardly be more absolute."

19          THE COURT:  Does -- does -- does the word -- I want to

20  get on to something else here soon, but --

21          MR. GOTTLIEB:  I understand.  I understand.

22          THE COURT:  -- does, does the word "foreign or

23  domestic government" include anything, "domestic government" --

24          MR. GOTTLIEB:  Yeah.

25          THE COURT:  -- include anything other than Indian

 1  tribes?

 2          MR. GOTTLIEB:  I think it could include if we created

 3  a new type of entity.  If, say, the State of, if the City of

 4  New York decided it was going to take over all of Long Island,

 5  let's say, and called it a, the new polity of Nuevo York, which

 6  is not part of the State of New York, but --

 7          THE COURT:  Well, wait, wait, wait.  Let's -- let's

 8  deal --

 9          MR. GOTTLIEB:  I -- I --

10          THE COURT:  Let's deal, let's deal with this planet

11  now --

12          MR. GOTTLIEB:  Okay.

13          THE COURT:  -- for a minute, okay?

14          MR. GOTTLIEB:  Granted, granted.

15          THE COURT:  All right?

16          MR. GOTTLIEB:  But the point of the matter is is that

17  the reason why I believe Congress utilized the language that it

18  chose is because of the fact that it is possible to create new

19  polities, that -- that not -- that a statute should be durable,

20  not just for the here and now in 1994, but for what may exist

21  in the future.  We may have something other than states.  We

22  may have some provinces.  Who knows.  Maybe we'll take over

23  parts of Canada, for all I know, in the future.  Congress --

24          THE COURT:  But right now, right now, or in '94 until

25  now --

 #19-14142                                                9-22-2020

**J.A. 404**

                                                                    40

1              MR. GOTTLIEB:  Yes.

2              THE COURT:  -- then you say that "domestic government"

3   here means nothing other than for, than Indian tribe?

4              MR. GOTTLIEB:  It can be, yes.  I believe it, it must

5   include, necessarily, Indian tribe.

6              THE COURT:  I didn't ask you if it included.  I said

7   is there anything it includes other than an Indian tribe.  And

8   I'm talking about existing entities.

9              MR. GOTTLIEB:  I can't -- well, let me think about

10  that for a moment.

11     (Pause)

12             MR. GOTTLIEB:  It's possible.  I could see -- there

13  are some places -- again, this is more of my own background,

14  your Honor -- but there are places in New York -- in -- upper

15  New York State where the Ashkenazi Jews of, ultra orthodox Jews

16  operate their own state, town governments, but they're not

17  really a town government.  They're actually part of the Rabbi

18  of that ultra orthodox community.  I'm thinking of the Town of

19  Monzi, New York, which is what it's called today, but they

20  don't call it Monzi, New York there.  They're also, they're

21  calling it by another name which is related to their synagogue

22  located in that.  That's based upon their, their religious

23  affiliation, but they treat it as if it were a governmental

24  polity.

25             And so, yes, I believe it can be extended beyond the

          #19-14142                              9-22-2020

                        **J.A. 405**

41

1  concept of an Indian tribe and does, in fact, extend beyond

2  that definition of an "Indian tribe" because it would encompass

3  any kind of religious organization that operates any kind of

4  physical control over a territory or a particular area in terms

5  of how it operates, how it grants divorces or family, engages

6  in domestic relations treatment.

7          So, yes, I believe that, that is one example that

8  would go beyond simply Indian tribes.

9          THE COURT:  All right.  Well, I -- I happened to -- I

10 grew up nearby there.  So I, I know --

11         MR. GOTTLIEB:  Ah.

12         THE COURT:  -- I know what you're talking about, but I

13 also know that they, they charge and pay taxes there --

14         MR. GOTTLIEB:  They do, indeed.

15         THE COURT:  -- like everybody else in New York.  So I

16 don't know that that's true.

17         MR. GOTTLIEB:  Well, I pay tax -- my mother pays taxes

18 to the City of New York as well as the State of New York as

19 well as to the Internal Revenue Service, but all those, all

20 three of those entities are separate from one another.  But

21 that -- so that doesn't prevent it.

22         THE COURT:  Why don't you wrap up?  Anything else --

23         MR. GOTTLIEB:  Okay.

24         THE COURT:  -- on, on this point?

25         MR. GOTTLIEB:  My -- I think the most important point

```
 1  to be made here, your Honor, is that sovereign immunity in this

 2  context, I think, has some tremendous implications for

 3  mischief.  As I mentioned before, allowing the utilization of

 4  sovereign immunity as a defense as against the Bankruptcy Code

 5  sets up a problem, a systemic problem.  It allows other

 6  entities such as pharmaceutical companies to avoid liability by

 7  assigning their patents.  It will allow insurance companies and

 8  reinsurance companies to avoid liability on a going-forward

 9  basis if they resort or transfer or claim they have transferred

10  a certain amount of assets to an Indian tribe by essentially

11  allowing the purchase, if you will, of sovereign immunity.  And

12  if that's the case, your Honor, we're not dealing with

13  sovereign immunity, per se.  What we're really dealing with is

14  what sovereign immunity really ought to be about.  Sovereign

15  immunity is about -- if this is about helping Indian tribes, it

16  should be for and to the benefit of the, it should be limited

17  by who is affected by it, namely, the tribal member, and should

18  be limited to the tribal territory.

19       But here, what we're dealing with is a payday entity

20  that is engaging in interstate commerce outside of the, outside

21  of its tribe that does not involve a member of the Tribe.  If

22  my client, if Mr. Coughlin were a member of the Lac du Flambeau

23  Tribe in Wisconsin, he might have rights vis-à-vis that entity,

24  but he doesn't have those rights, quite frankly, with respect

25  to, if he tries to assert a violation of the automatic stay.
```

#19-14142                                                    9-22-2020

**J.A. 407**

1   And I don't believe there is any, any decent reasonable

2   argument in the 21st century that we should pay such deference,

3   even to people that have been so poorly utilized as, as Native

4   Americans, that we should basically abrogate a, the single most

5   powerful consumer protection in the land on the grounds that,

6   well, because we treated these people badly, we can allow them

7   to treat our, the rest of the people that are seeking

8   bankruptcy protection badly.

9           Thank you, your Honor.

10          THE COURT:   Thank you.

11          All right.   You know, because I'll lose track of it in

12   a few minutes, Mr. Rademacher, if you have a response -- I'd

13   like to see it in about two minutes -- I'd give you that chance

14   now.

15          MR. RADEMACHER:   Thank you, your Honor.

16          Just as a clarification, the debtor seems to view the

17   Tribe's argument as the Tribe has more rights or greater rights

18   than other governmental entities.   And that's not, at the end

19   of the day, the argument that we're making.   The Tribe is

20   arguing and pulling from Supreme Court case law that it has a

21   unique relationship with the Federal Government, a, a guardian-

22   ward relationship with the Federal Government, and that because

23   Congress holds tribal sovereignty in its hands, that there

24   needs to be a heightened standard for abrogation of that

25   sovereignty and in the context of abrogation of tribal

#19-14142                                                    9-22-2020

**J.A. 408**

1  sovereign immunity, the Supreme Court's test is unequivocal

2  expression of that intention.

3      That is not what we have in the Bankruptcy Code and as

4  the court in <u>Meyers v. Oneida Tribe of Indians of Wisconsin</u> to

5  this point states:

6          "There is not a single 'example in all of history

7          where the Supreme Court has found that Congress

8          intended to abrogate tribal sovereign immunity without

9          expressly mentioning Indian tribes somewhere in the

10         statute.'"

11     The last point I'll make, your Honor, the debtor

12  continues to come back to this argument that "other domestic

13  and foreign governments" must include Indian tribes.  That

14  argument was raised specifically in <u>Meyers v. Oneida Tribe of</u>

15  <u>Indians of Wisconsin</u> and the court responded, the Seventh

16  Circuit responded:

17         "Meyers argues that the district court dismissed his

18         claim based on its erroneous conclusion that Indian

19         tribes are not governments.  Meyers has lost sight of

20         the real question in this sovereign immunity case —

21         whether an Indian tribe can claim immunity from suit.

22         The answer to this question must be 'yes' unless

23         Congress has told us in no uncertain terms that it is

24         'no.'  And as any ambiguity must be resolved in favor

25         of immunity.  Of course Meyers wants us to focus on

45

 1              whether the Oneida Tribe is a government so that we

 2              might shoehorn it into FACTA's statement that defines

 3              liable parties to include 'any government.'  But when

 4              it comes to sovereign immunity, shoehorning is

 5              precisely what we cannot do.  Congress' words must fit

 6              like a glove in their unequivocality."

 7         And, your Honor, they do not in this case.

 8         I have nothing further.

 9         THE COURT:  All right.  Thank you.

10         All right.  So let's move on, then, to -- Mr. Fairlie,

11  are you up next?

12         MR. FAIRLIE:  Yes, your Honor.  Good afternoon.  Zach

13  Fairlie on behalf of Lendgreen, L.D.F. Business Development

14  Corporation, and LDF Holdings.

15         Your Honor, I do have a PowerPoint presentation that

16  I'd like to put up on the screen, if that's, if that's all

17  right, so I can guide the Court through my argument.  Is that

18  acceptable to the Court?

19         THE COURT:  Yes, it's fine.

20         MR. FAIRLIE:  All right.  Can we see the PowerPoint

21  presentation?

22         THE COURT:  Yes, I see it.

23         Mr. Gottlieb, you can see it?

24         MR. GOTTLIEB:  Yes, I can, your Honor.

25         THE COURT:  All right.  Thank you.

**J.A. 410**

1          MR. FAIRLIE:  All right.

2          Your Honor, as stated at the top, there are two

3   threshold issues here, the, the tribal immunity issue and then

4   the second issue, which is the, that the stay motion fails to

5   state a claim for a willful violation of the automatic stay.

6   Mr. Rademacher has, has really covered much of the ground on

7   that first issue and I would just reiterate his comments and

8   arguments, but I do want to add just a couple, a couple points

9   on that.

10         So the, the Tribe has immunity under Supreme Court

11  precedent and unless Congress has expressed an unequivocal

12  intent, the Tribe has immunity from suit. So there's two things

13  to take away from, from that Supreme Court precedent.  No. 1,

14  that the Tribe has immunity and, No. 2, that there's a high

15  standard there.

16         Now again, for the reasons addressed by

17  Mr. Rademacher, the Tribe has immunity.  Lendgreen, BDC, and

18  Holdings are arms of the Tribe.  These are distinct entities,

19  but they are arms of the Tribe and there is case law that

20  establishes that arms of the Tribe also enjoy the immunity of

21  the Tribe.  This is something that's not in dispute.  It's also

22  not in dispute that Lendgreen, BDC, and Holdings are arms of

23  the Tribe; therefore, Lendgreen, BDC, and Holdings are entitled

24  to the Tribe's immunity and the stay motion is subject to

25  dismissal on, on that issue alone.

1          Now, your Honor, putting the immunity issue to the

2    side, there's also an issue with respect to the stay motion in

3    that the, the stay motion fails to state a, a claim for a

4    willful violation of the automatic stay as against BDC,

5    Holdings, and the Tribe.  So, your Honor, to, to be successful

6    in this cause of action the debtor will have to prove by a

7    preponderance of the evidence three elements, No. 1, an act in

8    violation of the stay; No. 2, that the violation was willful;

9    and No. 3, that the debtor suffered damages as a result.

10         So on that third element, your Honor, that really gets

11   to the merits of this action and is something that if there's

12   anything left for this Court to adjudicate after today, there

13   are, there are several issues within that third, within that

14   third element.  But again, we're going to focus on the, the

15   first two elements today, given that we're testing the legal

16   sufficiency of the stay motion accepting the allegations as

17   true.

18         When we look at the stay motion, your Honor, it's

19   clear that it doesn't allege that BDC, Holdings, or the Tribe

20   had knowledge of the bankruptcy.  They weren't listed in the

21   schedules.  They weren't listed in the mailing matrix.  They

22   didn't otherwise receive notice of any of the filings.  In

23   fact, this Court had to direct the debtor to properly serve the

24   stay motion on these respondents per the requirements of Rule

25   9014.  Based on the Certificate of Service that the debtor

1    filed, that didn't happen until May 11, 2020.  And that's at

2    Docket 40.  This is well after any of the alleged acts that

3    form the basis of this stay violation.

4        So given that, your Honor, accepting these allegations

5    as true, the debtor can't prove a necessary element as it

6    relates to BDC, Holdings, and the Tribe.

7        Now when we look at the other element at issue, the

8    act that violates the stay, the stay motion does not allege

9    that BDC, Holdings, or the Tribe placed the alleged phone call

10   or sent the alleged e-mail.  In fact, when we take a closer

11   look at the stay motion it's clear that Lendgreen is the party

12   that the debtor contracted with for this loan.  Lendgreen is

13   the party that the debtor listed in his schedules, listed in

14   the mailing matrix, and sent various filing, filings, including

15   the chapter 13 plan.  These were sent to Lendgreen and

16   Lendgreen is the party that allegedly placed the phone call and

17   sent the e-mail.

18       So the alleged knowledge and, and actions are

19   attributable to Lendgreen, not BDC, not Holdings, not the

20   Tribe.  So accepting the, these allegations as true, the debtor

21   has not stated a claim for relief against BDC, Holdings, or the

22   Tribe.

23       Now in, in an apparent recognition of these fatal

24   flaws the, the debtor attempts to treat these four distinct

25   entities as one.  The problem is the stay motion doesn't state

**J.A. 413**

 1  a legal or factual basis for doing so.  In their response, the

 2  debtor attempts to bring in entirely new allegations.  He

 3  requests that the Court take judicial notice of filings in an

 4  unrelated case from four years ago.  Now these filings make

 5  allegations regarding Lendgreen's corporate structure and other

 6  related structures and ownership of, of Lendgreen and other

 7  tribal entities.  But, your Honor, the problem is is that

 8  judicial notice is, is merely a shortcut for the introduction

 9  of evidence.  It doesn't serve as a substitute for the failure

10  to allege the facts of an initial matter.  And, your Honor,

11  even if this Court were to take judicial notice of these

12  pleadings in an unrelated case, it's unclear what, what

13  relevance these, these facts would have to any sort of legal

14  theory that the debtor has.

15      Now the debtor has attempted to introduce two new

16  legal theories for why he can treat four distinct entities as

17  one.  No. 1, he makes an argument that if an arm enjoys

18  immunity with the Tribe, it can't also enjoy corporate

19  separateness and corporate form, that somehow these two

20  distinct legal, legal ideas are somehow mutually exclusive.

21  The problem is, your Honor, the debtor doesn't cite a single

22  case in support of this theory and the cases that he does cite

23  simply address when an arm of the tribe is entitled to

24  immunity.  They don't address corporate form and corporate

25  separateness should be disregarded, again two separate legal

1    issues that are not, that can't be conflated.

2         The debtor also makes some references to vicarious

3    liability in the response.  The problem is, your Honor, the

4    stay motion is completely devoid of any allegations that would

5    support application of vicarious liability.

6         So in sum, your Honor, there's, there's simply no

7    basis, whether factual or legal, for treating these distinct

8    entities as one.  So --

9         THE COURT:  Well --

10        MR. FAIRLIE:  -- we go back to --

11        THE COURT:  -- I, I don't know that it's been raised

12   directly, but it's, it's, to me, almost a judicial estoppel

13   kind of an argument, you know, that it can't be that the same

14   parties can say on the one hand, "We are arms of and,

15   therefore, enjoy the benefit of an immunity because we are so

16   closely connected to that entity to enjoy that immunity," but,

17   on the other hand, "We're not responsible for what those other

18   arms did."

19        Isn't that -- isn't that -- isn't that argument --

20   doesn't that run afoul of, of judicial estoppel?

21        MR. FAIRLIE:  Well, your Honor, my recollection of

22   judicial estoppel is, is, really, that a party is not allowed

23   to make a representation to a court that the court then relies

24   on and then the party in another action or in the same action

25   then takes a different position from the previous.  And really,

#19-14142                                                    9-22-2020

**J.A. 415**

51

1   judicial estoppel is to prevent frauds on the court.  To me,

2   that, those seem like different, different ideas.

3         THE COURT:  I'm, I'm sorry.  I think, I think you did

4   a nice job of stating the principle, but I'm not seeing why it

5   doesn't apply here.

6         MR. FAIRLIE:  Well, your Honor, we're not asking the

7   Court to, to accept one position, one characterization of facts

8   and then get the Court to rule on that and then later coming

9   back to the Court and reversing course because it somehow

10  benefits the Tribe to do so.  In fact, we're, we're explaining

11  to the Court that there is, there is tribal immunity.  The

12  Tribe has immunity.  These entities are arms of the Tribe and

13  that's something that the debtor doesn't contest.  They are

14  arms of the Tribe and notwithstanding that tribal immunity

15  issue, there are also issues in the stay motion itself in that

16  he doesn't even allege that these other separate entities

17  committed these acts or had knowledge.

18        Now I understand that there is an argument that

19  because they're close for purposes of determining tribal

20  immunity that we, that maybe we should disregard corporate form

21  or corporate separateness.  The problem is there isn't a single

22  case that is cited for that proposition.  Again, these are two

23  separate issues and disregarding -- and there's a presumption

24  that entities retain their corporate form unless there is some

25  sort of justification for a court to disregard that form.  And

#19-14142                                                    9-22-2020

**J.A. 416**

```
 1   frankly, the stay motion doesn't even mention disregarding

 2   corporate form or disregarding corporate separateness.

 3         THE COURT:  Right, and the exception to that rule is

 4   that where it would be inequitable to fail to recognize or

 5   where it would be inequitable to allow separateness, then the

 6   Court can ignore those, those, those lines.  That's what the

 7   law is, right?

 8         MR. FAIRLIE:  And, your Honor, my understanding of, of

 9   examples of, of cases where there is inequity, it's cases where

10   the corporate form really wasn't even maintained or a, an

11   entity was purposely (distortion) to avoid liability.  And, and

12   frankly, those, those allegations are, again, completely

13   missing from, from this case.  There aren't any allegations

14   that it would be inequitable to, to allow these entities to

15   retain their corporate separateness.

16         THE COURT:  All right.  Go ahead.

17         MR. FAIRLIE:  Well, your Honor, with that, the, the

18   second issue of the failure to state a claim for relief against

19   these respondents, this is an additional issue that allows the

20   Court to dismiss the stay motion with respect to BDC, Holdings,

21   and the Tribe, but, of course, there's also the first issue,

22   which is tribal immunity which allows this Court to dismiss

23   this entire action with respect to all of the respondents.

24         THE COURT:  That's, you know, that's an interesting

25   point.  I led off with that today.  If I were to act to deny
```

#19-14142                                                  9-22-2020

**J.A. 417**

                                                                              53

1    the motion on the basis that you ask me to, aren't I exercising

2    jurisdiction?

3              MR. FAIRLIE:  Yes.

4              THE COURT:  So I wouldn't have to -- I would have to

5    find first that, that, that there is not immunity, that it's

6    abrogated.  Otherwise, I shouldn't even get to this, right?

7              MR. FAIRLIE:  That's correct, your Honor.  I think the

8    rule under 12(b)(6), there's, there's the initial step of, of

9    determining whether or not there is, there is subject matter

10   jurisdiction as --

11             THE COURT:  Right.

12             MR. FAIRLIE:  -- it's been raised under 12(b)(1).

13             So, yes, your Honor, I think that that, that framework

14   is correct.

15             THE COURT:  Okay.  All right.

16             All right, Mr. Fairlie.  Anything else?

17             MR. FAIRLIE:  Nothing from me, your Honor.

18             THE COURT:  All right.  Thank you.

19             Mr. -- Mr. --

20             Could you take that down so I get a better look at

21   Mr. Gottlieb.

22             There you are.

23             MR. GOTTLIEB:  I, I'm surprised that you want to get a

24   better look at me, your Honor.

25             THE COURT:  I want to keep an eye on you.

        #19-14142                                              9-22-2020

                              **J.A. 418**

54

1          MR. GOTTLIEB:  Yes.  I, I know.  I know.  I'm, I'm

2     wayward.  I, I acknowledge my sins, your Honor.

3          Well, treating this as a motion to dismiss in the

4     classic 12(b)(6) sense of the, of the idea requires that the

5     Court make a determination as to whether or not my client has

6     proposed, or has submitted a, a plausible claim and in so doing

7     -- and again, I know I'm not telling you anything that you

8     probably don't already know -- the, you have to assume that all

9     of the allegations are true, even those that are doubtful, in

10    fact, and a well-pled case requires a complaint with enough

11    factual matter taken as true to have a claim to, a claim for

12    which relief can be sought.

13          In this particular case -- and I think this is the

14    interesting part -- on the one hand, you have Lendgreen, which

15    I have described as an arm of this Tribe and all of the

16    intermediate entities between the Tribe and Lendgreen.  It is

17    simply one single unified unit.  I believe -- and I think it's

18    appropriate under the circumstances -- to ask the question what

19    does it, in fact, mean to be an arm of the Tribe?  As it turns

20    out, the court, the First Circuit in <u>Ninigret</u> felt that being

21    an arm of the tribe was such an integral concept that they

22    basically treated the instrumentality -- in that case it was a

23    housing authority -- and the entity, and the tribe itself as

24    one entity for all the purpose, for all intents and purposes.

25    Indeed, your Honor --

#19-14142                                              9-22-2020

**J.A. 419**

55

1          THE COURT:  Let me, let me ask you this and see if it

2     cuts things short.

3          MR. GOTTLIEB:  Go right ahead.

4          THE COURT:  Do you concede -- boy, I hate to ask you

5     that -- but --

6          MR. GOTTLIEB:  Okay.  Don't ask me if it concedes.

7          THE COURT:  I won't ask you to concede anything,

8     but --

9          MR. GOTTLIEB:  Okay.

10         THE COURT:  -- if I find that sovereign immunity has

11    not been abrogated, if I find that, it, it, it follows, then,

12    from your other arguments that it applies to each of these

13    entities, right?

14         MR. GOTTLIEB:  It would seem to at that point, your

15    Honor, because I have made the argument -- I'm -- in this

16    particular case, it, it's interesting.  I have asserted that

17    all of these entities are, in fact, one entity for all intents

18    and, for all legal purposes in this proceeding.  So, yes, what

19    you're saying is, in fact, correct because I'm not

20    distinguishing between the Tribe on the one hand, BDC,

21    Lendgreen, or the intermediate entities on the other.  They're

22    all of a, they're all of a piece.

23         So if you were to find that sovereign immunity is not

24    abrogated and that the Tribe is entitled to sovereign immunity,

25    then, yes, I believe that that then goes to the question of

          #19-14142                                      9-22-2020

                              **J.A. 420**

1   whether or not the bankruptcy court has jurisdiction.  I'm not

2   so certain that -- and I, with all due respect to, to my

3   brother, Mr. Rademacher -- I don't believe that the fact that

4   sovereign immunity may apply in this particular case deprives

5   this Court of subject matter jurisdiction under the

6   circumstances of this particular case.  I believe that there is

7   an independent basis for subject matter jurisdiction pursuant

8   to section 1334 of Title 28.  Because there can be no doubt

9   that a motion to enforce the automatic stay or a motion related

10  to the automatic stay or the granting of relief regarding the

11  automatic stay certainly is a core proceeding under section

12  157(b) of Title 28 and, therefore, is treated as a, a matter

13  that the bankruptcy court has, if not exclusive subject matter

14  jurisdiction, co-equal subject matter jurisdiction on an

15  independent basis with the United States District Court.

16       So I believe that in the final analysis, although they

17  can frame it as a motion under 12(b)(1) for lack of subject

18  matter jurisdiction, I think that under the circumstances, your

19  Honor, that it's best looked at not so much as a matter of

20  subject matter jurisdiction because I'm not asserting a state

21  law claim in a federal forum in that regard, which the, there,

22  there is no diversity of jurisdiction and no independent

23  federal question involved.

24       Here, there is an independent basis of jurisdiction

25  and for that reason I believe that it's more appropriate to

#19-14142                                                    9-22-2020

**J.A. 421**

1  view the assertion of sovereign immunity or tribal immunity,

2  more appropriately, as an affirmative defense, as this Court

3  originally viewed when we had our preliminary hearing.

4          THE COURT:  Well, I think that's, you know, 1334

5  allocates, divides responsibility for bankruptcy matters, is

6  really what it does.  If there's immunity, then I can't take, I

7  can't go any further if there's an immunity that applies to a

8  particular entity.  It, it ends my ability to enter any orders

9  with respect to that entity.  What else could it mean?

10          MR. GOTTLIEB: It could mean, as I said, your Honor,

11  that although the Court has jurisdiction with respect to the

12  underlying cause of action, that the, the defense asserted of

13  sovereign immunity.  Sovereign immunity, as we, as I think that

14  even my, my opposing parties will agree, is something that's

15  waivable and because it's waivable, your Honor, it's not in the

16  nature, it's not jurisdictional, *per se*, but, rather, more in

17  the nature of an affirmative defense that can, in fact, be

18  waived.

19          THE COURT:  Well, I, I looked at that earlier.  I

20  don't know that it was raised very, very much, but I, or by

21  these papers, but I came -- I -- my, my independent research

22  came out -- has this been briefed?  Do I have this?

23          MR. GOTTLIEB:  I'm sorry.  I don't, I don't understand

24  your -- when you say "this," you're talking about the question

25  of whether or not this --

**J.A. 422**

58

```
1            THE COURT:  It's jurisdictional.

2            MR. GOTTLIEB:  I don't believe it's actually been

3  briefed, your Honor.  I'm sorry.  At least I --

4            THE COURT:  Mr. Rademacher, is --

5            MR. GOTTLIEB:  -- I didn't write it in that regard.

6            THE COURT:  Mr. Rademacher, is that, it's been

7  briefed?

8            MR. RADEMACHER:  Your Honor, we did brief this in our

9  principal brief.  We cited to -- I'll have to look back at my

10  argument again -- but we cited to Valentin v. Hospital Bella

11  Vista and a number of district court cases that have assessed

12  questions of sovereign immunity under Rule 12b(1).

13            THE COURT:  Okay.  All right.

14            All right.  I don't know if you responded to that, but

15  you've just told me, otherwise.  I don't know if you have any

16  support for that, Mr. Gottlieb.

17            MR. GOTTLIEB:  At this point, your Honor, I have not

18  had a chance to do the legal research on that particular matter

19  or to look at the Valentin case that's being cited, your Honor,

20  because, to be perfectly honest, I thought this matter had, in

21  fact, been discussed by you with respect to the last hearing

22  that we had.

23            THE COURT:  I don't know what you mean by that.

24            MR. GOTTLIEB:  During the last hearing you had

25  commented when it was claimed, the assertion of sovereign
```

#19-14142                                                        9-22-2020

**J.A. 423**

59

```
 1  immunity, they had said it was a 12(b)(1) subject matter

 2  jurisdiction matter and you had said, "No, no, no.  I, I

 3  believe that's more in the nature of an affirmative defense."

 4  I distinctly remember that from the, I believe it was early on

 5  in either late July or early August when we had our last

 6  hearing, your Honor.

 7          THE COURT:  All right.  Well, I --

 8          MR. GOTTLIEB:  Or maybe it was early July, now that I

 9  think about it.  It's been a while.

10          THE COURT:  Yeah.  I, I certainly didn't make a

11  ruling.

12          MR. GOTTLIEB:  I understand.

13          THE COURT:  All right.  Anything else on, on this

14  issue, the 12(b)(6) side of this question?

15          MR. GOTTLIEB:  The 12(b)(6) side of this, I believe

16  that the, the information that I've been able to glean from the

17  U. S. District Court case of Walker v. Lendgreen shows that as

18  a practical matter, not just simply as a matter of simply being

19  an arm of the Tribe, but as a practical matter, as a legal

20  matter, these entities are, in fact, all of a piece.  They've

21  said that it's -- I have -- that we haven't shown any evidence

22  that there is anything inequitable about this kind of

23  arrangement.  I beg to differ.  The way this, Lendgreen was

24  created, as shown in the, my response brief, starting on Page

25  15, the Tribe was incorporated, you know, and created not under
```

#19-14142                                                     9-22-2020

**J.A. 424**

1   any state law, but by, under tribal law and that it was to be

2   wholly owned by BDC, which, in fact, is wholly owned by the

3   Tribe, that it states in the, I guess, the Articles of

4   Organization, what we would call the Articles of

5   Organization/the operating agreement, that the, that:

6          "The company shall be treated as a 100 percent

7          tribally owned and operated company for federal and

8          state law purposes, including all tax purposes under

9          the exclusive ownership, control, and jurisdiction of

10         the Lac du Flambeau Band of Lake Superior Chippewa

11         Indians."

12         Moreover -- and I think this is, becomes very

13  important -- whenever there's a cash account balance of

14  Lendgreen that exceeds $500, all -- the -- Lendgreen is

15  required by its, by its operating agreement to upstream a

16  dividend back to the Tribe immediately.

17         So therefore, your Honor, at any given point in time

18  all of the money, save 500 bucks, is being transferred, all

19  profits are being transferred up to this Tribe so that in the

20  event that I were able to get a, a judgment against Lendgreen

21  itself, Niiwin, LLC, it would be worthless beyond $500 because

22  they operate this entity essentially all but, as a mere

23  instrumentality and to be able to assert sovereign immunity or

24  claim sovereign immunity and even under the loan agreement that

25  has been cited provides that:

#19-14142                                           9-22-2020

**J.A. 425**

                                                                                    61

1              "This loan agreement and all related documents are

2              being submitted as an economic arm, instrumentality,

3              and limited liability company of the Tribe.  Because

4              we and the Tribe are entitled to sovereign immunity,

5              you will be limited as to what claims, if any, you may

6              assert against the Tribe and us.  To encourage

7              resolution, any complaint may be submitted by you to

8              the Tribe for, as listed below."

9          For the provisions that talk about preservation of

10         sovereign immunity:

11             "It is the express intention of the Tribe and us as an

12         economic arm of the Tribe can fully preserve and not

13         waive, either in whole or in part, exclusive

14         jurisdiction," sovereign immunity -- "sovereign

15         governmental immunity" -- this is their language --

16         "and any other rights, titles, and privileges and

17         immunities to which we and the Tribe are entitled.  To

18         protect and preserve the rights of the parties, no

19         person may assume a waiver of sovereign immunity.  No

20         waiver is or can be made except by express written

21         declaration" -- and this is interesting -- "of the

22         Tribe's tribal council respecting, specifically

23         authorizing the waiver of the matter in question."

24         Well, if this entity is completely separate and

25     distinct from the Tribe, which I don't believe is the case,

1  then why is it that the, that the only entity that can waive

2  sovereign immunity happens to be not so much the arm of the

3  Tribe, if you will, not Niiwin, not Lendgreen, but, rather,

4  it's the Tribe's tribal council?

5         So, in any event, the Tribe in this particular case,

6  in all cases, actually, asserts overpowering control of this

7  entity.  It is, therefore, inequitable to say, well, gee whiz,

8  the Tribe has given them, has given Niiwin its *imprimatur* of

9  sovereignty.  So this Court can't exercise jurisdiction over

10 what, for all outward appearances, is a payday lender that's

11 engaging in interstate commerce.

12        Taking that as a whole, your Honor, I believe that

13 there is a plausible claim and that when you get past the

14 question of sovereign immunity *vel non* that in point of fact

15 there is a plausible claim to be made against all of these

16 entities precisely because of the fact that they are all of a

17 piece, that as an arm of the Tribe they cannot have their cake

18 and eat it, too.  They cannot claim corporate separateness on

19 the one hand and claim to be an arm of the Tribe for the

20 purposes of sovereign immunity on the other.  The factors set

21 forth in <u>Breakthrough Management</u>, which is cited in that small

22 brief, surreply brief that I sent on Friday, your Honor, sets

23 forth -- and if you just look at the factors themselves that

24 they're utilizing, it would be very similar to the same factors

25 that one would see if we were looking at a traditional piercing

63

1   of the corporate veil.

2           I will leave it at that, your Honor.

3           THE COURT:  All right.  Thank you.

4           Mr. Fairlie, anything, anything else?

5           MR. FAIRLIE:  Your Honor, very quick.

6           Regarding the, the suggestion that the corporate

7   structure is somehow inherently inequitable as it relates to

8   the debtor here, it's important to keep in mind that we're here

9   to test the sufficiency of the stay motion.  There's absolutely

10  nothing in the stay motion regarding the corporate structure

11  of, of the entities here and how that structure is inequitable.

12  In fact, the stay motion, I believe, acknowledges that these

13  entities are wholly owned, but that's where it leaves it. It

14  doesn't say that there's anything about that structure that is

15  somehow inherently inequitable.

16          And the idea that we can judicially notice that,

17  several pages of, of exhibits in an unrelated case from four

18  years ago, those aren't allegations.  Those aren't in the stay

19  motion.  They shouldn't be considered.

20          The, the other point that, this narrative of you can't

21  have your cake and eat it, too, again, these are conflating two

22  distinct concepts, tribal immunity of an arm on the one hand

23  and corporate separateness and corporate form on the other and

24  then, also, the exceptions of when those will be disregarded.

25  These are being conflated and the debtor hasn't cited a single

**J.A. 428**

64

1  case on that point where, that you can't have your cake and eat

2  it, too.  There's just, there, there isn't a single case cited.

3  The, the case cited by the debtor is only regarding when an arm

4  of the tribe is entitled to immunity.  It goes through that

5  analysis.  It doesn't address anything to do with disregarding

6  corporate form or disregarding corporate separateness.  Again,

7  there's a presumption that corporate entities are entitled to

8  separateness unless and until there is a legal and/or factual

9  basis for disregarding that separateness or form.  And when we

10  look at the stay motion, it's completely void of any legal or

11  factual basis for disregarding corporate form or disregarding

12  corporate separateness.

13          Thank you, your Honor.

14          THE COURT:  All right.  Thank you.

15          All right.  Is there anything else?

16          MR. GOTTLIEB:  I don't believe so, your Honor, unless

17  you want to take up the matter of the motion to strike.

18          THE COURT:  No.  I -- I'm -- I'm not going to go back

19  to that now.  I --

20          MR. GOTTLIEB:  Okay.

21          THE COURT:  I, I don't need to hear more on it.  I'll

22  issue a ruling with respect to it, okay?

23          MR. GOTTLIEB:  Very good, your Honor.

24          THE COURT:  All right.  Thank you all for attending

25  today.

#19-14142                                           9-22-2020

**J.A. 429**

1          MR. GOTTLIEB:  Thank you, your Honor.

2          MR. FAIRLIE:  Thank you, your Honor.

3          THE COURT:  All right.

4          MR. RADEMACHER:  Thank you, your Honor.

5          THE COURT:  Have a --

6          MS. WALKER:  Thank you, your Honor.

7      (Proceedings concluded at 3:46:34 p.m.)

8

9

10

11

12                        CERTIFICATE

13          I, court approved transcriber, certify that the

14    foregoing is a correct transcript from the official electronic

15    sound recording of the proceedings in the above-entitled

16    matter.

17    /s/ Janice Russell                    January 19, 2021

18    Janice Russell, Transcriber                   Date

19

20

21

22

23

24

25

# United States Court of Appeals
## For the First Circuit

————————————

No. 20-8026

IN RE: BRIAN W. COUGHLIN,

Debtor.

--------------------------------------

BRIAN W. COUGHLIN,

Petitioner,

v.

LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS; NIIWIN, LLC,
d/b/a Lendgreen; L.D.F. BUSINESS DEVELOPMENT CORPORATION; L.D.F. HOLDINGS,
LLC,

Respondents.

————————————

Before

Lynch, Kayatta and Barron,
<u>Circuit Judges</u>.

————————————

**JUDGMENT**

Entered: February 23, 2021

The petition for authorization under 28 U.S.C. § 158(d)(2) to appeal directly to this court
from the bankruptcy court's order dated October 19, 2020, is <u>granted</u>. The Clerk is directed to
docket this appeal and set a briefing schedule in the ordinary course.

By the Court:

Maria R. Hamilton, Clerk

**J.A. 431**

cc:
Richard Neil Gottlieb
Terrie L. Harman
Michael D. Cameron
Adrienne K. Walker
Matthew Levitt
Vanya S. Hogen
Andrew Lester
Aaron M. Williams

## CERTIFICATE OF SERVICE

I hereby certify that, on May 25, 2021, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system.  I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Adrienne K. Walker
Andrew W. Lester
Zachary R.G. Fairlie
Peter J. Rademacher
Andrew Adams III
Colette Routel

 /s/ *Gregory G. Rapawy*
Gregory G. Rapawy
*Counsel for Appellant Brian W. Coughlin*