Case No. 21-1153

_____

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

_____

IN RE: BRIAN W. COUGHLIN

*Debtor*,

_____

BRIAN W. COUGHLIN,

*Appellant*,

v.

LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS;
L.D.F. BUSINESS DEVELOPMENT CORP.; L.D.F. HOLDINGS, LLC;
NIIWIN, LLC, d/b/a Lendgreen,

*Appellees*.

On Appeal from the United States Bankruptcy Court for the
District of Massachusetts, No. 1:19-bk-14142-FJB (Hon. Frank J. Bailey)

**BRIEF ON BEHALF OF *AMICI CURIAE* PROFESSORS OF FEDERAL
INDIAN LAW IN SUPPORT OF APPELLEES (AFFIRMANCE)**

Seth Davis, Bar No. 11951107
424 N Addition
225 Bancroft Way
Berkeley, CA 94720
(813) 428-3331
sethdavis@berkeley.edu

Kaighn Smith, Jr., Bar No. 43039
Amy K. Olfene, Bar No. 1173174
DRUMMOND WOODSUM
84 Marginal Way, Ste. 600
Portland, ME 04101
(207) 772-1941
ksmith@dwmlaw.com
aolfene@dwmlaw.com
*Counsel for the* Amici Curiae

# TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................i

TABLE OF AUTHORITIES ...............................................................ii

IDENTITY AND INTEREST OF *AMICI CURIAE*..................................1

SUMMARY OF ARGUMENT ............................................................2

ARGUMENT ....................................................................................6

   I.   THE UNEQUIVOCAL EXPRESSION REQUIREMENT REFLECTS THE UNITED STATES' UNIQUE TRUST RESPONSIBILITY TO SUPPORT TRIBAL SOVEREIGNTY AND LEAVES THE GRAVE DECISION TO ABROGATE TRIBAL SOVEREIGN IMMUNITY WITH CONGRESS ..................................................................................6

   II.  THE BANKRUPTCY CODE DOES NOT UNEQUIVOCALLY EXPRESS CONGRESSIONAL INTENT TO TAKE THE GRAVE STEP OF ABROGATING TRIBAL SOVEREIGN IMMUNITY ................................13

CONCLUSION ...............................................................................25

CERTIFICATE OF COMPLIANCE....................................................A

ADDENDUM ...................................................................................B

CERTIFICATE OF SERVICE ..........................................................C

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Am. Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*,
    780 F.2d 1374 (8th Cir. 1995) ...................................................... 22

*Aroostook Band of Micmacs v. Ryan*,
    484 F.3d 41 (1st Cir. 2007).................................................... 20, 21

*Astoria Fed. Sav & Loan Assn. v. Solimino*,
    501 U.S. 104 (1991)................................................................... 14

*Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629
    F.3d 1173 (10th Cir. 2010) ........................................................ 22

*Bryan v. Itasca Cnty.*,
    426 U.S. 373 (1976)................................................................... 23

*C&L Enters. v. Citizen Band of Potawatomi Indian Tribe*,
    532 U.S. 411 (2001)..................................................................... 3

*California v. Cabazon Band of Mission Indians*,
    480 U.S. 202 (1987)................................................................... 22

*Cherokee Nation v. Georgia*,
    30 U.S. (5 Pet.) 1 (1831)............................................................ 22

*Cnty. of Oneida v. Oneida Indian Nation*,
    470 U.S. 226 (1985)..................................................................... 9

*Hoffman v. Conn. Dep't of Income Maint.*,
    492 U.S. 96 (1989)............................................................... 17, 18

*In re Greektown Holdings, LLC*,
    917 F.3d 451 (6th Cir. 2019) ..............................................*passim*

*In re Whitaker*,
    474 B.R. 687 (B.A.P. 8th Cir. 2012) ............................................ 8

*Iowa Mut. Ins. Co. v. LaPlante*,
    480 U.S. 5 (1987)......................................................................... 3

*Kiowa Tribe v. Mfg. Tech., Inc.*,
    523 U.S. 751 1998)................................................................................*passim*

*McGirt v. Oklahoma*,
    140 S. Ct. 2452 (2020)...........................................................4, 9, 10

*Meyers v. Oneida Tribe of Indians of Wisc.*,
    836 F.3d 818 (7th Cir. 2016) ...................................................8, 20

*Michigan v. Bay Mills Indian Cmty.*,
    572 U.S. 782 (2014)................................................................*passim*

*Narragansett Indian Tribe v. Rhode Island*,
    449 F.3d 16 (1st Cir. 2006).....................................................20, 21

*Ninigret Dev. v. Narragansett Indian Wetuomuck Hous. Auth.*,
    207 F.3d 21 (1st Cir. 2000)..............................................................7

*Okla. Tax Comm'n v. Citizen Band of Potawatomi Indian Tribe of Okla.*,
    498 U.S. 505 (1991)................................................................*passim*

*Penobscot Nation v. Fellencer*,
    164 F.3d 706 (1st Cir. 1999)...........................................................9

*Santa Clara Pueblo v. Martinez*,
    436 U.S. 49 (1978)........................................................2, 4, 6, 14

*Sossamon v. Texas*,
    562 U.S. 277 (2011)......................................................................24

*Three Affiliated Tribes of the Ft. Berthold Rsrv. v. Wold Eng'g, P.C.*,
    476 U.S. 877 (1986)........................................................................6

*Turner v. United States*,
    248 U.S. 354 (1919)......................................................................14

*United States v. King*,
    395 U.S. 1 (1969).......................................................................4, 14

*United States v. Lara*,
    541 U.S. 193 (2004)........................................................................7

*United States v. Nordic Vill., Inc.*,
  503 U.S. 30 (1992)................................................................ 17

*United States v. Testan*,
  424 U.S. 392 (1976)........................................................ 4, 14

*United States v. Torres*,
  432 F.3d 20 (1st Cir. 2005)................................................ 14

*Upper Skagit Indian Tribe v. Lundgren*,
  138 S. Ct. 1649 (2018)................................................ 8, 13, 23

*Williams v. Lee*,
  358 U.S. 217 (1959)............................................................ 4

*Worcester v. Georgia,*
  31 U.S. (6 Pet.) 515 (1832)................................................. 6

## **Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 3................................................ 3, 7

U.S. Const. art. II, § 2, cl. 2 ................................................ 7

## **Statutes and Public Laws**

Bankruptcy Code, 11 U.S.C. §§ 101-1532
  § 101(27)........................................................ 15, 16, 21, 23
  § 106 ....................................................................*passim*
  § 106(a)........................................................ 5, 15, 16, 17
  § 106(c) ............................................................ 16, 17, 21
  § 362(k)(1) ........................................................................ 4

Fair Debt Collection Procedures Act, 28 U.S.C. §§ 3001-3308
  § 3002(7).......................................................................... 12
  § 3002(10)........................................................................ 12

Foreign Sovereign Immunities Act of 1976,
  Pub. L. No. 94-583, 28 U.S.C. §§ 1602-1611 ............................ 23

Indian Financing Act of 1974, 25 U.S.C. §§ 1451–1543 ...................... 22

Indian Self-Determination and Education Assistance Act of 1975,
      Pub. L. 93-638, 25, U.S.C. §§ 5301-5423 ................................................... 22
      § 5321(3)(A) ................................................................................................. 11

Tribal Self-Governance Act of 1994,
      Pub. L. No. 103-413, 108 Stat. 4250 (1994) ........................................... 5, 22

Safe Drinking Water Act, Pub. L. 93-523, 42 U.S.C. §§ 300F-300J-27
      § 300f(10) ..................................................................................................... 12
      § 300f(12) ..................................................................................................... 12
      § 300j-9(i)(2)(a) ............................................................................................ 12

25 U.S.C.
      § 2710(d)(7)(A)(ii).......................................................................................... 11

42 U.S.C.
      § 6903(13)...................................................................................................... 11
      § 6903(15)...................................................................................................... 11
      § 6972(a)(1) ................................................................................................... 11

## **Legislative Documents**

123 Cong. Rec. 35447 (Oct. 27, 1977) .................................................... 19

140 Cong. Rec. H10766 (daily ed. Oct. 4, 1994) .................................... 18

140 Cong. Rec. H10794 (Oct. 4, 1994) ............................................... 5, 13

140 Cong. Rec. H10917 (Oct. 4, 1994). .................................................. 18

*A Report prepared by the Staff of the Subcomm. on Civil and Constitutional
      Rights     for     the     Comm.     on     the     Judiciary,*
      H.R. Staff Rep. No. 3, 95th Cong. 1st Sess. (1977) ...................................... 19

*Bankruptcy Act Revision: Hearings before the Subcomm. on Civil and
      Constitutional Rights of the Comm. on the Judiciary on H.R.* 31 *and
      H.R. 32*, H.R. 94th Cong. 2d Sess. (Apr. 2, 1976) ...................................... 19

*Bankruptcy Reform: Hearing Before the Subcomm. on Economic and
      Commercial Law of the House Comm. on the Judiciary,*
      103d Cong., 2d Sess. (Aug. 17, 1994)....................................................... 17

*Commission to Study Bankruptcy Laws: Hearings before the Subcomm. on Bankruptcy of the Comm. on the Judiciary on S.J. Res. 100*, S. 90th Cong. 2d Sess. (1968) ................................................................... 19

H.R. Rep. No. 95-595 (1977) ................................................................... 16

H.R. Rep. No. 835 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3350 ........................ 17

Ltr. from Conrad K. Cyr, Nat'l Conf. of Bankruptcy Judges to Rep. Don Edwards (Mar. 3, 1977) ............................................................. 19

S. Rep. No. 95-989 (1977) ....................................................................... 16

## Other Authorities

Cohen's Handbook of Federal Indian Law (2012 ed.) ........................................ 3, 9

Karen M. Gebbia-Pinetti, *State Sovereign Immunity and the Bankruptcy Code*, 7 J. Bankr. L. & Prace. (1998) ................................................................... 16

S. Elizabeth Gibson, *Congressional Response to* Hoffman *and* Nordic Village*: Amended Section 106 and Sovereign Immunity*, 69 Am. Bankr. L.J. 311 (1995) ................................................................................ 16, 17

## IDENTITY AND INTEREST OF *AMICI CURIAE*

*Amici* law professors (listed in the Addendum to this brief) are leading scholars and teachers of federal Indian law who submit this brief in their individual capacities, not on behalf of their institutions.[1] In their scholarship and their teaching, they have explored the common law doctrine of Tribal sovereign immunity and the rules of statutory interpretation that preserve this immunity absent a Tribal waiver or an unequivocal congressional abrogation. They seek to bring to this Court's attention arguments and precedents that are relevant to the question presented by this appeal: whether Congress unequivocally expressed its intent to abrogate Tribal sovereign immunity when it enacted the Bankruptcy Code in 1978 and amended it in 1994. *Amici* submit this brief because they are concerned that the Appellant's arguments misconstrue Supreme Court and First Circuit precedent regarding Tribal sovereign immunity and would, if accepted, significantly encroach upon the doctrine of inherent Tribal sovereignty and the constitutional principle that Congress has primary authority to determine federal Indian policy.

---

[1] *Amici* certify that no party's counsel authored this brief in whole or in part; that no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and that no person—other than the *Amici* and their counsel—contributed money that was intended to fund preparing or submitting the brief. All parties have consented to the filing of this *amicus* brief.

## SUMMARY OF ARGUMENT

Under settled law, the answer to the question presented on appeal is straightforward: Because Congress did not unequivocally express its intent to abrogate Tribal sovereign immunity, Indian Tribes may raise it as a defense to claims for money damages under the Bankruptcy Code. Unable to point to unequivocal evidence of a congressional intent to abrogate Tribal sovereign immunity, Appellant instead stitches together an argument for abrogation that has no grounding in the basic principles of statutory interpretation within federal Indian law. In essence, this argument holds that a federal court may find an abrogation of Tribal sovereign immunity so long as Congress has expressed an intent to abrogate the immunity of a class of entities that *might*—but also *might not*—include Tribes. That would amount to abrogation by (debatable) implication and is not the law.

The longstanding doctrine instead is that Indian Tribes are preconstitutional sovereigns shielded by a "'common-law immunity from suit traditionally enjoyed by sovereign powers'" that cannot be waived or abrogated by implication. *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). Tribes may choose to waive their sovereign immunity but must do so clearly. *See Kiowa Tribe v. Mfg. Tech, Inc.*, 523 U.S. 751, 760 (1998). Absent a Tribal waiver, Tribal sovereign immunity persists unless and until Congress "'unequivocally' express[es]" the intent to abrogate it. *Bay Mills*, 572

2

U.S. at 788 (2014) (quoting *C&L Enters. v. Citizen Band of Potawatomi Indian Tribe*, 532 U.S. 411, 418 (2001)).

The unequivocal expression requirement reflects the United States' unique trust responsibility to support Tribal sovereignty and requires Congress to make clear that it has weighed the relevant policy concerns and decided to abrogate Tribal sovereign immunity. The "graveness of this question [has] led to the requirement that Congress unequivocally express its intent to order to abrogate Tribal sovereign immunity." *In re Greektown Holdings* LLC, 917 F.3d 451, 461 (6th Cir. 2019). As the federal branch with primary authority over federal Indian Affairs policy under the Constitution, *see* U.S. Const. art. I, § 8, cl. 3, Congress has the responsibility to consider whether to encroach upon Tribal sovereignty by abrogating Tribal sovereign immunity in federal court. *See Bay Mills*, 572 U.S. at 790. The United States has a trust responsibility to support Tribal sovereignty, which Congress has implemented over the past half-century through a "longstanding policy" of promoting Tribal self-determination. *See, e.g.*, *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14 & n.5 (1987). Consistent with this policy, the unequivocal expression requirement is one of several canons in federal Indian law that direct courts to assume that Tribal sovereignty and Tribal rights are preserved where treaties and statutes are ambiguous. *See* Cohen's Handbook of Federal Indian Law § 2.02[1], at 113-14 (2012 ed.). Just as Congress must clearly say so if it intends to break a treaty

promise and to diminish an Indian reservation, *see McGirt v. Oklahoma*, 140 S. Ct. 2452, 2462 (2020), or to allow states to infringe upon the jurisdictional prerogatives of Indian Tribes, *see Williams v. Lee*, 358 U.S. 217, 223 (1959), so too must Congress express unequivocally its intent to abrogate Tribal sovereignty. Because "the Legislature wields significant constitutional authority when it comes to tribal relations," a federal court will not "lightly infer" congressional intent to encroach upon Tribal sovereignty and self-governance. *See McGirt*, 140 S. Ct. at 2462.

These principles control this case. Congress has not unequivocally expressed its intent to authorize claims against Indian Tribes under the Bankruptcy Code. The Bankruptcy Court thus rightly dismissed the Appellant's claims for actual and punitive damages and attorneys' fees under 11 U.S.C. § 362(k)(1). When Congress enacted the Bankruptcy Code in 1978, not to mention the current abrogation provision in 1994, it presumably was aware that an unequivocal expression of intent was needed to abrogate Tribal sovereign immunity. *See Santa Clara Pueblo*, 436 U.S. at 58-59 ("It is settled that a waiver of sovereign immunity "'cannot be implied but must be unequivocally expressed.'" (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976), quoting *United States v. King*, 395 U.S. 1, 4 (1969))). Yet the Bankruptcy Code does not even mention Tribes, much less indicate that Congress considered the competing policy concerns involved in determining whether to encroach upon Tribal sovereignty by abrogating Tribal sovereign immunity.

The absence of unequivocal abrogation of Tribal sovereign immunity in the Code should be unsurprising. In 1994, the 103rd Congress amended the Code in order to unequivocally abrogate state sovereign immunity and federal sovereign immunity. *See* 140 Cong. Rec. H10794 (Oct. 4, 1994). It did so by enacting the abrogation provision at issue in this case. *See* 11 U.S.C. § 106(a) (1994). There is no evidence, however, that the 103rd Congress even considered the question of Tribal sovereign immunity when it enacted that provision. Leaving Tribal sovereign immunity in place was consistent with Congress's policy of promoting Tribal self-determination and economic development, which Congress had already embodied in statutory law prior to its enactment of the Code in 1978 and which it has reaffirmed in many statutes since, including the Tribal Self-Governance Act of 1994 enacted by the 103rd Congress. *See* Pub. L. No. 103-413, 108 Stat. 4250. Unless and until Congress unequivocally says otherwise, Tribal sovereigns may raise their immunity as a defense to claims under the Code.

## ARGUMENT

**I.  THE UNEQUIVOCAL EXPRESSION REQUIREMENT REFLECTS THE UNITED STATES' UNIQUE TRUST RESPONSIBILITY TO SUPPORT TRIBAL SOVEREIGNTY AND LEAVES THE GRAVE DECISION TO ABROGATE TRIBAL SOVEREIGN IMMUNITY WITH CONGRESS**

Tribes are "separate sovereigns pre-existing the Constitution" with powers of self-government, including sovereign immunity from suit. *See Santa Clara Pueblo*, 436 U.S. at 55; *see also Three Affiliated Tribes of the Ft. Berthold Rsrv. v. Wold Eng'g, P.C.*, 476 U.S. 877, 890 (1986) (tribal sovereign immunity "is a necessary corollary to Indian sovereignty and self-governance"). Beginning in the Founding Era, the United States has repeatedly promised to protect inherent Tribal sovereignty. *See Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 557 (1832) (holding that Indian Tribes are "distinct political communities, having territorial boundaries, within which their authority is exclusive . . . which is not only acknowledged, but guarantied by the United States"). Federal courts have played a role in fulfilling this promise by recognizing the doctrine of Tribal sovereign immunity.

Like other sovereigns, Indian Tribes enjoy a traditional immunity from suit in the courts of another sovereign. *Bay Mills*, 572 U.S. at 788. "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe,* 523 U.S. at 754. This basic rule, which is part of the "background" against which Congress legislates with respect to Tribes, extends to commercial activities. *Id.* at 758, 760. Tribal sovereign immunity

also extends to arms of the Tribe, which may, as occurred in this case, invoke it as a shield to suit. *See Ninigret Dev. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 29 (1st Cir. 2000).

In light of the background principles of Tribal sovereignty and Congress's primary authority in the field of Indian affairs, the Supreme Court has consistently reaffirmed the doctrine of Tribal sovereign immunity notwithstanding demands for judicial abrogation of it. Under the Constitution, Congress has "broad general powers to legislate in respect to Indian tribes." *United States v. Lara*, 541 U.S. 193, 200 (2004) (citing U.S. Const. art. I, § 8, cl.3, and art. II, § 2, cl. 2). These powers, the Court has held, include the authority to abrogate Tribal sovereign immunity. But, the Court has repeatedly cautioned, "courts will not lightly assume that Congress in facts intends to undermine Indian self-government." *Bay Mills*, 572 U.S. at 790. Rather, "[t]he baseline position . . . is tribal immunity; and '[t]o abrogate [such] immunity, Congress must 'unequivocally' express that purpose." *Id.* (quoting *C&L Enters.*, 532 U.S. at 418). In *Kiowa Tribe*, the Court started from this baseline position and decided to "defer" to Congress rather than to abrogate a Tribe's sovereign immunity from suit for off-reservation commercial activities. 523 U.S. at 758-59. And in *Bay Mills*, the Court reaffirmed that "it is fundamentally Congress's job, not ours, to determine whether and how to limit tribal immunity." 572 U.S. at 800. Because in both cases Congress had not unequivocally expressed an intent to

abrogate it, the Court held that Tribal sovereign immunity required dismissal of actions against Tribes. *See Kiowa Tribe*, 523 U.S. at 760; *Bay Mills*, 572 U.S. at 800.

The Court's Tribal sovereign immunity jurisprudence thus recognizes that "[d]etermining the limits on the sovereign immunity held by Indians is a *grave question*." *Upper Skagit Indian Tribe v. Lundgren*, 138 S. Ct. 1649, 1654 (2018) (emphasis added). "It is the graveness of this question," the Sixth Circuit noted *In re Greektown Holdings*, "that led to the requirement that Congress unequivocally express its intent in order to abrogate tribal sovereign immunity." 917 F.3d at 462. In light of that requirement, the Sixth Circuit held, Section 106 of the Bankruptcy Code cannot be interpreted to abrogate Tribal sovereign immunity. *See id.* at 463; *see also Meyers v. Oneida Tribe of Indians of Wisc.*, 836 F.3d 818, 827 (7th Cir. 2016) (holding that Fair and Accurate Credit Transactions Act of 2003 (FACTA) did not abrogate Tribal sovereign immunity through its defining a "person" subject to suit to include "any . . . government," and analogizing FACTA to the Bankruptcy Code); *In re Whitaker*, 474 B.R. 687, 695 (B.A.P. 8th Cir. 2012) (holding that Section 106 of Bankruptcy Code does not abrogate Tribal sovereign immunity).

The requirement of an unequivocal expression of congressional intent reflects the United States' trust responsibility to support Tribal sovereignty. The United States and Indian Tribes have a "unique trust relationship" that requires the federal government to support Tribal sovereignty and self-government. *See Cnty. of Oneida*

*v. Oneida Indian Nation*, 470 U.S. 226, 247 (1985). For the past fifty years, Congress has implemented this trust responsibility through myriad statutes supporting Tribal self-determination. *See, e.g.*, Cohen's Handbook of Federal Indian Law § 5.04[3][a], at 414 n.56 (providing examples). During the same half-century, the Executive Branch has reaffirmed the trust responsibility as a guiding principle. *See id.* at 414 n.58. In keeping with the trust responsibility, the federal courts have adopted canons of construction that require courts to assume that Tribal sovereignty and Tribal rights are preserved where treaties and statutes are ambiguous. *See Oneida Indian Nation*, 470 U.S. at 247 (explaining that Indian canons of construction are "rooted in the unique trust relationship between the United States and the Indians"); *Penobscot Nation v. Fellencer*, 164 F.3d 706, 709 (1st Cir. 1999) (citing *Oneida Indian Nation*). Among these rules is the requirement that Congress unequivocally express an intent to abrogate Tribal sovereign immunity. *See Bay Mills*, 572 U.S. at 790. By applying this rule of construction, the federal courts help ensure that the United States fulfills its trust responsibility towards Tribal sovereigns.

In *McGirt v. Oklahoma*, the Court made clear the vital role that statutory construction plays in respecting Congress's authority and fulfilling the United States' trust responsibility. The question there was whether Congress had diminished the reservation of the Muscogee (Creek) Nation. *See McGirt*, 140 S. Ct. at 2462. The Court held that an Indian reservation "persists" unless and until Congress clearly

expresses an intent to diminish it. *See id.* This clear statement rule, the Court explained, is grounded in judicial recognition of the "significant constitutional authority" that Congress possesses "when it comes to tribal relations." *Id.* When Congress intends to wield its authority to "breach its own promises and treaties" and encroach upon Tribal sovereignty, it must be clear. *Id.* at 2462-63. The federal courts will not "lightly infer" that Congress intended to diminish a reservation it has established. *Id.* at 2462. Similarly, the Court explained, it has required a clear expression of congressional intent before a state or the United States may criminally prosecute "Indians for conduct on their lands." *Id.* at 2477. This clear expression rule reflects the principle of inherent Tribal sovereignty and the federal government's promise that Tribes would have "the right to continue to govern themselves." *Id*. "If Congress wishes to withdraw its promises" of support for Tribal sovereignty, the Court concluded, "it must say so" clearly. *Id.* at 2482.

As in *McGirt*, where "[h]istory show[ed] that Congress knows how to withdraw a reservation when it can muster the will," *id.* at 2462, so too here history shows that Congress knows how to be unequivocal when authorizing lawsuits against Indian Tribes. Many statutes—both those enacted before the Bankruptcy Code of 1978 and after it—unequivocally express this congressional intent. *See In re Greektown Holdings*, 917 F.3d at 457 ("We . . . need not hypothesize whether Congress understood the meaning of 'unequivocal,' as Congress kindly

10

demonstrated as much in the years immediately preceding its enactment of the Bankruptcy Code."). First, Congress sometimes states directly that it is abrogating Tribal sovereign immunity. It may do so by stating that a defendant may not raise the defense of Tribal sovereign immunity to suit. *See, e.g.*, 25 U.S.C. § 5321(c)(3)(A)(providing that an "insurance carrier shall waive any right it may have to raise as a defense the sovereign immunity of an Indian tribe from suit"). Or Congress may specify that the federal courts have jurisdiction over a right of action against a Tribe. *See id.* § 2710(d)(7)(A)(ii) ("The United States district courts shall have jurisdiction over . . . any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact entered into . . . ."). Second, Congress has abrogated Tribal sovereign immunity by expressly including Indian Tribes within a list of parties amenable to suit under a statutory right of action. In the Resource Conservation and Recovery Act of 1976, for example, Congress authorized citizen suits to force compliance with the statute "against any person . . . who is alleged to be in violation" of the statute, while defining "person" to include "an Indian Tribe." *See* 42 U.S.C. § 6972(a)(1) (authorizing a citizen suit); *id.* § 6903(15) (defining "person" to include a "municipality"); *id.* § 6903(13) (defining "municipality" to

11

include "an Indian tribe").[2] Congress thus may meet the unequivocal expression requirement in more than one way.

Sometimes, as in this case, litigants argue that Congress need only use a generic phrase to refer to a class that might logically include Indian Tribes because of one or more of their characteristics. But, as the Bankruptcy Court recognized, "'there is not one example in all of history where the Supreme Court has found that Congress intended to abrogate tribal sovereign immunity without expressly mentioning Indian tribes somewhere in the statute.'" (Coughlin Add. 3 (quoting *In re Greektown Holdings*, 917 F.3d at 460).) Rather, in respecting inherent Tribal sovereignty Congress's primary authority over federal Indian policy, the Court has repeatedly required an unequivocal expression of congressional intent to abrogate Tribal sovereign immunity. *See Bay Mills*, 572 U.S. at 790. It is Congress, not the federal judiciary, that "has the greater capacity 'to weigh and accommodate the competing policy concerns and reliance interests'" at stake. *Id.* at 572 U.S. at 801 (quoting *Kiowa Tribe*, 523 U.S. at 759). The requirement of an unequivocal expression of congressional intent ensures this policy judgment remains with the branch best suited to make it. And, therefore, the Supreme Court has rejected

---

[2] Congress has similarly abrogated Tribal sovereign immunity in the Safe Drinking Water Act, *see* 42 U.S.C. §§ 300f(10), 300f(12), 300j-9(i)(2)(a), and the Fair Debt Collection Procedures Act, 28 U.S.C. §§ 3002(7), (10), to name but two other examples.

arguments for judicial abrogation of "the long-established principle of tribal sovereign immunity" four times in recent decades. *Okla. Tax Comm'n v. Citizen Band of Potawatomi Indian Tribe of Okla.,* 498 U.S. 505, 510 (1991*)*; *see also Upper Skagit Tribe*, 138 S. Ct. at 1652-53 (holding that the Supreme Court's decision in *Cnty. of Yakima v. Confederated Tribes & Bands of Yakima Nation*, 502 U.S. 251 (1992), did not abrogate Tribal sovereign immunity for *in rem* lawsuits); *Bay Mills*, 572 U.S. at 803 ("a fundamental commitment of Indian law is judicial respect for Congress's primary role in defining the contours of tribal sovereignty"); *Kiowa Tribe*, 523 U.S. at 760 ("we decline to revisit our case law and choose to defer to Congress").

## II.   THE BANKRUPTCY CODE DOES NOT UNEQUIVOCALLY EXPRESS CONGRESSIONAL INTENT TO TAKE THE GRAVE STEP OF ABROGATING TRIBAL SOVEREIGN IMMUNITY

Indian Tribes may raise sovereign immunity as a defense to a claim for money damages under the Bankruptcy Code because Congress has not unequivocally authorized such claims. The Code does not even mention Tribes. Nor does its legislative history anywhere suggest that Congress even considered the question whether to subject Tribes to claims under the Code. Rather, that history confirms that the 103rd Congress enacted the current abrogation provision in 1994 in order to abrogate state sovereign immunity and federal sovereign immunity. *See* 140 Cong. Rec. H. 10794. Tribal sovereign immunity was not addressed in the 1994

13

amendments because the 103rd Congress did not consider it. Because "it is fundamentally Congress's job . . . to determine whether and how to limit tribal immunity," *Bay Mills*, 572 U.S. at 800, the Bankruptcy Court correctly dismissed Appellant's claims for damages against the Appellees.

The unequivocal expression requirement was background common law when Congress enacted the Code in 1978 and amended its pertinent provisions in 1994. As the Court explained in 1978, it was by then "settled that a waiver of sovereign immunity cannot be implied by must be unequivocally expressed." *Santa Clara Pueblo*, 436 U.S. at 58-59 (citations, marks omitted). This principle is an aspect of the "traditional sovereign immunity" enjoyed by sovereigns, *see Testan*, 424 U.S. at 399, which the Court had recognized for Indian Tribes long before 1978, *see Santa Clara Pueblo*, 436 U.S. at 58 ("Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.") (citing *Turner v. United States*, 248 U.S. 354, 358 (1919)). Presumably, then, Congress was aware when it enacted and amended the Code that an unequivocal expression was required to abrogate Tribes' traditional sovereign immunity. *See Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law . . . principles"); *United States v. Torres*, 432 F.3d 20, 25 (1st Cir. 2005) ("Congress is presumed to know the content of background law.").

Yet the text of the Code's abrogation provision does not unequivocally express an intent to abrogate Tribal sovereign immunity. Section 106(a), enacted in 1994, provides that "sovereign immunity is abrogated as to a governmental unit" with respect to various sections of the Code, including 11 U.S.C. § 362, under which Appellant has sought damages and attorneys' fees. *See id.* § 106(a)(1). According to the Appellant, it is clear that an Indian Tribe is "a governmental unit" subject to the abrogation provision in light of Section 101(27), a provision enacted in 1978 that defines "governmental unit" to include not only the United States government, state governments and municipalities, territorial governments, and foreign states, but also "other foreign or domestic government[s]." *Id.* § 101(27). Because "domestic government" might include Indian Tribes, Appellant argues, "Congress would have had no doubt that it when defined a 'governmental unit' in 1978 and 'abrogated' the immunity of such units in 1994, those provisions would apply to Indian tribes." (Coughlin Br. 26.)

There is reason to doubt, however, that the 103rd Congress considered the grave question of abrogating Tribal sovereign immunity and unequivocally expressed its intent to encroach thus upon Tribal sovereignty. When it amended the Code in 1994, Congress was not aiming at Tribal sovereign immunity at all. Rather, it enacted the current abrogation provision in order to abrogate state sovereign immunity and waive federal sovereign immunity after the Supreme Court had held

that the 1978 version of the Code did not do so. *See* Karen M. Gebbia-Pinetti, *State Sovereign Immunity and the Bankruptcy Code*, 7 J. Bankr. L. & Prace. 521, 562-70 (1998) (discussing history of 1994 amendments).

Congress did not unequivocally abrogate Tribal sovereign immunity from claims for money damages when it enacted the Code. In Section 106(c), the 1978 Code provided that "notwithstanding any assertion of sovereign immunity—(1) a provision of [Title 11, the Bankruptcy Code] that contains 'creditor,' 'entity,' or 'governmental unit' applies to governmental units; and (2) a determination by the court of an issue under such a provision binds governmental units."[3] 11 U.S.C. § 106(c) (1978). Then, as now, "governmental unit" was defined to include states and the federal government expressly as well as "other . . . domestic government[s]." 11 U.S.C. § 101(27). The House and Senate Reports to Section 106(c) focused upon Congress's authority to abrogate state sovereign immunity and did not discuss Tribes. *See* H.R. Rep. No. 95-595 at 317; S. Rep. No. 95-989 at 29-30 (1977). In *Hoffman v. Conn. Dept. Income Maint.*, 492 U.S. 96, 104 (1989) (plurality op.), the Supreme Court held that Section 106(c) did not clearly authorize suits for money

---

[3] As originally enacted, Section 106(a) and (b) also addressed sovereign immunity by "allow[ing] an affirmative recovery, not limited in amount, for compulsory counterclaims against the government but allow[ing] only setoffs against the government's claim for permissive counterclaims." S. Elizabeth Gibson, *Congressional Response to* Hoffman *and* Nordic Village*: Amended Section 106 and Sovereign Immunity*, 69 Am. Bankr. L.J. 311, 316 (1995).

damages against states. And in *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 31 (1992), the Court held that Congress did not "unequivocally express" its intent to waive the federal government's sovereign immunity when it defined a "governmental unit" to include the United States and enacted Section 106(c). Given that Congress nowhere mentioned Tribes in the 1978 Code, it follows from *Nordic Village* that Congress did not then unequivocally express congressional intent to abrogate Tribal sovereign immunity with respect to monetary liability.

Nor did Congress unequivocally express an intent to abrogate Tribal sovereign immunity when it overturned *Hoffman* and *Nordic Village* in 1994. Congress reorganized Section 106 and enacted the current abrogation provision in Section 106(a) to accomplish that goal. *See* H.R. Rep. No. 835 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3350, 3351 ("This section would effectively overrule two Supreme Court cases that have held that the States and Federal Government are not deemed to have waived their sovereign immunity by virtue of enacting section 106(c) of the Bankruptcy Code."). The amendment was proposed during a House subcommittee hearing "relatively late in the legislative process." *See* Gibson, 69 Am. Bankr. L.J. at 327-28 (citing *Bankruptcy Reform: Hearing Before the Subcomm. on Economic and Commercial Law of the House Comm. on the Judicia*ry*, 103d Cong., 2d Sess. (1994)). The original proposal was "virtually identical" to a proposal from the National Bankruptcy Conference, whose representative testified at the House

subcommittee hearing about cases in which the federal government abused its sovereign immunity by seizing property. *See id.* at 328 & n.112. After some revisions which reflected negotiations with the Senate and the U.S. Department of Justice and were designed to clarify the abrogation provision, the full House afforded "relatively little debate" to the bill and "only a brief discussion of the amendment of § 106." *Id.* at 328-29 & n.117. The sponsor of the Bill stated that its intent was to overrule *Hoffman* and *Nordic Village*. *Id.* at 329 (citing 140 Cong. Rec. H10917 (Oct. 4, 1994) (statement of Rep. Berman)). And a section-by-section analysis of the bill stated that the amendment aimed "to make section 106 conform to the Congressional intent of the Bankruptcy Reform Act of 1978 waiving the sovereign immunity of the States and the Federal Government," with no mention of Tribes. *See* 140 Cong. Rec. H10766 (daily ed. Oct. 4, 1994). The 103rd Congress was not considering Tribal sovereign immunity when it amended Section 106 and unsurprisingly did not unequivocally express an intent to abrogate Tribal sovereign.

In short, the legislative history confirms what the text of the Code indicates: Congress has not weighed the competing policy concerns involved in determining whether to abrogate Tribal sovereign immunity. And that should end the inquiry. *See In re Greektown Holdings*, 917 F.3d at 462 ("[T]he Supreme Court has repeatedly reaffirmed the requirement [of an unequivocal expression], and warned lower courts

against abrogating tribal sovereign immunity if there is any doubt about Congress' intent.").[4]

Appellant would substitute another inquiry for the unequivocal expression requirement. According to Appellant, it is enough that Congress in 1978 defined a statutory term with a generic phrase that *might* include Indian Tribes and then in 1994, with the apparent purpose of abrogating the immunity of *other* governments, amended a different provision that used this term. (Coughlin Br. 26.) The dispositive question, according to Appellant, is whether an Indian Tribe might be classified as a "domestic government." *Id.* 18-26. But, as the Sixth Circuit has recognized, "that is not the real question." *In re Greektown Holdings*, 917 F.3d at 459. The real question is not whether Tribes are domestic governments in some sense. *See*

---

[4] To the extent that the legislative history addresses Indians, it only provides further confirmation that Congress did not consider abrogating Tribal sovereign immunity. The isolated references to Indians in the legislative history do not address that topic, nor do they suggest consideration of questions of Tribal sovereignty more generally. *See* 123 Cong. Rec. 35447 (Oct. 27, 1977) (statement of Rep. William Cohen); Ltr. from Conrad K. Cyr, Nat'l Conf. of Bankruptcy Judges to Rep. Don Edwards (Mar. 3, 1977); *A Report prepared by the Staff of the Subcomm. on Civil and Constitutional Rights for the Comm. on the Judiciary*, H.R. Staff Rep. No. 3, 95th Cong. 1st Sess. (1977); *Comm'n to Study Bankruptcy Laws: Hearings before the Subcomm. on Bankruptcy of the Comm. on the Judiciary on S.J. Res. 100*, S. 90th Cong. 2d Sess., at 12 (1968) (statement of Daniel R. Cowans, First Vice President of the Nat'l Conf. of Referees in Bankruptcy); *Bankruptcy Act Revision: Hearings before the Subcomm. on Civil and Constitutional Rights of the Comm. on the Judiciary on H.R. 31 and H.R. 32*, H.R. 94th Cong. 2d Sess., at 2044 (Apr. 2, 1976) (prepared statement of William T. Plumb, attorney).

*Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 17 (1831) (stating that Tribes "may . . . perhaps be denominated domestic dependent nations"). The question instead is whether it is doubtful that Congress considered abrogating Tribal sovereign immunity and expressed its intent to take that grave step. And as to that question, it cannot be "said with 'perfect confidence' that Congress" intended in 1994 to abrogate Tribal sovereign immunity when it did not mention Tribes anywhere in the Bankruptcy Code and when the history of the Code confirms that Congress did not consider Tribal sovereign immunity.[5] *See Meyers*, 836 F.3d at 827.

Appellant is correct that, as this Court has held, abrogation of Tribal sovereign immunity does not require "magic words." *Narragansett Indian Tribe v. Rhode Island*, 449 F.3d 16, 25 (1st Cir. 2006); *see also Aroostook Band of Micmacs v. Ryan*, 484 F.3d 41, 50 (1st Cir. 2007). But this Court's precedents do not counsel in favor of abrogation here. In both *Narragansett* and *Aroostook*, the federal statutes at issue—unlike the Bankruptcy Code—addressed Indian affairs and, in light of their unique histories, did not leave this Court with any doubt that Congress had

---

[5] In *Meyers*, the Seventh Circuit recognized that there is a distinction between whether a statute applies to a Tribe and whether Congress has authorized suits against Tribes for violations of that statute. *See* 836 F.3d at 827. Abrogation of Tribal sovereign immunity requires an unequivocal expression of congressional intent even when a statute might otherwise apply to Tribes. *See id.* Thus, Appellant's argument (Coughlin Br. 35-36), that Tribes must be "governmental units" for other purposes within the Code distracts from the question presented by this appeal.

considered the grave question of encroaching upon Tribal sovereignty. *See Narragansett Indian Tribe*, 449 F.3d at 27 (concluding that "there is *no ambiguity* in the *meaning and purport* of [the relevant statutory provision]" and that this provision, "when read in light of . . . the unique historical context surrounding its enactment," abrogates Tribal sovereign immunity (emphasis added)); *Aroostook Band of Micmacs*, 484 F.3d at 49 (explaining that this Court's holding was based upon "two federal statutes, [the Maine Indian Claims Settlement Act of 1980 and the Aroostook Band of Micmacs Settlement Act], both of which were statutes designed to settle Indian claims"). This Court has never held that a federal statute abrogated Tribal sovereign immunity when there is no indication in statutory text, structure, purpose, or history that Congress even considered Indian Tribes when enacting the statute. Holding that Sections 101(27) and 106(c) of the Code together abrogate Tribal sovereign immunity would fly in the face of the Supreme Court's holding that it is for Congress, not for the courts, to abrogate Tribal sovereign immunity. *See Bay Mills*, 572 U.S. at 803.

Tribal sovereign immunity is consistent with Congress's overarching Tribal self-determination framework for modern federal Indian law. As the Tenth Circuit has put it, "[n]ot only is sovereign immunity an inherent part of the concept of sovereignty and what it means to be a sovereign, but 'immunity [also] is thought [to be] necessary to promote the federal policies of tribal self-determination, economic

development, and cultural autonomy." *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173, 1182 (10th Cir. 2010) (quoting *Am. Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1378 (8th Cir. 1995)). Congress adopted the Bankruptcy Code during the first full decade of the Self-Determination Era, a period during which "Congress . . . consistently reiterated its approval of the [Tribal sovereign] immunity doctrine." *Citizen Band of Potawatomi Indian Tribe of Okla.*, 498 U.S. at 510 (citing Indian Financing Act of 1974, 25 U.S.C. §§ 1451-1543, and Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 5301-5423). Congress has continued the self-determination policy since then. The same Congress that enacted the current abrogation provision in Section 106 also amended the Indian Self-Determination and Education Assistance Act "to provide for tribal Self-Governance." Pub. L. No. 103-413, 108 Stat. 4250. Congress's many statutes promoting Tribal self-determination "reflect Congress' desire to promote the 'goal of Indian self-government, including its 'overriding goal' of encouraging tribal self-sufficiency and economic development.'" *Citizen Band of Potawatomi Indian Tribe of Okla.*, 498 U.S. at 510 (quoting *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216 (1987)). In the area of Tribal sovereign immunity in particular, and with respect to Tribal sovereignty more generally, the Supreme Court has repeatedly looked to contemporary congressional policy. *See id.*; *see also Bryan v. Itasca Cnty.,* 426 U.S.

373, 386-87 (1976) ("we previously have construed the effect of legislation affecting reservation Indians in light of 'intervening' legislative enactments"). Congress's well-established self-determination policy therefore counsels in favor of this Court's preservation of the traditional sovereign immunity of Indian Tribes. *See Citizen Band of Potawatomi Indian Tribe of Okla.*, 498 U.S. at 510 (reasoning that in light of Congress's self-determination policy, "we are not disposed to modify the long-established principle of tribal sovereign immunity").

Appellant suggests that the persistence of Tribal sovereign immunity offends a principle of equal treatment of all sovereigns. (Coughlin Br. 29.) To be sure, Congress has treated other governments—states, the United States, territories, and foreign states—differently by explicitly defining them as "governmental units" in Section 101(27) of the Code and by abrogating sovereign immunity of governmental units for particular purposes in Section 106 of the Code. There is nothing unusual, however, in a statutory distinction between sovereigns with respect to their immunity from suit. Congress routinely calibrates federal law to treat different sovereigns' immunity differently. *See, e.g.*, Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 28 U.S.C. §§ 1602-1611 (codifying foreign sovereign immunity). The Supreme Court, moreover, has emphasized that there are distinctions among the sovereign immunities of different sovereigns within the constitutional system. *See, e.g.*, *Upper Skagit Indian Tribe*, 138 S. Ct. at 1654 (noting that "immunity doctrines

lifted from other contexts do not always neatly apply to Indian tribes"). At the same time, the Court has consistently preserved sovereign immunity—not just for Tribes, but for other sovereigns as well—by requiring clarity before concluding that sovereign immunity is waived or abrogated. *See, e.g.*, *Sossamon v. Texas*, 562 U.S. 277, 285 (2011) (considering state sovereign immunity). The decision to unequivocally abrogate Tribal sovereign immunity lies with Congress, which has not done so in the Bankruptcy Code. Tribal sovereign immunity therefore persists under principles of statutory construction that preserve sovereign immunity and allow Congress to calibrate federal law with respect to the immunity of different sovereigns.

The trust relationship between the United States and Indian Tribes also provides support for the preservation of Tribal sovereign immunity in this case. The United States owes Indian Tribes a trust responsibility to support Tribal sovereignty. Congress has implemented this trust responsibility through a self-determination policy that recognizes the importance of Tribal sovereign immunity to self-government and economic development. In keeping with the Supreme Court's precedents, this trust responsibility and Congress's self-determination policy underscore the importance of judicial deference to legislative policy and the requirement of an unequivocal expression of congressional intent to abrogate Tribal

sovereign immunity. *See Citizen Band of Potawatomi Indian Tribe of Okla.*, 498 U.S. at 510.

Tribal sovereign immunity persists in light of the trust responsibility and Congress's self-determination policy unless Congress unequivocally says otherwise. Congress did not do so when it enacted the Code in 1978 or the current abrogation provision in 1994. And it has not done so since. Indian Tribes may therefore raise sovereign immunity as a defense to claims for damages under the Code.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order dismissing Appellant's claims should be affirmed.

Respectfully submitted this 22nd day of July, 2021.

*/s/ Seth Davis*
Seth Davis, Bar No. 11951107
424 N Addition
225 Bancroft Way
Berkeley, CA 94720
(813) 428-3331
sethdavis@berkeley.edu

*/s/ Kaighn Smith, Jr.*
Kaighn Smith, Jr., Bar No. 43039
Amy K. Olfene, Bar No. 1173174
DRUMMOND WOODSUM
84 Marginal Way, Ste. 600
Portland, ME 04101
(207) 772-1941
ksmith@dwmlaw.com
aolfene@dwmlaw.com
*Counsel for the* Amici Curiae

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32 because this brief contains 5,939 words and 497 lines of text, excluding the portions of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using serifs in Times New Roman, 14-point font.

Dated: July 22, 2021

*/s/ Amy K. Olfene*

Amy K. Olfene

DRUMMOND WOODSUM

84 Marginal Way, Suite 600

Portland, ME  04101

(207) 772-1941

aolfene@dwmlaw.com

A

**ADDENDUM**

The *Amici Curiae* include the following professors of law:

- Seth Davis, Professor of Law, University of California, Berkeley School of Law

- Matthew L.M. Fletcher, Professor of Law, Michigan State University College of Law

- Joseph William Singer, Bussey Professor of Law, Harvard Law School

- Angela R. Riley, Professor of Law, UCLA School of Law

- Kristen A. Carpenter, Council Tree Professor of Law, University of Colorado Law School

- Adam Crepelle, Incoming Term Assistant Professor of Law, George Mason University Antonin Scalia Law School, and Associate Professor of Law, Southern University Law Center

- Gregory Ablavsky, Associate Professor of Law & Helen L. Crocker Faculty Scholar, Stanford Law School

- Bethany Berger, Wallace Stevens Professor of Law, University of Connecticut School of Law

- Alexander T. Skibine, S.J. Quinney Professor of Law, University of Utah S.J. Quinney College of Law

- Addie C. Rolnick, San Manuel Band of Mission Indians Professor of Law, UNLV William S. Boyd School of Law

## <u>CERTIFICATE OF SERVICE</u>

I, Amy K. Olfene, hereby certify that on this 22nd day of July, 2021, I electronically filed the foregoing Brief of *Amici Curiae* Professors of Federal Indian Law with the United States Court of Appeals for the First Circuit by using the CM/ECF system which will send notification of such filings(s) to all parties of record.

/s/ Amy K. Olfene
Amy K. Olfene
DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
aolfene@dwmlaw.com

C